UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Direct Purchaser Actions | Case No. 2:08-cv-2431<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Hon. Mary A. McLaughlin |

**I.     INTRODUCTION**

In accordance with the Court's August 5, 2009 Order (Doc. #98, at 3),[1] the Direct Purchaser Plaintiffs ("Plaintiffs") hereby move to compel discovery under Fed. R. Civ. P. 37(a). Specifically, Plaintiffs move to strike certain objections lodged by Defendants Biovail Corporation, Biovail Laboratories. Inc., and Biovail Laboratories International SRL ("Biovail"), and by defendants SmithKline Beecham Corporation and Glaxosmithkline, PLC ("GSK") (collectively "Defendants"), in their respective responses to Direct Purchaser Plaintiffs' First Request for Production of Documents (sometimes hereinafter referred to as the "Rule 34 requests"). Defendants' objections are premised upon the protective orders entered in *Biovail Labs., Inc. v. Anchen Pharms. Inc.*, C.A. No. SACV 04-1469-JVS (RCx) (C.D. Cal.); *Biovail Labs. Int'l SRL v. Impax Labs., Inc.*, No. 05-CV-1085 (E.D. Pa.); *Biovail Int'l Labs. SRL v. Abrika, LLLP*, Case No. 04-61704-CIV (S.D. Fla); and *Biovail Labs., Inc. v. Watson Labs., Inc.*, No. 05-7799 (S.D.N.Y.) (the "Underlying Patent Cases").[2]

---

[1] *See also* Transcript of Rule 16 conference of August 4, 2009, Ex. A hereto, at 35-36, 38, 88-89 (discussing and scheduling this motion).

[2] The protective orders entered in the Underlying Patent Cases are attached hereto as Exs. B
(continued...)

Plaintiffs have been seeking from Defendants the documents from the Underlying Patent Cases since at least March 31, 2009. Defendants have argued, in response to Plaintiffs' informal early discovery requests, in the Joint Rule 26(f) Report submitted to the Court (Doc. #92, at Part II.C.2),[3] and in their objections to Plaintiffs' formal Rule 34 requests,[4] that they are "prohibited" from producing documents that are responsive to Plaintiffs' Rule 34 requests, and in Defendants' possession,[5] because the documents are subject to protective orders in the Underlying Patent Cases.

Defendants misread the protective orders in the Underlying Patent Cases. Those provisions — to which Biovail, GSK and the various producing parties in the Underlying Patent Cases all agreed — require Biovail and/or GSK only to give the producing parties notice prior to producing documents in response to a demand for documents, like Plaintiffs' Rule 34 requests. Defendants are not "prohibited" from producing any documents. *See* Ex. A at 23-40.

Moreover, although Defendants purport to withhold production based on the confidentiality rights of others, we note that Defendants also apparently object to producing the documents that *they*

---

[2](...continued)
through E.

[3]The Joint Rule 26(f) Report is attached hereto as Ex. F.

[4]Biovail and GSK's objections to Direct Purchaser Plaintiffs' Rule 34 requests are attached as Exs. G and H, respectively.

[5]Biovail and GSK have argued that documents in the possession of their counsel in the Underlying Patent Cases are not within Biovail or GSK's possession or control. The Court rightly did not accept that argument. *See* Ex. A at 26:1-15. Given that the first antitrust lawsuit involving Wellbutrin XL was filed in April of 2008, and that issues concerning Wellbutrin XL were being actively litigated in the antitrust case involving Wellbutrin SR (*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525 (E.D. Pa.) (recently reassigned to Judge Stengel), Plaintiffs presume that a litigation "hold" has long since been placed on all documents from the Underlying Patent Litigation.

marked confidential in the Underlying Patent Case. Defendants have not explained the basis for this position.

Finally, the parties to the instant lawsuit have stipulated to, and the Court has entered (or will shortly enter),[6] a protective order governing this lawsuit which, in Paragraph 3(d), affords documents covered by the protective orders in the Underlying Patent Cases treatment that is presumed "Highly Confidential" *regardless* of any lower level of confidentiality assigned the documents in the Underlying Patent Case where they were initially produced.[7] This provision — which was drafted especially for, and intended to run to the benefit of, producing parties in the Underlying Patent Cases — ensures that documents in the Underlying Patent Cases will be treated as restrictively in this case as they had been in the Underlying Patent Cases.

