UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431 |
| THIS DOCUMENT RELATES TO:<br><br>Direct Purchaser Actions | **Hon. Mary A. McLaughlin** |

## JOINT RULE 26(f) REPORT

Pursuant to Orders of the Court dated March 16 and March 26, 2009, Fed. R. Civ. P. 16(b) and 26(f), and Rules 16.1 and 26.1 of the Local Civil Rules for the Eastern District of Pennsylvania, the parties hereby jointly submit this Rule 26(f) report and their proposals regarding discovery matters and scheduling.

## I.      NATURE OF LITIGATION

This is an antitrust action concerning the prescription drug Wellbutrin XL (bupropion hydrochloride extended release tablets).

Plaintiffs are pharmaceutical product wholesalers and pharmacies who claim to be direct purchasers or their assignees of Wellbutrin XL.  Defendant Biovail Corporation, and certain of its subsidiaries and affiliates, two of which are also named as Defendants, are engaged in the formulation, clinical testing, registration, manufacture, and commercialization of pharmaceutical products.  Defendant SmithKline Beecham Corporation ("GSK"), a subsidiary of Defendant GlaxoSmithKline plc, markets and sells pharmaceuticals in the United States.  The three Biovail Defendants are referred to in this Report as "Biovail," and the two GSK Defendants are referred to as "GSK."

Plaintiffs allege that Defendants initiated sham patent infringement litigation and sham petitioning of the FDA to delay the approval and sale of proposed generic versions of Wellbutrin

XL.  Plaintiffs allege that Defendants' actions were objectively baseless and intended to injure competition and, under *Real Estate Investors, Inc., v. Columbia Pictures*, 508 U.S. 49 (1993) ("PRE"), violated the antitrust laws.  Defendants contend that their patent infringement actions were objectively reasonable and brought in good faith, and deny Plaintiffs' allegations.

Along with the direct purchaser action, indirect purchasers of Wellbutrin XL, such as employee health plans, have brought a separate action against Defendants, asserting state law antitrust, unfair competition, and unjust enrichment claims, alleging essentially the same alleged misconduct.  A motion to dismiss concerning that action is pending before the Court.  Indirect purchasers are not a party to this Rule 26(f) report or the June 24, 2009 Rule 16 conference, but have been consulted in its preparation, participated in conference calls, and provided input to the report itself, both through the Direct Purchasers and directly to Biovail and GSK.

## II.     DISCOVERY

### A.     Confidentiality of Documents

The parties have prepared a proposed Protective Order Governing Confidential Information for the Court's review and approval, annexed hereto as Exhibit A.

### B.     Timing of Class and Merits Discovery

#### 1.     Plaintiffs' Proposal

Plaintiffs believe class and merits discovery should proceed together.  Any attempt to separate discovery would be unworkable, burdensome, and generate unnecessary disputes and motion practice.  Although Defendants say they do not seek class/merits bifurcation, they have proposed terminating "class" discovery months before the close of "merits" discovery.  That is bifurcation, by whatever name, and it should not be implemented.  Plaintiffs request that the Court permit all discovery to go forward for all purposes.

2.      **Defendants' Response**

Biovail and GSK agree that discovery on all issues can proceed in parallel, at least initially.  Biovail and GSK do not believe, however, that there is any need for additional discovery regarding class certification issues after Biovail and GSK file their oppositions to Plaintiffs' motions for class certification.  Continuing discovery on class certification issues, at that late date, could only be intended to develop information that would be improperly incorporated into Plaintiffs' reply brief and/or untimely supplemental briefs on class certification issues.  As such, Biovail and GSK propose a cut-off for class certification discovery that is one week before Defendants' briefs in opposition to motions for class certification are due.  *See* Defendants' Proposed Schedule below.

C.      **Requested Initial Disclosures**

1.  **Plaintiffs' Proposal**

This action concerns the circumstances surrounding Defendants' actions in commencing, conducting, and settling four actions against manufacturers of generic Wellbutrin XL (the "Four Generic Lawsuits" or the "Lawsuits"), and in prosecuting a citizen petition before the FDA. Accordingly, as part of Initial Disclosures, and given the delay between the originally scheduled Initial Conference, for May 4, 2009, and the rescheduled date of June 24, 2009, Plaintiffs requested that Defendants voluntarily produce certain categories of pre-existing documents generated in or related to the Lawsuits.  Defendants resisted such production as part of their Initial Disclosure because (1) Defendants required service of a request for production of documents under Fed. R. Civ. P. 34 (which, pursuant to Fed. R. Civ. P. 26(d)(1), could not be served until June 3, 2009); and (2) Defendants claimed to be restricted by protective orders in the Lawsuits from producing any documents from the Lawsuits without consent of the other parties to those cases.

