**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION | ) ) ) ) | Case No. 2:08-cv-2431 |
| THIS DOCUMENT RELATES TO: Direct Purchaser Actions | ) ) ) ) ) | **Hon. Mary A. McLaughlin** |

### GSK'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF DOCUMENT REQUESTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants SmithKline Beecham Corporation and GlaxoSmithKline plc (collectively "GSK") hereby object and respond to the Direct Purchaser Plaintiffs' June 16, 2009 First Request for Production of Documents (the "Document Requests").

### General Objections

1. GSK objects to Plaintiffs' "Instructions" and "Definitions" to the extent that they seek to impose requirements or obligations on GSK in addition to or different than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Pennsylvania, the Court's procedures, or any other applicable authority. GSK further objects to Plaintiffs' "Instructions" and "Definitions" to the extent that they purport to alter the plain meaning and/or scope of any specific request for production, on the grounds that such alteration renders the request vague, ambiguous, overly broad, unduly burdensome, and/or uncertain.

2. GSK objects to each request for production to the extent that it seeks to impose requirements or obligations on GSK in addition to or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Pennsylvania, the Court's procedures, or any other applicable authority.

3. GSK objects to each Request to the extent that it calls for the production of documents and things that are protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or immunity. Nothing contained herein is intended to be or in any way constitutes a waiver of any such applicable privilege or immunity. Inadvertent production of such information shall not be deemed a waiver of any privilege or immunity, and GSK reserves the right to object to the inspection, copying and admissibility of any document containing such information, and to have such document returned to GSK.

4.     GSK objects to each Request to the extent that it calls for the production and/or disclosure of GSK confidential and/or proprietary information in the absence of an appropriate Protective Order.  GSK further objects to each request to the extent that it calls for confidential and/or proprietary information of any individual or entity other than GSK.

5.     GSK objects to each Request to the extent that it calls for the production and/or disclosure of third party information subject to Protective Orders or other court orders.

6.     GSK objects to each Request to the extent that it is overbroad and unduly burdensome in calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

7.     GSK objects to each Request to the extent that it is overbroad and unduly burdensome in calling for the production of documents outside the relevant temporal and/or geographical scope of Plaintiffs' allegations.  In particular, Plaintiffs' attempt to apply a broad, indiscriminate date range to each Request, without regard to whether application of that full date range to the specific subject matter of any particular request is reasonably calculated to yield relevant information considering the nature of the allegations in the complaint, renders many of Plaintiffs' requests overbroad and unduly burdensome.  Consistent with its obligations under the Federal Rules of Civil Procedure, and subject to its objections, GSK will produce responsive, nonprivileged documents and things to the extent they exist and are located after a reasonable search directed to a date range reasonably calculated to yield relevant documents or lead to the discovery of relevant information given the subject matter of each request.

8.     GSK objects to each Request as overly broad and unduly burdensome to the extent that it purports to require the production of "all" documents or things.  Consistent with its obligations under the Federal Rules of Civil Procedure, and subject to its objections, GSK will produce responsive, nonprivileged documents and things to the extent they exist and are located after a reasonable search.

9.     GSK objects to each Request to the extent that it calls for the production of documents and things outside of GSK's possession, custody, or control, or requires GSK to prepare documents or other information that does not already exist.  GSK further objects to each Request to the extent that it calls for information that is in the public domain and, therefore, of no greater burden for Plaintiffs than GSK to obtain.

10.    GSK objects to Plaintiffs' definition of "GSK" to the extent that it includes persons or entities other than SmithKline Beecham Corporation or GlaxoSmithKline plc, or to any persons other than GSK's present employees and agents.

11.    GSK objects to Plaintiffs' definitions of "Generic Wellbutrin SR" and "Generic Wellbutrin XL" as rendering several Requests overly broad and unduly burdensome to the extent that they extend to products not at issue in the underlying litigations.

12.     GSK objects to each Request to the extent that it calls for expert discovery or the production of other documents and things in advance of the dates set out in any applicable scheduling order of this Court and/or is otherwise premature given the posture of the case.

13.     GSK objects to each Request to the extent that it seeks information that is more efficiently obtainable through less burdensome means.

14.     GSK's discovery and investigation in connection with this case are continuing and GSK therefore reserves the right to amend or supplement its responses after considering information obtained or reviewed through further discovery or investigation.

