**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION | ) ) ) | Case No. 2:08-cv-2431 |
| THIS DOCUMENT RELATES TO: | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| Direct Purchaser Actions | ) ) ) ) ) | |
| | ) | Hon. Mary A. McLaughlin |

## I.  INTRODUCTION

The Direct Purchaser Plaintiffs ("Plaintiffs") move pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), to compel the production of two categories of documents in the possession of defendants Biovail Corporation, Biovail Laboratories. Inc., and Biovail Laboratories International SRL ("Biovail"), and defendants SmithKline Beecham Corporation and Glaxosmithkline, PLC ("GSK") (collectively "Defendants"), that are responsive to Direct Purchaser Plaintiffs' First Request for Production of Documents (sometimes hereinafter referred to as the "Rule 34 requests"). The two categories of documents are (1) Defendants' *projections* of the effect of generic entry on branded Wellbutrin XL prices and sales ("generic entry projections"); and (2) Defendants' information concerning the *actual effect* of generic entry on branded Wellbutrin XL prices and sales ("post-generic-entry analyses"). These categories of documents are called for by several of Plaintiffs' Rule 34 requests.[1]

What Defendants *projected* would happen to extended-release bupropion prices and sales

---

[1] Plaintiffs' Rule 34 requests that call for the production of such documents include Nos. 37, 40, 41, 42, and 53, which are described in further detail below. *See* Ex. A (Plaintiffs' Rule 34 Requests).

1

when generic versions of Wellbutrin XL finally entered the market – and Defendants' *analyses of what did, in fact, actually happen* – are relevant to demonstrating the classwide nature of the antitrust impact of Defendants' alleged anticompetitive scheme to delay Plaintiffs' proposed class of direct purchasers of Wellbutrin XL from enjoying the benefits of lower-priced generic competition. The classwide nature of that antitrust impact (sometimes called antitrust injury) is a showing Plaintiffs will make when they move for class certification by the rapidly-approaching motion deadline of December 14, 2009.[2]

Defendants do not challenge the relevance of these categories of documents.  Nor could they credibly do so.[3]  Rather, Defendants complain that Plaintiffs are asking for too much too fast.  But

---

[2]Although courts, including three courts from within this Circuit, are unanimous that antitrust cases brought by direct purchasers seeking overcharge damages due to delayed market entry of generic drugs meet the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, including on the issue of classwide antitrust impact, Plaintiffs must nevertheless make that showing in this case, as well.  *See In re Wellbutrin SR Direct Purchaser Antitrust Litigation*, 2008 WL 1946848 (E.D. Pa. May 2, 2008) (certification granted to proposed class of direct purchasers of Wellbutrin SR); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) (certification granted to proposed class of direct purchasers of Tricor); *In re K-Dur Antitrust Litig.*, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) (Orlofsky, J. (Ret.)), *recommendation adopted*, No. 01-1652, Order at 1 (D.N.J. Dec. 30, 2008) (Greenaway, J) (certification granted to proposed class of direct purchasers of K-Dur 20).  *See also Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293 (D.D.C. 2007) (certification granted to proposed class of direct purchasers of Ovcon 35); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) (certification granted to proposed class of direct purchasers of Relafen); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) (certification granted to proposed class of direct purchasers of Buspar); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) (certification granted to proposed class of direct purchasers of Cardizem).

[3]Several courts have found a branded drug company's internal projections and other documents concerning the effects of generic market entry to be relevant to the issue of the classwide nature of the antitrust injury caused by conduct that delays such entry.  *See Teva Pharms. USA, Inc.*, 252 F.R.D. at 229 (citing "defendants' and generic manufacturers' internal projections concerning the economic effects of generic competition"); *In re Wellbutrin SR*, 2008 WL 1946848, at *8 n.20 (citing defendants' internal projections documents); *In re K-Dur*, 2008 WL 2699390, at *14 (citing "Defendants' internal analyses and projections predicting significant generic penetration and

2

Plaintiffs' class certification motion is due December 14, 2009.  Before that date, Plaintiffs must obtain relevant documents, provide them to their expert economists in sufficient time to permit review and analysis, and secure an expert report on class certification issues.  Defendants' delay is prejudicial to Plaintiffs' ability to timely meet their deadline to apply for class certification.

Moreover, Plaintiffs (1) requested these categories of documents more than 90 days ago, (2) separately identified for Defendants these particular categories of documents as requiring priority production, and (3) met and conferred with Defendants on August 12, August 18, August 28, September 16, and September 22 concerning these particular categories of documents.  *See* Exs. D-G hereto.

