**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431 (DP case) |
| THIS DOCUMENT RELATES TO: <br><br> All Direct Purchaser Actions | **BIOVAIL'S OBJECTIONS AND RESPONSES TO DIRECT PURCHASER PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** <br><br><br> <u>**Hon. Mary A. McLaughlin**</u> |

<u>**BIOVAIL'S OBJECTIONS AND RESPONSES TO DIRECT PURCHASER
PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**</u>

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Rule 26.1 of the

United States District Court for the Eastern District of Pennsylvania, Defendants Biovail

Corporation, Biovail Laboratories, Inc., and Biovail Laboratories International SRL (collectively,

"Biovail") hereby respond as follows to Direct Purchaser Plaintiffs' First Requests for

Production of Documents.

<u>**GENERAL OBJECTIONS**</u>

1.      Biovail's legal counsel is prepared to meet with counsel for Direct Purchaser

Plaintiffs ("Plaintiffs") to discuss and, if possible, resolve any disputes that may arise concerning

the meaning, scope, and relevance of Plaintiffs' Requests or the adequacy of these objections and

responses.

2.      Biovail has not yet completed its investigation of the facts related to this litigation.

Consequently, all of the responses contained herein are based only on such information and

documentation as is presently available to Biovail.  If and to the extent further investigation,

research, and analysis supplies additional facts or adds meaning to known facts, Biovail reserves the right to modify or supplement these responses.

3.     Biovail objects to these Requests to the extent they seek production of documents or things outside the time period relevant to this litigation.  In particular, Biovail objects to Plaintiffs' arbitrary identification of "January 1, 1997 to the present" as being the relevant time period for this litigation as ambiguous, overbroad, and unduly burdensome.  Plaintiffs' claims in this case are premised on alleged "sham" lawsuits that were brought beginning December 21, 2004.  The first Paragraph IV notifications regarding Wellbutrin XL are dated November 12, 2004, so Biovail therefore objects to producing documents before that date, except as expressly agreed below.  In addition, Biovail objects to any requests that attempt to impose continuing document productions on Biovail by seeking production of documents "to the present."  Plaintiffs' allegations in this case do not extend beyond market entry of generic once-a-day extended release bupropion hydrochloride.  Biovail understands that at least three generic once-a-day extended release bupropion hydrochloride products had entered the market for each of the 150 and 300 mg formulations by on or around November 28, 2008, if not sooner.  Unless otherwise specified below, Biovail will limit its search and production to documents dated on or before March 28, 2009 (*i.e.*, four months after multiple generic products were available on the market for each formulation of one-a-day extended release bupropion hydrochloride).

4.     Biovail objects to these Requests to the extent they call for the production of documents or things not in Biovail's possession, custody, or control, including documents or things in the possession, custody, or control of Defendants SmithKline Beecham Corporation and GlaxoSmithKline plc, any non-party affiliates of Biovail, and any other non-party individuals or

entities.  Biovail responds to these Requests on behalf of itself and not on behalf of any subsidiaries, affiliates, or other corporations or separate legal entities, or any other individuals.

5.      Biovail objects to these Requests to the extent they seek Biovail's proprietary or confidential business information or trade secrets.  To the extent any proprietary or confidential information, trade secrets, or other sensitive or protected business information is non-privileged and responsive to these Requests, Biovail will produce such information only subject to the Proposed Stipulated Protective Order filed by the parties on June 17, 2009, or any subsequent protective order that the Court may enter in this case.

6.      Biovail objects to these Requests to the extent they seek production of sensitive or confidential third-party documents or things that are subject to a protective order or other confidentiality protections (e.g., Abrika, Anchen, Impax, or Watson confidential documents).  To the extent that any third-party sensitive or confidential information protected by state or federal law or court order, contract, or custom is non-privileged and responsive to the Requests, Biovail will produce such information only (a) subject to the Proposed Stipulated Protective Order filed by the parties on June 17, 2009, or any subsequent protective order that the Court may enter in this case, and (b) if one of the following conditions are met: (i) the Plaintiffs obtain permission for all parties to this antitrust litigation to access the sensitive or confidential information from the third party whose sensitive or confidential information is otherwise responsive to the Request; or (ii) other circumstances make production of the sensitive or confidential information consistent with the terms of the protective orders from the underlying litigations.

7.      Biovail objects to these Requests as overbroad and unduly burdensome to the extent they seek production of documents or things outside the geographic scope relevant to this

litigation.  Unless otherwise specified below, Biovail will limit its search and production to documents relating to Wellbutrin XL marketing, sales, and competition in the United States.

8.      Biovail objects to these Requests to the extent they are overbroad, oppressive, harassing, unduly burdensome, or seeks to impose on Biovail an undue expense.  Biovail further objects to these Requests to the extent they seek the production of documents not relevant to any claim, defense, or issue in the above-referenced case.  Moreover, Biovail further objects to each Request to the extent the Request seek documents of only marginal relevance, which relevance is substantially outweighed by the burden imposed on Biovail in having to search for and produce any such documents.

9.      Biovail objects to these Requests insofar as they seek discovery of documents or things protected by the attorney-client privilege, the attorney-work product doctrine, the joint defense privilege, or any other recognized privilege, doctrine, immunity, or protection.  Biovail will not produce privileged communications or attorney work product in response to any Request, even if the Request specifically seeks such privileged communications and/or work product.  Any inadvertent production of privileged or protected documents shall not constitute a waiver, in whole or in part, of any such privilege, doctrine, or protection.  Any document subject to a privilege, doctrine, or protection, if inadvertently produced, shall be returned by Plaintiffs pursuant to paragraph 20 of the Proposed Stipulated Protective Order submitted to the Court on June 17, 2009, or any subsequent protective order that the Court may enter in this case.

10.      Biovail objects to the "Definitions" and "Instructions" sections preceding the Requests as vague, ambiguous, overly broad, and unduly burdensome.  By submitting these responses, Biovail does not in any way adopt Plaintiffs' purported definitions of words and phrases.  Biovail objects to Plaintiffs' proposed "Definitions" to the extent they are susceptible to

4

more than one meaning or are inconsistent with the ordinary and customary meaning of such words and phrases or the rules governing the permissible scope of discovery.

11.     Biovail objects to these Requests (and to the "Definitions" and "Instructions" sections preceding the Requests) to the extent they superseded or otherwise conflict with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Pennsylvania, and any Case Management Order entered in this matter, including but not limited to Requests that call for or would require the creation of the documents requested. Biovail's responses to these Requests have been prepared in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Pennsylvania. Biovail will collect and produce documents pursuant to a reasonably diligent search. To the extent that these Requests purport to require or define an investigation that exceeds that required under the applicable rules and orders, Biovail objects thereto on the grounds that such a requirement or definition (i) exceeds the scope of permissible discovery, and (ii) improperly attempts to impose upon Biovail unreasonable burden and expense.

12.     Biovail objects to Plaintiffs' definition of the terms "Generic Wellbutrin XL" and "Generic Wellbutrin SR" on the grounds that they are vague, ambiguous, and overbroad.

13.     Biovail objects to these Requests to the extent they seek the production of documents that are in Plaintiffs' possession, custody, or control, or to which Plaintiffs have equal access. Biovail further objects to these Requests to the extent they seek production of documents generally available to Plaintiffs through public sources.

14.     Biovail's decision, now or in the future, to respond to Plaintiffs' Requests despite their objectionable nature should not be construed as: (a) an agreement that the material is relevant or admissible; (b) a waiver of any objection; or (c) an agreement that Requests seeking similar

production of documents or things will be treated in a similar manner.  All such defenses and objections are expressly preserved.

15.     These General Objections are incorporated into each specific Response set forth below, with or without reference.

