## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431 |
| | **GSK'S MEMORANDUM OF LAW IN RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| THIS DOCUMENT RELATES TO: | |
| DIRECT PURCHASER ACTIONS | Hon. Mary A. McLaughlin |

Defendants SmithKline Beecham Corporation and GlaxoSmithKline plc (collectively "GSK") hereby respond to Direct Purchaser Plaintiffs' September 28, 2009 motion to compel discovery.

## I.    INTRODUCTION

Direct Purchaser Plaintiffs' motion to compel gives truth to the old adage that "no good deed goes unpunished."  In accordance with the top two priorities specifically articulated by Plaintiffs — and that Plaintiffs claimed they need for class certification purposes — GSK has (1) already produced transactional data for the years 2005-2007[1]; and (2) is working with Plaintiffs to produce the third-party data that they have requested.  Yet Plaintiffs have now filed a wholly unnecessary motion to compel demanding the "full and complete production" of specific categories of lower priority documents within five (5) days, purportedly because any later production will "make it **impossible** for Plaintiffs to obtain a timely expert report on class certification issues." (emphasis added) (Plaintiffs' Mem. at 6.)  As explained below, Plaintiffs'

---

[1] As GSK informed Plaintiffs, transactional data for 2008 will be produced when it becomes available this month.

claims of impending and substantial prejudice lack merit.  Moreover, GSK is diligently fulfilling its obligation to respond to Plaintiffs' myriad requests for production, and has not refused to produce the documents targeted through the instant motion.  For those reasons, and for the other reasons set forth herein, Plaintiffs' motion should be denied.

## II.     FACTUAL BACKGROUND

On August 14, 2009, the parties participated in a telephone conference in which Plaintiffs requested three specific categories of documents from GSK on a priority basis: (1) Wellbutrin XL transactional data; (2) third-party IMS data; and (3) forecasts regarding generic market entry.[2]  Plaintiffs emphasized that the transactional data was the most urgent, followed by the third-party data.   In accordance with this prioritization, GSK subsequently collected and produced all of its transactional data for Wellbutrin XL for 2005-2007 — including all sales, credits, returns, samples, adjustments, chargebacks, rebates and fees, extracted from multiple sources.  (Ex. A, 9/1/2009 E. Bernard Letter to D. Nalven and A. Nesbitt.)  At the same time, GSK commenced the process of producing the third-party IMS data by seeking the required information from all parties to secure permission and prepare the necessary agreements for production of this third-party data.  (Ex. B, 8/31/2009 E. Bernard E-mail to Counsel.)[3]  GSK was also working (and is continuing to work) on the substantial task of identifying, collecting, and reviewing numerous electronic and hardcopy documents potentially responsive to Plaintiffs' document requests, including specifically identifying the additional documents requested by

---

[2] The Court entered a Scheduling Order on August 5, 2009.  (D.I. 98.)  Under the Scheduling Order in this case, class action discovery does not conclude until March 12, 2010 and fact discovery does not close until October 15, 2010.  *Id.*  The Stipulated Protective Order was signed by the Court on August 21, 2009.  (D.I. 104.)

[3] Plaintiffs do not seek to compel production of these documents.  (*See* Plaintiffs' Mem. at 4.)

Plaintiffs on a priority basis.

On September 16, 2009, three months before class certification opening briefs, Plaintiffs' counsel sent GSK a letter listing several broad document requests and demanding priority production of *all* responsive documents — a demand substantially broader than what GSK understood Plaintiffs to request during the August 14th telephone conference — including:

- All documents concerning potential or actual market entry of generic Wellbutrin XL;

- All documents concerning forecasts or projections of the effects on branded Wellbutrin XL units sales, dollar sales, prices and profits from the marketing and sale of one or more versions of generic Wellbutrin XL;

- All documents concerning marketing plans, surveys or studies concerning the effect of market entry of generic Wellbutrin XL on sales of branded Wellbutrin XL;

- All documents concerning pricing of Wellbutrin XL, including documents concerning the factors considered by GSK and Biovail in setting or changing list prices or adjustments to prices, such as rebates and discounts, of branded Wellbutrin XL; and

- All documents concerning actual, potential, desired, or forecasted switching or substitution between branded Wellbutrin XL and generic Wellbutrin XL.

