THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: WELLBUTRIN XL ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>Direct Purchaser Actions | Case No.: 2:08-cv-2431<br><br>Hon. Mary A. McLaughlin |

**GSK'S FIRST REQUEST FOR PRODUCTION OF
<u>DOCUMENTS TO DIRECT PURCHASER PLAINTIFFS</u>**

Pursuant to FED. R. CIV. P. 34, Defendants SmithKline Beecham Corporation and GlaxoSmithKline plc (collectively "GSK") hereby submits its First Request for Production of Documents to the Direct Purchaser Plaintiffs ("plaintiff"). For purposes of these document Requests, the Direct Purchaser Plaintiffs are defined as American Sales Company, Inc., Meijer, Inc., Meijer Distribution Inc., and Rochester Drug Co-operative, Inc., including their current and former affiliates, subsidiaries, agents, and purported assignors (including but not limited to Cardinal Health, Inc. and Frank W. Kerr Co.), and representatives.

GSK requests that plaintiff produce the following documents and things for inspection at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Suite 1200, Washington, DC 20005, or at such place as may be agreed upon by counsel. In accordance with FED. R. CIV. P. 34, plaintiff shall submit separate responses to the following document Requests within thirty (30) days, or by July 20, 2009. Each document Request is subject to the Definitions and Instructions set forth below.

## DEFINITIONS AND INSTRUCTIONS

1. If you object to any part of a Request, set forth the basis for your objection and respond to all parts of the Request to which you do not object.

2. "You," "your," "plaintiff" and "plaintiffs" mean American Sales Company, Inc., Meijer, Inc., Meijer Distribution Inc., and Rochester Drug Co-operative, Inc., including their current and former affiliates, subsidiaries, agents, and purported assignors (including but not limited to Cardinal Health, Inc. and Frank W. Kerr Co.), and representatives., both individually and collectively.

3. "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. "Document" means anything which may be considered to be a document or tangible thing within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or communications, electronic mail/messages and/or "e-mail," instant messaging, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as

CDs, DVDs, memory sticks, floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by a plaintiff or anyone else.

4. "Relating to" is used in the broadest possible sense and means, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reflecting, reporting, stating, or summarizing.

5. "Communication" is used in the broadest possible sense and means every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6. "Describe," "state," and "set forth" mean to indicate fully and unambiguously each relevant fact of which you have knowledge.

7. "Litigation" refers to the above-captioned case.

8. "GSK" means SmithKline Beecham Corporation, GlaxoSmithKline plc, as well as their current and former parents, subsidiaries, and affiliates.

9. "Biovail" means Biovail Corporation, Biovail Laboratories, Inc., and Biovail Laboratories International SRL as well as its current and former parents, subsidiaries, and affiliates.

10. "Third party" or "third parties" means any person or entity other than GSK, Biovail, or plaintiffs, including, but not limited to, those persons and entities identified by plaintiff in all its Initial Disclosures, manufacturers, wholesalers, distributors, retailers, formularies, insurers, the Food and Drug Administration, third-party payors, consumers, physicians, nurses, and other health care providers.

11. "Antidepressant" means any prescription pharmaceutical used to treat depression.

12. "Wellbutrin XL" is an antidepressant that was sold by GSK and is used herein in the same manner as it is used in the plaintiffs' Complaint.

13. You are to produce entire documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any documents. Copies which differ in any response from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Privileged redactions must be included in a privilege log; any non-privileged redactions must also be included in a log describing the basis for the redaction.

14. If any privilege is claimed as a ground for not producing a document or tangible thing, provide a privilege log describing the basis for the claim of privilege and all information necessary for Defendants and the Court to assess the claim of privilege, in accordance with FED. R. CIV. P. 26(b)(5). Separately, for each document and attachment withheld or redacted, the log shall include the following: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addressees and recipients of the document or attachment or any copy thereof (including persons "cc'd," "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail

to assess the claim of privilege; (vii) the bates range or page length of the document or attachment; and (viii) the Requests to which the document or attachment are responsive.

15. Whenever necessary to bring within the scope of a Request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

a) Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the Request more inclusive;

b) Construing the singular form of any word to include the plural and the plural form to include the singular;

c) Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

d) Construing the masculine form to include the feminine form;

e) Construing the term "Date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters; and,

f) Construing negative terms to include the positive and vice versa;

g) Construing "include" to mean include or including "without limitation."

16. Each Request is propounded separately upon each named plaintiff and requires a separate response from each plaintiff.