All parties acknowledge that the documents from the Underlying Patent Cases form the basis of Plaintiffs' "sham litigation" claims. Therefore, Plaintiffs, by way of this motion to compel discovery, respectfully request that the Court enter the order proposed, striking any and all objections asserted by Biovail and GSK that are premised upon the protective orders in the Underlying Patent Cases.

## II.    ARGUMENT

### A.    The Documents Requested By Plaintiffs Are Relevant and In Defendants' Possession

In their Rule 34 requests, Plaintiffs make several demands to which documents from the Underlying Patent Cases are responsive. *E.g.,* Exs. G & H at Requests 6 (communications between

---

[6]The Court has indicated it will enter the parties' proposed stipulated protective order. Ex. A at 9:19-21.

[7]The protective order entered (or to be entered) in this case is attached hereto as Ex. I.

Defendants and generic manufacturers regarding patents at issue), 7 (motions and pleadings from Underlying Patent Cases), and 8 (deposition transcripts, expert reports, and exhibits from Underlying Patent Cases). In all, Biovail objects to nineteen (19) of the Rule 34 requests based on the protective orders in the Underlying Patent Cases.[8] There is no dispute that documents governed by the protective orders in the Underlying Patent Cases are relevant to Plaintiffs' claims in this case. In the Joint Rule 26(f) Report, Defendants acknowledge that the Underlying Patent Cases "form the basis for Plaintiffs' claims of 'sham litigation.'" *See* Ex. F at Part II.C.2. Documents concerning those lawsuits therefore must be relevant.

Rule 37 of the Federal Rules of Civil Procedure provides, in pertinent part:

> A party seeking discovery may move for an order compelling ... production[.] This motion may be made if:
>
> * * *
>
> (iv)   a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

*See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (West 2008). Here, both Biovail and GSK have affirmatively objected, in response to Plaintiffs' Rule 34 requests, to producing documents that are governed by the protective orders in the Underlying Patent Cases. Biovail's general objection 6 states:

> Biovail objects to these Requests to the extent they seek production of sensitive or confidential third-party documents or things that are subject to a protective order or other confidentiality protections (e.g., Abrika, Anchen, Impax, or Watson confidential documents).

*See* Ex. G at 3. In similar fashion, GSK's general objection 5 states:

---

[8] *See* Ex. G at Requests 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 37, 43, 44, 46, 47, 48, and 49.

> GSK objects to each Request to the extent that it calls for the production and/or disclosure of third party information subject to Protective Orders or other court orders.

See Ex. H at 2. Similar objections are repeated in specific response to several of Plaintiffs' Rule 34 requests. *See* Ex. G at Requests 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 37, 43, 44, 46, 47, 48, and 49 (Biovail objections premised on the protective orders in the Underlying Patent Cases); Ex. H at Requests 6, 7, 8, 9, 10, 11, 43, 44, and 46 (GSK objections premised upon the protective orders in the Underlying Patent Cases). Defendants have therefore "fail[ed] to respond that inspection will be permitted . . . as requested under Rule 34" within the meaning of Rule 37(a)(3)(B)(iv), requiring this motion.

### B. Biovail and GSK Are Not "Prohibited" From Producing Documents Covered By the Protective Orders in the Underlying Patent Cases

By their objections and in the Joint Rule 26(f) Report, Defendants have asserted that they are "prohibited" from producing documents, responsive to the Rule 34 requests, that are covered by the protective orders in the Underlying Patent Cases. Consonant with their objections to the Rule 34 requests, in the Joint Rule 26(f) Report, Defendants state:

> Perhaps most important, however, is the fact that various confidentiality orders, obligations, and agreements ***prohibit*** Biovail and GSK from producing many of the categories of information sought, including categories 1, 2, 3, 6, 7, and 9 . . . In short, Biovail and GSK ***cannot*** produce many of the materials sought by Plaintiffs consistently with the mandates of the underlying protective orders.

Ex. F at Part II.C.2 (emphasis in original).

To begin with, Biovail and GSK cannot be referring to their own documents. They are referring to the documents of other producing parties that are in Biovail and GSK's possession and/or control. Nothing prevents Biovail or GSK from producing their own documents in this

lawsuit, even if those documents happen to have also been produced and designated under the protective order in one or more of the Underlying Patent Cases.