Plaintiffs had asked for the following categories of documents:

1. All pleadings, expert reports and exhibits, deposition transcripts and exhibits, court hearing transcripts, and orders, in the Four Generic Lawsuits;

2. All documents produced by any party or non-party in the Four Generic Lawsuits, and the indices or electronic databases cataloguing the contents of the documents

3. All privilege logs generated in connection with the production of documents in the Four Generic Lawsuits and any correspondence, agreements on court orders relevant to such logs;

4. The patent prosecution histories of U.S. Patent Nos. 6,096,341 and 6,143,327;

5. The New Drug Application for Wellbutrin XL and any supplements thereto, and correspondence with the FDA related to the application;

6. The Abbreviated New Drug Applications filed by the Defendants in the Four Generic Lawsuits and correspondence with the FDA related to such applications;

7. The settlement agreements for the Four Generic Lawsuits and the license agreements between Defendants and the defendants in the Four Generic Lawsuits;

8. All documents exchanged between the FDA and Defendants in connection with Defendants' citizen petitions, including correspondence;

9. All pleadings, court hearing transcripts, orders, and documents produced in Defendants' action for injunctive relief against the FDA; and

10. All agreements between GSK and Biovail concerning Wellbutrin XL.

Plaintiffs also requested that Defendants produce data reflecting their sales of Wellbutrin XL, which is critical to Plaintiffs' preparation for class certification, summary judgment, and trial.

On June 16, 2009, Plaintiffs served a Rule 34 request for production of documents, including the categories of documents whose production was previously requested. Plaintiffs have reviewed the protective orders in the Lawsuits and understand them to permit or require Defendants to notify the other parties to the Lawsuits upon receiving requests for disclosure of materials covered by those protective orders so that those parties may assert their claims to confidentiality, if any, in this action. Plaintiffs believe the Protective Order the parties have

proposed in this action will protect the confidentiality of the documents from the Four Generic Lawsuits.  Plaintiffs expect that Defendants will act reasonably to produce their documents promptly and minimize the burden on Plaintiffs, and the Court, in obtaining leave to produce documents from the Four Generic Lawsuits for use in this case.

> 2.     **Defendants' Response**

Plaintiffs' ten categories of documents listed above for proposed early production (and then incorporated into Requests for Production served the evening before this Rule 26(f) Report was due) encompass an enormous volume of materials.  Now that Biovail and GSK have received Requests for Production, responses to which are not due until several weeks after the June 24th Scheduling Conference, they have a fair opportunity to consider Plaintiffs' requests and respond consistently with their obligations under the Federal Rules.  At the moment, there is no pending dispute between the parties regarding the production of documents.

Biovail and GSK note, however, that it is possible that disputes will arise in the future. Many of Plaintiffs' requested categories – particularly the broader ones – raise significant complexities.  Category 1, for instance, requests the entire records of ***four*** separate patent litigations, each of which spanned several years.  The materials in question are voluminous and are spread throughout the files of multiple law firms who served as outside counsel to Biovail and GSK.  All of these law firm case files must be reviewed before production to ensure that privileged materials are not intermixed.

Perhaps most important, however, is the fact that various confidentiality orders, obligations. and agreements ***prohibit*** Biovail and GSK from producing many of the categories of information sought, including categories 1, 2, 3, 6, 7, and 9.  For instance, and most overarchingly, the federal district courts that adjudicated each of the underlying litigations that

form the basis for Plaintiffs' claims of "sham litigation" entered protective orders that limit access to materials designated as confidential in those litigations.  In addition to limiting the people who can access confidential information (*e.g.*, by allowing in some instances only "counsel of record" in the underlying litigations to access certain categories of materials), these protective orders uniformly prohibit use of confidential materials produced in the underlying litigations for any purpose apart from litigating the underlying cases.  In short, Biovail and GSK **cannot** produce many of the materials sought by Plaintiffs consistently with the mandates of the underlying protective orders.[1]  *See* Underlying Protective Orders, attached as Exhibits B-1 to B-4.  Indeed, Biovail and GSK oftentimes do not themselves have the documents in question due to the provisions of the underlying protective orders; they are only found in the files of Biovail's and GSK's outside counsel from the underlying cases.  In many instances, even Biovail's and GSK's outside counsel in this antitrust litigation – not the same outside counsel that represented Biovail and GSK, respectively, in the underlying cases – do not have access to the materials sought, as the generic pharmaceutical companies who were parties to the underlying litigations (whose confidential information is now sought by the Plaintiffs in this antitrust case) have not, to date, consented to allow Biovail's antitrust counsel access to the majority of the documents, much less to produce them to Plaintiffs.[2]