15.     Nothing in these responses should be construed as waiving rights or objections that otherwise might be available to GSK, nor should GSK's answering of any of these Document Requests be deemed an admission of relevancy, materiality, or admissibility of the Document Requests or the responses thereto.

16.     These general objections apply to each Request.  The citation of specific objections in response to a particular Request shall not be construed as a waiver of any general objection applicable to such Request.

## <u>Specific Objections and Responses</u>

### <u>REQUEST FOR PRODUCTION NO. 1:</u>

All documents concerning the '341 Patent and '327 Patent, including documents concerning development, prosecution, approval, issuance, assignment, and licensing of the patents.

### <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1:</u>

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to the terms "development" and "approval" as used in this Request on vagueness grounds.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning the validity or enforceability of the '341 Patent and '327 Patent, including documents concerning any investigation done by or for GSK or Biovail concerning the validity or enforceability of the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to the  term "investigation" as used in this Request on vagueness grounds.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**

All documents prepared, provided to, or reviewed by Pharma Pass LLC or Pawan Seth concerning the development, prosecution, approval, issuance, and licensing of the '341 Patent and '327 Patent, or Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to the terms "development" and "approval" as used in this Request on vagueness grounds.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning the acquisition of Pharma Pass by Biovail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

GSK objects to this Request for the reasons stated in its General Objections.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning the assignment of the '341 Patent and '327 Patent to Biovail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

GSK objects to this Request for the reasons stated in its General Objections.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 6:**

All documents concerning communications between GSK or Biovail, on the one hand, and Abrika, Anchen, Impax, or Watson, on the other, concerning the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce "all documents" concerning "communications" between GSK and four separate entities which merely mention the subject matter of the '341 Patent or '327 Patent.  GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 7:**

All motions, responses, pleadings, memoranda, briefs, affidavits/declarations, correspondence and all other documents generated or used, by any party or nonparty, in the underlying actions and filed in court, with exhibits and appendices, except for documents that are publicly available in unredacted form.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "motions, responses, pleadings, memoranda, briefs, affidavits/declarations, correspondence and all other documents" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.   Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.


**REQUEST FOR PRODUCTION NO. 8:**

All transcripts of deposition testimony, witness statements, affidavits/declarations, expert reports, disclosures, and discovery requests and responses, with exhibits, generated or used by any party or nonparty in the underlying actions not filed in court.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "transcripts of deposition testimony, witness statements, affidavits/declarations, expert reports, disclosures, and discovery requests and responses" without regard to whether such documents have any

bearing on the issues in this litigation.  GSK objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine. GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 9:**

All documents considered by expert witnesses for any party in the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents considered by expert witnesses" without regard to whether such documents have any bearing on the issues in this litigation.  GSK objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine. GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 10:**

All logs, lists, indices, or other documents or databases identifying the documents produced or obtained through discovery by all parties or nonparties in the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "logs, lists, indices, or other documents or databases" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 11:**

All logs, lists, indices, or other documents or databases identifying the documents that were withheld from production in whole or in part by any party or nonparty in any of the underlying actions for any reason, including but not limited to any privilege claim assertions, relevance objections, or confidentiality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible

evidence insofar as it requires GSK to produce all "logs, lists, indices, or other documents or databases" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any proposed or actual prosecution of claims of infringement of the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to the term "proposed . . . prosecution" as used in this Request on vagueness grounds.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all documents concerning "proposed . . . prosecution" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 13:**

      All documents concerning the decisions by GSK or Biovail to initiate the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 14:**

      All documents concerning GSK's or Biovail's evaluation of the basis, merits, likelihood of success, or purpose of the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 15:**

      All documents concerning the scope or effect of any proposed or actual outcome of the underlying actions, including but not limited to settlement or judgment following trial.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  GSK further objects to the phrases "scope or effect" and "proposed or actual outcome" as used in this Request on vagueness and relevance grounds.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning communications to which Biovail or GSK was a party concerning any claim in or defenses to the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 17:**

All documents concerning settlements of the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client

11

privilege and/or the work-product doctrine.  Subject to its objections, GSK will produce

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 18:

All documents submitted to the FDA by GSK or Biovail or any person acting on their
behalf, or any other person, concerning the Citizen Petition.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