Yet, Defendants have not produced a single document comprising or containing a generic entry projection or post-generic-entry analysis.  Plaintiffs therefore request an order requiring Defendants to make a full and complete production of these two categories of documents within five (5) days.

## II.   FACTUAL BACKGROUND

On June 16, 2009, Plaintiffs served Rule 34 requests on Defendants.  *See* Ex. A.  On July 20, 2009, Defendants responded to the Rule 34 requests and agreed to produce, *inter alia*, the two categories of documents Plaintiffs seek by this motion.  *See* Ex. B at, *e.g.*, Nos. 40 & 41 (Biovail

---

substantially lower prices for potassium chloride products after generic entry"); *Meijer, Inc.*, 246 F.R.D. at 308 (citing "[i]nternal analyses and forecasts of Defendants themselves, predicting significant generic penetration and substantially lower prices for Ovcon 35 Products after generic entry"); *In re Relafen*, 218 F.R.D. at 343 (citing "projections and analyses described in SmithKline's and its competitors' internal documents"); *In re Cardizem*, 200 F.R.D. at 324 (citing defendants' "own projections of the expected generic penetration rate and generic price upon entry").

response); Ex. C at Nos. 40 & 41 (GSK response).[4]

Thereafter, on August 5, the Court entered a Scheduling Order, which set December 14, 2009 as the date by which Plaintiffs must file their motion for class certification. *See* Doc. #98, ¶ 2. As a result, on August 12, counsel for Plaintiffs promptly met and conferred with counsel for Defendants, and identified four narrow categories of documents that Plaintiffs wanted produced immediately, to allow Plaintiffs meet the class certification motion deadline. The first two categories – transactional sales/chargeback data and third-party data – have been partially produced, and are not the subject of this motion.[5] But Defendants have not produced any documents in the categories subject to this motion: (1) generic entry projections, and (2) post-generic-entry analyses.

Plaintiffs asked for priority production of Defendants' generic entry projections and post-generic-entry analyses because they are relevant, particularly to the classwide nature of the antitrust impact suffered by the proposed direct purchaser class. Since Defendants' branded Wellbutrin XL is several times more expensive than generic versions of Wellbutrin XL, Defendants' actions that delayed the market availability of less-expensive generic Wellbutrin XL correspondingly delayed the savings direct purchasers would have realized by, among other things, being able to buy the less-expensive generic instead of the more-expensive brand. Thus, by delaying the availability of generic Wellbutrin XL, Defendants caused direct purchasers across the board to pay overcharges for their

---

[4]Request No. 40 sought "[a]ll documents concerning forecasts or projections of the effects on branded Wellbutrin XL unit sales, dollar sales, prices, and profits from the marketing and sale of one or more versions of generic Wellbutrin XL." Request No. 41 sought "[a]ll documents concerning marketing plans, surveys or studies concerning the effect of market entry of generic Wellbutrin XL on sales of branded Wellbutrin XL."

[5]Biovail has produced some third-party data, and GSK has produced sales/chargeback data for the period 2005-2007.

extended-release bupropion requirements.[6]

Accordingly, Defendants' forecasts and projections showing what they expected would happen if they did or did not delay market entry of generic Wellbutrin XL, and their analyses showing what did finally happen when generic Wellbutrin XL did eventually come to market, will help illustrate the classwide nature of the antitrust impact of Defendants' conduct. This is a standard presentation made on class certification in antitrust cases involving suppression of generic entry. *See ante* note 3.

After meeting and conferring with Defendants on August 12, Plaintiffs memorialized their requests for priority production of these categories of documents in an email, and asked when production would be made. *See* Ex. D (Aug. 18 email from Peter Kohn, Esq. to defense counsel). On August 28, Plaintiffs again asked for a status. *See* Ex. E (Aug. 28 email from Peter Kohn, Esq. to defense counsel). On September 16, Plaintiffs, with some alarm, wrote to Defendants, expressing concern that a month had passed, but the documents sought by to this motion had not been produced. *See* Ex. F (Sept. 16 letter from Peter Kohn, Esq. to defense counsel). Finally, on September 22, Plaintiffs told Defendants that they had no choice but to file this motion if, by September 28, they had not begun and substantially completed production of the categories of sought documents. *See*