## RESPONSES TO DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1:

All documents concerning the '341 Patent and '327 Patent, including documents concerning development, prosecution, approval, issuance, assignment, and licensing of the patents.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 2 and 5.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 2 and 5.  Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, there are no "*Walker Process*" claims in this litigation; the Plaintiffs have alleged only "sham litigation" claims.  As such, documents relating to the prosecution, approval, issuance, and assignment of the patents are not likely to lead to the discovery of admissible evidence.  Biovail also objects that the phrase "development … of the patents" is vague and ambiguous.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to this Request to the extent that it seeks documents or information outside the time period relevant to

this litigation.  Additionally, Biovail objects to this Request because much of the information

sought is publicly available from the Patent and Trademark Office.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail previously produced  documents responsive to Request

No. 1 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of

its productions from the underlying actions to Plaintiffs in the present litigation, including non-

privileged documents concerning U.S. Patent No. 6,096,341 and U.S. Patent No. 6,143,327.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning the validity or enforceability of the '341 Patent and '327 Patent,

including documents concerning any investigation done by or for GSK or Biovail concerning the

validity or enforceability of the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request Nos. 1 and 5.  Accordingly, Biovail incorporates, as if fully set

forth herein, its objections and responses to Request Nos. 1 and 5.  Biovail additionally objects to

this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks

documents that are not relevant to the claims or defenses of any party nor reasonably calculated

to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the

extent it seeks documents or information protected by the attorney-client privilege, the attorney-

work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further

objects to this Request to the extent it seeks documents from Biovail that are in the possession,

custody, or control of GSK and/or any other entity besides the named Biovail defendants.

Biovail also objects to this Request to the extent that it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 2 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation, including non-privileged documents concerning the validity and enforceability of U.S. Patent No. 6,096,341 and U.S. Patent No. 6,143,327.  In addition, Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 3:**

All documents prepared, provided to, or reviewed by Pharma Pass LLC or Pawan Seth concerning the development, prosecution, approval, issuance, and licensing of the '341 Patent and '327 Patent, or Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects that the phrase "development … of the '341 and '327 Patent" is vague and ambiguous.

Biovail further objects to this Request to the extent it seeks documents not in the possession, custody, or control of Biovail.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 3 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation, including non-privileged documents concerning Wellbutrin XL, U.S. Patent No. 6,096,341, and U.S. Patent No. 6,143,327.  Additionally, Biovail notes that both Pharma Pass LLC and Pawan Seth were the subject of Rule 45 document subpoenas in one or more of the underlying litigations.  To the extent documents were produced pursuant to those subpoenas, such documents were not destroyed pursuant to the governing protective orders at the conclusion of the underlying litigations, and Pharma Pass LLC and/or Pawan Seth consent to the reproduction of those materials in this antitrust litigation, Biovail will re-produce those materials.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning the acquisition of Pharma Pass by Biovail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail further objects to this Request to the extent it seeks documents or information protected by the

attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents regarding the assignment of U.S. Patent No. 6,096,341 and U.S. Patent No. 6,143,327 in the underlying litigations.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  Biovail will also search for and produce the Pharma Pass LLC acquisition agreement. Additionally, Biovail notes that Pharma Pass LLC was the subject of a Rule 45 document subpoena in one or more of the underlying litigations.  To the extent documents were produced pursuant to those subpoenas, such documents were not destroyed pursuant to the governing protective orders at the conclusion of the underlying litigations, and Pharma Pass LLC consents to the reproduction of those materials in this antitrust litigation, Biovail will re-produce those materials.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning the assignment of the '341 Patent and '327 Patent to Biovail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 1 and 2.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 1 and 2.  Biovail additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail

further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced non-privileged, responsive documents concerning assignment of U.S. Patent No. 6,096,341 and U.S. Patent No. 6,143,327 to Biovail in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.

**REQUEST FOR PRODUCTION NO. 6:**

All documents concerning communications between GSK or Biovail, on the one hand, and Abrika, Anchen, Impax, or Watson, on the other, concerning the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Communications between Biovail or GSK, on the one hand, and

11

Abrika, Anchen, Impax, and Watson, on the other hand, regarding U.S. Patent No. 6,096,341 and U.S. Patent No. 6,143,327 occurred in the context of the underlying patent infringement litigations.  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 7:**

All motions, responses, pleadings, memoranda, briefs, affidavits/declarations, correspondence and all other documents generated or used, by any party or nonparty, in the underlying actions and filed in court, with exhibits and appendices, except for documents that are publicly available in unredacted form.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request as vague and ambiguous on the basis that it is not apparent whether "filed in court" limits "[a]ll motions, responses, pleadings, memoranda, briefs, affidavits/declarations, correspondence and all other documents" or "all other documents."  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  The five underlying litigations for which Plaintiffs have requested documents collectively spanned a period of many years; involved the efforts of internal Biovail personnel, more than a half a dozen outside law firms, and a plethora of testifying and non-

testifying experts; and generated an enormous volume of court filings, correspondence, deposition and hearing transcripts, exhibits, expert reports, and related litigation materials. Confidential and non-confidential materials from the underlying litigations are currently intermixed, and the confidential information or documents from the underlying actions are subject to protective orders entered in each of the respective litigations.  The burden and expense associated with separating confidential from non-confidential materials for each of the underlying litigations is large, particularly in light of the fact that Biovail's antitrust counsel in this litigation cannot currently access many of the confidential materials from the underlying litigations under the terms of the protective orders that governed those litigations.  Moreover, the bulk of the non-confidential materials are currently publicly available through PACER, and thus are equally accessible to Plaintiffs as they are to Biovail.  Based on these considerations, Biovail will produce responsive, non-privileged documents relating to the underlying actions in its possession, custody, or control on a rolling basis after all relevant third-party confidentiality issues have been resolved for each of the underlying actions pursuant to General Objection No. 6.  To the extent Plaintiffs wish to discuss limited departures from this general approach, Biovail is available to meet and confer regarding such requests.

**REQUEST FOR PRODUCTION NO. 8:**

All transcripts of deposition testimony, witness statements, affidavits/declarations, expert reports, disclosures, and discovery requests and responses, with exhibits, generated or used by any party or nonparty in the underlying actions not filed in court.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks

documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the ground that the phrases "generated or used by any party or nonparty" and "not filed in court" are vague and ambiguous.  Biovail further objects to the extent this Request seeks documents that are subject to protective orders in the underlying actions.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including deposition transcripts, witness statements, affidavits/declarations, expert reports, disclosures, and discovery requests and responses served by the parties, if any.

**REQUEST FOR PRODUCTION NO. 9:**

All documents considered by expert witnesses for any party in the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the ground that the term "considered" is vague and ambiguous.  In addition, Biovail objects to this Request on the basis that the term "expert witnesses" is vague and ambiguous.  For the purpose of this Request, Biovail will construe the term "expert witnesses" to mean "testifying experts." Biovail further objects to the extent this Request seeks documents that are subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks

documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents considered by expert witnesses in the underlying actions, if any.

**REQUEST FOR PRODUCTION NO. 10:**

All logs, lists, indices, or other documents or databases identifying the documents produced or obtained through discovery by all parties or nonparties in the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects that the term "databases" is vague and ambiguous.  Biovail further objects to this Request as overbroad and unduly burdensome to the extent it purports to demand the production of software.  Biovail will not produce any software in response to these Requests; however, to the extent that this Request seeks documents that may be located in a database, such documents will be produced in a format consistent with the agreement regarding e-discovery currently being negotiated by the parties. Biovail further objects to the extent this Request seeks documents or communications that are

subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including logs, lists, and indices, if any.