(Ex. C, 9/16/09 P. Kohn Letter to A. Tessar and M. Stadnick.)  Plaintiffs then demanded that GSK "substantially complete production" of the documents within six days.  (Ex. D, 9/22/09 P. Kohn E-mail to A. Tessar and M. Stadnick.)  GSK responded by confirming that — in addition to the substantial amount of data already produced — it is working to produce additional responsive documents, while inquiring why Plaintiffs now believed they were entitled to broad discovery on an expedited basis.  (Ex. E, 9/23/09 E. Bernard Letter to P. Kohn.)  Instead of responding to GSK's inquiry by engaging in a meet and confer process, Plaintiffs filed the instant motion to compel.

III.    **ARGUMENT**

A.    **Plaintiffs' Motion Should Be Denied Because It Is Unnecessary.**

GSK ***has not*** refused to produce the documents demanded by Plaintiffs' motion to compel.  Rather, GSK is in the process of collecting, reviewing, and producing non-privileged documents responsive to Plaintiffs' document requests — to the extent that any such documents exist — including, but not limited to, the specific documents subject to the instant motion to compel.  GSK has already produced much of the "high priority" data and information requested by Plaintiffs as relevant to class certification issues, including GSK's transactional data for the years 2005-2007.  As communicated to Plaintiffs, GSK expects transactional data for 2008 to be available this month, and GSK has also actively worked with Plaintiffs to secure the necessary authorizations for GSK to produce the third-party data that Plaintiffs have requested on a high priority basis for class-certification purposes.

Plaintiffs nevertheless claim that without an Order compelling immediate production of the documents sought in their motion, it will be "impossible for Plaintiffs to obtain a timely expert report on class certification."  (Plaintiffs' Mem. at 6.)  That assertion fails to withstand scrutiny.  Plaintiffs simply cannot explain how the remaining, lowest-priority category of documents that they requested for class-certification purposes is necessary — let alone ***immediately*** — given the substantial amount of information already available to Plaintiffs and the considerable amount of time remaining before class certification briefing.  Indeed, the ***actual*** transactional data already provided by GSK should speak to issues of class-wide impact better than documents relating to generic entry projections or post-entry analyses.  *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 323 (E.D. Mich. 2001) (reciting class certification expert's reliance on actual data to perform own analysis of the impact of generic market entry).  Plaintiffs have not explained how Defendants' generic entry projections or post-entry analyses will provide

4

any additional information for class certification not already reflected in the actual transactional data.[4]  Consistent with Plaintiffs' own ranking of the documents sought in this motion as lowest priority, Plaintiffs have available at this time substantial information to proceed with their class certification efforts.

Moreover, class certification briefing is still months away and GSK has informed Plaintiffs that it is proceeding with collection, review and production of documents.  Plaintiffs cannot question that in any complex litigation the process of producing responsive documents does not happen overnight — indeed, Plaintiffs have not produced numerous documents responsive to GSK's requests.  (*See, e.g.,* Ex. E; Ex. F, Plaintiff RDC's Resp. to Doc. Req.)  GSK continues diligent work to produce responsive documents and subject to its objections, will produce any existing documents responsive to Plaintiffs' requests.  Accordingly, no basis exists for the Plaintiffs to seek an order compelling the production of any documents and any intervention by the Court at this time is unnecessary.

## B.     Plaintiffs Did Not Make A Good Faith Effort To Confer With GSK Prior To Seeking Court Intervention.

Plaintiffs' motion should also be denied for the simple reason that they did not comply with their meet and confer obligations prior to filing the motion — which may have rendered the filing of such a motion unnecessary.  While Plaintiffs claimed that Defendants somehow "changed their tune," such is simply not the case.  Despite GSK's clear efforts and demonstrated willingness to produce documents in accordance with Plaintiffs' priority demands, Plaintiffs subsequently sought to broaden the scope of the priority categories and to unilaterally impose an

---

[4] GSK has not disputed the relevance of this information to the merits of this action, but GSK does challenge Plaintiffs' claimed immediate need for the documents for class certification efforts, particularly in light of the substantial amount of information already available at this time to Plaintiffs.

unreasonable expedited deadline for GSK's production.  When GSK simply asked for clarification as to how this set of broad requests were relevant to class certification issues, Plaintiffs responded by filing the instant motion to compel.

In so doing, Plaintiffs failed to make a good faith effort to resolve the discovery dispute at issue in this motion prior to invoking Court intervention as required by Federal Rule of Civil Procedure 37(a) and Local Rule 26.1(f).  Rule 37(a) requires that a party moving to compel must submit to the court "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  FED. R. CIV. P. 37(a)(1).  Local Rule 26.1(f) states that "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."  E.D. PA. R. 26.1(f).