17. Documents requested are those in the actual or constructive possession, custody, or control of plaintiffs, or anyone acting on behalf of a plaintiff.

18. These document Requests are continuing in nature, up to and during the course of trial. Documents and tangible things sought by these requests that you obtain after you serve your answers must be produced to counsel for Defendants by supplemental answers or productions pursuant to FED. R. CIV. P. 26(e).

19. The relevant time period for these Requests is from January 1, 2003 through the date of these Requests, unless otherwise stated.

**DOCUMENT REQUESTS**

1. All documents relating to your purchases of Wellbutrin XL, including but not limited to inventory logs, price lists, contracts, purchase orders, bills of lading, invoices, bills, canceled checks, receipts, and all other documents or data reflecting the amounts of Wellbutrin XL you purchased, the prices you paid for the Wellbutrin XL you purchased, and all applicable rebates, allowances, offsets, chargebacks, or discounts relating to the Wellbutrin XL you purchased.

2. All documents relating to your purchases of generic forms of Wellbutrin XL, including but not limited to inventory logs, price lists, contracts, purchase orders, bills of lading, invoices, bills, canceled checks, receipts, and all other documents or data reflecting the amounts of generic forms of Wellbutrin XL you purchased, the prices you paid for the generic forms of Wellbutrin XL you purchased, and all applicable rebates, allowances, offsets, chargebacks, or discounts relating to the generic forms of Wellbutrin XL you purchased.

3. All documents relating to your sales of Wellbutrin XL, including but not limited to pharmacy logs, customer lists, price lists, contracts, purchase orders, bills of lading, invoices, bills, checks received, receipts, and all other documents or data reflecting the amounts of Wellbutrin XL you sold and the prices charged for Wellbutrin XL you sold, including all applicable rebates, discounts, chargebacks, offsets, and allowances, the amount of any insurance or other health benefit co-payment(s) that applied to the transaction, the name of each insurance carrier or other health benefit provider that covered any portion of the purchase price, the name of the insurance or other health benefit plan(s) that provided coverage, and the total amount the customer paid.

4. All documents relating to your sales of generic forms of Wellbutrin XL, including but not limited to pharmacy logs, customer lists, price lists, contracts, purchase orders, bills of lading, invoices, bills, checks received, receipts, and all other documents or data reflecting the amounts of generic forms of Wellbutrin XL you sold and the prices charged for generic forms of Wellbutrin XL you sold, including all applicable rebates, discounts, chargebacks, offsets, and allowances, the amount of any insurance or other health benefit co-payment(s) that applied to the transaction, the name of each insurance carrier or other health benefit provider that covered any portion of the purchase price, the name of the insurance or other health benefit plan(s) that provided coverage, and the total amount the customer paid.

5. All documents relating to the resale of Wellbutrin XL by your direct or indirect customers, including all available information for each sale such as the date and location of the transaction, the name of the customer, the quantity of Wellbutrin XL sold, the price charged per unit, the amount of any discounts, coupons, or rebates that the customer received.

6. All documents relating to the resale of generic forms of Wellbutrin XL by your direct or indirect customers, including all available information for each sale such as the date and location of the transaction, the name of the customer, the quantity of generic forms of Wellbutrin XL sold, the price charged per unit, the amount of any discounts, coupons, or rebates that the customer received.

7. All price lists and other documents identifying the prices you charge for all of the Antidepressants you sell.

8. All documents identifying the prices you pay for all of the Antidepressants you sell, including all applicable rebates, discounts, chargeback, offsets, and allowances.

9. All documents relating to how you decide which Antidepressants to sell and how to price Antidepressants, including whether or not to stock both brand-name and generic versions of a given Antidepressant, whether or not to stock more than one generic version or label of a given brand-name product, whether or not to stock a brand-name product but not its generic counterpart, whether or not to stock a generic Antidepressant but not its brand-name counterpart, how much to charge for generic and brand-name oral contraceptives, and how much to differentiate between the prices charged for generic and brand-name versions of a given Antidepressant product.

10. All documents relating to competition among Antidepressants, including, but not limited to, Wellbutrin XL, Wellbutrin SR, Wellbutrin, and their AB-rated generic counterparts.

11. All documents relating to generic forms of Wellbutrin XL.

12. All documents relating to the impact that drug product detailing of Antidepressants has on your business, including but not limited to the practice of providing free drug product samples to medical professionals who in turn provide those free samples to their patients.