But even with respect to the documents of other producing parties, Biovail and GSK misconstrue the protective orders from the Underlying Patent Cases, and their objections, being based upon those misconstructions, should be stricken. The pertinent portions of those protective orders are as follows:

### *Biovail v. Abrika* (S.D. Fla.)

> 5. Disclosure of Information in Other Proceedings. If any party: (a) is subpoenaed in another action; (b) is served with a demand in another action to which it is a party; or (c) is served with any other legal process by one not a party to this action, seeking information or material which was produced or designated as "Confidential" or "Highly Confidential" or "Confidential - Attorneys' Eyes Only" by someone other than that party, ***the party shall give prompt actual written notice, by hand or facsimile transmission, within three (3) business days of receipt*** of such subpoena, demand or legal process, to those who produced or designated the information or material "Confidential" or "Highly Confidential" or "Confidential - Attorneys' Eyes Only" and shall object to its production by setting forth the existence of this Protective Order. Should the person seeking access to the information or material take action against the party or anyone else covered by this Protective Order to enforce such a subpoena, demand or other legal process, ***it shall be the responsibility of the party who produced the Confidential Material to intervene and respond***. ***Nothing herein shall be construed as requiring the party who produced the Confidential Material or anyone else covered by this Protective Order to challenge or appeal any order requiring production of information or material covered by this Protective Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.***

### *Biovail v. Watson* (S.D.N.Y.)

> 5. If any Party: (a) is subpoenaed in another action; (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by one not a party to this

>Litigation, seeking material that was produced or designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by someone other than that party, ***the Party shall give prompt actual written notice, by hand or facsimile transmission, within three (3) business days or receipt*** of such subpoena, demand or legal process, to those who produced or designated the material "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and shall object to its production by setting forth the existence of this Protective Order. Should the person seeking access to the material take action against the Party or anyone else covered by this Protective Order to enforce such a subpoena, demand or other legal process, ***it shall be the responsibility of the Party who produced the Confidential Material to intervene and respond***. ***Nothing herein shall be construed as requiring the Party who produced the Confidential Material or anyone else covered by this Protective Order to challenge or appeal any order requiring production of material covered by this Protective Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.***

>### *Biovail v. Anchen* (C.D. Cal.)

>15. Production of any confidential material by a non-producing party in response to an apparently lawful subpoena, motion, or order of or in any court or other governmental agency ***shall not be deemed violation of any of the terms of this Order***. However, the party receiving such subpoena, motion, or order shall first promptly ***notify the producing party*** and prior to production, if it can be done without placing the non-producing party in violation of the subpoena, motion, or order, shall ***give the producing party the opportunity*** to secure confidential treatment, whether by protective order or otherwise, for such materials upon terms comparable to those applicable to such materials under the terms of this Order and/or to seek to block the production.

*See* Ex. D ¶ 5 (emphasis added); Ex. E. ¶ 5 (emphasis added); Ex. B ¶ 15 (emphasis added).

A review of the paragraphs extracted above reveals that, far from prohibiting Biovail and/or GSK from producing documents, the protective orders in the underlying *Abrika* and *Watson* cases both provide that Biovail and/or GSK, in response to a demand for documents like Plaintiffs' Rule 34 requests, need not "challenge or appeal any order requiring production of information or material

covered by this Protective Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court [in the Underlying Patent Case]," but instead need only "give prompt actual written notice" to the producing parties. Thereafter, it is "the responsibility of the party who produced the Confidential Material to intervene and respond" in this Court. *See* Ex. D ¶ 5; Ex. E. ¶ 5. It is simply not accurate to say the protective orders in *Abrika* or *Watson* prohibit Biovail or GSK from complying with the Rule 34 requests. Biovail and GSK's objections to the production of documents, responsive to the Rule 34 requests, that are covered by the protective orders in the underlying *Abrika* and *Watson* cases, should therefore be stricken.

The protective order in the underlying *Anchen* case is virtually identical to those in the *Abrika* and *Watson* cases, providing that Biovail and/or GSK's "[p]roduction of any confidential material . . . shall not be deemed a violation of any of the terms of this Order," and requiring Biovail and/or GSK merely to "notify the producing party" and, if possible, "give the producing party the opportunity to secure confidential treatment, whether by protective order or otherwise, for such materials[.]" *See* Ex. B ¶ 15. It is similarly unreasonable to characterize the protective order in the *Anchen* case as prohibiting Biovail or GSK from complying with the Rule 34 requests. Biovail and GSK's objections to the production of documents, responsive to the Rule 34 requests, that are covered by the protective order in the underlying *Anchen* case, should therefore be stricken, as well.[9]

---

[9] The protective order in the underlying *Impax* case, over which Judge Brody of this federal judicial district presided, does not contain any provision governing demands such as Plaintiffs' Rule 34 requests. *See* Ex. C. As discussed during the Rule 16 conference of August 4, 2009, the parties have consented to this Court's contacting Judge Brody concerning a mechanism by which to permit Biovail and GSK the ability to produce documents responsive to the Rule 34 requests that are covered by the protective order in the underlying *Impax* action. *See* Ex. A at 38:2-12, 39:20-40:5. This would include documents produced by Impax itself, or any other producing party in the underlying *Impax* case.