Biovail has explained this challenge to Plaintiffs and offered to provide contact information to Plaintiffs for the generic manufacturers (*see, e.g.,* Exh. D), but Biovail and GSK

---

[1]  To the extent that materials from the underlying litigations are non-confidential, they can generally be obtained through PACER, and it is no greater burden for Plaintiffs to pull those documents themselves than for Biovail and GSK to produce them.  Similarly, materials such as the patent prosecutions are publicly available and can be obtained from the PTO.

[2]  Additionally, Biovail's counsel here is informed that at least some of the information sought by Plaintiffs was destroyed at the conclusion of the underlying litigations, before this antitrust case was filed, as mandated by the underlying protective orders.  Thus, those materials will have to be sought from the generic companies who originally produced them.

are unaware of any efforts by Plaintiffs to obtain the consents necessary for Biovail or GSK to produce the materials sought.  Indeed, Plaintiffs' only proposal to date for resolving this issue, made orally during meet-and-confers, has been that Biovail and GSK should consent to this Court entering an order requiring Biovail and GSK to produce the relevant categories of materials sought.  Biovail and GSK do ***not*** voluntarily consent to such an order.  Preliminarily, courts do not generally enter orders requiring document productions absent some showing of a responding party's non-compliance with ordinary discovery requests and a subsequent Rule 37 motion to compel.  Biovail and GSK object to entry of any order (under threat of contempt for non-compliance) at this early stage of the litigation, before Biovail and GSK have even had the opportunity to object and respond to Plaintiffs' recent document requests, as permitted by FRCP 34.  More fundamentally, however, Plaintiffs' proposal disregards the critical problem that Biovail and GSK are ***prohibited*** by the underlying protective orders (or, in some cases, confidentiality provisions in agreements with third parties) from producing many of the documents that Plaintiffs seek here.  Plaintiffs' proposal would subject Biovail and GSK to conflicting court orders – an untenable situation.

Plaintiffs are correct that under some (but not all) of the underlying protective orders, the Plaintiffs' recent Requests for Production may require Biovail and/or GSK to notify the generics of the pending requests.  These provisions, however, do not necessarily resolve the impediment to Biovail's production of the generic manufacturers' confidential materials, for at least the following reasons:  (1) such provisions are not found in all of the underlying protective orders; (2) the generic manufacturers may still object to the production of their materials in this antitrust litigation, given that protective order issues were heavily litigated in many of the underlying cases and that many of the generics have refused to consent to date even to antitrust counsel

in this case having access to their materials; and (3) logistical issues still remain concerning how antitrust counsel in this case can access the requested materials, regardless of the subpoena-trigger provisions of some of the underlying protective orders.      Biovail and GSK submit that Plaintiffs have several logical and appropriate options at this juncture.  Among them, Plaintiffs can:  (1) seek to obtain consents from the generic manufacturer defendants in the underlying litigations (ensuring that the consents are sufficiently broad to allow Biovail's and GSK's antitrust counsel access to the relevant materials as well); (2) seek permission from the District Courts of the Central District of California, the Southern District of Florida, the Eastern District of Pennsylvania, and the Southern District of New York to modify the underlying protective orders to permit access, production, and use of the underlying litigation materials in this antitrust litigation; or (3) subpoena the generic manufacturers for the materials sought.  Unless and until issues relating to third-party confidentiality concerns are resolved, however, Biovail and GSK simply cannot produce the bulk of the materials Plaintiffs seek, whether requests are made informally or through Rule 34 Requests for Production.

**D.      Form of Document Production/ESI Issues**

The parties are continuing to negotiate the form of document production/ESI issues and will submit either a stipulation and proposed order before the scheduling conference or a pleading identifying their areas of agreement and disagreement, and will be prepared to address the Court's questions on these areas at the Initial Conference.

**E.      Number of Requests**

The parties are unable to determine at this time if the presumptive number of depositions and interrogatories will be sufficient in this case.  The parties propose to consider this matter as discovery develops and report to the Court if any disputes develop.