GSK objects to this Request for the reasons stated in its General Objections.  Subject to

its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 19:

All documents concerning the decision to file the Citizen Petition.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as seeking information protected from disclosure by the attorney-client

privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that

it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel

defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this

Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 20:

All documents concerning GSK's or Biovail's evaluation of the basis, merits, likelihood
of success or purpose of the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 21:**

All documents concerning the scope and effect of any proposed or actual outcome of the Citizen Petition process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  GSK further objects to the phrases "scope or effect" and "proposed or actual outcome" as used in this Request on vagueness and relevance grounds.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning communications to which GSK or Biovail was a party concerning the Citizen Petition or claims set forth in the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request to the extent that it seeks prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning the bioequivalence of generic Wellbutrin XL to Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to the phrase "bioequivalence of generic Wellbutrin XL to Wellbutrin XL" as used in this Request on vagueness grounds.  GSK further objects to this Request as overly broad, unduly burdensome and unlimited in scope to the extent that it seeks documents not likely to lead to the discovery of admissible evidence.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to identify all citizen petitions filed by or on behalf of GSK or Biovail from January 1, 1997 to December 19, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"[d]ocuments sufficient to identify all citizen petitions filed by or on behalf of GSK" without

regard to whether such documents, or the underlying citizen petitions, have any bearing on the

issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents

sufficient to identify all citizen petitions concerning Wellbutrin XL filed by or on behalf of GSK

or Biovail from January 1, 1997 to December 19, 2005 to the extent that such documents exist

and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 25:

All documents concerning the FDA Amendments Act of 2007, 21 U.S.C. § 355(q), enacted September 27, 2007, concerning FDA review of citizen petitions, including without limitations communications between GSK and Biovail, on the one hand, and Congress or the FDA, on the other.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as seeking information protected from disclosure by the attorney-client

privilege and/or the work-product doctrine.  GSK further objects to this Request as overly broad,

unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible

evidence insofar as it requires GSK to produce all "documents concerning the FDA Amendments

Act of 2007" without regard to whether such documents have any bearing on the issues in this

litigation.  Subject to its objections, GSK will produce nonprivileged documents concerning

communications between GSK and Biovail, on the one hand, and Congress or the FDA, on the

other, concerning the FDA Amendments Act of 2007, 21 U.S.C. § 355(q), enacted September

27, 2007, concerning FDA review of citizen petitions.

**REQUEST FOR PRODUCTION NO. 26:**

      All documents concerning the development, formulation, scale up, validation, FDA approval, manufacture, promotion, and sale of any once per day bupropion formulation, including Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the development, formulation, scale up, validation, FDA approval,

manufacture, promotion, and sale of any once per day bupropion formulation" without regard to

whether such documents have any bearing on the issues in this litigation.  GSK further objects to

the terms "scale up," "validation," and "promotion" as used in this Request on vagueness and

relevance grounds.  Subject to its objections, GSK will produce or make available for inspection

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.


**REQUEST FOR PRODUCTION NO. 27:**

      All documents concerning the use of acid stabilizers in bupropion formulations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the use of acid stabilizers" without regard to whether such documents

have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce or

make available for inspection nonprivileged documents responsive to this Request to the extent

that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 28:**

All documents concerning the bioequivalence of Wellbutrin XL to Wellbutrin IR or
Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the bioequivalence of Wellbutrin XL to Wellbutrin IR or Wellbutrin SR"

without regard to whether such documents have any bearing on the issues in this litigation.  GSK

further objects to the phrase "bioequivalence of Wellbutrin XL to Wellbutrin IR or Wellbutrin

SR" as used in this Request on vagueness grounds.  Subject to its objections, GSK will produce

or make available for inspection nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 29:**

All documents concerning the NDAs filed by GSK seeking approval to market
Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the NDAs" without regard to whether such documents have any bearing

on the issues in this litigation.  Subject to its objections, GSK will produce or make available for

inspection nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 30:**

All documents concerning communications between GSK and the FDA concerning Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning communications between GSK and the FDA concerning Wellbutrin XL" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce or make available for inspection nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 31:**

All documents concerning the listing of the '341 Patent and '327 Patent under the Wellbutrin XL NDA in the FDA Orange Book publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," otherwise known as the Orange Book.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning the listing of the '341 Patent and '327 Patent" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or

the work-product doctrine.  GSK further objects to this Request to the extent that it seeks

prematurely to compel GSK to elect whether or not to assert an advice of counsel defense.