---

[6]Such overpayments due to delayed generic entry are antitrust "overcharges," which constitute cognizable antitrust injury that, for purposes of Fed. R. Civ. P. 23(b)(3)'s "predominance" requirement, is experienced by all direct purchasers classwide, according to every court that has considered the question. *E.g.*, *In re Wellbutrin SR*, 2008 WL 1946848, *9 n.21 ("[t]his finding of predominance is consistent with the findings of other courts in which plaintiffs have alleged antitrust injuries resulting from the delayed entry of generic drug competitors") (citations omitted); *In re K-Dur*, 2008 WL 2699390, *14 n.17 (describing nature of overcharges from delayed generic entry); *Meijer, Inc.*, 246 F.R.D. at 307 ("a number of courts have found the predominance requirement satisfied (and certified classes) in class actions alleging antitrust injury in the form of overcharges resulting from delayed entry of a generic or lower-priced drug") (citations omitted).

Ex. G (Sept. 22 email from Peter Kohn, Esq. to defense counsel).

Defendants, who until that time had been agreeable and reassuring, then changed their tune. While GSK still does not challenge the general relevance of the documents, suddenly — and for the very first time — GSK complained that "direct purchasers have failed to explain how the broad categories of such documents requested on an expedited basis are relevant to the direct purchasers' motion for class certification".  *See* Ex. H (Sept. 23 letter from Elizabeth Bernard, Esq. to Peter Kohn, Esq.).[7]  For its part, Biovail, which does not challenge the relevance or discoverability of the sought documents, now states that it will not substantially complete its production for several weeks.  *See* Ex. I (Sept. 21, 2009 email from Amanda Tessar, Esq. to Peter Kohn, Esq., stating "as we agreed in August, Biovail has prioritized collection of the categories listed above and discussed on the call.  We expect to produce transactional data, a subset of forecasts, and some pricing data, along with certain documents responsive to plaintiffs' non-economic requests, in the next week or two. Within a few more weeks, we expect to produce additional forecasts, purchase orders, and invoices").

These delays make it impossible for Plaintiffs to obtain a timely expert report on class certification issues and thus make the supported application for class maintainability that the Court will require.

## III.   <u>ARGUMENT</u>

Rule 26(b) of the Federal Rules of Civil Procedure provides that parties may obtain discovery that is "relevant to any party's claim or defense," "relevant to the subject matter involved

---

[7]Putting aside for a moment the unambiguous relevance of such documents (*see* note 3, ante), GSK's complaint puzzled Plaintiffs, because GSK had not objected on relevance grounds to Nos. 40 or 41 of Plaintiffs' Rule 34 requests.  *See* Ex. C at Nos. 40 & 41.

in the action," or "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1).  "As a general rule . . . discovery is permitted of any items that are relevant or may lead to the discovery of relevant information." *Niester v. Moore*, 2009 WL 2179356, \*2 (E.D. Pa. July 22, 2009).

Rule 37 of the Federal Rules of Civil Procedure provides, in pertinent part:

> A party seeking discovery may move for an order compelling [a] ... production[.]  This motion may be made if:
>
> * * *
>
> (iv)    a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

*See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (West 2008).  As discussed above, generic entry projections and post-generic-entry analyses, the two categories of documents on which Plaintiffs now move, are obviously relevant to class certification issues, in particular the issue of the classwide nature of antitrust impact, which is analyzed under Rule 23(b)(3)'s "factual predominance" standard.  Several courts have so held.  *See ante* note 3.  There has been a complete default on the production of such documents, and Rule 34 requests seeking them are long outstanding.  Granting a motion under Rule 37(a)(3)(B)(iv) is therefore appropriate.

## IV. <u>CONCLUSION</u>

For any or all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the Order proposed, compelling Defendants' full and complete production of (1) generic entry projections and (2) post-generic-entry analyses within the next five (5) days.

Respectfully submitted,

**BERGER & MONTAGUE, P.C.**

/s/Peter Kohn

Dated: <u>September 28, 2009</u>    By: _____

David F. Sorensen
Peter Kohn (PRK4859)
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604

Thomas M. Sobol
David S. Nalven
Debra Gaw Josephson
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
One Main Street
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003

Linda P. Nussbaum
John D. Radice
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714

*Interim Lead Class Counsel*

Joseph F. Roda
Dianne M. Nast (DMN 1791)
Jennifer S. Snyder
**RODANAST, P.C.**
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000
Fax: (717) 892-1200

*Interim Liaison Class Counsel*

8