**REQUEST FOR PRODUCTION NO. 11:**

All logs, lists, indices, or other documents or databases identifying the documents that were withheld from production in whole or in part by any party or nonparty in any of the underlying actions for any reason, including but not limited to any privilege claim assertions, relevance objections, or confidentiality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it

seeks documents not in its possession, custody, or control.  Biovail also objects that the term

"databases" is vague and ambiguous.  Biovail further objects to this Request as overbroad and

unduly burdensome to the extent it purports to demand the production of software.  Biovail will

not produce any software in response to these Requests; however, to the extent that this Request

seeks documents that may be located in a database, such documents will be produced in a format

consistent with the agreement regarding e-discovery currently being negotiated by the parties.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail incorporates by reference its Response to Request for

Production No. 7 herein.  As described in more detail in its Response to Request for Production

No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the

underlying actions, including privilege logs, lists, and indices, if any.

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any proposed or actual prosecution of claims of infringement

of the '341 Patent and '327 Patent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request Nos. 13 and 14.  Accordingly, Biovail incorporates, as if fully

set forth herein, its objections and responses to Request Nos. 13 and 14.  Biovail further objects

that the Request is so overbroad that there is no reasonable limitation as to the categories of

documents it seeks, nor any conceivable methodology for Biovail to comply with the Request.

Additionally, Biovail objects on the ground that the phrase "proposed . . . prosecution" is vague

and ambiguous.  Biovail further objects to this Request to the extent it seeks documents or

information protected by the attorney-client privilege, the attorney-work product doctrine, or any

other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning the decisions by GSK or Biovail to initiate the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 12 and 14.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 12 and 14.  Biovail further objects that the Request is so overbroad that there is no reasonable limitation as to the categories of documents it seeks, nor any conceivable methodology for Biovail to comply with the Request. Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents that analyze or discuss the decision to initiate the underlying actions, if any.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning GSK's or Biovail's evaluation of the basis, merits, likelihood of success, or purpose of the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 12 and 13.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 12 and 13.  Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the ground that the terms "basis," "merits," and "purpose" are vague and ambiguous.  Additionally, Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents that evaluate the underlying actions, if any.

**REQUEST FOR PRODUCTION NO. 15:**

All documents concerning the scope or effect of any proposed or actual outcome of the underlying actions, including but not limited to settlement or judgment following trial.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "scope or effect" and "proposed or actual outcome" are vague and ambiguous. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning communications to which Biovail or GSK was a party concerning any claim in or defenses to the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including communications to which Biovail or GSK was a party concerning any claim in or defenses to the underlying actions.

**REQUEST FOR PRODUCTION NO. 17:**

All documents concerning settlements of the underlying actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail additionally objects that many of the documents sought are inadmissible pursuant to Federal Rule of Evidence 408.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will produce settlement agreements from the underlying actions to the extent permitted by any confidentiality provisions in such agreements.  In addition, documents relating to settlement of the underlying actions are contained in materials from the underlying litigations.  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 18:**

All documents submitted to the FDA by GSK or Biovail or any person acting on their behalf, or any other person, concerning the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the extent the documents requested are publicly available from the Food and Drug Administration.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents submitted to the FDA concerning the "Citizen Petition," if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 19:**

All documents concerning the decision to file the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 20 through 22.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 20 through 22.  Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the extent the documents requested are publicly available from the Food and Drug Administration.  Additionally, Biovail objects to this Request to the extent it seeks documents or

information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that analyze or discuss the decision to file the "Citizen Petition," if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning GSK's or Biovail's evaluation of the basis, merits, likelihood of success or purpose of the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 19, 21, and 22.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 19, 21, and 22.  Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the ground that the terms "basis," "merits," and "purpose" are vague and ambiguous. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged

documents, if any, in its possession, custody, or control that discuss or analyze the basis, merits, likelihood of success or purpose of the "Citizen Petition," if any.

**REQUEST FOR PRODUCTION NO. 21:**

All documents concerning the scope and effect of any proposed or actual outcome of the Citizen Petition process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 19, 20, and 22. Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 19, 20, and 22. Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the phrases "scope and effect," "proposed or actual outcome," and "Citizen Petition process" are vague and ambiguous. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged documents that analyze or discuss the scope and effect of any proposed or actual outcome of the "Citizen Petition process," if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning communications to which GSK or Biovail was a party concerning the Citizen Petition or claims set forth in the Citizen Petition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request Nos. 19 through 21. Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 19 through 21. Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged communications concerning the "Citizen Petition" or "claims set forth in the Citizen Petition," if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning the bioequivalence of generic Wellbutrin XL to Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that

the phrase "generic Wellbutrin XL" and term "bioequivalence" are vague and ambiguous. Biovail will construe the terms "generic" and "bioequivalence" consistently with how those terms are used by the Food & Drug Administration.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 23 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents that discuss or analyze "the bioequivalence of generic Wellbutrin XL to Wellbutrin XL."

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to identify all citizen petitions filed by or on behalf of GSK or Biovail from January 1, 1997 to December 19, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request to the extent the documents requested are publicly available from the Food and Drug Administration.  Biovail also objects to this Request to the extent it seeks documents or information outside the time

period relevant to this litigation.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents sufficient to identify all citizen petitions filed by or on behalf of Biovail, if any, in its possession, custody, or control for the time period January 1, 1997 to December 19, 2005.

**REQUEST FOR PRODUCTION NO. 25:**

All documents concerning the FDA Amendments Act of 2007, 21 U.S.C. § 355(q), enacted September 27, 2007, concerning FDA review of citizen petitions, including without limitations communications between GSK and Biovail, on the one hand, and Congress or the FDA, on the other.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze the FDA Amendments Act of 2007 (21 U.S.C. § 355(q)), if any, in its possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 26:

All documents concerning the development, formulation, scale up, validation, FDA approval, manufacture, promotion, and sale of any once per day bupropion formulation, including Wellbutrin XL.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the terms "development," "formulation," "scale up," "validation," "promotion," and "sale of any once per day bupropion formulation" are vague and ambiguous, but likely implicate an enormous volume of materials. Biovail will construe the phrase "sale of . . . Wellbutrin XL" to exclude transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company. Biovail further objects to the phrase "once per day bupropion formulation" as vague and ambiguous. Biovail will construe this phrase to mean Wellbutrin XL and Generic Wellbutrin XL. Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation and documents or information not in the possession, custody, or control of Biovail.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail previously produced documents responsive to Request

No. 26 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail notes that GSK handled all FDA approvals, promotion, and sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to FDA approvals, promotion, and sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  Additionally, to the extent Plaintiffs are willing to describe with greater specificity the documents that they seek, Biovail is willing to meet and confer with Plaintiffs to determine whether there are additional responsive documents in Biovail's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 27:**

All documents concerning the use of acid stabilizers in bupropion formulations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the terms "acid stabilizers" and "bupropion formulations" are vague and ambiguous.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 27 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents that discuss or analyze the use of acid stabilizers in bupropion formulations.

**REQUEST FOR PRODUCTION NO. 28:**

All documents concerning the bioequivalence of Wellbutrin XL to Wellbutrin IR or Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the term "bioequivalence" is vague and ambiguous.  Biovail will construe the term "bioequivalence" consistently with how the term is used by the Food & Drug Administration.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  One or more parties to the underlying actions may have produced or made available for inspection documents concerning bioequivalence of Wellbutrin XL to Wellbutrin IR or Wellbutrin SR.  Biovail will re-produce all of its productions from the underlying

actions to Plaintiffs in the present litigation.  In addition, Biovail will produce documents relating

to the "Citizen Petition" as set forth in its Response to Request for Production No. 20.