Though Plaintiffs certify they conferred with GSK in accordance with the Rules,[5] Plaintiffs did not confer with GSK in effort to resolve the discovery dispute regarding the specific documents at issue in this motion, including to clarify the request for the specific documents on a priority basis or to discuss a reasonable timeframe for production.  Plaintiffs did not respond to GSK's request for an explanation regarding the scope of the documents sought in the September 16th letter, and indeed do not seek to compel production of all documents responsive to the document requests identified therein.  Moreover, any effort by Plaintiffs was

---

[5] Plaintiffs incorrectly state the date of the telephone conference as August 12th.  (*See* Plaintiffs' Mem. at 3; Ex. C.)  All other dates regarding a supposed meet and confer are references to written correspondence by Plaintiffs' counsel.  (*See* Plaintiffs' Mem. at 3; Ex. G, 8/18/09 P. Kohn E-mail to A. Tessar and M. Stadnick; Ex. H, 8/28/09 P. Kohn E-mail to A. Tessar and M. Stadnick; Ex. C; Ex. D.)

clearly not a *good faith* effort to confer with GSK to resolve discovery disputes before seeking this Court's intervention.  *See Navient Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003) (finding failure to comply with the requirements of Fed. R. Civ. P. 37 and Local Rule 26.1(f) where plaintiff's counsel sent letter imposing a deadline that opposing party might not have been able to meet); *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 153 (D.N.J. 1999) (finding "token effort" of demanding discovery response by deadline and threatening motion to compel does not satisfy obligations under Fed. R. Civ. P. 37).

Plaintiffs' unilateral imposition of an unreasonable deadline for "substantially" completing production and failure to attempt in good faith to resolve any dispute has required GSK to allocate time and effort to respond to an unnecessary motion — time that could be spent continuing to identify, collect and review documents for production.  Regardless, GSK continues to work diligently to produce responsive documents in a timely manner and will produce the requested documents to the extent such documents exist.  Accordingly, for this reason as well, the Court should deny Plaintiffs' motion to compel.

**IV.     CONCLUSION**

For the foregoing reasons, GSK respectfully requests the Court deny Plaintiffs' motion to compel.

Dated:  October 13, 2009

_/s/ Edward D. Rogers_
John M. Desmarais (admitted _pro hac vice_)
Michael P. Stadnick (admitted _pro hac vice_)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Chong S. Park (admitted _pro hac vice_)
KIRKLAND & ELLIS LLP
655 15th Street, NW, 12th Floor
Washington, DC  20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

Arthur Makadon
Edward D. Rogers
Susanna R. Greenberg
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103
Telephone:  (215) 665-8500
Facsimile: (215) 864-8999

_Attorneys for Defendant SmithKline
Beecham Corp._

8

## <u>CERTIFICATE OF SERVICE</u>

I, Edward D. Rogers, certify that on the 13th day of October, 2009, **GSK'S MEMORANDUM OF LAW IN RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DISCOVERY** was served upon all counsel of record, identified on the attached service list, via email and by operation of the electronic filing system of the United States District Court For The Eastern District of Pennsylvania.

| | |
|---|---|
| Joseph F Roda<br>Dianne M. Nast (DMN 1791)<br>Jennifer S. Snyder<br>**RODANAST, P.C.**<br>801 Estelle Drive<br>Lancaster, PA 17601<br>Telephone: (717) 892-3000<br>Fax: (717) 892-1200 | Thomas M. Sobol<br>David S. Nalven<br>Debra Gaw Josephson<br>**HAGENS BERMAN SOBOL<br>     SHAPIRO LLP**<br>One Main Street<br>Cambridge, MA 02142<br>Telephone: (617) 482-3700<br>Fax: (617) 482-3003 |
| David F. Sorensen<br>Eric L. Cramer<br>Peter Kohn<br>Daniel Simons<br>Sarah Schalman-Bergen<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Fax: (215) 875-4604 | Linda P. Nussbaum<br>John D. Radice<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>14th Floor<br>New York, NY 10022<br>Telephone: (212) 687-1980<br>Fax: (212) 687-7714 |
| M. Sean Royall<br>**GIBSON, DUNN & CRUTCHER LLP**<br>2100 McKinney Avenue<br>Suite 1100<br>Dallas, TX 75201-6912 | |

*/s/ Edward D. Rogers*

9