13. All documents relating to insurance coverage and reimbursements, co-payments, third party payor coverage, and other health benefit coverage for Wellbutrin XL, including, but not limited to, communications with insurance companies, health maintenance organizations, managed care organizations, third party payors, pharmacy benefit managers, state and federal governments, and others.

14. All documents concerning any assignment of rights or other transfer of interests relating to your participation in this Litigation.

15. All documents relating to or reflecting your communications with third parties, including, but not limited to, Plumbers and Pipefitters Local 572 Health and Welfare Fund and IBEW-NECA Local 505- Health and Welfare Plan, that relate to Wellbutrin XL, your participation in this Litigation, or any of the Defendants in this Litigation.

16. All documents relating to damages you claim to have suffered, including calculations of the total amount of damages claimed and how such damages were calculated.

17. All sworn testimony given by you, or any of your agents or representatives in their capacity as such, in any litigation relating to prescription drugs or prescription drug benefits.

18. All documents relating to each instance in which a government entity or agency has accused, charged, or convicted you of a crime or other violation of law.

19. All documents relating to any contract, agreement, or understanding with a third party in which you or the third party agreed to purchase, sell, manufacture, supply, or distribute any pharmaceutical product on an exclusive basis.

20. All documents relating to your allegation that GSK and/or Biovail filed sham infringement actions against generic manufacturers.

21. All documents relating to your allegation that GSK and/or Biovail improperly listed U.S. Patent No. 6,143,327 in the Orange Book.

22. All documents concerning your allegation that GSK and/or Biovail filed a sham Citizen Petition.

23. All documents relating to this Litigation and your decision to participate in this Litigation.

24. All documents relating to any manner of payment or compensation you have received or expect to receive as a result of your participation in this Litigation.

25. All documents relating to any of the following individuals or entities: Plumbers and Pipefitters Local 572 Health and Welfare Fund and IBEW-NECA Local 505-Health and Welfare Plan, Cardinal Health, Inc., and Frank W. Kerr Co.

26. All expert reports, other materials or documents which were reviewed or relied upon, in whole or in part, by any expert you expect to call or may call to testify in this Litigation at any time, including but not limited to class certification proceedings, summary judgment proceedings, and trial.

27. All documents you intend to use in support of your allegations in this Litigation.

28. All documents you referred to, described, or relied upon in your responses to Defendant SmithKline Beecham's First Set Of Interrogatories To Direct Purchaser Plaintiffs.

29. All documents not mentioned above that relate to Wellbutrin XL or this Litigation.

Dated: June 19, 2009

    /s/ Michael P. Stadnick
John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Arthur Makadon
Edward D. Rogers
Susanna R. Greenberg
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
1735 Market Street, 51st Floor

                                        Philadelphia, Pennsylvania  19103
                                        Telephone:  (215) 864-8122
                                        Facsimile:  (215) 864-9751

                                        *Attorneys for Defendant SmithKline*
                                        *Beecham Corp.*

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2009 a copy of DEFENDANT SMITHKLINE BEECHAM'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DIRECT PURCHASER PLAINTIFFS was served on counsel as follows:

**BY FIRST CLASS MAIL AND ELECTRONIC MAIL**

| | |
|---|---|
| Joseph F Roda<br>Dianne M. Nast (DMN 1791)<br>Jennifer S. Snyder<br>**RODANAST, P.C.**<br>801 Estelle Drive<br>Lancaster, PA 17601<br>Telephone: (717) 892-3000<br>Fax: (717) 892-1200 | Thomas M. Sobol<br>David S. Nalven<br>Debra Gaw Josephson<br>**HAGENS BERMAN SOBOL<br>      SHAPIRO LLP**<br>One Main Street<br>Cambridge, MA 02142<br>Telephone: (617) 482-3700<br>Fax: (617) 482-3003 |
| David F. Sorensen<br>Eric L. Cramer<br>Peter Kohn<br>Daniel Simons<br>Sarah Schalman-Bergen<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Fax: (215) 875-4604 | Linda P. Nussbaum<br>John D. Radice<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>14th Floor<br>New York, NY 10022<br>Telephone: (212) 687-1980<br>Fax: (212) 687-7714 |
| M. Sean Royall<br>**GIBSON, DUNN & CRUTCHER LLP**<br>2100 McKinney Avenue<br>Suite 1100<br>Dallas, TX 75201-6912 | Arthur Makadon<br>Edwards Rogers<br>Susanna Greenberg<br>**BALLARD SPAHR ANDREWS &<br>      INGERSOLL, LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103 |

                                                            /s/ Jason Emden
                                                                Jason Emden