Moreover, counsel for Biovail acknowledged that Biovail had complied with the provisions of the protective orders in the Underlying Patent Cases, and informed at least some of the producing parties of Plaintiffs' Rule 34 requests. *See* Ex. A at 21:8-13.[10] Thus far, none of the producing parties in the Underlying Patent Cases has sought to "secure confidential treatment . . . and/or to seek to block the production" by Biovail and/or GSK (*see* Ex. B ¶ 15) or to "intervene and respond" (*see* Ex. D ¶ 5; Ex. E ¶ 5).[11]

### C. Documents From the Underlying Patent Cases Will Be Carefully Protected in This Case

Even if a producing party in one of the Underlying Patent Cases should seek to block Biovail or GSK's production of documents, responsive to the Rule 34 requests, that are covered by a protective order in one of the Underlying Patent Cases, that effort should be rejected, for a variety of reasons.

---

[10] Counsel for Biovail stated that Biovail has notified "the generic companies" (Ex. A at 21:9), but did not inform the Court whether Biovail has notified the other producing parties in the Underlying Patent Cases, if any. As Plaintiffs described during the Rule 16 conference, Biovail has not disclosed that information to Plaintiffs. *See* Ex. A at 30:17-31:8.

[11] On August 6, two business days before this motion was due, counsel for Plaintiffs received an initial communication from Anchen's counsel, unsolicited, which contained numerous attachments. *See* Ex. J. The letter was remarkable for a number of reasons. **First,** it stated that Biovail "has not . . . accurately presented to Plaintiffs' counsel or the Court" Anchen's position regarding the production of documents covered by the *Anchen* protective order. *Id.* at 2. **Second,** it explained that "Anchen made a number of specific requests and changes to the proposed [antitrust case protective] order to address its concerns," and referenced a previous July 20, 2009 letter. *Id.*

That Anchen made "specific requests and changes" was news to Plaintiffs; Biovail never revealed the "specific requests and changes," nor even the fact of their existence, to counsel for Plaintiffs, as later email exchanges between Anchen and Biovail tend to confirm. *See* Ex. K. (Nor does it appear that Biovail revealed the existence of Anchen's "specific requests and changes" to the Court during the Rule 16 conference. *See* Ex. A at 34:16-35:4.) Plaintiffs have reviewed Anchen's "specific requests and changes" and believe they can be worked out — and could have been worked out earlier had Biovail shared them with counsel for Plaintiffs.

*First,* the parties to the instant action have inserted language into the protective order in the case at bar that ensures that documents covered by a protective order in one of the Underlying Patent Cases are afforded protections in this case that are at least as restrictive as the restrictions the documents were afforded in the Underlying Patent Cases. Specifically, the protective order entered (or to be entered) in this case provides:

> 3. As used herein, HIGHLY CONFIDENTIAL INFORMATION refers to information that a producing party claims in good faith to be its confidential business information or commercial information within the meaning of Fed. R. Civ. P. 26(1)(G). Information to be treated under this Protective Order as HIGHLY CONFIDENTIAL INFORMATION shall include:
>
> * * *
>
> d. Information disclosed by any party or nonparty in Biovail Laboratories, Inc. v. Abrika LLLP, Case No. 04-CV-61704 (S.D. Fla.) (Altonaga, J.), Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc., Case No. 8:04-CV-01468 (C.D. Cal.) (Selna, J.), Biovail Laboratories Inc. v. Impax Laboratories, Case No. 2:05-CV-01085 (E.D. Pa.) (Brody, J.), Biovail Laboratories Int'l SRL v. Watson Laboratories, Inc., Case No. 1:05-CV-07799 (S.D.N.Y.) (Karas, J.) (the "underlying patent litigations"), whether such information was disclosed through discovery, correspondence, court filings, court hearings, or otherwise, and which was designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL, or ATTORNEY EYES ONLY in the underlying litigation(s).