**F.      Advice of Counsel**

**1. Plaintiffs' Proposal**

Plaintiffs anticipate that Defendants may claim that their decisions to commence, conduct, and settle the Four Generic Lawsuits were made on advice of counsel, and that Defendants may seek to shield relevant documents and information from disclosure by asserting the attorney-client privilege and/or work product doctrine.  Plaintiffs believe advice of counsel issues will significantly impact the scope and efficiency of discovery, and therefore merit the Court's early attention.

The first issue under *PRE* is whether Defendants, as reasonable litigants, could have had a realistic expectation of success (viewed objectively).  The second issue under *PRE* is whether Defendants filed the suits, and the petition, with the subjective intent to interfere with competition.

Defendants may well argue, on one or both *PRE* issues, that they acted or relied on the advice of counsel.  If Defendants proffer such an argument, they would thereby waive the privilege.  Such a waiver, obviously, could dramatically affect discovery.  Accordingly, Plaintiffs believe that the Defendants should be required to make an early election regarding the advice-of-counsel defense.

Such an early election would not only avoid the waste and expense of re-doing discovery later, should Defendants elect to rely on advice of counsel, but  should reduce the risk that Defendants will attempt to effectively rely on advice of counsel, without saying so.  That is, Defendants plainly should not be permitted to shield the advice of their counsel under a claim of privilege, then permit their witnesses to say or suggest that lawyers vetted or were involved in

the decisions to file and prosecute the Lawsuits, thereby attempting to obtain for themselves the benefit of an advice of counsel defense, without paying its fair cost (waiver of privilege).

> ### 2.        Defendants' Response

Biovail and GSK disagree with Plaintiffs' explanation of the issues and law relating to questions of privilege in this case.  For instance, Biovail and GSK do not agree that a witnesses' statement that an attorney was involved in litigation decisions, by itself and without disclosing the content of the attorney-client communication, is sufficient to waive the attorney-client privilege or constitutes an election to assert the advice-of-counsel defense.  Additionally, the scope of any waiver, should Biovail and/or GSK elect to rely on the advice of counsel defense, is a matter that the parties would be likely to dispute.  These and related issues raised by Plaintiffs' discussion above need not be addressed at this juncture, however, but should instead be the subject of full briefing, if necessary, when and if these issues arise in the course of the litigation.

Although Plaintiffs propose that Biovail and GSK should be required to make an "early election" as to whether they will rely on the advice of counsel defense, Plaintiffs do not propose a date certain by which Biovail and GSK must make this election.  The case law is clear, however, that, any such deadline, if it is imposed at all, should *not* be at the outset of the case. *Kos Pharm, Inc. v. Barr Lab., Inc.*, 218 F.R.D. 387, 394 (S.D.N.Y. 2003) ("[G]iven the still relatively early stages of the litigation, it would be particularly constraining and prejudicial to Barr's preparation of its defense at trial if it were compelled to turn over to Kos the legal opinions at issue. Simply put, it may be premature at this time to force that choice."); *Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02 Civ. 9290 BSJ THK, 2003 WL 21800981, *1-3 (S.D.N.Y. Aug. 5, 2003) (delaying discovery related to advice of counsel because prejudice of disclosing opinions far outweighs the delay of a small discovery issue); *F&G Scrolling Mouse, LLC v. IBM*

*Corp.*, 190 F.R.D. 385, 391-92 (M.D.N.C. 1999) (delaying disclosure of advice of counsel documents until the end of other discovery); *Flex Prods. Inc. v. BASF Corp.*, 47 U.S.P.Q.2d 1380, 1382 (E.D. Mich. 1998) (providing that discovery relating to advice of counsel should be stayed until two weeks before the discovery cut-off date to provide defendant with the time to make "a careful, considered decision" whether or not to waive the attorney-client privilege). Biovail and GSK are entitled to a reasonable period for discovery so that they can fully assess the relative merits of all potential defenses before electing whether they will rely on the defense of advice of counsel.  Courts have frequently not required a deadline for the election until late in the fact discovery period.  *See, e.g., F&G*, 190 F.R.D. at 391-92; *Flex Prods.*, 47 U.S.P.Q.2d at 1382.  Biovail and GSK submit that, to the extent that a deadline is imposed in this case, it should similarly be late in the fact discovery period.