Subject to its objections, GSK will produce or make available for inspection nonprivileged

documents responsive to this Request to the extent that such documents exist and are located

after a reasonable search.

**REQUEST FOR PRODUCTION NO. 32:**

All documents concerning potential or actual market entry of generic Wellbutrin SR, including without limitation the timing of such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning potential or actual market entry of generic Wellbutrin SR" without

regard to whether such documents have any bearing on the issues in this litigation.  Subject to its

objections, GSK will produce or make available for inspection nonprivileged documents

responsive to this Request to the extent that such documents exist and are located after a

reasonable search.

**REQUEST FOR PRODUCTION NO. 33:**

All documents concerning life cycle management for Wellbutrin SR, including patent term extensions, regulatory exclusivities, patent enforcement and litigation strategies, Orange Book filings, changes to formulation, dosage, and means of administration, label changes, licensing opportunities, and follow-on product strategies for Wellbutrin SR, including the development of extended release bupropion formulations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning life cycle management for Wellbutrin SR" without regard to whether

such documents have any bearing on the issues in this litigation.  GSK further objects to the

phrases "life cycle management for Wellbutrin SR" and "follow-on product strategies" as used in

this Request on vagueness grounds.  Subject to its objections, GSK will produce or make

available for inspection nonprivileged documents responsive to this Request to the extent that

such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 34:

All documents concerning strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies, considered by GSK to prepare for, respond to, or adapt to the projected or actual effects of the marketing and sale of one or more versions of generic Wellbutrin SR.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as seeking information protected from disclosure by the attorney-client

privilege and/or the work-product doctrine.  GSK further objects to this Request as overly broad,

unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible

evidence insofar as it requires GSK to produce all "documents concerning strategies" without

regard to whether such documents have any bearing on the issues in this litigation.  GSK further

objects to the phrases "branded-generic strategies" and "follow-on product strategies" as used in

this Request on vagueness grounds.  Subject to its objections, GSK will produce nonprivileged

documents responsive to this Request to the extent that such documents exist and are located

after a reasonable search.

**REQUEST FOR PRODUCTION NO. 35:**

All documents concerning forecasts or projections of the effects on branded Wellbutrin SR unit sales, dollar sales, prices, and profits from the marketing and sale of one or more versions of generic Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning forecasts or projections" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning marketing plans, surveys or studies concerning the effect of market entry of generic Wellbutrin SR on sales of branded Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning marketing plans, surveys or studies" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 37:**

All documents concerning potential or actual market entry of generic Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning potential or actual market entry" without regard to whether such

documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will

produce or make available for inspection nonprivileged documents responsive to this Request to

the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 38:

All documents concerning lifecycle management for Wellbutrin XL, including patent
term extensions, regulatory exclusivities, patent enforcement and litigation strategies, Orange
Book filings, changes to formulation, dosage, and means of administration, label changes,
licensing opportunities, and follow-on product strategies for Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 38:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning life cycle management for Wellbutrin XL" without regard to whether

such documents have any bearing on the issues in this litigation.  GSK further objects to the

phrases "life cycle management for Wellbutrin XL" and "follow-on product strategies" as used

in this Request on vagueness grounds.  Subject to its objections, GSK will produce or make

available for inspection nonprivileged documents responsive to this Request to the extent that

such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 39:**

All documents concerning strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies, considered by GSK or Biovail to prepare for, respond to, or adapt to the projected or actual effects of the marketing and sale of one or more versions of generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

GSK objects to this Request for the reasons stated in its General Objections. GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine. GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning strategies" without regard to whether such documents have any bearing on the issues in this litigation. GSK further objects to the phrases "branded-generic strategies" and "follow-on product strategies" as used in this Request on vagueness grounds. Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning forecasts or projections of the effects on branded Wellbutrin XL unit sales, dollar sales, prices, and profits from the marketing and sale of one or more versions of generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

GSK objects to this Request for the reasons stated in its General Objections. Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning marketing plans, surveys or studies concerning the effect of market entry of generic Wellbutrin XL on sales of branded Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