**REQUEST FOR PRODUCTION NO. 29:**

All documents concerning the NDAs filed by GSK seeking approval to market

Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Biovail hereby incorporates by reference its General Objections and also objects to this

Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents

that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to

the discovery of admissible evidence.  Biovail further objects to this Request to the extent that it

incorrectly suggests that there is more than one NDA for Wellbutrin XL.  Biovail also objects to

this Request to the extent it seeks documents or information protected by the attorney-client

privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or

protection.  Biovail further objects to this Request to the extent it seeks documents not in its

possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  GSK filed and controlled, at all relevant times, the NDA seeking

approval to market Wellbutrin XL in the United States.  Biovail will produce its agreements with

GSK relating to the FDA approvals process as described in its Response to Request for

Production No. 69 below.

**REQUEST FOR PRODUCTION NO. 30:**

All documents concerning communications between GSK and the FDA concerning

Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: GSK filed and controlled, at all relevant times, the NDA seeking approval to market Wellbutrin XL in the United States. Biovail will produce its agreements with GSK relating to the FDA approvals process as described in its Response to Request for Production No. 69 below.

**REQUEST FOR PRODUCTION NO. 31:**

All documents concerning the listing of the '341 Patent and '327 Patent under the Wellbutrin XL NDA in the FDA Orange Book publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," otherwise known as the Orange Book.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to

the discovery of admissible evidence.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 31 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions, including documents relating to the listing of the '341 Patent and '327 Patent in the Orange Book for Wellbutrin XL, if any.

**REQUEST FOR PRODUCTION NO. 32:**

All documents concerning potential or actual market entry of generic Wellbutrin SR, including without limitation the timing of such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this litigation concerns Wellbutrin XL, not Wellbutrin SR, which is an entirely separate drug not manufactured or marketed by Biovail.  Biovail further objects to this Request on the ground that the phrases "potential . . . market entry"

and "generic Wellbutrin SR" are vague and ambiguous.  Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.  Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail does not presently manufacture or distribute Wellbutrin SR in the United States, nor has it ever done so.  However, Biovail will search for and produce responsive, non-privileged documents that analyze or discuss potential or actual market entry in the United States of "generic Wellbutrin SR," if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 33:**

All documents concerning life cycle management for Wellbutrin SR, including patent term extensions, regulatory exclusivities, patent enforcement and litigation strategies, Orange Book filings, changes to formulation, dosage, and means of administration, label changes, licensing opportunities, and follow-on product strategies for Wellbutrin SR, including the development of extended release bupropion formulations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this litigation concerns Wellbutrin XL, not

Wellbutrin SR, which is an entirely separate drug not marketed by Biovail.  Biovail further objects to this Request on the ground that the phrases "life cycle management," "regulatory exclusivities," "patent enforcement and litigation strategies," "changes to formulation, dosage, and means of administration," and "follow-on product strategies" are vague and ambiguous. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail does not presently manufacture or distribute Wellbutrin SR in the United States, nor has it ever done so.  Biovail understands that Plaintiffs must have intended to propound this Request to GSK.  Until Plaintiffs (a) narrow this Request; (b) provide a better explanation of what kinds of information they seek; and (c) explain the relevance of the categories of documents they seek by this Request, Biovail cannot reasonably search for and produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies, considered by GSK to prepare for, respond to, or adapt to the projected or actual effects of the marketing and sale of one or more versions of generic Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this litigation concerns Wellbutrin XL, not Wellbutrin SR, which is an entirely separate drug not marketed by Biovail. Biovail further objects to this Request on the ground that the phrases "strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies," "adapt to," and "generic Wellbutrin SR" are vague and ambiguous. Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail does not presently manufacture or distribute Wellbutrin SR in the United States, nor has it ever done so. However, Biovail will search for and produce responsive, non-privileged documents that analyze or discuss strategies considered by GSK related to "generic Wellbutrin SR" in the United States, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 35:**

All documents concerning forecasts or projections of the effects on branded Wellbutrin SR unit sales, dollar sales, prices, and profits from the marketing and sale of one or more versions of generic Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request No. 36.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 36.  Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this litigation concerns Wellbutrin XL, not Wellbutrin SR, which is an entirely separate drug not marketed by Biovail.  Biovail further objects to this Request on the ground that the phrase "generic Wellbutrin SR" is vague and ambiguous.  Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail does not presently manufacture or distribute Wellbutrin SR in the United States, nor has it ever done so.  However, Biovail will search for and produce

responsive, non-privileged forecasts or projections of the effects on Wellbutrin SR from "generic Wellbutrin SR" in the United States, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning marketing plans, surveys or studies concerning the effect of market entry of generic Wellbutrin SR on sales of branded Wellbutrin SR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request No. 35. Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request Nos. 35. Biovail further objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this litigation concerns Wellbutrin XL, not Wellbutrin SR, which is an entirely separate drug not marketed by Biovail. Biovail further objects to this Request on the ground that the phrase "generic Wellbutrin SR" is vague and ambiguous. Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail does not presently manufacture or distribute Wellbutrin SR

in the United States, nor has it ever done so.  However, Biovail will search for and produce

responsive, non-privileged "marketing plans, surveys, or studies" that analyze or discuss the

effect of market entry of "generic Wellbutrin SR" on sales of Wellbutrin SR in the United

States, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 37:**

All documents concerning potential or actual market entry of generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request Nos. 40 and 41.  Accordingly, Biovail incorporates, as if fully

set forth herein, its objections and responses to Request Nos. 40 and 41.  Biovail further objects

to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks

documents that are not relevant to the claims or defenses of any party nor reasonably calculated

to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the

ground that the phrases "potential or actual market entry" and "generic Wellbutrin XL" are

vague and ambiguous.  Biovail will construe the term "generic" consistently with how that term

is used by the Food & Drug Administration.  Biovail also objects to this Request to the extent it

seeks documents or information outside the time period relevant to this litigation.  Biovail also

objects to the extent this Request seeks documents or communications that are subject to

protective orders in the underlying actions.  Additionally, Biovail objects to this Request to the

extent it seeks documents or information protected by the attorney-client privilege, the attorney-

work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail previously produced documents responsive to Request

No. 37 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of

its productions from the underlying actions to Plaintiffs in the present litigation.  In addition,

Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As

described in more detail in its Response to Request for Production No. 7, Biovail will search for

and produce non-privileged, responsive documents relating to the underlying actions, including

those that relate to potential or actual market entry of "generic Wellbutrin XL," if any.

Additionally, Biovail will search for and produce non-privileged, responsive documents that

analyze or discuss potential or actual market entry of "generic Wellbutrin XL" in the United

States, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 38:**

All documents concerning lifecycle management for Wellbutrin XL, including patent

term extensions, regulatory exclusivities, patent enforcement and litigation strategies, Orange

Book filings, changes to formulation, dosage, and means of administration, label changes,

licensing opportunities, and follow-on product strategies for Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Biovail hereby incorporates by reference its General Objections and also objects to this

Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents

that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to

the discovery of admissible evidence.  Biovail further objects to this Request on the ground that

the phrases "life cycle management," "regulatory exclusivities," "patent enforcement and

litigation strategies," "changes to formulation, dosage, and means of administration," and

"follow-on product strategies" are vague and ambiguous.  Biovail also objects to this Request to

the extent it seeks documents not in its possession, custody, or control.  Additionally, Biovail

objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Until Plaintiffs (a) narrow this Request; (b) provide a better explanation of what kinds of information they seek; and (c) explain the relevance of the categories of documents they seek by this Request, Biovail cannot reasonably search for and produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 39:**

All documents concerning strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies, considered by GSK or Biovail to prepare for, respond to, or adapt to the projected or actual effects of the marketing and sale of one or more versions of generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, patent strategies, and litigation strategies," "adapt to," and "generic Wellbutrin XL" are vague and ambiguous.  Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to

this litigation.  Biovail also objects to this Request to the extent it seeks documents not in its

possession, custody, or control.  Biovail further objects to this Request to the extent it seeks

documents or information outside the time period relevant to this litigation.  Additionally,

Biovail objects to this Request to the extent it seeks documents or information protected by the

attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine,

immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail will search for and produce non-privileged documents

relating to the underlying actions as described in its Responses to Requests for Production Nos.