*See* Ex. I at ¶ 3(d).[12] This provision affords documents covered by the protective orders in the Underlying Patent Cases treatment that is conclusively presumed to be "Highly Confidential" *regardless* of any lower level of confidentiality assigned the documents in the Underlying Patent

---

[12]Those permitted access to Highly Confidential materials under the protective order entered (or to be entered) in this case are listed in Paragraph 5 thereof. *See* Ex. I, at ¶ 5.

-10-

Case where it was initially produced. This provision — which was drafted especially for, and intended to run to the benefit of, producing parties in the Underlying Patent Cases — ensures that documents in the Underlying Patent Cases will be treated *at least as restrictively* in this case as they had been in the Underlying Patent Cases. The protective order in the *Anchen* case envisions producing parties in that case seeking "confidential treatment . . . for such materials upon terms *comparable to* those applicable to such materials under the terms of this Order[.]" Ex. B ¶ 15 (emphasis added). The protective order in the instant case affords treatment to documents that is not merely "comparable" to the terms of the protective orders in the Underlying Patent Cases, but which is in most cases *more* restrictive.

*Second,* there is no commercial risk attending Biovail or GSK's production of documents in this action, responsive to the Rule 34 requests, that are covered by a protective order in one of the Underlying Patent Cases. Those documents were already produced in at least one lawsuit. They have already been disclosed to Biovail and GSK, or to their outside counsel. In contrast to the class of trade to which the documents have already been disclosed — competing drug manufacturers — Plaintiffs are retailers and drug wholesalers. They are, by definition in this "direct purchaser" antitrust case, *purchasers*, not competing drug manufacturers. No competing drug manufacturer that has not already seen the documents covered by a protective order in one of the Underlying Patent Cases will, by their disclosure in the case at bar, see them.

*Third,* protective orders, such as those from the Underlying Patent Cases, while certainly worthy of careful respect, are not rigidly inflexible or immune to pragmatic implementation. The Third Circuit has emphasized that "careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of

private litigants." *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993). This is particularly so where an "umbrella" or "blanket" protective order — the type utilized in the Underlying Patent Cases — is at issue. "Although blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 n.26 (3d Cir. 1994) (quotation and citation omitted). "[W]hen there is an umbrella protective order the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." *U.S. v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007). Therefore, if there are producing parties in the Underlying Patent Cases who do come before the Court and, despite the best efforts of the Court and Plaintiffs to accommodate their concerns, are nevertheless incapable of being satisfied, the Court should keep in mind that the protective orders in the Underlying Patent Cases are not inviolate.

*Fourth,* the named Plaintiffs or their counsel have been and are currently involved in many other certified class actions involving allegations that underlying sham patent litigation prosecuted by branded drug manufacturers wrongfully delayed entry of generic drugs. At least one of those certified class actions is venued in this very judicial district. *See, e.g.*, *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) (certifying direct purchaser class alleging, among other things, sham patent litigation); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 02, 2008) (same); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) (same); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) (same). In each such antitrust case, the named plaintiffs or their counsel have sought and obtained the documents from the underlying patent cases forming the basis for the claim of sham litigation.

*Never* has there been an instance of confidential information being handled in an improper manner.

### III.    CONCLUSION

  For any or all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the Order proposed, striking any and all objections asserted by Biovail and GSK that are premised upon the protective orders in the Underlying Patent Cases, so that discovery in this litigation may begin in earnest.

            Respectfully submitted,

            **BERGER & MONTAGUE, P.C.**

              /s/Peter Kohn

Dated: August 10, 2009    By: _____
            David F. Sorensen
            Peter Kohn (PRK4859)
            1622 Locust Street
            Philadelphia, PA 19103
            Telephone: (215) 875-3000
            Fax: (215) 875-4604

            Thomas M. Sobol
            David S. Nalven
            Debra Gaw Josephson
            **HAGENS BERMAN SOBOL**
            **SHAPIRO LLP**
            One Main Street
            Cambridge, MA 02142
            Telephone: (617) 482-3700
            Fax: (617) 482-3003

            Linda P. Nussbaum
            John D. Radice
            **KAPLAN FOX & KILSHEIMER LLP**
            850 Third Avenue
            14th Floor
            New York, NY 10022
            Telephone: (212) 687-1980
            Fax: (212) 687-7714

            *Interim Lead Class Counsel*

>Joseph F. Roda
>Dianne M. Nast (DMN 1791)
>Jennifer S. Snyder
>**RODANAST, P.C.**
>801 Estelle Drive
>Lancaster, PA 17601
>Telephone: (717) 892-3000
>Fax: (717) 892-1200
>
>*Interim Liaison Class Counsel*