**G.      Categorical Privilege Logs**

   **1.      Biovail's Proposal**

   Given the nature of this case, Plaintiffs' pending document requests (and future document requests are likely to) call for the production of an enormous volume of privileged documents, including the internal email, work product, and other communications within the files of multiple law firms that represented Biovail in four separate patent litigation cases, each of which spanned years, and, potentially, additional cases seeking injunctions against the FDA.  Plaintiffs' document requests will also likely seek materials from the files of Biovail's in-house legal managers who were responsible for the various litigations.  The number of internal emails generated, as well as communications between and among outside counsel and in-house Biovail legal managers are likely to be in the tens of thousands, if not more, given the magnitude and complexity of the cases, as well as the ubiquity of email generally.  Moreover, drafts of litigation materials (letters, briefs, demonstratives, discovery responses, exhibit lists, etc.), memoranda,

attorney notes, and other non-email work product materials almost uniformly amass in every complex litigation to an overwhelming volume, and the underlying cases here are not likely to be the exception to that general rule.  It would be unreasonably onerous to itemize each one of the emails, work product materials, and other documents in the files of Biovail's outside counsel and in-house legal managers, although these materials are obviously privileged and/or work product.

In circumstances such as these, a traditional privilege log is neither practicable nor useful, as both the Federal Rules of Civil Procedure and the courts have recognized, and the burden required to create a traditional log cannot be justified.  *See* Advisory Committee's Notes to FRCP 26 ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, *particularly if the items can be described by categories*." (emphasis added)); *SEC v. Thrasher*, Case No. 92-Civ-6987, 1996 U.S. Dist. LEXIS 3327, *1-3 (S.D.N.Y. March 19, 2006) (permitting categorical privilege log for communications with counsel because a document-by-document listing would have been unduly burdensome); *see also, e.g., SEC v. Nacchio*, Case No. 05-CV-00480, 2007 U.S. Dist. LEXIS 5435 (D. Colo. Jan. 24, 2007) (allowing a categorical log); *United States v. Magnesium Corp. of Am.*, Case No. 2:01-CV-00040, 2006 U.S. Dist. LEXIS 39944 (D. Ut. June 14, 2006) (allowing a categorical privilege log where an itemized log would have required thousands of entries); *In re Imperial Corp. of America*, 174 F.R.D. 475 (S.D. Cal. 1997) (permitting categorical log where communications between plaintiff and its counsel were requested because an itemized privilege log would be "unreasonable and overly burdensome" and the request sought production of materials normally covered by the attorney-client and/or work product privileges).

Biovail therefore proposes that no itemized privilege logs be required for the communications and files of outside counsel and the in-house legal managers created during the course of the underlying litigations and citizen's petitions at issue.  Instead, Biovail proposes the use of a ***categorical privilege log*** through which the parties will identify, separately for each outside law firm and each in-house legal manager:  (1) the number of documents withheld based on claims of privilege or work product; (2) the identity of any person who created, received, or was copied on any document withheld from production in that collection; and (3) the date range for the withheld documents in each collection.  GSK joins in this request.

With respect to any other privileged or work product documents, besides those that are found in the files of outside counsel and/or in-house legal managers, Biovail and GSK propose that the parties should provide traditional privilege logs.

### 2.      Plaintiffs' Response

Plaintiffs believe Defendants' request for an order permitting them to shield their claims of privilege from reasonable examination is unwarranted and premature.  The nature of the claim in this case – sham litigation – will necessarily generate requests for documents about which a claim of privilege can be made.  Many of these documents are likely to be highly relevant to the claims in this case, and but for the assertion of privilege, would be produced.  Defendants may be entitled to shield relevant documents from disclosure to Plaintiffs based on privilege, but they must permit Plaintiffs to test their claim.  Such a test requires access to the basic information upon which a claim of privilege rests, e.g., to, from, cc, date, subject matter.  Defendants' request for a departure from the requirements of Fed. R. Civ. P. 26(b)(5) is unwarranted and unfair.

Defendants' request is also premature.  As with any discovery decision, the Court is best positioned to weigh the parties' relative burdens and benefits when presented with real facts that

and actual consequences.  At this point, the burden Defendants claim is hypothetical and without consideration of the specific discovery obstacles that it may result.  The Court should confront this dispute, if necessary, when it arises.

Finally, we note that although Defendants cite cases in which a court has allowed submission of a summary privilege log, they have cited no cases in which such an order has been issued in a case in which the reasonableness of the commencement of litigation was at issue. Indeed, in the experience of Plaintiffs' counsel, who collectively have been involved in many antitrust cases involving claims of sham patent litigation by branded pharmaceutical manufacturers, no court has ever allowed a producing party to avoid submission of a reasonable privilege log in such a case.