GSK objects to this Request for the reasons stated in its General Objections.  Subject to

its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning pricing of Wellbutrin XL, including documents concerning the factors considered by GSK and Biovail in setting or changing list prices or adjustments to prices, such as rebates and discounts, of branded Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning pricing of Wellbutrin XL" without regard to whether such documents

have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 43:**

All documents concerning the development, formulation, scale up, validation, FDA approval, manufacture, promotion, and sale of generic Wellbutrin XL by Abrika, Anchen, Impax, and Watson.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the development, formulation, scale up, validation, FDA approval,

manufacture, promotion, and sale of generic Wellbutrin XL" without regard to whether such

documents have any bearing on the issues in this litigation.  GSK further objects to the terms

"scale up," "validation," and "promotion" as used in this Request on vagueness and relevance

grounds.  GSK further objects to this Request to the extent that it seeks documents subject to

protective orders entered in the underlying actions.  Subject to its objections, and to the extent

permitted under applicable protective orders or other court orders, GSK will produce

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.


## REQUEST FOR PRODUCTION NO. 44:

All documents concerning bioequivalence studies performed by or on behalf of Abrika, Anchen, Impax, or Watson concerning generic Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request to the extent that it seeks documents subject to protective orders entered

in the underlying actions.  Subject to its objections, and to the extent permitted under applicable

protective orders or other court orders, GSK will produce nonprivileged documents responsive to

this Request to the extent that such documents exist and are located after a reasonable search.


## REQUEST FOR PRODUCTION NO. 45:

All documents concerning FDA bioequivalence guidelines, including documents concerning FDA publications *Providing Clinical Evidence of Effectiveness of Human Drugs and Biologic Products (1988); Bioavailability and Bioequivalence Studies for Orally Administered*

*Drug Products - General Considerations (2000); and Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations* (March 2003).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning FDA bioequivalence guidelines" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 46:**

All documents concerning any physical, regulatory, legal, technical, manufacturing or other issues regarding the readiness, willingness, or ability of Abrika, Anchen, Impax, or Watson to come to market with AB-rated generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request to the extent that it seeks documents subject to protective orders entered in the underlying actions.  Subject to its objections, and to the extent permitted under applicable protective orders or other court orders, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 47:**

All documents concerning communications between GSK and Biovail, on the one hand, and Abrika, Anchen, Impax, or Watson, on the other, concerning branded or generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning communications between GSK and Biovail, on the one hand, and

Abrika, Anchen, Impax, or Watson, on the other" without regard to whether such documents

have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 48:**

All documents concerning all agreements between GSK or Biovail, on one hand, and
Abrika, Anchen, Impax, or Watson, on the other, concerning the manufacture, promotion, and
sale of generic Wellbutrin XL, including licensing agreements, royalty agreements, and
agreements concerning timing of market entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

GSK objects to this Request for the reasons stated in its General Objections.  Subject to

its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 49:**

All documents concerning the relative features, benefits, or comparisons between or
among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the relative features, benefits, or comparisons between or among Wellbutrin XL and all other drugs" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning factors that affect sales or market share as between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning factors that affect sales or market share" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 51:**

All documents concerning the functional or economic substitutability of Wellbutrin XL with any other drugs used to treat the same conditions as Wellbutrin.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome and unlimited in scope to the extent that it seeks documents not likely to lead to the discovery of admissible evidence.  Subject to its

objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 52:

All documents concerning the cross-elasticity of demand with respect to price between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 52:

GSK objects to this Request for the reasons stated in its General Objections.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 53:

All documents concerning actual, potential, desired, or forecasted switching or substitution between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 53:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to the phrase "actual, potential, desired, or forecasted switching or substitution" as used in this Request on vagueness grounds.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 54:

All documents concerning the actual or projected size, composition, dollar sales, and unit sales of the United States market in which Wellbutrin XL is sold.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 54:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome and unlimited in scope to the extent

that it seeks documents not likely to lead to the discovery of admissible evidence.  Subject to its

objections, GSK will produce nonprivileged documents responsive to this Request to the extent

that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 55:**

      All documents concerning actual or forecasted competition between Wellbutrin XL and
any other drugs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK

objects to the phrase "any other drugs" as used in this Request on vagueness grounds.  GSK

further objects to this Request as overly broad, unduly burdensome and unlimited in scope to the

extent that it seeks documents not likely to lead to the discovery of admissible evidence.  Subject

to its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 56:**

      All documents concerning the sales and marketing tactics and strategies for Wellbutrin
XL, including (a) sales training materials and presentations; (b) sales and marketing meeting
materials, presentations, and summaries; and (c) tactical plans, strategic plans, and budget
proposals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

      GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning the sales and marketing tactics and strategies for Wellbutrin XL" without

regard to whether such documents have any bearing on the issues in this litigation.  Subject to its

objections, GSK will produce nonprivileged documents responsive to this Request to the extent
that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 57:

All documents concerning the promotion and advertising of Wellbutrin XL, including (a)
communications and advertising directed to physicians; (b) detailing pieces; (c) press releases;
(d) communications with pharmacy benefit managers, insurers, health plans, and third-party
payors; and (e) direct to consumer advertising.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further
objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to
lead to the discovery of admissible evidence insofar as it requires GSK to produce all
"documents concerning the promotion and advertising of Wellbutrin XL" without regard to
whether such documents have any bearing on the issues in this litigation.  Subject to its
objections, GSK will produce nonprivileged documents responsive to this Request to the extent
that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 58:

All documents concerning medical education concerning Wellbutrin XL, including (a)
presentations to institutes, symposium, conferences and seminars; (b) publications in
professional journals; and (c) surveys and any other types of studies.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 58:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further
objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to
lead to the discovery of admissible evidence insofar as it requires GSK to produce all
"documents concerning medical education concerning Wellbutrin XL" without regard to whether
such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK

will produce nonprivileged documents responsive to this Request to the extent that such

documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 59:**

All documents concerning pricing of Wellbutrin XL, including documents concerning the factors considered by GSK and Biovail in setting or changing list prices, or determining adjustments to prices, such as rebates and discounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as duplicative of Request No. 42.  GSK further objects to this Request as

overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of

admissible evidence insofar as it requires GSK to produce all "documents concerning pricing of

Wellbutrin XL" without regard to whether such documents have any bearing on the issues in this

litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to

this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 60:**

Documents sufficient to identify every direct purchaser of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

GSK objects to this Request for the reasons stated in its General Objections.  Subject to

its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 61:**

All documents concerning contracts for the sale of Wellbutrin XL including (a) contracts with entities that purchased Wellbutrin XL directly from defendants, (b) contracts that provide that the purchaser will take delivery of Wellbutrin XL from an entity other than GSK or Biovail (such as a wholesaler); and (c) contracts concerning the payment of chargebacks.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 61:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning contracts for the sale of Wellbutrin XL" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 62:

Electronic data in a tab-, comma-, or semicolon-delimited ASCII flat text file or similar electronic format from 2005 to the present sufficient to identify sales of Wellbutrin XL to direct purchasers of Wellbutrin XL in transaction-by-transaction format, as follows:

a. All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) product strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to customer and the ship-to customer), and (xix) the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

b. All data relating to chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom GSK or Biovail paid, or on whose behalf GSK or Biovail accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which GSK or Biovail paid or accrued the chargeback, rebate, discount or other consideration; (iv) the sales, or group of sales, upon which the rebate, discount or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or

other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

c.   All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code; and

d.   Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through c), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

e.   The complete documentation for all items above (a through d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g. field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (ccc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (i) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (ii) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (iii) all datasets and calculations used (i) to determine accrued rebates and/or chargebacks and/or (iv) to periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks; (v) return and/or exchange policies; and (vi) payment terms.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce data without regard to whether such data have any bearing on the issues in this litigation.  Subject to its objections, and to any further negotiations between the parties concerning the scope and content

of transactional data production, GSK will produce data responsive to this Request to the extent

that such data exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 63:**

Data generated by IMS and Verispan in whatever format it was received from IMS or Verispan from 2005 to the present for Wellbutrin XL, Wellbutrin XL generics, and all other drugs used to treat the same conditions as Wellbutrin XL, as follows:

  a. *IMS National Prescription Audit* data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

  b. *IMS National Sales Perspective* data, including total units, extended units, total sales dollars and price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

  c. *Verispan Vector One National (VONA)* data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce data without

regard to whether such data have any bearing on the issues in this litigation.  GSK further objects

to this request to the extent that it seeks data that are equally "available" to Plaintiffs as to GSK,

and that are subject to third-party confidentiality restrictions.  Subject to its objections, and to