7, 12, 13, and 15.  In addition, Biovail will search for and produce documents that analyze or

discuss pricing as set forth in its Responses to Request for Production No. 42 and 59.  Biovail

will also search for and produce marketing plans, surveys, or studies as set forth in its Response

to Request for Production No. 41.

**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning forecasts or projections of the effects on branded Wellbutrin

XL unit sales, dollar sales, prices, and profits from the marketing and sale of one or more

versions of generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request Nos. 37 and 41.  Biovail incorporates, as if fully set forth

herein, its objections and responses to Request Nos. 37 and 41.  Biovail further objects to this

Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents

that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to

the discovery of admissible evidence.  Biovail further objects to this Request on the ground that

the phrases "marketing" and "generic Wellbutrin XL" are vague and ambiguous.  Biovail will

construe the term "generic" consistently with how that term is used by the Food & Drug

Administration.  Biovail also objects to this Request to the extent it seeks documents or

information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged

forecasts or projections for the United States, if any, in its possession, custody, or control for the

period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning marketing plans, surveys or studies concerning the effect of

market entry of generic Wellbutrin XL on sales of branded Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request Nos. 37 and 40.  Accordingly, Biovail incorporates, as if fully

set forth herein, its objections and responses to Request Nos. 37 and 40.  Biovail further objects

to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks

documents that are not relevant to the claims or defenses of any party nor reasonably calculated

to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the

ground that the phrase "effect of market entry" and term "generic Wellbutrin XL" are vague and

ambiguous.  Biovail will construe the term "generic" with how that term is used by the Food &

Drug Administration.  Additionally, Biovail objects to this Request to the extent it seeks

documents or information protected by the attorney-client privilege, the attorney-work product

doctrine, or any other privilege, doctrine, immunity, or protection.  Biovail also objects to this

Request to the extent it seeks documents or information outside the time period relevant to this

litigation.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged

marketing plans, surveys, or studies for the United States, if any, in its possession, custody, or

control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning pricing of Wellbutrin XL, including documents concerning the

factors considered by GSK and Biovail in setting or changing list prices or adjustments to prices,

such as rebates and discounts, of branded Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Biovail hereby incorporates by reference its General Objections and also objects that this

Request is cumulative of Request No. 59.  Accordingly, Biovail incorporates, as if fully set forth

herein, its objections and responses to Request No. 59.  Biovail additionally objects to this

Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents

that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to

the discovery of admissible evidence.  Biovail also objects to this Request to the extent it seeks

documents or information outside the time period relevant to this litigation.  Biovail further

objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged

documents that analyze or discuss pricing of Wellbutrin XL for sales to direct purchasers in the

United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 43:**

All documents concerning the development, formulation, scale up, validation, FDA approval, manufacture, promotion, and sale of generic Wellbutrin XL by Abrika, Anchen, Impax, and Watson.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the terms "development," "formulation," "scale up," "validation," "promotion," and "generic Wellbutrin XL" are vague and ambiguous.  Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration.  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail understands that the majority of documents sought by this Request are in the possession, custody, and control of third parties Abrika, Anchen, Impax, and Watson.  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning bioequivalence studies performed by or on behalf of Abrika, Anchen, Impax, or Watson concerning generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the terms "bioequivalence studies" and "generic Wellbutrin XL" are vague and ambiguous.  Biovail will construe the terms "generic" and "bioequivalence" consistently with how those terms are used by the Food & Drug Administration.  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail understands that the majority of documents sought by this Request are in the possession, custody, and control of third parties Abrika, Anchen, Impax, and Watson.  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 45:**

All documents concerning FDA bioequivalence guidelines, including documents concerning FDA publications *Providing Clinical Evidence of Effectiveness of Human Drugs and*

*Biologic Products* (1988); *Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations* (2000); and *Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations* (March 2003).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Biovail further objects to this Request because much of the information sought is publicly available from the Food and Drug Administration. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce a non-privileged copy of each of the FDA publications identified in Request No. 45, if any, in its possession, custody, or control. In addition, Biovail will search for and produce responsive, non-privileged documents that analyze or discuss FDA bioequivalence guidelines in the context of Wellbutrin XL, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 46:**

All documents concerning any physical, regulatory, legal, technical, manufacturing or other issues regarding the readiness, willingness, or ability of Abrika, Anchen, Impax, or Watson to come to market with AB-rated generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the terms "physical, regulatory, legal, technical, manufacturing or other issues" and "readiness, willingness, or ability . . . to come to market with AB-rated generic Wellbutrin XL" are vague and ambiguous. Biovail will construe the term "AB-rated generic" consistently with how that term is used by the Food & Drug Administration. Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions. Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail understands that the majority of documents sought by this Request are in the possession, custody, and control of third parties Abrika, Anchen, Impax, and Watson. Biovail incorporates by reference its Response to Request for Production No. 7 herein. As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 47:**

All documents concerning communications between GSK and Biovail, on the one hand, and Abrika, Anchen, Impax, or Watson, on the other, concerning branded or generic Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the term "generic Wellbutrin XL" is vague and ambiguous. Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration. Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions. Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail incorporates by reference its Response to Request for Production No. 17, relating to settlement agreements, herein. In addition, communications between Biovail and Abrika, Anchen, Impax, or Watson regarding Wellbutrin XL and "generic Wellbutrin XL" are contained in materials from the underlying litigations. Biovail incorporates by reference its Response to Request for Production No. 7 herein. As described in more detail in

its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 48:**

All documents concerning all agreements between GSK or Biovail, on one hand, and Abrika, Anchen, Impax, or Watson, on the other, concerning the manufacture, promotion, and sale of generic Wellbutrin XL, including licensing agreements, royalty agreements, and agreements concerning timing of market entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail additionally objects that many of the documents sought are inadmissible pursuant to Federal Rule of Evidence 408. Biovail further objects to this Request on the ground that the terms "generic Wellbutrin XL" and "timing of market entry" are vague and ambiguous. Biovail will construe the term "generic" consistently with how that term is used by the Food & Drug Administration. Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce settlement agreements from the underlying actions to the extent permitted by any confidentiality provisions in such agreements.

In addition, documents regarding settlement of the underlying actions are contained in materials from the underlying litigations.  Biovail incorporates by reference its Response to Request for Production No. 7 herein.  As described in more detail in its Response to Request for Production No. 7, Biovail will search for and produce non-privileged, responsive documents relating to the underlying actions.