## H.      Privilege Designations and Challenges

The parties propose that any party may challenge the privilege designation of any document by notifying the other party in writing of the document and the basis for the challenge. Any party receiving a challenge shall respond within 10 days whether the challenged documents were correctly designated as privileged.  Documents incorrectly identified and withheld under claims of privilege will be removed from the log and produced forthwith.  If the parties cannot agree on the propriety of the designation, the challenging party may submit the disagreement to the Court.

## III.    SCHEDULING ORDER

In accordance with Fed. R. Civ. P. 16 and L. Civ. R. 16.1 and subject to further order and definition by the Court, the parties propose the following schedules:

| Event | Plaintiffs' Proposal | Biovail's and GSK's Proposal |
|-------|---------------------|------------------------------|

| **Event** | **Plaintiffs' Proposal** | **Biovail's and GSK's Proposal** |
|---|---|---|
| Rule 16 Conference | June 24, 2009 | June 24, 2009 |
| Deadline for Rule 23 class certification motion and any supporting expert reports | December 14, 2009 | December 14, 2009 |
| Close of discovery on class certification issues | --- | March 12, 2010 |
| Deadline for opposition to class certification motion and any supporting expert reports | January 26, 2009 | March 19, 2010 |
| Deadline for reply brief in support of motion for class certification | February 27, 2009 | April 12, 2010 |
| Hearing on motion for class certification (if any) | TBD by Court | TBD by Court |
| Close of fact discovery | April 1, 2010 | October 15, 2010 |
| Deadline for opening expert reports | April 12, 2010 | December 3, 2010 |
| Deadline for rebuttal expert reports | May 26, 2010 | January 14, 2011 |
| Close of expert discovery | June 16, 2010 | February 18, 2011 |
| Deadline for summary judgment motions | June 30, 2010 | March 18, 2011 |
| Deadline for oppositions to summary judgment motions | July 28, 2010 | April 15, 2011 |
| Deadline for replies in support of summary judgment motions | August 16, 2010 | April 29, 2011 |
| Hearing on summary judgment motions | TBD by Court | TBD by Court |
| Deadline for motions *in limine* and *Daubert* motions | -- | 3 weeks after decision on summary judgment motions |
| Deadline for oppositions to motions *in limine* and *Daubert* motions | -- | 6 weeks after decision on summary judgment |

| Event | Plaintiffs' Proposal | Biovail's and GSK's Proposal |
|---|---|---|
| | | motions |
| Pretrial conference, including hearing on pretrial motions | TBD by Court | TBD by Court |
| Trial | TBD by Court | TBD by Court |

## A.     Plaintiffs' Proposed Schedule

Plaintiffs have proposed a schedule that they believe will secure the just, speedy, and inexpensive determination of this action.  Both Plaintiffs and Defendants are represented by counsel experienced in these matters.  If the parties work with diligence and good faith, the schedule Plaintiffs propose will provide a full opportunity for the parties to prosecute their claims and defenses.

The first complaint in this proceeding was filed (in D. Mass.) in April 2008.  Now, more than 14 months later, discovery has not started.  Litigation delay serves neither the parties nor the Court.

Plaintiffs wish to move this case swiftly to trial and are prepared to do so.

## B.     Defendants' Proposed Schedule

Biovail and GSK are aware of the Court's admonition that it is "extremely reluctant to grant continuances" to case deadlines (*see* Judge McLaughlin's Preliminary General Matters as of April 1, 2009, at pp.3-4), and so have endeavored to craft a schedule that realistically accommodates the needs of this case.  Plaintiffs' claims are complex; they call into question the merits and motivations of four separate patent litigations, potentially actions against the FDA for injunctive relief, and a citizen's petition.  They require an understanding of technical issues relating to controlled release pharmaceuticals, the mechanisms by which the chemicals in those

pharmaceuticals have (or do not have) a stabilizing effect on the drug, the differences between the branded Wellbutrin XL® (in two dosages) and its four generic counterparts (each also in two dosages), and the scope of patents asserted in the underlying patent cases, among other technical issues. Economic issues are pervasive and complex. The Indirect Purchaser Plaintiffs' litany of state law antitrust and unfair competition claims raise a host of unique issues as well. Moreover, well over half a dozen firms participated in litigating the various underlying cases for Biovail and GSK, and at least some of the key Biovail and GSK employees who were involved in the underlying cases and citizen's petition are no longer employed by Biovail and GSK.