any further negotiations between the parties concerning the scope and content of transactional

data production, GSK will produce data responsive to this Request to the extent that such data

exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to identify all IMS, Verispan, MediSpan, Scott-Levin, PriceChek, ImpactRx, First DataBank, or other pharmaceutical industry data products purchased by or

available to GSK or Biovail concerning Wellbutrin XL, Wellbutrin XL generics, all other drugs used to treat the same conditions as Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 64:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce documents "sufficient to identify all IMS, Verispan, MediSpan, Scott-Levin, PriceChek, ImpactRx, First DataBank, or other pharmaceutical industry data products purchased by or available to GSK" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to this request to the extent that the pertinent data are equally "available" to Plaintiffs as to GSK, and that are subject to third-party confidentiality restrictions.  Subject to its objections, and any further negotiations between the parties concerning the scope and content of transactional data production, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

## REQUEST FOR PRODUCTION NO. 65:

All documents related to any other price adjustment given to any direct purchaser not related to specific sales of Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 65:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents related to any other price adjustment given to any direct purchaser" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to the phrases "price adjustment" and "not related to specific sales of Wellbutrin XL" as used in

this Request on vagueness and relevance grounds.  Subject to its objections, GSK will produce

nonprivileged documents responsive to this Request to the extent that such documents exist and

are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 66:**

Documents sufficient to show GSK's and Biovail's projected and actual revenues, royalties, expenses, and profits, from sale of Wellbutrin XL, monthly and annually, showing the following: (a) gross revenue; (b) net revenue; (c) cost of goods sold; (d) manufacturing cost; (e) sales and distribution cost; (f) marketing, advertising, promotional, and sales expenses; (g) depreciable and capital improvements; (h) research and development expenditures; (i) licensing fees and royalties paid and received; (j) short-run average variable costs; (k) long-run average variable costs; (l) fixed costs; (m) materials cost; (n) labor cost; (o) marginal cost; (p) rebates and discounts; (q) gross profit; (r) net profit; (s) unit volume sold; and (t) unit volume sold net of returns.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce financial data

without regard to whether such data have any bearing on the issues in this litigation.  GSK

further objects to this request as overly broad and unduly burdensome to the extent it purports to

require GSK to provide profits from the sale of Wellbutrin XL where depreciable and capital

improvements and research and development costs for Wellbutrin XL are not necessarily

allocable to Wellbutrin XL but do affect GSK's profits.  GSK further objects to the phrases

"short-run average variable costs," "long-run average variable costs," "fixed costs," "marginal

cost," "gross profit," and "net profit" as used in this Request on vagueness grounds.  Subject to

its objections, GSK will produce nonprivileged documents responsive to this Request to the

extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 67:**

 All documents concerning the relationship between prices and costs of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

 GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning the relationship between prices and costs of Wellbutrin XL" without regard to whether such documents have any bearing on the issues in this litigation.  GSK further objects to the phrase " relationship between prices and costs" as used in this Request on vagueness and relevance grounds.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 68:**

 Documents sufficient to identify the list price, average wholesale price, direct price, and wholesale acquisition cost for Wellbutrin XL for each month.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

 GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce pricing data without regard to whether such data have any bearing on the issues in this litigation.  GSK further objects to this Request to the extent it seeks documents related to average wholesale price, which is not set by GSK.  Subject to its objections, and to any further negotiations between the parties concerning the scope and content of pricing data production, GSK will produce data

responsive to this Request to the extent that such data exist and are located after a reasonable

search.

## REQUEST FOR PRODUCTION NO. 69:

All documents concerning agreements between GSK and Biovail concerning Wellbutrin XL, including without limitation agreements concerning the following:

    a.  Development of Wellbutrin XL, including allocation of costs.

    b.  Regulatory approval of Wellbutrin XL.

    c.  Licensing of Wellbutrin XL or the '341 Patent and '327 Patent.

    d.  Royalties paid or to be paid on the sale of Wellbutrin XL.

    e.  Manufacture of Wellbutrin XL, including manufacturing facility approval.

    f.  Marketing, promotion, advertising, pricing, and sale of Wellbutrin XL.

    g.  Litigation of patent infringement claims concerning the '341 Patent and '327 Patent, or litigation of any other matter concerning Wellbutrin XL.