**REQUEST FOR PRODUCTION NO. 49:**

All documents concerning the relative features, benefits, or comparisons between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrase "relative features, benefits, or comparisons" is vague and ambiguous.  Biovail also objects that the phrase "all other drugs used to treat the same conditions as Wellbutrin XL" is vague and ambiguous.  Biovail does not concede that this phrase defines a relevant market. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail further objects to the extent this Request seeks documents or communications that are subject to protective orders in the underlying actions.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that analyze or discuss the "relative features, benefits, or comparisons" between Wellbutrin XL and other drugs used to treat the same conditions as Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning factors that affect sales or market share as between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects that the Request is so overbroad that there is no reasonable limitation as to the categories of documents it seeks, nor any conceivable methodology for Biovail to comply with the Request.  Biovail also objects that the phrase "all other drugs used to treat the same conditions as Wellbutrin XL" is vague and ambiguous.  Biovail does not concede that this phrase defines a relevant market.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail further to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged documents that analyze or discuss sales or market share for Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 51:**

All documents concerning the functional or economic substitutability of Wellbutrin XL with any other drugs used to treat the same conditions as Wellbutrin.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Biovail hereby incorporates by reference its General Objections and additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects that the Request is so overbroad that there is no reasonable limitation as to the categories of documents it seeks, nor any conceivable methodology for Biovail to comply with the Request. Biovail further objects to this Request on the ground that the phrase "functional or economic substitutability" is vague and ambiguous. Biovail objects that the term "Wellbutrin" is overbroad, unduly burdensome, and vague and ambiguous. Biovail also objects that the phrase "all other drugs used to treat the same conditions as Wellbutrin" is vague and ambiguous. Biovail does not concede that this phrase defines a relevant market. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze the functional or economic substitutability of Wellbutrin XL in the United States,  if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 52:**

All documents concerning the cross-elasticity of demand with respect to price between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrase "cross-elasticity of demand" is vague and ambiguous.  Biovail also objects that the phrase "all other drugs used to treat the same conditions as Wellbutrin XL" is vague and ambiguous.  Biovail does not concede that this phrase defines a relevant market.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze the cross-elasticity of demand between Wellbutrin XL and other drugs in the United States, if any, in its possession, custody, or control for the period November 12, 2004 March 28, 2009.

**REQUEST FOR PRODUCTION NO. 53:**

All documents concerning actual, potential, desired, or forecasted switching or substitution between or among Wellbutrin XL and all other drugs used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrase "actual, potential, desired, or forecasted switching or substitution" is vague and ambiguous.  Biovail also objects that the phrase "all other drugs used to treat the same conditions as Wellbutrin XL" is vague and ambiguous.  Biovail does not concede that this phrase defines a relevant market.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze substitution between Wellbutrin XL and other drugs used to treat the same conditions as Wellbutrin XL, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 54:**

All documents concerning the actual or projected size, composition, dollar sales, and unit sales of the United States market in which Wellbutrin XL is sold.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the term "composition" is vague and ambiguous. Biovail also objects that the phrase "United States market in which Wellbutrin XL is sold" is vague, ambiguous, and calls for a legal conclusion. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged documents that analyze or discuss the United States market in which Wellbutrin XL is sold, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 55:**

All documents concerning actual or forecasted competition between Wellbutrin XL and any other drugs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the phrases "actual or forecasted competition" and "other drugs" are vague and ambiguous.

Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that analyze or discuss actual or forecasted competition for Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 56:**

All documents concerning the sales and marketing tactics and strategies for Wellbutrin XL, including (a) sales training materials and presentations; (b) sales and marketing meeting materials, presentations, and summaries; and (c) tactical plans, strategic plans, and budget proposals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "sales and marketing tactics and strategies for Wellbutrin XL," "sales training materials and presentations," "sales marketing meeting materials, presentations, and summaries," and "tactical plans, strategic plans, and budget proposals" are vague and ambiguous.  Biovail will construe the phrase "sales and marketing tactics and strategies for Wellbutrin XL" to exclude transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company.  Additionally, Biovail objects to

this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled the marketing and sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to marketing and sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  In addition, Biovail will search for and produce responsive, non-privileged "sales training materials and presentations," "sales and marketing meeting materials, presentations, and summaries," and "tactical plans, strategic plans, and budget proposals" relating to marketing and sales to direct purchasers in the United States for the period November 12, 2004 to March 28, 2009.

## REQUEST FOR PRODUCTION NO. 57:

All documents concerning the promotion and advertising of Wellbutrin XL, including (a) communications and advertising directed to physicians; (b) detailing pieces; (c) press releases; (d) communications with pharmacy benefit managers, insurers, health plans, and third-party payors; and (e) direct to consumer advertising.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57:

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request because much of the information sought is publicly available.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled the promotion and advertising of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to the promotion and advertising of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  In addition, Biovail will search for and produce responsive, non-privileged communications and advertising directed to physicians, "detailing pieces," press releases, communications with pharmacy benefit managers, insurers, health plans, and third-party payors, and "direct to consumer advertising" used in the United States for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 58:**

All documents concerning medical education concerning Wellbutrin XL, including (a) presentations to institutes, symposium, conferences and seminars; (b) publications in professional journals; and (c) surveys and any other types of studies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to the terms "surveys" and "other types of studies" as vague, ambiguous, and overbroad.  Biovail further objects to this Request because much of the information sought is publicly available.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged educational presentations, publications, surveys, and studies concerning Wellbutrin XL used in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 59:**

All documents concerning pricing of Wellbutrin XL, including documents concerning the factors considered by GSK and Biovail in setting or changing list prices, or determining adjustments to prices, such as rebates and discounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Biovail hereby incorporates by reference its General Objections and also objects that this Request is cumulative of Request No. 42.  Accordingly, Biovail incorporates, as if fully set forth herein, its objections and responses to Request No. 42.  Biovail additionally objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze pricing factors or price adjustments for Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 60:**

Documents sufficient to identify every direct purchaser of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail also objects to this Request to the extent it purports to require Biovail to create data or documents for purposes of this litigation. In addition, Biovail objects to this Request to the extent it seeks documents from Biovail that are in the possession, custody, or control of GSK and/or any other entity besides the named Biovail defendants.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: GSK handled all sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period. Biovail will produce its agreements with GSK relating to sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below. Additionally, to the extent Plaintiffs are willing to describe with greater specificity the documents that they seek, Biovail is willing to meet and confer with Plaintiffs to determine whether there are additional responsive documents in Biovail's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 61:**

All documents concerning contracts for the sale of Wellbutrin XL including (a) contracts with entities that purchased Wellbutrin XL directly from defendants, (b) contracts that provide

that the purchaser will take delivery of Wellbutrin XL from an entity other than GSK or Biovail (such as a wholesaler); and (c) contracts concerning the payment of chargebacks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to this Request on the basis that the phrase "sale of Wellbutrin XL" is vague and ambiguous.  Biovail will construe this phrase to exclude transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Biovail also objects to this Request to the extent it seeks documents not in its possession, custody, or control.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled all sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to FDA approvals, promotion, and sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below. Additionally, Biovail will search for and produce responsive, non-privileged contracts for the sale of Wellbutrin XL to direct purchasers in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 62:**