Drawing from the experience of other similar antitrust cases, many of which involved claims that were far less fact-intensive than those in this case, Biovail and GSK submit that the schedule proposed by Plaintiffs does not allow sufficient time for a number of key case events. Rather than burden the Court with iterative motions to extend the case schedule, Biovail and GSK suggest that a reasonable schedule be imposed from the outset. Biovail and GSK additionally note that they have already compromised several times with Plaintiffs before making the proposal below, having originally proposed a schedule that would have allowed a less aggressive approach that set forth below. Biovail and GSK submit that their proposal, although still aggressive, represents a reasonable compromise between the parties' starting positions that Biovail and GSK are hopeful will realistically accommodate the amount of work to be done in each phase of this case.

### 1. Fact Discovery

Biovail and GSK propose slightly over fifteen months for fact discovery, rather than nine, as Plaintiffs propose. Biovail and GSK's proposal is entirely consistent with the schedules entered in similar cases, such as *In re Ditropan XL Antitrust Litigation*, 06-CV-1761 (N.D. Cal.)

(allowing 18.75 months for fact discovery, including extensions); *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 00-MD-1383 (E.D.N.Y.) (allowing 18 months for fact discovery, including extensions); and *In re Wellbutrin SR Antitrust Litigation*, 04-CV-5525 (E.D. Pa.) (allowing 24.25 months for fact discovery, including extensions).  *See* Maxwell Decl., Exh. C at ¶¶ 3-4.

## 2.     Class Certification:

Biovail and GSK propose that they be allowed three months to respond to Plaintiffs' class certification motion.  This timing takes into account the realities of the ongoing discovery necessary for the opposition briefs, depositions of class certification experts, and the intervening holidays.  Moreover, on average, including extensions, courts in a sampling of similar cases have allowed an average of 7.75 months between motions for class certification and defendants' oppositions.  *See* Maxwell Declaration, Exh. C at ¶ 5.

## 3.     Expert Discovery:

Plaintiffs allow only two and a half months for expert discovery, whereas Biovail and GSK propose four months.  The proposal of Biovail and GSK is consistent with the approach taken in other schedules for cases similar to this one, where five months are generally allowed for the preparation of expert reports and expert discovery, on average, including extensions (three and a half months, without extensions).  *See* Maxwell Declaration, Exh. C at ¶ 6.

## 4.     Summary Judgment

Biovail, GSK, and Plaintiffs propose similar time intervals for summary judgment briefing.  The only notable difference is Biovail's and GSK's allowance for one month between the close of expert discovery and the filing of summary judgment motions, in contrast to Plaintiffs' allowance for only two weeks.  In this type of follow-on antitrust litigation, courts

routinely allow one-month for such motions to be prepared after the close of expert discovery. *See,* Maxwell Declaration, Exh. C at ¶ 7.

### IV.     COORDINATION WITH INDIRECT PURCHASER CASE

**A.     Biovail And GSK's Statement**

The Scheduling Conference set to occur on June 24, 2009, is formally for only the Direct Purchaser action.  Motions to dismiss have been fully briefed in the Indirect Purchaser case, but no decision has issued and no scheduling conference has been set.  Due to the similarity in the allegations of the Direct and Indirect Purchaser Plaintiffs, and the necessary overlap in discovery between the two groups of cases, Biovail and GSK submit that the Indirect and Direct Purchaser actions should proceed on parallel schedules with, for example, identical dates for fact discovery cut-off.  The Indirect Purchaser Plaintiffs have been invited to participate in, and have participated in, all conferences relating to protective order negotiations, the case schedule, a discovery plan, and related issues.  Biovail understands that the Direct and Indirect Purchasers agree that they should coordinate with one another.

Moreover, Biovail and GSK submit that neither group of Plaintiffs should be permitted to engage in duplicative discovery – particularly with respect to depositions.  Biovail and GSK suggest that discovery should be coordinated in the two cases such that the different groups of Plaintiffs do not separately seek to take depositions of the same witness or engage in other inconvenient, burdensome, and unnecessarily duplicative discovery.  Biovail and GSK intend to invite the Indirect Purchaser Plaintiffs to participate in any depositions that occur before a scheduling conference is set in the Indirect Purchaser case.  Additionally, if the Protective Order attached as Exhibit A (to which the Indirect Purchasers have agreed and signed) is entered in the Indirect Purchaser case, then Biovail and GSK will consider simultaneously producing to the

Indirect Purchase Plaintiffs any document productions being made to the Direct Purchaser

Plaintiffs, even if discovery has not formally begun in the Indirect Purchaser case at that time.