    h.  Indemnification, joint prosecution, or judgment sharing between GSK and Biovail concerning this action, the underlying actions, or any other legal action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 69:

GSK objects to this Request for the reasons stated in its General Objections.  GSK further

objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence insofar as it requires GSK to produce all

"documents concerning agreements between GSK and Biovail" without regard to whether such

documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will

produce nonprivileged documents responsive to this Request to the extent that such documents

exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 70:**

Documents sufficient to show the organization of GSK's and Biovail's employees related to the development, manufacture, marketing, sale and distribution of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, and unlimited in scope to the extent that it seeks organizational charts depicting the reporting structure of all GSK employees with any responsibilities related to Wellbutrin XL at any time.  Subject to its objections, GSK will produce documents responsive to this Request to the extent that such data exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to show GSK's and Biovail's document destruction, retention and archiving policies and practices and any changes in such policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence absent a showing by Plaintiffs of some problem or legitimate concern with document destruction, retention, and/or archiving by GSK.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to identify GSK's and Biovail's policy or practice concerning back-up of data for each year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to

lead to the discovery of admissible evidence absent a showing by Plaintiffs of some problem or legitimate concern with document destruction, retention, and/or archiving by GSK.

**REQUEST FOR PRODUCTION NO. 73:**

All documents concerning any communications between or among GSK and Biovail and any other person or entity concerning this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as seeking information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning any communications between or among GSK and Biovail and any other person or entity" without regard to whether such documents have any bearing on the issues in this litigation.  Subject to its objections, GSK will produce nonprivileged documents responsive to this Request to the extent that such documents exist and are located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 74:**

All documents concerning agreements between GSK or Biovail, on the one hand, and any plaintiff, on the other, concerning the purchase and sale of Wellbutrin XL or any other matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

GSK objects to this Request for the reasons stated in its General Objections.  GSK further objects to this Request as overly broad, unduly burdensome, unlimited in scope, and not likely to lead to the discovery of admissible evidence insofar as it requires GSK to produce all "documents concerning agreements between GSK or Biovail, on the one hand, and any plaintiff, on the other" without regard to whether such documents have any bearing on the issues in this

litigation.  GSK further objects to this Request as seeking documents equally available to the

Plaintiffs as to GSK.  Subject to its objections, GSK will produce nonprivileged documents

responsive to this Request to the extent that such documents exist and are located after a

reasonable search.

Dated:  July 20, 2009

   /s/ Michael P. Stadnick
John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Arthur Makadon
Edward D. Rogers
Susanna R. Greenberg
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103
Telephone:  (215) 665-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant SmithKline
Beecham Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of July, 2009 a copy of GSK'S OBJECTIONS AND
RESPONSES TO PLAINTIFFS' FIRST SET OF DOCUMENT REQUESTS was served on
counsel as follows:

## <u>BY FIRST CLASS MAIL AND ELECTRONIC MAIL</u>

| | |
|---|---|
| Joseph F Roda<br>Dianne M. Nast (DMN 1791)<br>Jennifer S. Snyder<br>**RODANAST, P.C.**<br>801 Estelle Drive<br>Lancaster, PA 17601<br>Telephone: (717) 892-3000<br>Fax: (717) 892-1200 | Thomas M. Sobol<br>David S. Nalven<br>Debra Gaw Josephson<br>**HAGENS BERMAN SOBOL**<br>      **SHAPIRO LLP**<br>One Main Street<br>Cambridge, MA 02142<br>Telephone: (617) 482-3700<br>Fax: (617) 482-3003 |
| David F. Sorensen<br>Eric L. Cramer<br>Peter Kohn<br>Daniel Simons<br>Sarah Schalman-Bergen<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Fax: (215) 875-4604 | Linda P. Nussbaum<br>John D. Radice<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>14th Floor<br>New York, NY 10022<br>Telephone: (212) 687-1980<br>Fax: (212) 687-7714 |
| M. Sean Royall<br>**GIBSON, DUNN & CRUTCHER LLP**<br>2100 McKinney Avenue<br>Suite 1100<br>Dallas, TX 75201-6912 | Arthur Makadon<br>Edwards Rogers<br>Susanna Greenberg<br>**BALLARD SPAHR ANDREWS &**<br>      **INGERSOLL, LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103 |

_/s/ Jason Emden_
Jason Emden