Electronic data in a tab-, comma-, or semicolon-delimited ASCII flat text file or similar electronic format from 2005 to the present sufficient to identify sales of Wellbutrin XL to direct purchasers of Wellbutrin XL in transaction-by-transaction format, as follows:

  a.   All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) product description, (xii) product form, (xiii) product strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to customer and the ship-to customer), and (xix) the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

  b.   All data relating to chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom GSK or Biovail paid, or on whose behalf GSK or Biovail accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which GSK or Biovail paid or accrued the chargeback, rebate, discount or other consideration; (iv) the sales, or group of sales, upon which the rebate, discount or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

  c.   All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code; and

    d.    Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through c), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

    e.    The complete documentation for all items above (a through d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g. field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (ccc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (i) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (ii) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (iii) all datasets and calculations used (i) to determine accrued rebates and/or chargebacks and/or (iv) to periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks; (v) return and/or exchange policies; and (vi) payment terms.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail also objects to this Request to the extent it purports to require Biovail to create data or documents for purposes of this litigation. Biovail also objects to this Request on the basis that the following undefined phrases are vague, ambiguous, overbroad, and unduly burdensome: "tab-, comma-, or semicolon-delimited ASCII flat ext file or similar electronic format," "transaction-by-transaction format," "sales . . . to direct purchasers," "direct sales/invoice transactions," "fields," "source of the transaction price," "returned or otherwise affected by the transaction," "NDC," "UPC," "SKU," "package size in extended units per package," "customer number," "customer class of trade code and the

description of that code," "the like," ""chargebacks, rebates, discounts, and other consideration given or accrued," "all unique codes or identifiers," "the sales, or group of sales," "bill-to customer," "ship-to customer," "administrative  fee transactions," "date or date range of sales relating to the fee that was paid," "type of administrative fee," "billbacks," "unit adjustments," "price adjustments," "shelf-stock price adjustments," "error corrections," "free goods," "nominally priced goods," all other transaction types," "complete documentation," "lookup tables," "data dictionaries," "descriptions of information," "descriptions of . . . any use codes," "separate product list," "SIC code," "quantity values," "net quantity values," "negative unit and dollar values," "datasets and calculations used," "accrued rebates and/or chargebacks," and "periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks."  Biovail will construe the phrase "sales . . . to direct purchasers" to exclude transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company.  Biovail further objects to this Request as overbroad and unduly burdensome to the extent it purports to demand the production of software.  Biovail will not produce any software in response to these Requests; however, to the extent that this Request seeks documents that may be located in a database, such documents will be produced in a format consistent with the agreement regarding e-discovery currently being negotiated by the parties.  Biovail further objects to this request as overbroad and unduly burdensome to the extent it purports to require Biovail to produce documents or information regarding direct purchasers' "parent compan[ies]," including the purported demand Biovail identify direct purchasers that are a "subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like."  Biovail further objects to this Request to the extent it seeks documents not in its possession, custody, or control.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled all sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  Additionally, to the extent Plaintiffs are willing to describe with greater specificity the documents that they seek, Biovail is willing to meet and confer with Plaintiffs to determine whether there are additional responsive documents in Biovail's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 63:**

Data generated by IMS and Verispan in whatever format it was received from IMS or Verispan from 2005 to the present for Wellbutrin XL, Wellbutrin XL generics, and all other drugs used to treat the same conditions as Wellbutrin XL, as follows:

a.  *IMS National Prescription Audit* data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

b.  *IMS National Sales Perspective* data, including total units, extended units, total sales dollars and price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

c.  *Verispan Vector One National (VONA)* data, including TRx, NRx, extended units, retail sales dollars and retail sales price. Preferably, the data should be broken out by manufacturer, product, form, strength, NDC and channel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "Wellbutrin XL generics" and "other drugs used to treat the same conditions as

Wellbutrin XL" are vague and ambiguous.  Biovail will construe the term "generics" consistently

with how that term is used by the Food & Drug Administration.  Biovail also objects to this

Request to the extent it purports to require Biovail to create data or documents for purposes of

this litigation.  Biovail further objects to this Request because much of the information sought is

available to Plaintiffs through sources other than Biovail or that are already in Plaintiffs''

possession, custody, or control.  Biovail also objects to this Request to the extent it seeks

sensitive, confidential, or proprietary third party information.  Biovail further objects to this

Request to the extent it seeks documents or information outside the time period relevant to this

litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or

information protected by the attorney-client privilege, the attorney-work product doctrine, or any

other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections,

Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged IMS

and Verispan data for Wellbutrin XL and "Wellbutrin XL generics," if any, in its possession,

custody, or control for the period January 1, 2005 to March 28, 2009, to the extent Biovail is

permitted to do so under the terms of any agreements restricting Biovail's use of such data.

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to identify all IMS, Verispan, MediSpan, Scott-Levin, PriceChek,

ImpactRx, First DataBank, or other pharmaceutical industry data products purchased by or

available to GSK or Biovail concerning Wellbutrin XL, Wellbutrin XL generics, all other drugs

used to treat the same conditions as Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "available to," "Wellbutrin XL generics," and "other drugs used to treat the same conditions as Wellbutrin XL" are vague and ambiguous.  Biovail will construe the term "generics" consistently with how that term is used by the Food & Drug Administration.  Biovail also objects to this Request because much of the information sought is available to Plaintiffs through sources other than Biovail or that are already in Plaintiffs' possession, custody, or control.  Biovail also objects to this Request to the extent it seeks sensitive, confidential, or proprietary third party information.  Biovail further objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents sufficient to identify pharmaceutical industry data products purchased by Biovail concerning Wellbutrin XL and "Wellbutrin XL generics," if any, in its possession, custody, or control for the period January 1, 2005 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 65:**

All documents related to any other price adjustment given to any direct purchaser not related to specific sales of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the phrases "price adjustment" and "not related to specific sales of Wellbutrin XL" are vague and ambiguous.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled all sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  Additionally, to the extent Plaintiffs are willing to describe with greater specificity the documents that they seek, Biovail is willing to meet and confer with Plaintiffs to determine whether there are additional responsive documents in Biovail's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 66:**

Documents sufficient to show GSK's and Biovail's projected and actual revenues, royalties, expenses, and profits, from sale of Wellbutrin XL, monthly and annually, showing the following: (a) gross revenue; (b) net revenue; (c) cost of goods sold; (d) manufacturing cost; (e) sales and distribution cost; (f) marketing, advertising, promotional, and sales expenses; (g) depreciable and capital improvements; (h) research and development expenditures; (i) licensing fees and royalties paid and received; (j) short-run average variable costs; (k) long-run average

variable costs; (l) fixed costs; (m) materials cost; (n) labor cost; (o) marginal cost; (p) rebates and discounts; (q) gross profit; (r) net profit; (s) unit volume sold; and (t) unit volume sold net of returns.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 66:

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the phrase "sales of Wellbutrin XL" is vague and ambiguous. Biovail will construe the phrase "sale of Wellbutrin XL" to exclude transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company. Biovail also objects to this Request to the extent it purports to require Biovail to create data or documents for purposes of this litigation. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged documents sufficient to show its projected and actual revenues, royalties, expenses, and profits, from sales of Wellbutrin XL to direct purchasers in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

## REQUEST FOR PRODUCTION NO. 67:

All documents concerning the relationship between prices and costs of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the terms "relationship," "prices," and "costs" are vague and ambiguous.  Biovail will construe the term "prices" to mean the price of Wellbutrin XL for sales to direct purchasers in the United States.  Biovail will construe the term "costs" to mean the cost of manufacturing or otherwise acquiring Wellbutrin XL to Biovail.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged documents that discuss or analyze the relationship between prices and costs of Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to identify the list price, average wholesale price, direct price, and wholesale acquisition cost for Wellbutrin XL for each month.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that

the terms "list price," "average wholesale price," "direct price," "and wholesale acquisition cost" are vague and ambiguous.  Biovail also objects to this Request to the extent it purports to require Biovail to create data or documents for purposes of this litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  GSK handled all sales of Wellbutrin XL to direct purchasers in the United States during the relevant time period.  Biovail will produce its agreements with GSK relating to sales of Wellbutrin XL to direct purchasers in the United States as described in its Response to Request for Production No. 69 below.  Additionally, to the extent Plaintiffs are willing to describe with greater specificity the documents that they seek, Biovail is willing to meet and confer with Plaintiffs to determine whether there are additional responsive documents in Biovail's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 69:**

All documents concerning agreements between GSK and Biovail concerning Wellbutrin XL, including without limitation agreements concerning the following:

    a.       Development of Wellbutrin XL, including allocation of costs.

    b.       Regulatory approval of Wellbutrin XL.

    c.       Licensing of Wellbutrin XL or the '341 Patent and '327 Patent.