With these accommodations, Biovail and GSK have difficulty imagining any circumstances

where duplicative depositions would need to be taken.  If Indirect Purchasers wish to serve more

or different discovery requests than the Direct Purchasers, such that the Indirect Purchasers

anticipate that they will not be able to sufficiently conduct depositions at the stage that the Direct

Purchasers wish to take them, then Biovail and GSK submit that such depositions should be

postponed until the Indirect Purchasers are prepared to proceed.

**B.      Indirect Purchasers' Response**

The Indirect Purchaser Plaintiffs have been invited to participate in, and have participated

in, numerous conferences leading up to the Direct Purchaser Plaintiffs' Scheduling Conference.

The Indirect Purchaser Plaintiffs agree that the two actions should be coordinated and proceed on

parallel schedules, subject to the right of Indirect Purchasers to seek deviations from the Direct

Purchasers' schedule should unanticipated circumstances or delays arise.  The Indirect

Purchasers also agree with the desire to avoid duplication of efforts and discovery, and anticipate

being able to do so, with the understanding that before discovery begins in the Indirect Purchaser

litigation, Defendants will simultaneously produce to Indirect Purchaser Plaintiffs the same

documents produced to Direct Purchaser Plaintiffs and Indirect Purchasers will

otherwise be allowed to participate in ongoing discovery.

As Biovail and GSK both recognize that formal discovery has not yet begun in the

Indirect Purchaser case,  it is possible, however remote, that some discovery may be necessary

separate and apart from that occurring in the Direct Purchaser litigation, and Indirect Purchaser

Plaintiffs expressly reserve their right to engage in such discovery to the extent necessary.  Thus,

should depositions occur before the Indirect Purchasers are able to request, obtain and review any documents specifically sought in the Indirect Purchaser litigation, the Indirect Purchasers reserve the right to re-notice depositions to ask different or varied questions that they did not anticipate in the absence of having access to such documents.  Indirect Purchaser Plaintiffs disagree with Biovail and GSK's proposal to postpone depositions until Indirect Purchaser Plaintiffs are prepared to proceed; such a delay is unnecessary given the improbability, as recognized by Defendants, that Indirect Purchaser Plaintiffs will be required to re-notice any depositions.  Indirect Purchaser Plaintiffs submit that the burden of possibly re-noticing certain depositions, if any, is far outweighed by the burden of delaying them.

**C.        Direct Purchasers Response**

The Direct Purchasers agree that the parties should coordinate their efforts and avoid duplication.  While Direct Purchasers do not believe it is reasonable for Defendants to seek to require that discovery of their claims be stayed pending resolution of motions in the Indirect Purchaser proceeding, Direct Purchasers are prepared to work with all parties, if necessary, to prevent needless burden.

DATED:  June 17, 2009

/s/   Joseph F. Roda
Joseph F. Roda
Dianne M. Nast (DMN 1791)
Erin C. Burns
**RODANAST, P.C.**
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000
Fax: (717) 892-1200

Thomas M. Sobol
David S. Nalven
Debra Gaw Josephson
**HAGENS BERMAN SOBOL
   SHAPIRO LLP**
One Main Street
Cambridge, MA  02142
Telephone: (617) 482-3700
Fax: (617) 482-3003

David F. Sorensen
Eric L. Cramer
Peter Kohn
Daniel Simons
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

Linda P. Nussbaum
John D. Radice
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714

*Counsel to Direct Purchaser Plaintiffs*

/s/   Michael P. Stadnick

Arthur Makadon
Edward Rogers
Susanna Greenberg
BALLARD SPAHR ANDREWS & INGERSOLL,
LLP
51st Floor
1735 Market Street
Philadelphia, Pennsylvania  19103
Telephone:  (215) 864-8122
Facsimile:  (215) 864-9751

*Of Counsel:*
John M. Desmarais
Michael P. Stadnick
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

David Gersch
James W. Cooper
Daniel Pariser
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Telephone:  (202) 942-5125
Facsimile:  (202) 942-5999

*Attorneys for Defendants SmithKline Beecham Corp. and GlaxoSmithKline plc*

/s/  Amanda Tessar

Daniel J. Boland, Esq.
Thomas E. Zemaitis, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

*Admitted Pro Hac Vice*:
M. Sean Royall, Esq.
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX 75201
Telephone: (214) 698-3256
Facsimile: (214) 571-2923

Monique M. Drake, Esq.
Amanda Tessar
GIBSON DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202
Telephone: (303) 298-5957
Facsimile: (202) 313-2815

*Attorneys for Biovail Corp., Biovail Laboratories, Inc., and Biovail Laboratories International SRL*