    d.       Royalties paid or to be paid on the sale of Wellbutrin XL.

    e.       Manufacture of Wellbutrin XL, including manufacturing facility approval.

    f.       Marketing, promotion, advertising, pricing, and sale of Wellbutrin XL.

    g.       Litigation of patent infringement claims concerning the '341 Patent and '327 Patent, or litigation of any other matter concerning Wellbutrin XL.

       h.      Indemnification, joint prosecution, or judgment sharing between GSK and Biovail concerning this action, the underlying actions, or any other legal action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 69:

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail further objects to this Request on the ground that the term "agreements," as well as the phrases "Development of Wellbutrin XL," "Regulatory approval of Wellbutrin XL," "Royalties paid or to be paid on the sale of Wellbutrin XL," "manufacturing facility approval," "Marketing promotion, advertising, pricing, and sale," "any other matter concerning Wellbutrin XL," and "any other legal action," are vague and ambiguous. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged agreements between GSK and Biovail relating to Wellbutrin XL in its possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 70:

Documents sufficient to show the organization of GSK's and Biovail's employees related to the development, manufacture, marketing, sale and distribution of Wellbutrin XL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the terms "development," "marketing," and "sale and distribution of Wellbutrin XL" are vague and ambiguous. Biovail will construe the phrase "sale and distribution of Wellbutrin XL" to exclude transfers of Wellbutrin XL between Biovail and its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company. Biovail further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection. Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Biovail also objects to this Request to the extent it purports to require Biovail to create data or documents for purposes of this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail previously produced documents responsive to Request No. 70 in one or more of the underlying patent infringement actions. Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation. In addition, Biovail will search for and produce additional responsive, non-privileged documents sufficient to show the current organization of Biovail's employees related to Wellbutrin XL, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to show GSK's and Biovail's document destruction, retention and archiving policies and practices and any changes in such policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 71 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail will search for and produce additional responsive, non-privileged documents sufficient to show Biovail's current document destruction, retention, and archiving policies, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to identify GSK's and Biovail's policy or practice concerning back-up of data for each year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects that the phrase "each year" is vague and ambiguous.  Additionally, Biovail objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail previously produced documents responsive to Request No. 71 in one or more of the underlying patent infringement actions.  Biovail will re-produce all of its productions from the underlying actions to Plaintiffs in the present litigation.  In addition, Biovail will search for and produce additional responsive, non-privileged documents sufficient to show Biovail's current document destruction, retention, and archiving policies, if any, in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 73:**

All documents concerning any communications between or among GSK and Biovail and any other person or entity concerning this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Biovail also objects to the extent that Plaintiffs seek documents already in their possession.  Biovail further objects to this Request to the extent it

seeks documents not in its possession, custody, or control. Biovail also objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation. Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows: Biovail will search for and produce responsive, non-privileged communications, if any, in its possession, custody, or control, between Biovail or GSK, on the one hand, and any third-party to this litigation, on the other hand. By agreeing to produce such communications, Biovail does not agree to log any privileged communications or other documents created or made during the course of this antitrust litigation that it would not otherwise be required to log, including but not limited to communications with consulting experts or other privileged or work product materials.

**REQUEST FOR PRODUCTION NO. 74:**

All documents concerning agreements between GSK or Biovail, on the one hand, and any plaintiff, on the other, concerning the purchase and sale of Wellbutrin XL or any other matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Biovail hereby incorporates by reference its General Objections and also objects to this Request on the grounds that the Request is overbroad, unduly burdensome, and seeks documents that are not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Biovail further objects to this Request on the ground that the terms "any plaintiff" and "any other matter" are vague, ambiguous, and overbroad. Biovail also objects to the extent that Plaintiffs seek documents already in their possession. Biovail

further objects to this Request to the extent it seeks documents or information outside the time period relevant to this litigation.  Additionally, Biovail objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, or any other privilege, doctrine, immunity, or protection.

Subject to and without waiving any of the foregoing specific and general objections, Biovail responds as follows:  Biovail will search for and produce responsive, non-privileged agreements between Biovail and any plaintiff concerning the purchase or sale of Wellbutrin XL in the United States, if any, in its possession, custody, or control for the period November 12, 2004 to March 28, 2009.

Dated: July 20, 2009

_/s/  Amanda Tessar_____
Thomas E. Zemaitis
Daniel J. Boland
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

*Admitted Pro Hac Vice*:
M. Sean Royall
Ashley E. Johnson
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX 75201
Telephone: (214) 698-3256
Facsimile: (214) 571-2923

Monique M. Drake
Amanda Tessar
GIBSON DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202
Telephone: (303) 298-5957
Facsimile: (202) 313-2815

**ATTORNEYS FOR BIOVAIL**

## CERTIFICATE OF SERVICE

I, Mary Sherwood, hereby certify that on July 20, 2009, I served a true and correct copy

of the foregoing **BIOVAIL'S OBJECTIONS AND RESPONSES TO DIRECT**

**PURCHASER PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

upon the following counsel via email to the email addresses listed below:

**Counsel for Direct Purchaser Plaintiffs:**

Joseph F. Roda, Esq.
Dianne M. Nast, Esq.
Erin C. Burns, Esq. (Ms.)
Jennifer S. Snyder, Esq.
**Roda & Nast, PC**
801 Estelle Drive
Lancaster, PA  17601
717-892-3000
jroda@rodanast.com
dnast@rodanast.com
eburns@rodanast.com
jsnyder@rodanast.com

Thomas M. Sobol, Esq.
David S. Nalven, Esq.
Debra Gaw Josephson, Esq.
**Hagens Berman Sobol Shapiro LLP**
One Main Street
Cambridge, MA  02142
617-482-3700
Tom@hbsslaw.com
davidn@hbsslaw.com
debraj@hbsslaw.com

Daniel Berger, Esq.
David F. Sorensen, Esq.
Eric L. Cramer, Esq.
Peter R. Kohn, Esq.
Daniel Simons, Esq.
**Berger & Montague PC**
1622 Locust Street
Philadelphia, PA  19103
215-875-5712
danberger@bm.net
dsorensen@bm.net
ecramer@bm.net
pkohn@bm.net
dsimons@bm.net

Linda P. Nussbaum, Esq.
John D. Radice, Esq.
**Kaplan Fox & Kilsheimer LLP**
850 Third Avenue, 14th Floor
New York, NY  10022
212-687-1980
lnussbaum@kaplanfox.com
jradice@kaplanfox.com

**Counsel for Defendants SmithKline Beecham Corp. and GlaxoSmithKline plc:**

Arthur Makadon, Esq.
Edward D. Rogers, Esq.
Susanna R. Greenberg, Esq.
Taimarie N. Adams, Esq.
**Ballard Spahr Andrews & Ingersoll, LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103
215-665-8500
rogerse@ballardspahr.com
greenbergsr@ballardspahr.com
adamst@ballardspahr.com
makadon@ballardspahr.com

John M. Desmarais, Esq.
Michael P. Stadnick, Esq.
Timothy K. Gilman, Esq.
Chong Park, Esq.
**Kirkland & Ellis LLP**
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
(212) 446-4800
john.desmarais@kirkland.com
michael.stadnick@kirkland.com
timothy.gilman@kirkland.com
chong.park@kirkland.com

David Gersch, Esq.
James W. Cooper, Esq.
Daniel Pariser, Esq.
**Arnold & Porter LLP**
555 Twelfth Street, NW
Washington, DC  20004
Phone:  (202) 942-5125
David.Gersch@aporter.com
James.W.Cooper@aporter.com
Daniel.Pariser@aporter.com

/s/ Mary Sherwood

100696767v1