

## HAGENS BERMAN
### SOBOL SHAPIRO LLP

DAVID S. NALVEN
DIRECT • (617) 475-1953
davidn@hbsslaw.com

September 22, 2009

**BY EMAIL**

John M. Desmarais, Esq.
Michael P. Stadnick, Esq.
Chong S. Park, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Arthur Makadon, Esq.
Edward Rogers, Esq.
Susanna Greenberg, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

      Re:    *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
                 <u>C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)</u>

Dear Counsel:

    We have reviewed GSK's Objections and Responses to Plaintiffs' First Set of Document Requests ("Responses"). These Responses make clear that there are many issues to resolve regarding discovery in this litigation. This letter attempts to address many of these issues and Plaintiffs are open to having a meet and confer to help achieve as quick and effective a resolution as possible. We had hoped to defer these issues until after documents had been produced, as some of them might be mooted by the production, but given the passage of time without substantial production find it is necessary to raise these issues now. Plaintiffs reserve all rights to raise additional issues after further review of the Responses and of the documents GSK ultimately produces.

    This letter does not specifically address GSK's objections regarding the production of documents that are under protective orders in the underlying litigation. That issue is being addressed in the briefing of Plaintiffs' Motion to Compel and in accordance with the procedures outlined by the Court on August 4, 2009. Plaintiffs believe that these procedures fully address the objections raised in General Objection No.

ATTORNEYS AT LAW      SEATTLE  LOS ANGELES  BOSTON  PHOENIX  CHICAGO  SAN FRANCISCO  NEW YORK
T 617.482.3700    F 617.482.3003                            
55 CAMBRIDGE PARKWAY  SUITE 301  CAMBRIDGE, MASSACHUSETTS 02142
www.hbsslaw.com

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 2

5 and Response Nos. 6-11, 43, 44, and 46. This letter also does not address the timing of
the production of documents GSK has agreed to produce on a priority basis, which is the
subject of separate correspondence. It also does not address the matter of which
documents may be logged by category, which we have also been handling separately.

 *Date Range:* GSK objects to Plaintiffs' requested date range, but fails to
propose an alternative date range for any of the requests. Plaintiffs seek documents
responsive to the requests that cover the period of January 1, 1997 to the present. The
reason for this date range is clearly identified in Plaintiffs' Complaint. The Plaintiffs
allege that GSK sought to stave off the entry of Generic Wellbutrin SR, "looked for other
opportunities to continue to prolong its monopoly position of bupropion hydrochloride
products, and . . . sought to gain that position before generic entry of Wellbutrin SR
occurred in order to leverage the Wellbutrin SR position." Compl. ¶¶ 64-65. The
Complaint also alleges that, in seeking any patent it could obtain for the once-a-day
formulation of bupropion hydrochloride, Pharma Pass "grappled with the reality that its
purported invention was based upon materials and techniques long disclosed in the public
domain and used for other pharmaceutical products." Compl. ¶ 71. In denying GSK's
motion to dismiss these claims, the Court noted that Plaintiffs alleged that "Pharma
Pass's chemists created an extended release version of the drug using off-the-shelf
chemical compounds unworthy of patent protection in themselves." March 16, 2009
Order at 5. As a result of the Court's denial of GSK's motion to dismiss, Plaintiffs are
entitled to pursue these claims.

 Documents from this time period could be directly relevant, among other things,
to prove that (1) the underlying litigations were objectively baseless and (2) the motives
behind the Defendants' actions were anti-competitive. For example, in response to
Request No. 32, which requests "[a]ll documents concerning potential or actual market
entry of generic Wellbutrin SR," GSK may possess documents that indicate the perceived
need to find an extension of bupropion hydrochloride, regardless of how tenuous the
patent may be. Similarly, in response to Request No. 27, which requests "[a]ll documents
concerning the use of acid stabilizers in bupropion formulations," GSK may possess
documents from 1997 that analyze whether a bupropion formulation exists free of
stabilizer, revealing the ease with which scientists could make such a determination.
These documents would clearly be relevant. Therefore, it is reasonable for Plaintiffs to
seek documents from this time period.

 With respect to the end date of the date range, Plaintiffs' request to produce
documents through the present is based on the ongoing nature of the damages (which we
have no reason to believe have stopped accruing; only expert analysis, including of up-to-
date transactional data, will determine for sure), and the ongoing nature of the challenged
conduct (which includes any agreements to delay the entry of GSK's generic
competitors).

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 3

  GSK also argues that Plaintiffs' requests are overly broad because they apply the same date range to each request, "without regard to whether application of that full date range to the specific subject matter of any particular request is reasonably calculated to yield relevant information considering the nature of the allegations in the complaint." This statement ignores the fact that certain of the requests called for a narrower date range than others did (*i.e.*, Request Nos. 24, 62, and 63). GSK's failure to propose an alternative date range for any of the requests further undermines its critique. GSK's statement that it will produce documents "after a reasonable search directed to a date range reasonably calculated to yield relevant documents or lead to the discovery of relevant information given the subject matter of each request" is inadequate without a corresponding statement of the date range searched for each request. Plaintiffs are open to discussion at a meet and confer with GSK regarding an appropriate date range for GSK's production.

  *Geographic Scope:* GSK similarly objects to the geographic scope of Plaintiffs' allegations, but again fails to propose an alternative. Plaintiffs are willing to restrict the requests to a variation of the limitation proposed by Biovail, which would cover documents relating to Wellbutrin XL-related activities affecting the United States and its territories.

  *"To the Extent That" Objection:* In General Objection No. 6 and throughout the Responses, GSK asserts a series of objections "to the extent that" requests are "overbroad and unduly burdensome in calling for the production of documents and things that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence." However, GSK never reveals "the extent that" any of the requests actually suffer from these purported defects, and so Plaintiffs are left to guess whether and to what extent GSK is withholding documents subject to its General Objection No. 6. GSK must disclose the documents withheld on this basis. The same circumstances apply to GSK's General Objection No. 13, which objects to each Request "to the extent that it seeks information that is more efficiently obtainable through less burdensome means." Plaintiffs request that GSK disclose whether and to what extent it is withholding documents subject to General Objection Nos. 6 and 13.

  *Privilege Objection:* In General Objection No. 3 and in many of GSK's responses to specific objections, GSK objects to the production of privileged or otherwise protected materials. Until documents (in addition to the previously produced transactional data) or a privilege log are produced, it is hard for Plaintiffs to respond to these objections. (In addition, determination of which, if any, portions of the privilege log may be logged by category remains an open issue among the parties.) As GSK reviews its documents, Plaintiffs emphasize that "attorney-client privilege does not shield documents merely because they were transferred to or routed through an attorney." *Southeastern Pa. Transp. Auth. v. Caremark PCS Health*, 254 F.R.D. 253, 259 (E.D. Pa. 2008) ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is copied on correspondence or

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 4

memoranda."). As a result, Plaintiffs anticipate that GSK's production will contain some communications between in-house counsel or outside counsel and other employees that do not involve the seeking or providing of legal advice.

*Identification of Custodians:* Numerous responses by GSK indicate that it will conduct a "reasonable search." Given the volume of materials at issue in the case, we ask GSK to identify the custodians whose files are to be searched.

*Public Sources:* In General Objection No. 9, GSK objects to the requests to the extent they call "for information that is in the public domain and, therefore, of no greater burden for Plaintiffs than GSK to obtain." The mere fact that information or documents are publicly available is not enough to justify the refusal to produce a document. When one party has easier access to the public information or documents, courts have required that the materials be produced. *See Swarthmore Radiation Oncology, Inc. v. Lapes*, Civ. Act. No. 92-3055, 1993 U.S. Dist. LEXIS 17059, at *9 (E.D. Pa. Nov. 15, 1993) (holding that a producing party's objection to providing addresses "on the ground that the information is available to the plaintiffs from phone books, etc." left the Court "unpersuaded."); *Phillips v. Dale*, Civ. Act. No. 86-2690, 1987 U.S. Dist. LEXIS 10581, at *6-7 (E.D. Pa. Apr. 15, 1987) ("Judicial economy and facilitation of the litigation process demand that information readily accessible to plaintiff, to which defendant does not have equal access should be produced even if defendant could eventually, with expended energy and resources obtain them from another source. Plaintiff's objections are not sustainable simply because the information he seeks is equally available to both parties."). Rather than engage in a hypothetical discussion concerning the relative burdens of producing or obtaining "publicly available" documents, we request that GSK identify the documents it seeks to withhold on this basis and the parties can confer on how these materials reasonably should be gathered.

*"All Documents" Objection:* In General Objection No. 8, GSK objects to each request "to the extent that it purports to require the production of 'all' documents or things." Document requests are not overly broad merely for requesting "all" of a certain type of document. Moreover, GSK is not able to pick and choose which documents from a category it will produce because such an approach would undermine the discovery process. Plaintiffs are open to a meet and confer about any allegedly overbroad requests.

*Definition of "GSK":* In General Objection No. 10, GSK objects to Plaintiffs' proposed definition of "GSK" "to the extent that it includes persons or entities other than SmithKline Beecham Corporation or Glaxosmithkline plc, or to any persons other than GSK's present employees and agents." GSK's proposed definition is inadequate because it fails to include former employees or agents of GSK. For example, when document requests call for communications from GSK, a letter written by a former employee of GSK who was writing the letter in the scope of his employment by GSK should be produced.

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 5

*"Generic Wellbutrin" Objection:* GSK asserts a general objection to Plaintiffs' definitions of "Generic Wellbutrin SR" and "Generic Wellbutrin XL" as overly broad "to the extent that they extend to products not at issue in the underlying litigation." These terms are intentionally broader than the four products at issue in the underlying litigation because Plaintiffs are entitled to know about GSK's and Biovail's plans for delaying the entry of, or filing of ANDAs by, all generic manufacturers, not just those at issue in the underlying litigation. Such information would be admissible at trial to show, for instance, GSK and Biovail's subjective motivation to thwart competition, which is undoubtedly relevant under the *PRE* decision. Plaintiffs are nonetheless willing to discuss at a meet and confer about any specific requests in which GSK believes that requests for materials concerning "Generic Wellbutrin SR" or "Generic Wellbutrin XL" should be limited to materials concerning the generic products at issue in the underlying litigation.

*Citizen Petitions:* With respect to GSK's Response to Request No. 24, GSK limits its production to all citizen petitions concerning Wellbutrin XL, but the request is broader because a pattern of citizen petitions by Biovail or GSK immediately prior to the market entry of generic drugs would be relevant to Plaintiffs' case. Such information would potentially be admissible under, for instance, F.R.E. 404(b). Please confirm that GSK will be producing all such documents.

*FDA Amendments of 2007:* With respect to GSK's Response to Request No. 25, GSK indicates it will produce communications between GSK and Biovail, on the one hand, and Congress or the FDA, on the other concerning the FDA review of citizen petitions and the FDA amendments Act of 2007. The request calls for documents concerning the FDA Amendments Act and FDA review of citizen petitions, and thus also includes internal correspondence regarding the procedures taken by the FDA to review citizen petitions. Please confirm that GSK will be producing all such documents.

*Document Retention Policies:* In response to Request Nos. 71 and 72, GSK refuses to produce any documents regarding GSK's and Biovail's document destruction, retention and archiving policies and practices, nor will GSK produce their policies concerning back-up of data for each year "absent a showing by Plaintiffs of some problem or legitimate concern." That is not a proper objection. Plaintiffs request these materials now because the document retention policy makes clear which documents were not produced because they never existed and which documents were not produced because they were not retained. Without production of these policies, Plaintiffs will not be able to make such a distinction, and Plaintiffs have an obvious and legitimate interest in doing so. Moreover, producing the retention policies early in the litigation promotes judicial efficiency because it minimizes the risk that witnesses will need to be re-deposed or documents will have to be searched multiple times.

*Vagueness:* GSK makes numerous objections regarding the alleged vagueness of terms and phrases in Plaintiffs' requests. Below is a chart that attempts to clarify the

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 6

meanings of these terms within the context of particular Requests, many of which are commonly used in the pharmaceutical industry.  Plaintiffs are open to meet and confer regarding any of these definitions.

| Term | Request No. | Meaning |
|---|---|---|
| "Development" | 1, 3 | "Development" means the process of designing and creating the product that was patented.  Production of documents in response to these requests would include (but not be limited to) documents concerning the decision-making process for determining which characteristics to give the product, including (but not limited to) what would separate the product from the prior art. |
| "Approval" | 1, 3 | "Approval" means the grant of a patent from the United States Patent and Trademark Office ("PTO").  Production of documents in response to these requests would include (but not be limited to) documents such as correspondence from the PTO indicating that the patent had been approved. |
| "Investigation" | 2 | "Investigation" means any research or analysis of the validity of the patents at issue, and production of such documents would include (but not be limited to) any diligence conducted into the validity of the patents prior to or as part of any agreement between Biovail and GSK. |
| "Proposed … Prosecution" | 12 | "Proposed or actual prosecution" includes both the prosecution of infringement claims in the underlying litigations and communications regarding the likelihood of success or other benefits from any potential litigation of infringement claims, whether or not actually brought.  Production of documents in response to this request would include (but not be limited to) any internal communications regarding the potential success of an infringement claim, whether or not the claim was actually brought. |
| "Scope or effect of any proposed or actual outcome" | 15, 21 | "Scope or effect of any proposed or actual outcome" means both the anticipated or desired impact of any result proposed by any party or of the result that actually occurred, as well as the anticipated extent to which a proposed or actual result would alter the parties' behavior.  Documents to be produced include (but are not limited to) any internal analyses of the anticipated results of the underlying litigation or citizen petition process. |
| "Bioequivalence of Generic | 23 | "Bioequivalence" is defined by the FDA as "the absence of a significant difference in the rate and extent to which |

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 7

| | | |
|---|---|---|
| Wellbutrin XL to Wellbutrin XL" | | the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study."  Documents to be produced include (but are not limited to) analyses of the extent to which any form of Generic Wellbutrin XL is bioequivalent to the brand-name Wellbutrin XL, as well as plans by GSK or Biovail to challenge the bioequivalence of any product or type of Generic Wellbutrin XL. |
| "Scale up" | 26, 43 | "Scale up" means the transfer of a new process from a test model to production at commercial levels.  Production of documents in response to this request would include (but not be limited to) any analyses of the feasibility of converting a test product of once per day bupropion formulation to commercial levels. |
| "Validation" | 26, 43 | "Validation" means the process by which a pharmaceutical manufacturer establishes documented evidence that provides a high degree of assurance that a specific process will consistently produce a product, meeting its pre-determined specifications and quality attributes.  Production of any documents in response to this request would include (but not be limited to) any reports on the extent to which Wellbutrin XL would be produced in accordance with an identified process. |
| "Promotion" | 26, 43 | "Promotion" means the advertising, marketing, or provision of special deals for any once per day bupropion formulation.  Production of documents would include (but not be limited to) any correspondence regarding the anticipated sale of Wellbutrin XL in response to an advertising or marketing campaign. |
| "Bioequivalence of Wellbutrin XL to Wellbutrin IR or Wellbutrin SR" | 28 | As described above, "bioequivalence" is defined in accordance with the definitions established by the FDA. Documents responsive to Request No. 28 would include (but not be limited to) any analyses comparing the active ingredients of Wellbutrin XL to Wellbutrin IR or Wellbutrin SR. |
| "Life-cycle management for Wellbutrin SR" | 33 | "Life-cycle management" is the process by which a company develops and implements a strategy for maximizing the profits obtained from a product over the life of that product.  Responsive documents include (but are not limited to) any analyses of the methods by which GSK could maximize its revenues for Wellbutrin SR, including by developing a related drug. |

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 8

| | | |
|---|---|---|
| "Follow-on Product Strategies" | 33, 34, 38, 39 | "Follow-on product strategies" means plans to develop new versions or variations of an innovative biopharmaceutical product following the expiration of a patent.  Responsive documents would include (but not be limited to) any communications regarding the best approach to obtain revenues after a drug's patent expiration. |
| "Branded-generic strategies" | 34, 39 | "Branded-generic strategies" means discussions by the manufacturer of a brand-name drug about the effectiveness of introducing a generic version of the drug prior to patent expiration.  Responsive documents would include (but not be limited to) research papers or communications regarding the potential economic impact of such a strategy. |
| "Life-cycle management for Wellbutrin XL" | 38 | "Life-cycle management" is the process by which a company develops and implements a strategy for maximizing the profits obtained from a product over the life of that product.  Responsive documents include (but are not limited to) any analyses of the methods by which Biovail or GSK could maximize its revenues for Wellbutrin XL |
| "Actual, potential, desired, or forecasted switching or substitution" | 53 | This phrase means any analysis projecting or reporting the number of purchasers who would use drugs that treat the same conditions as Wellbutrin XL instead of Wellbutrin XL if the price were lowered or other similar changes took place.  Responsive documents would include (but not be limited to) reports or analyses reviewing the pricing of Wellbutrin XL. |
| "Any other drugs" | 55 | "Any other drugs" means any drug that a purchaser might choose instead of Wellbutrin XL for a condition treated by Wellbutrin XL.  Responsive documents would include (but not be limited to) reports regarding use of a different antidepressant in place of Wellbutrin XL. |
| "Price adjustment" | 65 | "Price adjustment" means a different price than was being charged at the time to other purchasers.  Responsive documents would include (but not be limited to) e-mails explaining why a price was lowered for a specific purchaser. |
| "Not related to specific sales of Wellbutrin XL" | 65 | This phrase means that the price adjustment is not made solely because of the sale of Wellbutrin XL.  For example, the price adjustment could have been based on a discount offered to a purchaser for all drugs it purchased from GSK. |
| "Short-run | 66 | This phrase means the variable costs of producing |

GSK Wellbutrin XL Litigation Counsel
September 22, 2009
Page 9

| | | |
|---|---|---|
| average variable costs" | | Wellbutrin XL, divided by the quantity of the output.  In defining "short-run" average variable costs, one input is treated as fixed, such as capital. |
| "Long-run average variable costs" | 66 | This phrase means the variable costs of producing Wellbutrin XL, divided by the quantity of the output.  In defining "long-run" average variable costs, all inputs may be changed. |
| "Fixed costs" | 66 | "Fixed costs" are business expenses that are not dependent on the activities of the business. |
| "Marginal cost" | 66 | "Marginal cost" is the change in total cost incurred when the quantity produced changes by one unit. |
| "Gross Profit" | 66 | "Gross profit" is the difference between revenue and the cost of making a product or providing a service, before deducting overhead, payroll, taxation, and interest payments. |
| "Net Profit" | 66 | "Net profit" is the profit earned by an endeavor after paying all of the endeavor's expenses. |
| "Relationship between prices and costs" | 67 | This phrase means the extent to which a change in costs would affect the price charged for Wellbutrin XL and the extent to which a change in price would affect the costs. |

Please let us know whether you wish to meet and confer on these issues.

Thanks very much.

Very truly yours,

/s/ **David S. Nalven**

David S. Nalven

cc:      All Counsel



DAVID S. NALVEN
DIRECT • (617) 475-1953
davidn@hbsslaw.com

## HAGENS BERMAN
## SOBOL SHAPIRO LLP

September 22, 2009

**BY EMAIL**

M. Sean Royall, Esq.
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912

Monique M. Drake, Esq.
Amanda J. Tessar, Esq.
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202

Thomas E. Zemaitis, Esq.
Daniel J. Boland, Esq.
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
       C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)

Dear Counsel:

I am writing concerning Biovail's Objections and Responses to Direct Purchaser Plaintiffs' First Request for Production of Documents ("Responses"). While we have not completed review of documents thus far produced by Biovail, based on the responses alone, it is clear that there are many issues to resolve regarding the scope of production of documents. This letter attempts to address many of these issues and Plaintiffs are open to having a meet and confer to help achieve as quick and effective a resolution as possible. We had hoped to defer these issues until after documents had been produced, as some of them might be mooted by the production, but given the passage of time without substantial production find it is necessary to raise these issues now. Plaintiffs reserve all rights to raise additional issues after further review of the Responses and Biovail's production.

ATTORNEYS AT LAW      SEATTLE   LOS ANGELES   BOSTON   PHOENIX   CHICAGO   SAN FRANCISCO   NEW YORK

T 617.482.3700    F 617.482.3003
55 CAMBRIDGE PARKWAY    SUITE 301    CAMBRIDGE, MASSACHUSETTS  02142
www.hbsslaw.com

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 2

        This letter does not address Biovail's objections regarding the production of
documents that are under protective orders in the underlying litigations set forth in
General Objection No. 6 and Response Nos. 3, 4, 6-17, 37, 43, 44, and 46-49, as those
issues are being addressed via the motion practice directed by the Court.  This letter also
does not address the timing of the production of documents Biovail has agreed to produce
on a priority basis, which is the subject of separate correspondence. It also does not
address the matter of which documents may be logged by category, which we have also
been handling separately.


        *Date Range:* Biovail's proposed date range does not adequately cover the period
relevant to this case.  Plaintiffs seek documents responsive to the requests that cover the
period of January 1, 1997 to the present.  The reason for this date range is clearly
identified in Plaintiffs' Complaint.  The Plaintiffs allege that GSK sought to stave off the
entry of Generic Wellbutrin SR, "looked for other opportunities to continue to prolong its
monopoly position of bupropion hydrochloride products, and . . . sought to gain that
position before generic entry of Wellbutrin SR occurred in order to leverage the
Wellbutrin SR position." Compl. ¶¶ 64-65. The Complaint also alleges that, in seeking
any patent it could obtain for the once-a-day formulation of bupropion hydrochloride,
Pharma Pass "grappled with the reality that its purported invention was based upon
materials and techniques long disclosed in the public domain and used for other
pharmaceutical products." Compl. ¶ 71. In denying Biovail's motion to dismiss these
claims, the Court noted that Plaintiffs alleged that "Pharma Pass's chemists created an
extended release version of the drug using off-the-shelf chemical compounds unworthy
of patent protection in themselves." March 16, 2009 Order at 5.  As a result of the
Court's denial of Biovail's motion to dismiss, Plaintiffs are entitled to pursue discovery
of these claims.

        Documents from this time period could be directly relevant, among other things,
to prove that (1) the underlying litigations were objectively baseless and (2) the motives
behind the Defendants' actions were anti-competitive.  For example, in response to
Request No. 32, which requests "[a]ll documents concerning potential or actual market
entry of generic Wellbutrin SR," Biovail may possess documents that indicate the
perceived need to find an extension of bupropion hydrochloride, regardless of how
tenuous the patent may be.  Similarly, in response to Request No. 27, which requests
"[a]ll documents concerning the use of acid stabilizers in bupropion formulations,"
Biovail may possess documents from 1997 that analyze whether a bupropion formulation
exists free of stabilizer, revealing the ease with which scientists could make such a
determination.  These documents would clearly be relevant.  Therefore, it is reasonable
for Plaintiffs to seek documents from this time period.  Moreover, Biovail's proposed
starting date of November 12, 2004 would exclude a large number of responsive
documents, including the agreement between Biovail and GSK dated October 26, 2001
and documents concerning the negotiations prior to that agreement.  These documents are

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 3

likely to lead to the discovery of admissible evidence concerning the agreement between
GSK and Biovail with respect to Wellbutrin XL, as well as the parties' plans and
expectations concerning the launch and marketing of Wellbutrin XL.

In compromise of Biovail's date range objection, Plaintiffs are willing to adopt a
time period later than January 1, 1997 for Request Nos. 59, 60, 61, 65, 68, 73, and 74,
and are open to meet and confer regarding an appropriate starting date for these requests.

The parties also disagree as to the appropriate end date for the production.
Plaintiffs have requested that any responsive documents be produced through the present.
Biovail has proposed a cut-off date of March 28, 2009. Plaintiffs' request to produce
documents through the present is based on the ongoing nature of the damages (which we
have no reason to believe have stopped accruing; only expert analysis, including of up-to-
date transactional data, will determine for sure), and the ongoing nature of the challenged
conduct (which includes any agreements to delay the entry of GSK's and Biovail's
generic competitors). In light of Biovail's objection, Plaintiffs are willing to accept a cut-
off date of March 28, 2009 for all document requests except Request Nos. 56-69 and 73-
74.

*Geographic Scope:* Biovail seeks to limit its production to the geographic scope
of "documents relating to Wellbutrin XL marketing, sales, and competition in the United
States." Plaintiffs agree to limit the geographic scope of their requests to documents
relating to Wellbutrin XL-related activities affecting the United States and its territories,
but do not want the proposed phrase "marketing, sales, and competition" to create any
limitations on the scope of the production.

*"To the Extent That" Objection:* In General Objection No. 8, Biovail asserts a
series of objections "to the extent that" requests are overly broad, oppressive, harassing,
unduly burdensome, seek to impose an undue expense on Biovail, and irrelevant."
However, Biovail never reveals "the extent that" any of the requests actually suffer from
these purported defects, and so Plaintiffs are left to guess whether and to what extent
Biovail is withholding documents subject to its General Objection No. 8. Plaintiffs
request that Biovail disclose whether and to what extent it is withholding documents on
the basis of General Objection No. 8.

*Privilege Objection:* In General Objection No. 9 and in many of Biovail's
responses to specific objections, Biovail objects to the production of privileged or
otherwise protected materials. Until more documents or a privilege log are produced, it is
hard for Plaintiffs to respond to these objections. (In addition, determination of which, if
any, portions of the privilege log may be logged by category remains an open issue
among the parties). As Biovail reviews its documents, Plaintiffs emphasize that
"attorney-client privilege does not shield documents merely because they were
transferred to or routed through an attorney." *Southeastern Pa. Transp. Auth. v.
Caremark PCS Health*, 254 F.R.D. 253, 259 (E.D. Pa. 2008) ("What would otherwise be

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 4

routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is copied on correspondence or memoranda."). As a result, Plaintiffs anticipate that Biovail's production will contain some communications between counsel and other personnel that do not involve the seeking or providing of legal advice.

*Identification of Custodians:* In General Objection No. 11, Biovail asserts that it will conduct a "reasonably diligent search." Given the volume of materials at issue in the case, we ask Biovail to identify a list of custodians whose files are to be searched.

*Public Sources:* In General Objection No. 13, Biovail objects to producing "documents generally available to Plaintiffs through public sources." The mere fact that information or documents are publicly available is not enough to justify the refusal to produce a document. When one party has easier access to the public information or documents, courts have required that the materials be produced. *See Swarthmore Radiation Oncology, Inc. v. Lapes*, Civ. Act. No. 92-3055, 1993 U.S. Dist. LEXIS 17059, at *9 (E.D. Pa. Nov. 15, 1993) (holding that a producing party's objection to providing addresses "on the ground that the information is available to the plaintiffs from phone books, etc." left the Court "unpersuaded."); *Phillips v. Dale*, Civ. Act. No. 86-2690, 1987 U.S. Dist. LEXIS 10581, at *6-7 (E.D. Pa. Apr. 15, 1987) ("Judicial economy and facilitation of the litigation process demand that information readily accessible to plaintiff, to which defendant does not have equal access should be produced even if defendant could eventually, with expended energy and resources obtain them from another source. Plaintiff's objections are not sustainable simply because the information he seeks is equally available to both parties."). Rather than engage in a hypothetical discussion concerning the relative burdens of producing or obtaining "publicly available" documents, we request that Biovail identify the documents it seeks to withhold on this basis and the parties can confer on how these materials reasonably should be gathered.

*Life-cycle Management and Related Terms:* Biovail has requested a better explanation and a narrower scope for Request Nos. 33 and 38. Request No. 33 seeks documents concerning the life-cycle management for Wellbutrin SR. This means documents relating to the strategic approach taken to maximize the profits gained from that product over the course of its life. Delaying entry of Generic Wellbutrin SR, for example, would increase the profits gained from selling the brand-name drug. Similarly, modifying Wellbutrin SR into a new product and developing a marketing campaign to encourage purchasers to buy the modified Wellbutrin SR rather than a generic version would also increase profits. As described above, Plaintiffs allege that GSK looked for opportunities to continue to prolong its monopoly position before generic entry of Wellbutrin SR occurred and that this desire helped motivate GSK's agreement with Biovail. Thus, although Plaintiffs recognize that Biovail does not manufacture or distribute Wellbutrin SR in the United States, to the extent that Biovail has possession, custody, or control of documents revealing the life-cycle management plan for Wellbutrin

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 5

SR, Plaintiffs are entitled to receive such materials. Request No. 38 seeks the same type of materials regarding Wellbutrin XL. These materials are relevant to Plaintiffs' claims, as they may concern Biovail's intent in commencing the underlying patent litigations, or plans to maximize profits from the drug.

*Vagueness:* Biovail makes numerous objections regarding the alleged vagueness of terms and phrases in Plaintiffs' requests. Below is a chart that attempts to clarify the meanings of these terms within the context of particular Requests, many of which are commonly used in the pharmaceutical industry. Plaintiffs are open to meet and confer regarding these definitions.

| Term | Request Nos. | Meaning |
|------|--------------|---------|
| "Development …of the patents." | 1,3 | This phrase can be divided into its various parts: "Development" means the process of designing and creating the product that was patented. "Prosecution" means the interaction between patent applicants and the United States Patent and Trademark Office ("PTO") seeking the approval of a patent. "Approval" means the grant of a patent from the PTO. "Issuance" of a patent is described by 37 C.F.R. § 1.314 and involves the inventor receiving patent rights from the PTO. "Assignment" means the transfer, gift, or sale of an owner's patent rights to a new person or entity. "Licensing" means an agreement between the patent holder and another person or entity granting the person or entity the legal right to engage in behavior otherwise protected by the patent rights. Production of documents in response to this request would include (but not be limited to): documents concerning the decision-making process for determining which characteristics to give the product, including (but not limited to) what would separate the product from the prior art; correspondence from the PTO indicating that the patent had been approved; and documents reflecting the assignment of these patents to another entity. |
| "Filed in Court" | 7 | "Filed in court" modifies the phrase "[a]ll motions, responses, pleadings, memoranda, briefs, affidavits/declarations, correspondence and all other documents." |
| "Generated or Used by Any Party or Nonparty in the | 8 | This phrase means identified materials that were created or exchanged as part of the underlying litigation and that were not filed with the court as a |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 6

| | | |
|---|---|---|
| Underlying Actions Not Filed in Court" | | part of any motion or exhibit.  Responsive materials would include (but not be limited to) discovery responses, expert reports, and witness statements. |
| "Considered" | 9 | "Considered" includes all materials provided to experts and all materials reviewed by experts in order to reach their conclusions. |
| "Expert Witnesses" | 9 | Biovail's construction of the phrase "expert witnesses" to mean "testifying experts" is acceptable to Plaintiffs. |
| "Databases" | 10, 11 | "Databases" means any electronic file or collection of electronic files identifying the documents produced or obtained through discovery in the underlying litigation.  Documents responsive to this request would include (but not be limited to) electronic folders containing descriptions of documents produced in the underlying litigation. |
| "Proposed . . . Prosecution" | 12 | "Proposed or actual prosecution" addresses both the prosecution of infringement claims in the underlying litigations and communications regarding the potential litigation of any other infringement claims, whether or not actually brought.  Production of documents in responses to this request would include (but not be limited to) any internal communications regarding the potential success of an infringement claim, whether or not actually brought. |
| "Basis" | 14, 20 | "Basis" means the grounds on which the underlying litigation or citizen petition was filed. |
| "Merits" | 14, 20 | "Merits" means the substantive legal and factual arguments of the underlying litigation or citizen petition. |
| "Purpose" | 14, 20 | "Purpose" means Biovail's motivation or intent in filing the underlying litigation or citizen petition. |
| "Scope or Effect of any Proposed or Actual Outcome" | 15, 21 | "Scope or effect of any proposed or actual outcome" means both the anticipated or desired impact of any result proposed by any party or of the result that actually occurred, as well as the anticipated extent to which a proposed or actual result would alter the parties' actions.  Documents to be produced include (but are not limited to) any internal analyses of the anticipated results of the underlying litigation or citizen petition process. |
| "Citizen Petition Process" | 21 | "Citizen Petition Process" means the process by which Biovail's representative filed the "Citizen Petition" on December 20, 2005, and communicated with the FDA |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 7

| | | and others concerning the Citizen Petition. |
|---|---|---|
| "Generic Wellbutrin XL" | 23, 37, 39-41, 43-44, 47-48 | As described in Definition No. 11, this phrase means "a prescription drug approved by the FDA as an AB-rated bioequivalent substitute for Wellbutrin XL." "Bioequivalent" and "AB-rated" are defined in accordance with FDA standards. |
| "Bioequivalence" | 23, 28 | "Bioequivalence" is defined by the FDA as "the absence of a significant difference in the rate and extent to which the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study." Documents to be produced include (but are not limited to) analyses of the extent to which any form of Generic Wellbutrin XL is bioequivalent to the brand-name Wellbutrin XL, as well as plans by GSK or Biovail to challenge the bioequivalence of any product or type of Generic Wellbutrin XL. |
| "Development" | 26, 43, 70 | "Development" means the process of designing and creating the product at issue. |
| "Formulation" | 26, 43 | "Formulation" means the process in which different chemical substances are combined with the active drug, in this case bupropion, to produce a final medicinal product. |
| "Scale Up" | 26, 43 | "Scale up" means the transfer of a new process from a test model to production at commercial levels. Production of documents in response to this request would include (but not be limited to) any analyses of the feasibility of converting a test product of once per day bupropion formulation to commercial levels. |
| "Validation" | 26, 43 | "Validation" means the process by which a pharmaceutical manufacturer establishes documented evidence that provides a high degree of assurance that a specific process will consistently produce a product, meeting its pre-determined specifications and quality attributes. Production of documents in response to this request would include (but not be limited to) any reports on the extent to which Wellbutrin XL would be produced in accordance with an identified process. |
| "Promotion" | 26, 43 | "Promotion" means the advertising, marketing, or provision of special deals for any once per day bupropion formulation. Production of documents would include (but not be limited to) any |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 8

| | | correspondence regarding the anticipated sale of Wellbutrin XL in response to an advertising or marketing campaign. |
|---|---|---|
| "Sale of Any Once Per Day Bupropion Formulation" | 26 | This phrase means the transfer of the drug to another entity for compensation.  Plaintiffs accept Biovail's interpretation of "once per day bupropion formulation" as "Wellbutrin XL and Generic Wellbutrin XL."  In this instance, Plaintiffs also accept the exclusion of transfers of Wellbutrin XL between Biovail, its subsidiaries and indirect subsidiaries, and from any Biovail company to any GSK company. |
| "Acid Stabilizers" | 27 | "Acid Stabilizers" mean any acidic substances that tend to keep a compound, mixture, or solution from changing its form or chemical nature.  *See Biovail Lab. Int'l v. Impax Lab, Inc.*, 433 F.Supp.2d 501, 519 (E.D. Pa. 2006) (defining "stabilizer"). |
| "Bupropion Formulations" | 27 | "Bupropion formulations" means any pharmaceutical formulation or formulations containing bupropion. |
| "Potential … Market Entry" | 32, 37 | "Potential or actual market entry" means the planning and strategies behind the projected or anticipated date on which Wellbutrin SR or Wellbutrin XL would be available to purchasers, as well as analyses of the actual date on which such sales began. |
| "Generic Wellbutrin SR" | 32, 34-36 | As described in Definition No. 10, this phrase means "a prescription drug approved by the FDA as an AB-rated bioequivalent substitute for Wellbutrin SR." "Bioequivalent" is defined in accordance with FDA standards. |
| "Life-cycle management" | 33, 38 | "Life-cycle management" is the process by which a company develops and implements a strategy for maximizing the profits obtained from a product over the life of that product.  Responsive documents include (but are not limited to) any analyses of the methods by which Biovail or GSK could maximize its revenues for Wellbutrin XL or Wellbutrin SR. |
| "Regulatory Exclusivities" | 33, 38 | "Regulatory exclusivities" are temporary prohibitions from cross-referral to the originator's safety and efficacy data without the originator's consent. |
| "Patent Enforcement and Litigation Strategies" | 33, 38 | This phrase means strategies involving challenges to patent validity, including litigation of patent infringement claims and other patent litigation, in both judicial and administrative proceedings. |
| "Changes to Formulation, | 33, 38 | This phrase refers to any proposed or actual changes to the formulation, dosage, or means of administration of |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 9

| | | |
|---|---|---|
| Dosage, and Means of Administration" | | Wellbutrin SR or Wellbutrin XL as part of the life-cycle management process for the respective drugs. |
| "Follow-on Product Strategies" | 33, 38 | "Follow-on product strategies" means plans to develop new versions or variations of an innovative biopharmaceutical product following the expiration of a patent.  Responsive documents would include (but not be limited to) any communications regarding the best approach to obtain revenues after a drug's patent expiration. |
| "Strategies, including pricing strategies, marketing strategies, branded-generic strategies, follow-on product strategies, and litigation strategies | 34, 39 | This phrase refers to plans for maximizing the value of Wellbutrin SR or Wellbutrin XL, including potential or actual changes in price, the approach to marketing the drugs, the decision to litigate against potential entrants into the market, and similar strategies.  "Follow-on product strategies" means plans to develop new versions or variations of an innovative biopharmaceutical product following the expiration of a patent.  "Branded-generic strategies" means discussions by the manufacturer of a brand-name drug about the effectiveness of introducing a generic version of the drug prior to patent expiration. Responsive documents would include (but not be limited to) any communications regarding the best approach to obtain revenues after a drug's patent expiration. |
| "Adapt to" | 34, 39 | "Adapt to" means a change in strategy based on a new projection or unanticipated effect of the marketing or sale of the respective drugs. |
| "Marketing" | 40, 70 | "Marketing" means the process by which the product at issue is introduced and presented to the market. |
| "Effect of Market Entry" | 41 | "Effect of market entry" means the impact that the sale of any form of Generic Wellbutrin XL would have on the sales of brand-name Wellbutrin XL. |
| "Bioequivalence Studies" | 44 | "Bioequivalence studies" means any tests or research projects designed to measure the bioequivalence, as defined by FDA standards, of one drug to another drug |
| "Physical, regulatory, legal, technical, manufacturing or other issues" | 46 | This phrase lists a series of potential issues that would impact the effectiveness or timing of entry of the products to be marketed by Abrika, Anchen, Impax, or Watson as Generic Wellbutrin XL.  Documents responsive to this request would include (but not be limited to) any memoranda regarding the readiness of these drugs to enter the market or any potential |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 10

| | | barriers to their entry. |
|---|---|---|
| "Readiness, willingness, or ability . . . to come to market with AB-rated generic Wellbutrin XL" | 46 | This phrase refers to the ability of Abrika, Anchen, Impax, and Watson to introduce their versions of Generic Wellbutrin XL into the market. "AB-rated" is defined in accordance with FDA standards. Documents responsive to this request would include (but not be limited to) any memoranda regarding the readiness of these drugs to enter the market or any potential barriers to their entry. |
| "Timing of Market Entry" | 48 | This phrase means the dates on which Abrika, Anchen, Impax, or Watson could begin selling Generic Wellbutrin XL to purchasers. |
| "Relative features, benefits, or comparisons" | 49 | This phrase means comparisons of the similarities or differences between Wellbutrin XL and other drugs. |
| "All other drugs used to treat the same conditions as Wellbutrin XL" | 49-53, 63-64 | This phrase refers to any other drug that is used to treat a condition for which a doctor might prescribe Wellbutrin XL. |
| "Functional or Economic Substitutability" | 51 | This phrase means the extent to which another drug could replace Wellbutrin XL, either in the practical sense that purchasers would substitute one product for another or in the economic sense of indicating a cross-elasticity of demand. |
| "Wellbutrin" | 51 | "Wellbutrin" in this instance means "Wellbutrin XL" |
| "Cross-elasticity of demand" | 52 | "Cross-elasticity of demand" measures the responsiveness of the demand of a good to the change in the price of another good.  Documents responsive to this request would include analyses of the responsiveness of the demand of Wellbutrin XL to a price change in a drug used to treat the same conditions. |
| "Actual, potential, desired, or forecasted switching or substitution." | 53 | This phrase means any analysis projecting or reporting the number of purchasers who would use drugs that treat the same conditions as Wellbutrin XL instead of Wellbutrin XL if the price were lowered or other similar changes took place.  Responsive documents would include (but not be limited to) reports or analyses reviewing the pricing of Wellbutrin XL. |
| "Composition" | 54 | "Composition" refers to the areas within the United States and its territories where Wellbutrin XL is sold. Documents responsive to this request include (but are not limited to) any listing of the locations within the United States and its territories where Wellbutrin XL |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 11

| | | is sold. |
|---|---|---|
| "United States market in which Wellbutrin XL is sold" | 54 | This phrase refers to the sum of the locations in the United States and its territories in which Wellbutrin XL is sold. Documents responsive to this request include (but are not limited to) any listing of the locations within the United States and its territories where Wellbutrin XL is sold. |
| "Actual or Forecasted Competition" | 55 | This phrase refers to any instance in which Wellbutrin XL competed against other drugs for sales, as well as any anticipated instance of such competition. |
| "Other drugs" | 55 | "Other drugs" means any drug that a purchaser might choose instead of Wellbutrin XL for a condition treated by Wellbutrin XL. Responsive documents would include (but be not limited to) reports regarding use of a different antidepressant in place of Wellbutrin XL. |
| "Sales and marketing tactics and strategies for Wellbutrin XL" | 56 | This phrase means the approach taken to maximize the revenues generated for Wellbutrin XL. Plaintiffs accept Biovail's proposed exclusion of transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company. Documents responsive to this request would include (but are not limited to) documents describing the approach to be taken by sales representatives, such as emphasizing particular features of the drug. |
| "Sales training materials and presentations" | 56 | This phrase means any documents relating to the training of salespeople to sell Wellbutrin XL. Examples of such documents may include presentations, outlines, meeting handouts, educational materials, product materials, sales process training materials, and any other documents emphasizing particular features of the drug. |
| "Sales and marketing meeting materials, presentations, and summaries" | 56 | This phrase means any documents used, reviewed, or presented at a meeting that involved discussion of the approach to be used in selling or marketing Wellbutrin XL. |
| "Tactical plans, strategic plans, and budget proposals" | 56 | This phrase refers to any plans to market and sell Wellbutrin XL of varying time horizons, including (but not limited to) proposals for the amount of money dedicated to selling or marketing the drug. |
| "Surveys and any other types of | 58 | This phrase means any study taken or polling of health care providers regarding the use of Wellbutrin XL. |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 12

| | | |
|---|---|---|
| studies" | | Responsive documents would include surveys of medical providers regarding their attitudes about Wellbutrin XL as well as surveys of salesmen to determine which tactics worked best. |
| "Sale of Wellbutrin XL" | 61, 66 | This phrase means the provision of Wellbutrin XL to purchasers in exchange for compensation.  In this instance, Plaintiffs will reserve on Biovail's proposed exclusion of transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries. Plaintiffs require information concerning any transfers from any Biovail company to any GSK company. |
| Electronic Discovery Terms | 62 | Has this been resolved by our ESI agreement?  If not, Plaintiffs are open to a meet and confer on the manner in which electronic data are produced. |
| "Wellbutrin XL generics" | 63-64 | "Wellbutrin XL Generics" means any form of Generic Wellbutrin XL, as defined in Definition No. 11. |
| "Available to" | 64 | "Available to" means accessible to Biovail and thus within Biovail's control. |
| "Price Adjustment" | 65 | "Price adjustment" means a different price than was being charged at the time to other purchasers. Responsive documents would include (but are not limited to) e-mails explaining why a price was lowered for a specific purchaser. |
| "Not related to specific sales of Wellbutrin XL" | 65 | This phrase means that the price adjustment is not made solely because of the sale of Wellbutrin XL.  For example, the price adjustment could have been based on a discount offered to a purchaser for all drugs it purchased from GSK or Biovail. |
| "Relationship between Prices and Costs" | 67 | This phrase means the extent to which a change in costs would affect the price charged for Wellbutrin XL and the extent to which a change in price would affect the costs associated with Wellbutrin XL. |
| "List Price" | 68 | "List price" means the price set forth on product price lists prepared by pharmaceutical manufacturers for circulation to direct purchasers. |
| "Average Wholesale Price" | 68 | "Average Wholesale Price" is the average of the prices charged by the national drug wholesalers for a Wellbutrin XL. |
| "Direct Price" | 68 | "Direct Price" is the price charged as a result of direct negotiations with a purchaser. |
| "Wholesale Acquisition Cost" | 68 | "Wholesale Acquisition Cost" is the list price for wholesalers, distributors, and other direct accounts before any rebates, discounts, allowances or other price concessions that might be offered by the |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 13

| | | supplier. |
|---|---|---|
| "Development of Wellbutrin XL" | 69 | This phrase means the process of designing and creating Wellbutrin XL. |
| "Regulatory Approval of Wellbutrin XL" | 69 | This phrase means the process by which GSK or Biovail sought approval for Wellbutrin XL from the FDA. |
| "Royalties paid or to be paid on the sale of Wellbutrin XL" | 69 | This phrase means any amount paid for the rights to sell or the sale of Wellbutrin XL. |
| "Manufacturing Facility Approval" | 69 | "Manufacturing facility approval" describes any guidelines, specifications, or requirements as part of the agreement between Biovail and GSK regarding the facilities at which Wellbutrin XL would be manufactured. |
| "Marketing promotion, advertising, pricing, and sale" | 69 | This phrase seeks documents or communications between GSK and Biovail concerning the way in which Wellbutrin XL was introduced and presented to direct purchasers, indirect payors, physicians, or consumers, or the price at which Wellbutrin XL would be charged. |
| "Any other matter concerning Wellbutrin XL" | 69 | This phrase refers to any litigation concerning Wellbutrin XL other than the underlying litigation, such as allegations of anticompetitive behavior or unfair and deceptive trade practices. |
| "Any other legal action" | 69 | This phrase seeks documents concerning any type of joint cost sharing or cooperation in any legal proceeding, except this action and the underlying litigation, both of which are specifically covered by other phrases in this request. |
| "Sale and distribution of Wellbutrin XL" | 70 | This phrase means the transfer of Wellbutrin XL in exchange for payment. In this instance, Plaintiffs accept Biovail's proposed exclusion of transfers of Wellbutrin XL between Biovail, its subsidiaries, and indirect subsidiaries, as well as any transfers from any Biovail company to any GSK company. |
| "Each Year" | 72 | "Each year" refers to every year within the relevant period at issue in this case, which consists of January 1, 1997 to the present. |
| "Any Plaintiff" | 74 | "Any Plaintiff" means any member of the proposed class as identified in Paragraph 190 of the Direct Purchasers' Consolidated Complaint or any other Plaintiff in this action. |
| "Any Other | 74 | "Any other matter" means any agreements between |

Biovail Wellbutrin XL Litigation Counsel
September 22, 2009
Page 14

| Matter" | | Biovail or GSK and any Plaintiff regarding any topic other than the purchase and sale of Wellbutrin XL, which is covered by a separate clause of this Request. |
|---|---|---|

Please let us know whether you wish to meet and confer on these issues.

Thanks very much.

Very truly yours,

/s/ **David S. Nalven**

David S. Nalven

cc:     All Counsel



HAGENS BERMAN
SOBOL SHAPIRO LLP

DAVID S. NALVEN
DIRECT • (617) 475-1953
davidn@hbslaw.com

December 7, 2009

**BY EMAIL**

M. Sean Royall, Esq.
Sarah Toraason, Esq.
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912

John M. Desmarais, Esq.
Michael P. Stadnick, Esq.
Christine Willgoos, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Monique M. Drake, Esq.
Amanda J. Tessar, Esq.
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202

Elizabeth Bernard, Esq.
Chong S. Park, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, DC 20005

Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
      C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)

Dear Counsel:

I am writing concerning Defendants' production of privilege logs.

In our request for production of documents dated June 16, 2009, at request no. 11, we requested production of all privilege logs generated in any of the underlying patent litigations. In addition, pursuant to our agreement dated October 7, 2009, Defendants agreed to prepare privilege logs for documents produced in this action.

We have not found the privilege logs from the underlying litigations in the documents thus far produced by Defendants. If they have been produced, please identify the Bates nos. If they have not been produced, please let us know when they will be.

We also have not received privilege logs for the documents produced in this action pursuant to our October 7 agreement. Please let us know when these privilege logs will be supplied.

Wellbutrin XL Litigation Defense Counsel
December 7, 2009
Page 2


      It is now six months since our request for privilege logs from the underlying litigation and more than 60 days since our agreement on privilege logs for documents produced in this litigation.  Please advise re status.

      Thanks very much.

                Very truly yours,

                **/s/ David S. Nalven**

                David S. Nalven


cc:    All Counsel



DAVID S. NALVEN
DIRECT • (617) 475-1953
davidn@hbsslaw.com

## HAGENS BERMAN
SOBOL SHAPIRO LLP

December 22, 2009

**BY EMAIL**

M. Sean Royall, Esq.
Sarah Toraason, Esq.
Lawrence VanDyke, Esq.
Scott H. Mellon, Esq.
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912

John M. Desmarais, Esq.
Michael P. Stadnick, Esq.
Christine Willgoos, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Monique M. Drake, Esq.
Amanda J. Tessar, Esq.
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202

Elizabeth Bernard, Esq.
Chong S. Park, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, DC 20005

Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
      C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)

Dear Counsel:

This follows up on Plaintiffs' letter dated December 7, 2009 concerning privilege logs and Amanda Tessar's email response dated December 12, 2009 on behalf of Biovail. We have no response from GSK.

*Privilege Logs.* We have located the following privilege logs from the underlying actions in documents produced by Defendants:

| Producing Party | Date Made (approx) | Creating Party | Bates Range | Case |
|---|---|---|---|---|
| GSK | 7/17/06 | Biovail | GSKWXL00310502 to GSKWXL00310523 | Biovail v. Watson |
| GSK | 7/17/06 | Watson | GSKWXL00309075 to GSKXWL00309088 | Biovail v. Watson |
| Biovail | | Biovail | BV00062068 to BV00062088 | Unknown |
| Biovail | | Biovail | BV-FR0007518 to BV-FR0007532 | Biovail v. Impax |
| Biovail | 5/19/06 | Biovail | BV-FR0007368 to BV-FR0007382 | Biovail v. Impax |

Wellbutrin XL Litigation Defense Counsel
December 22, 2009
Page 2

We request two points of clarification concerning these logs. First, the log beginning at BV-FR0007368 appears to be a revised version of the log beginning at BV-FR0007518. Please confirm that this is correct. Second, the log identified as BV00062068 does not indicate the action it relates to, either by labeling or placement in the production. Please let us know the action to which this relates.

These are the logs found after our review of the produced materials. Please advise us if Defendants have produced any privilege logs other than those identified. If so, please identify the location of these logs in Defendants' productions by Bates number. If Defendants have not produced any other logs, please tell us when Defendants will produce their privilege logs in this action and when we can expect production of the missing logs from the patent litigations. Please also confirm that Defendants will produce all privilege logs prepared or received in the underlying patent litigations and citizen petition proceedings.

Please also advise us whether the privilege logs already produced, or to be produced, exist in their native format or a searchable format, e.g., Excel. If so, please provide copies of these the logs in those formats.

*Document Production Indices.* In Plaintiffs' request for production of documents dated June 16, 2009, at request no. 10, Plaintiffs requested production of all logs, lists, indices, or other documents or databases identifying the documents produced or obtained through discovery by all parties or nonparties in the underlying actions. Defendants asserted a series of "to the extent that" objections to that request, e.g., to the extent that the request seeks privileged information, to the extent such documents exist and can be located, but did not object to producing previously-prepared non-privileged indices of documents. This would include indices listing objective information concerning documents produced or received in the underlying patent litigations or citizen petition proceedings, i.e., name of document, author and recipients, date, bates numbers.

To be clear, this request does not seek Defendants' substantive coding, notes that reflect attorney opinions or thought processes, or any other material that qualifies as opinion work product. Given the number of documents in Defendants' document productions, and the absence of any disclosed organization of these documents, obtaining such indices would promote efficiency and allow Plaintiffs to avoid unnecessary hardship and expense. Accordingly, they should be produced. *See Washington Bancorporation v. Said,* 145 F.R.D. 274 (D.D.C. 1992) (objective index of 2400 boxes cannot be withheld on work product grounds); *Accord Portis v. City of Chicago,* No. 02 C 3139, 2004 U.S. Dist. LEXIS 12640 at * 9 (N.D. Ill. July 7, 2004) (plaintiffs' database of 20,000 arrest records produced by defendant, collecting from the records the arrestee's name, address, ordinance violated, booking number, bond time, etc., must be produced because it does not reveal plaintiffs' counsel's mental impressions).

Wellbutrin XL Litigation Defense Counsel
December 22, 2009
Page 3

     Please advise us if Defendants have produced any such indices.  If so, please identify the location of the indices in Defendants' productions by Bates number.  If not, please identify the indices in Defendants' possession, custody, and control from the underlying patent litigations and citizen petition proceedings, and advise us whether Defendants will produce them and when.

     Thanks very much.

                Very truly yours,

                **/s/ David S. Nalven**

                David S. Nalven

cc:    All Counsel



HAGENS BERMAN
SOBOL SHAPIRO LLP

DAVID S. NALVEN
DIRECT • (617) 475-1953
davidn@hbsslaw.com

December 31, 2009

**BY EMAIL**

M. Sean Royall, Esq.
Sarah Toraason, Esq.
Lawrence VanDyke, Esq.
Scott H. Mellon, Esq.
Malachi O. Boylus, Esq
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912

John M. Desmarais, Esq.
Michael P. Stadnick, Esq.
Christine Willgoos, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Monique M. Drake, Esq.
Amanda J. Tessar, Esq.
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202

Elizabeth Bernard, Esq.
Chong S. Park, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, DC 20005

Re:  *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
     C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)

Dear Counsel:

This follows up on Plaintiffs' letters dated December 7, 2009 and December 22, 2009 concerning privilege logs and document production indices. We have no response from GSK to either letter and no response from Biovail to our December 22, 2009 letter.

We request that Defendants consult with each other and provide dates and times when you are available to meet and confer concerning these matters. We are available at any time on January 6 or 7, 2010.

In addition to the matters identified in our prior letters, we would also like to meet and confer concerning Defendants' document production, including (1) on a disc-by-disc basis what the Defendants' production to date purports to consist of (particularly needed in light of the paucity of metadata accompanying much of the production), (2) the manner in which Defendants' documents have been produced relative to the requirements of Fed. R. Civ. P. 34(E), (3) the categories of documents that remain to be produced, and (4) the schedule for the remaining production. This includes the status of production of

Wellbutrin XL Litigation Defense Counsel
December 31, 2009
Page 2

documents, pleadings, deposition transcripts, exhibits and the like that were designated as
confidential in the underlying patent litigation and FDA action.

Best wishes to all for a happy and healthy 2010.

Thanks very much.

Very truly yours,

**/s/ David S. Nalven**

David S. Nalven

cc:     All Counsel

## Jennifer Snyder

| | |
|---|---|
| **From:** | Jennifer Connolly [jfc@wexlerwallace.com] |
| **Sent:** | Tuesday, January 12, 2010 11:22 AM |
| **To:** | Tessar, Amanda J.; Chong Park |
| **Cc:** | David Nalven |
| **Subject:** | Wellbutrin XL - Abrika ANDA documents |
| **Attachments:** | DSN to Defense Counsel re Dcmt Prod 123109.PDF |

Amanda and Chong:

Abrika's counsel has represented to us that in the Biovail v. Abrika patent litigation it produced 90 bankers boxes consisting of documents relating to Abrika's ANDA. We have reviewed the documents produced to date by Defendants and our search has not located those documents.

If Defendants have produced those documents, please identify the Bates range where they may be located. If Defendants have not, please advise when they will be forthcoming.

In order to reduce the number of individual requests Plaintiffs must make to Defendants regarding the nature of Defendants' production, Plaintiffs reiterate our request, stated in David Nalven's December 31, 2009 letter (attached), for a meet and confer regarding what Defendants' production purports to consist of. Please let us know when you are available.

Thanks very much -
Jennifer

Jennifer Fountain Connolly
**WEXLER WALLACE LLP**
55 West Monroe, Suite 3300
Chicago, IL 60603
Phone: (312) 589 – 6274 (direct)
Fax: (312) 589 – 6275 (direct)
JFC@wexlerwallace.com
www.wexlerwallace.com

*************************************************
CONFIDENTIALITY NOTICE: This e-mail message contains information belonging to the law firm of Wexler Wallace LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please contact us immediately at 312-346-2222.
*************************************************

# WEXLER WALLACE LLP

Chicago, IL • Sacramento, CA

February 3, 2010

**_Via Electronic Mail_**

| | |
|---|---|
| Amanda Tessar | Chong S. Park |
| Kourtney Mueller Merrill | Kirkland & Ellis LLP |
| Gibson, Dunn & Crutcher LLP | 655 Fifteenth Street NW |
| 1801 California Street, Suite 4200 | Washington, DC  20005-5793 |
| Denver, CO  80202 | |

Re:  *In re Wellbutrin XL Antitrust Litigation*
Case Nos. 09-cv-2431 (directs) and 09-cv-2433 (indirects), E.D. Pa.

Dear Counsel:

I write on behalf of the Direct and Indirect Purchaser Plaintiffs to address various issues with Defendants' document production.  We are available to meet and confer about these issues any time on Friday, February 5.

**Document indices.**  On December 22, 2009, David Nalven wrote to request that Defendants provide any indices identifying the documents produced or obtained through discovery by all parties or nonparties in the underlying actions.  In her January 18th letter Ms. Merrill represented that Defendants "do not currently possess any *non-privileged* indices identifying documents produced and/or received during the underlying litigations." (Emphasis added.)  As David stated in his December 22nd letter, Plaintiffs are not seeking Defendants' substantive coding, notes that reflect attorney opinions or thought processes, or other materials that qualify as opinion work product.  If Defendants have indices that contain information subject to the work product privilege, that information can easily be redacted and the objective information (author, recipient, date, title, etc.) produced to Plaintiffs.  If Biovail refuses to do so, please explain why redaction is not possible or provide us with authority for withholding those indices in their entirety.

**Source list, schedule for production and production deficiencies.**  In addition, because of the size and disorganized nature of Defendants' production, and because of the lack of metadata in the production, David asked that Defendants explain to us on a disc-by-disc basis what Defendants' document production purports to consist of.  Since Defendants have primarily produced documents from the underlying patent infringement lawsuits and are obtaining those documents from separate law firms, it should not be burdensome for Defendants to identify the nature of the documents they have produced and, on a going forward basis, to state in their production cover letters what the documents they are producing represent.

| Contact Information: | Jennifer Fountain Connolly<br>(312) 589-6274 Direct Dial<br>(312) 589-6275 Direct Fax<br>jfc@wexlerwallace.com | 55 West Monroe Street<br>Suite 3300<br>Chicago, IL  60603 | (312) 346-2222<br>(312) 346-0022 fax<br>**www.wexlerwallace.com** |
|---|---|---|---|

# W E X L E R   W A L L A C E   L L P

Amanda Tessar
Kourtney Mueller Merrill
Chong S. Park
February 3, 2010
Page 2

Currently there is no way for Plaintiffs to determine what documents have been produced, which are forthcoming, and if any documents to which Plaintiffs believe they are entitled have been withheld. In this regard, in addition to identifying the source of the documents that have been produced, please identify which documents Defendants still plan to produce and when Defendants will complete their document production.

Specifically, Plaintiffs have not identified any documents related to Biovail's citizen petition in the production. If Defendants have produced documents related to the petition, please identify those documents by Bates range. If Defendants have not produced those documents, please advise when they will be produced.

**Privilege logs.** First, Defendants have repeatedly ignored Plaintiffs' requests for privilege logs for documents produced in *this* action. Please advise immediately when these will be forthcoming or we will move to compel them.

Second, in his December 22nd letter David identified all the privilege logs Plaintiffs have located in Defendants' production. Amanda responded that this list was "incomplete," but did not disclose in what regard it was incomplete. Plaintiffs have since conducted further review and located the following privilege logs in the documents produced by Defendants:

| Producing Party | Date Made (approx) | Creating Party | Bates Range | Case |
|---|---|---|---|---|
| GSK | 4/21/1999 | Teva | GSKWXL00082769-71 (redacted) | Glaxo Wellcome, Inc. v. Teva[1] |
| GSK | 7/17/2006 | Biovail | GSKWXL00310502-23 | Biovail v. Watson |
| GSK | 7/17/2006 | Watson | GSKWXL00309075-88 | Biovail v. Watson |
| GSK | 8/25/2006 | Biovail | GSKWXL00309183-84 | Biovail v. Watson |
| Biovail | 12/2/2005 | Impax | BV-FR0000240-242 | Biovail v. Impax |

---

[1] This log relates to an action that is not one of the underlying patent actions.

# WEXLER WALLACE LLP

Amanda Tessar
Kourtney Mueller Merrill
Chong S. Park
February 3, 2010
Page 3

| Producing Party | Date Made (approx) | Creating Party | Bates Range | Case |
|---|---|---|---|---|
| Biovail | 2/21/2006 | Impax | BV-FR0000188-190 | Biovail v. Impax |
| Biovail | 2/21/2006 | Impax | BV-HW0036079-81 | Biovail v. Impax |
| Biovail | 4/6/2006 | Biovail | BV-FR0007533 (attaching BV00068022-36 which is undated and unlabeled) | Biovail v. Impax |
| Biovail | 5/8/2006 | Impax | BV-FR0003573-92 | Biovail v. Impax |
| Biovail | 5/8/2006 | Impax | BV-HW0038963-83 | Biovail v. Impax |
| Biovail | 5/19/2006 | Biovail | BV-FR0007366-82 (attaching BV00079528-42 which is unlabeled) | Biovail v. Impax |
| Biovail | 5/31/2006 | Impax | BV-FR0000571-590 | Biovail v. Impax |
| Biovail | Undated | Biovail? | BV-HW0017179-81 | Unknown |
| Biovail | 3/23/2007 | Biovail | BV-HW0017182-96 | Unknown |
| Biovail | Undated | Biovail | BV-HW0017197-215 (redacted, missing pages) | Unknown |
| Biovail | Undated | Biovail | BV-HW0032125-45 | Unknown |
| Biovail | Undated | Biovail | BV00062068-88 | Unknown |

Plaintiffs have exhaustively and in good faith searched Defendants' production to locate additional privilege logs but have found none. Please provide the Bates range for any additional privilege logs. Further, Plaintiffs have not found privilege logs generated in either the *Anchen* or *Abrika* patent litigations. Please confirm that Defendants will produce all privilege logs prepared or received in the underlying patent litigations and citizen petition proceedings as soon as possible. We still require clarification concerning the five documents listed at the bottom of the

# WEXLER WALLACE LLP

Amanda Tessar
Kourtney Mueller Merrill
Chong S. Park
February 3, 2010
Page 4

table.  They are undated and do not indicate the action for which they were created.  Please let us know as soon as possible the actions to which these relate and what party created them.

**GSK responses.**  We have received no responses from GSK to any of the issues discussed above.  Please provide GSK's responses to them or Plaintiffs will assume that Biovail's and GSK's positions on these issues are the same.

**Notices of deposition.**  Finally, enclosed are notices of deposition for deponents whose depositions we intend to take prior to the conclusion of class certification discovery.  However, based on all of the concerns articulated above, Plaintiffs are specifically reserving the right to recall these witnesses if Defendants have not completed their document production or if Defendants have not provided us with specific information from which we may determine if the production is complete.  Please feel free to contact me or David to schedule these depositions at locations that are convenient to the deponents.

Very truly yours,

/s/

Jennifer Fountain Connolly

JFC/lmv
Enclosures

cc:     David S. Nalven

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431 (direct)<br>Case No. 2:08-cv-2433 (indirect) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Hon. Mary A. McLaughlin |

## <u>NOTICE OF DEPOSITIONS TO GLAXOSMITHKLINE</u>

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, plaintiffs, by and through their counsel, will take the depositions upon oral examination of the following individuals at the offices of Berger & Montague, P.C., 1622 Locust Street, Philadelphia, Pennsylvania 19103, on the following dates and times, and continuing from day to day thereafter until completed. The depositions shall be taken before a notary public or another officer authorized by law to administer oaths and will be recorded by stenographic and/or sound and visual means. You are invited to attend.

| **Deponent** | **Date** | **Time** |
|---|---|---|
| Stephen V. O'Quinn | February 17, 2010 | 9:30 a.m. |
| Diane Tulp | February 18, 2010 | 9:30 a.m. |

Dated: February 3, 2010

Respectfully submitted,

By: /s/ Jennifer Fountain Connolly

Thomas M. Sobol
David S. Nalven
Robert McGill
Hagens Berman Sobol & Shapiro
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Fax: (617) 482-3003

Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
Michele A. Casey
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Fax: (312) 346-0022

David F. Sorensen
Eric L. Cramer
Andrew C. Curley
Nick Urban
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

Linda P. Nussbaum
John D. Radice
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Fax:  (212) 687-7714

Joseph F. Roda
Dianne M. Nast
Jennifer S. Snyder
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA  17601
Telephone: (717) 892-3000
Fax: (717) 892-1200

***Co-Lead Counsel for Direct Purchaser
Plaintiffs***

Joe P. Leniski
Branstetter Stranch &
Jennings, PLLC
227 Second Avenue N., 4th Fl.
Nashville, TN  37201-1631
Telephone: (615) 254-8801
Fax: (615) 250-3937

Joe R. Whatley, Jr.
Richard P. Rouco
Whatley Drake & Kallas, LLC
2001 Park Place N., Suite 1000
Birmingham, AL  35203
Telephone:  (205) 328-9576
Fax:  (205) 328-9669

***Co-Lead Counsel for Indirect
Purchaser Plaintiffs***

## CERTIFICATE OF SERVICE

I, Jennifer Fountain Connolly, hereby certify that I caused the foregoing *Notice of Depositions to GlaxoSmithKline* to be served by electronic mail and by First Class U.S. Mail, with proper postage prepaid, on the following:

*Counsel for Defendant SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Arthur Makadon
makadon@ballardspahr.com
Edward D. Rogers
rogers@ballardspahr.com
Susanna R. Greenberg
greenbergsr@ballardspahr.com
Taimarie N. Adams
adamst@ballardspahr.com
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500 – Telephone
(215) 864-8999 – Facsimile

John M. Desmarais
john.desmarais@kirkland.com
Michael P. Stadnick
michael.stadnick@kirkland.com
Timothy K. Gilman
tgilman@kirkland.com
Kirkland & Ellis LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800 – Telephone
(212) 446-4900 – Facsimile

*Counsel for Defendants Biovail Corporation, Biovail Laboratories, Inc., and Biovail Laboratories International SRL*

M. Sean Royall
sroyall@gibsondunn.com
Ashley Johnson
ajohnson@gibsondunn.com
Malachi O. Boyuls
mboyuls@gibsondunn.com
Gibson, Dunn& Crutcher LLP
2100 McKinney Avenue
Dallas, TX  75201-6911
(214) 698-3256 – Telephone
(214) 571-2923 – Facsimile

Monique M. Drake
mdrake@gibsondunn.com
Amanda Tessar
atessar@gibsondunn.com
Gibson, Dunn& Crutcher LLP
1801 California Street
Denver, CO  80202-2641
(303) 298-5957 – Telephone
(303) 313-2815 – Facsimile

3

Thomas E. Zemaitis
zemaitist@pepperlaw.com
Daniel J. Boland
bolandd@pepperlaw.com
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4361 – Telephone
(215) 981-4750 – Facsimile

*Counsel for Direct Purchaser Plaintiffs*

David S. Nalven
davidn@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700 – Telephone
(617) 482-3003 – Facsimile

*Indirect Purchaser Plaintiffs' Interim Executive Committee*

Daniel E. Gustafson
dgustafson@gustafsongluek.com
Karla M. Gluek
kgluek@gustafsongluek.com
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
(612) 333-8844 – Telephone
(612) 339-6622 – Facsimile

Marvin A. Miller
mmiller@millerlawllc.com
Lori A. Fanning
lfanning@millerlawllc.com
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
(312) 332-3400 – Telephone
(312) 676-2676 – Facsimile

*Counsel for Indirect Purchaser Plaintiffs*

J. Cecil Gardner
jcg@thegardnerfirm.com
Kimberly Calametti Walker
kwalker@thegardnerfirm.com
The Gardner Firm
1119 Government Street
Post Office Drawer 3103
Mobile, AL  36652
(251) 433-8100 – Telephone
(251) 433-8181 – Facsimile

Christopher M. Burke
cburke@scott-scott.com
Kristen M. Anderson
kanderson@scott-scott.com
Scott & Scott, LLP
600 B Street, Suite 1500
San Diego, CA  92101
(619) 233-4565 – Telephone
(619) 233-0508 – Facsimile

Michael J. Boni
mboni@bonizack.com
Joanne Zack
jzack@bonizack.com
Joshua D. Snyder
jsnyder@bonizack.com
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
(610) 820-0200 – Telephone
(610) 820-0206 – Facsimile


Dated:  February 3, 2010                    /s/ Jennifer Fountain Connolly
                                            Jennifer Fountain Connolly

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431 (direct) Case No. 2:08-cv-2433 (indirect) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Mary A. McLaughlin |

### NOTICE OF DEPOSITIONS TO BIOVAIL

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, plaintiffs, by and through their counsel, will take the depositions upon oral examination of the following individuals at the offices of Berger & Montague, P.C., 1622 Locust Street, Philadelphia, Pennsylvania 19103, on the following dates and times, and continuing from day to day thereafter until completed. The depositions shall be taken before a notary public or another officer authorized by law to administer oaths and will be recorded by stenographic and/or sound and visual means. You are invited to attend.

| Deponent | Date | Time |
|---|---|---|
| Paul Maes | February 19, 2010 | 9:30 a.m. |
| Carol Chapuis | February 22, 2010 | 9:30 a.m. |
| Dina Khairo | February 23, 2010 | 9:30 a.m. |

Dated: February 3, 2010

Respectfully submitted,

By: /s/ Jennifer Fountain Connolly

Thomas M. Sobol
David S. Nalven
Robert McGill
Hagens Berman Sobol & Shapiro
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Fax: (617) 482-3003

Kenneth A. Wexler
Jennifer Fountain Connolly
Amber M. Nesbitt
Michele A. Casey
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Fax: (312) 346-0022

David F. Sorensen
Eric L. Cramer
Andrew C. Curley
Nick Urban
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

Linda P. Nussbaum
John D. Radice
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Fax:  (212) 687-7714


Joseph F. Roda
Dianne M. Nast
Jennifer S. Snyder
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA  17601
Telephone: (717) 892-3000
Fax: (717) 892-1200


***Co-Lead Counsel for Direct Purchaser
Plaintiffs***

Joe P. Leniski
Branstetter Stranch &
Jennings, PLLC
227 Second Avenue N., 4th Fl.
Nashville, TN  37201-1631
Telephone: (615) 254-8801
Fax: (615) 250-3937


Joe R. Whatley, Jr.
Richard P. Rouco
Whatley Drake & Kallas, LLC
2001 Park Place N., Suite 1000
Birmingham, AL  35203
Telephone:  (205) 328-9576
Fax:  (205) 328-9669

***Co-Lead Counsel for Indirect
Purchaser Plaintiffs***

## CERTIFICATE OF SERVICE

I, Jennifer Fountain Connolly, hereby certify that I caused the foregoing *Notice of Depositions to Biovail* to be served by electronic mail and by First Class U.S. Mail, with proper postage prepaid, on the following:

*Counsel for Defendant SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Arthur Makadon
makadon@ballardspahr.com
Edward D. Rogers
rogers@ballardspahr.com
Susanna R. Greenberg
greenbergsr@ballardspahr.com
Taimarie N. Adams
adamst@ballardspahr.com
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500 – Telephone
(215) 864-8999 – Facsimile

John M. Desmarais
john.desmarais@kirkland.com
Michael P. Stadnick
michael.stadnick@kirkland.com
Timothy K. Gilman
tgilman@kirkland.com
Kirkland & Ellis LLP
Citigroup Center
153 E. 53rd Street
New York, NY  10022
(212) 446-4800 – Telephone
(212) 446-4900 – Facsimile

*Counsel for Defendants Biovail Corporation, Biovail Laboratories, Inc., and Biovail Laboratories International SRL*

M. Sean Royall
sroyall@gibsondunn.com
Ashley Johnson
ajohnson@gibsondunn.com
Malachi O. Boyuls
mboyuls@gibsondunn.com
Gibson, Dunn& Crutcher LLP
2100 McKinney Avenue
Dallas, TX  75201-6911
(214) 698-3256 – Telephone
(214) 571-2923 – Facsimile

Monique M. Drake
mdrake@gibsondunn.com
Amanda Tessar
atessar@gibsondunn.com
Gibson, Dunn& Crutcher LLP
1801 California Street
Denver, CO  80202-2641
(303) 298-5957 – Telephone
(303) 313-2815 – Facsimile

Thomas E. Zemaitis
zemaitist@pepperlaw.com
Daniel J. Boland
bolandd@pepperlaw.com
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4361 – Telephone
(215) 981-4750 – Facsimile

*Counsel for Direct Purchaser Plaintiffs*

David S. Nalven
davidn@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700 – Telephone
(617) 482-3003 – Facsimile

*Indirect Purchaser Plaintiffs' Interim Executive Committee*

Daniel E. Gustafson
dgustafson@gustafsongluek.com
Karla M. Gluek
kgluek@gustafsongluek.com
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
(612) 333-8844 – Telephone
(612) 339-6622 – Facsimile

Marvin A. Miller
mmiller@millerlawllc.com
Lori A. Fanning
lfanning@millerlawllc.com
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
(312) 332-3400 – Telephone
(312) 676-2676 – Facsimile

*Counsel for Indirect Purchaser Plaintiffs*

J. Cecil Gardner
jcg@thegardnerfirm.com
Kimberly Calametti Walker
kwalker@thegardnerfirm.com
The Gardner Firm
1119 Government Street
Post Office Drawer 3103
Mobile, AL  36652
(251) 433-8100 – Telephone
(251) 433-8181 – Facsimile

Christopher M. Burke
cburke@scott-scott.com
Kristen M. Anderson
kanderson@scott-scott.com
Scott & Scott, LLP
600 B Street, Suite 1500
San Diego, CA  92101
(619) 233-4565 – Telephone
(619) 233-0508 – Facsimile

4

Michael J. Boni
mboni@bonizack.com
Joanne Zack
jzack@bonizack.com
Joshua D. Snyder
jsnyder@bonizack.com
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
(610) 820-0200 – Telephone
(610) 820-0206 – Facsimile


Dated:  February 3, 2010                          /s/ Jennifer Fountain Connolly
                                                  Jennifer Fountain Connolly

## Jennifer Snyder

| | |
|---|---|
| **From:** | David Nalven [davidn@hbsslaw.com] |
| **Sent:** | Wednesday, February 17, 2010 7:57 PM |
| **To:** | Michael P. Stadnick (michael.stadnick@kirkland.com); Elizabeth Bernard (elizabeth.bernard@kirkland.com); Tessar, Amanda J. |
| **Cc:** | Amber Nesbitt; Robert McGill; Jennifer Snyder |
| **Subject:** | WXL -- Meet and Confer w GSK |

Following up on our meet and confer concerning GSK's production of documents, which in turn followed plaintiffs' letters dated December 7, 2009, December 22, 2009, December 31, 2009, and February 3, 2010, and GSK's response dated February 10, 2010, as a means of resolving a discovery dispute, plaintiffs have asked GSK to do the following:

1.     Provide a qualitative description of the documents GSK has been produced and what remains to be produced.  At minimum, the qualitative description would include the identity of document custodians whose documents have been partially or fully produced, and the custodians whose documents are yet to be produced.

2.     Advise whether document indices were created by any of GSK's counsel in the underlying patent litigations and, if so, produce the indices, subject to redaction of work product.

3.     Advise whether GSK prepared any privilege logs in the underlying patent litigations and, if so, produce the logs.

4.     Provide a privilege log with respect to documents newly produced in this action that have been already identified and withheld for privilege, and supplement the log on a rolling basis.

5.     Substantially complete production of GSK's production of documents in response to plaintiffs' RFPs by April 1.

GSK has agreed to respond within one week.

Thanks very much.

David S. Nalven | Partner
**Hagens Berman Sobol Shapiro LLP**
55 Cambridge Parkway, Suite 301 - Cambridge, MA  02142
Direct: (617) 475-1953
Email davidn@hbsslaw.com | www.hbsslaw.com

2/26/2010

SEATTLE    BOSTON    CHICAGO    LOS ANGELES    PHOENIX    SAN FRANCISCO          T 617.482.3700    F 617.482.3003



David S. Nalven
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 475-1953**
davidn@hbsslaw.com

February 19, 2010

Amanda J. Tessar, Esq.
Kourtney Mueller Merrill, Esq.
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202

M. Sean Royall, Esq.
Sarah Toraason, Esq.
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912

> Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
> *C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)*

Dear Counsel:

I am writing on behalf of Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs.
We have your letter dated February 16, 2010 concerning our meet and confer on February 12,
2010 on behalf of Biovail.  The letter is an incomplete and inaccurate description of our call or
Biovail's discovery conduct.  Without going through each of your mischaracterizations, we note
by example:

- The letter fails to acknowledge Plaintiffs' repeated explanation that the pace and manner
  of Biovail's production of documents renders it unreasonably burdensome for Plaintiffs
  to conduct discovery in an orderly and efficient manner.

- The letter fails to acknowledge that the subject matter of the meet and confer was not
  new, that Plaintiffs have raised these issues in letters dated December 7, 2009, December
  22, 2009, December 31, 2009, and February 3, 2010, that the meet and confer occurred at
  all only upon Plaintiffs' repeated insistence and only when Plaintiffs advised Biovail that
  they would have no choice but to move if it did not provide a date on which the meet and
  confer could occur, and that the meet and confer itself occupied over an hour.

- The letter fails to acknowledge that Plaintiffs requested that Biovail provide assurances
  that it would substantially complete its document production by April 1, 2010, more than
  a year after the Court denied Biovail's motion to dismiss and directed the parties to begin

WXL Antitrust Litigation – Biovail Counsel
February 19, 2010
Page 2

preparing for a Rule 16 conference – and that not only would Biovail not provide such assurance, but would not provide *any* date by which it expected to substantially complete its production.

Regardless, Plaintiffs remain committed to resolving the pending disputes without motion practice. To that end, here is the list, reiterated from our earlier letters and our one-hour conference, which Biovail requested:

1.      *Content and Status of Biovail's Document Production.* Biovail claims it has produced documents as they were maintained in the "usual course of business," as if those intoning words automatically sanctions Biovail's production practices. Having gone through Biovail's entire production at least once, and having reviewed many of the files in depth, we cannot discern any pattern or organizing principle to Biovail's production, and we very seriously doubt that the production mirrors the manner in which Biovail actually maintains its business information, or the manner in which Biovail's inside or outside counsel maintain their files. To remedy this apparent failure to comply with Fed. R. Civ. P. 34, Plaintiffs have asked Biovail to describe its production on a disc-by-disc basis by subject matter, e.g. communications from the *Abrika* patent litigation, all documents in Eugene Melnyk's custody. Biovail must provide reasonable information about the content of its productions. *See, e.g., Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 333 (N.D.N.Y. 2008); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, MDL No. 2004, 2009 WL 152495, at *2 (M.D. Ga. Jan. 22, 2009). Under the circumstances, Plaintiffs' request is eminently reasonable solution to a concrete and easily understandable problem. Information about the "description, nature, custody, condition and location" of documents is undeniably discoverable under Fed. R. Civ. P. 26(b)(1).

2.      *Custodians.* Plaintiffs seek identification of the custodians whose responsive documents have been fully produced, partly produced, or remain to be produced. Providing this information imposes no burden on Biovail. For Plaintiffs, however, the information will improve the efficiency of document review and further discovery planning. It will also help to facilitate the timing and ordering of depositions. Given Biovail's rolling (over many months) and fragmented production, and given the balance of the burdens and benefits to the discovery process, it is unreasonable for Biovail to continue to withhold this information.

3.      *Indices.* Plaintiffs seek pre-existing indices of documents produced in the underlying cases, whether in complete form or redacted for privilege. Consistent with the authorities cited above, Biovail is required to produce such indices if they were prepared in the course of the underlying litigation. *See also Washington Bancorporation v. Said*, 145 F.R.D. 274 (D.D.C. 1992) (objective index of 2400 boxes cannot be withheld on work product grounds); *Accord Portis v. City of Chicago*, No. 02 C 3139, 2004 U.S. Dist. LEXIS 12640 at * 9 (N.D. Ill. July 7, 2004) (plaintiffs' database of 20,000 arrest records produced by defendant, collecting from the records the arrestee's name, address, ordinance violated, booking number, bond time, etc., must be produced because it does not reveal plaintiffs' counsel's mental impressions).

WXL Antitrust Litigation – Biovail Counsel
February 19, 2010
Page 3

Typically, such a log containing objective information can be easily generated from the document databases used by Biovail in the underlying litigations. Biovail continues to refuse to disclose whether such indices exist or whether it has inquired of counsel in the underlying litigation concerning the existence of these indices.

      4.     *Papers from the Underlying Cases.* Plaintiffs request that Biovail advise us whether it has produced the documents from each of the underlying cases including the FDA action, by category, e.g., pleadings, expert reports and exhibits, deposition transcripts and exhibits, correspondence and, if not, when those documents will be produced. Biovail's description of its disclosure on the conference call, contrary to Biovail's claim in its February 16, 2010, was at a level of generality as to make it unusable. Plaintiffs have not asked Biovail to catalogue each and every document it has produced. We are seeking a reasonable solution to a practical problem of organizing an efficient review of Biovail's production

      5.     *Abrika Documents.* Plaintiffs seek confirmation from Biovail that all of the documents produced by *Abrika* in the underlying litigation are now assembled at Hunton & Williams's Miami office. If so, the Direct Purchaser Plaintiffs will coordinate with the Indirect Purchaser Plaintiffs and advise Biovail shortly of our plan. So that we may plan our staffing and travel, please advise us what materials other than materials produced by Abrika are in this collection.

      6.     *Other Generics' Documents.* With the exception of the *Abrika* documents housed in Miami, Plaintiffs seek assurance that we have received all of the documents produced or provided by generic manufacturers in the underlying litigations that are in Biovail's possession. The generic manufacturers have taken the position that they should not be required to produce materials that are in Defendants' possession, so it is critical that we understand what Biovail has before returning to our discussions with the generic manufacturers' counsel.

      7.     *Completion of Production.* Plaintiffs request that Biovail complete its initial production of documents by April 1, 2010. The parties began conferring on the categories of documents Plaintiffs seek almost a year ago. Biovail has had Plaintiffs' RFPs since June 2009 and, even prior to that time Direct Purchaser Plaintiffs advised Biovail in the context of negotiating a scheduling order that Plaintiffs wanted documents from the underlying patent cases. By April 1, Biovail will have had nine-and-a-half months to complete its initial document production, leaving six-and-a-half months for Plaintiffs to review the documents, take depositions, and file any necessary discovery-related motions. Further delay is unreasonable under the Court's schedule.

      8.     *Privilege Log.* We have now received Biovail's first installment of its privilege log. The log fails to identify the dates of the documents withheld as privileged. Under Fed. R. Civ. P. 26(b)(5)(A), a party withholding documents on the ground of privilege is required to "describe the nature of the documents, communications, or tangible things not produced or disclosed — *and do so in a manner that . . . will enable other parties to assess the claim*"

WXL Antitrust Litigation – Biovail Counsel
February 19, 2010
Page 4

(emphasis added) – thus, identification of certain categories of information, specifically including the dates of the documents being withheld.  *See, e.g., In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir. 2001) (citing the *Manual for Complex Litigation* (Third) § 21.431 (1995)); *Novelty, Inc. v. Mountain View Marketing, Inc.,* No. 1:07-cv-01229-SEB-JMS, 2009 WL 3444591, at *9 (S.D. Ind. Oct. 21, 2009); *Mancini v. Ins. Corp. of New York,* No. 07cv1750-L(NLS), 2009 WL 1765295, at *3 (S.D. Cal. June 18, 2009); *Community House, Inc. v. City of Boise, Idaho,* No. CV 05-283-S-BLW, 2009 WL 1650463, at *3 (D. Idaho June 12, 2009); *Cappetta v. GC Services Ltd. P'ship,* No. 3:08CV288, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008); *Ramirez v. Olympic Health Mgmt. Sys., Inc.,* No. CV-07-3044-EFS, 2008 WL 5377882, at *4 (E.D. Wash. Dec. 23, 2008).  We note also that Biovail expressly agreed to provide a Fed. R. Civ. P. 26(b)(5)(A) compliant privilege log in the parties' privileged documents agreement in this case, just as it had included this information in its privilege logs in the underlying litigations.  Please provide that information here.

9. *Privilege Log in Excel.*  Plaintiffs request that Biovail provide its privilege logs in Excel format (the format in which it was created).  This is routinely done in complex litigation and is a reasonable request, given both the number of documents involved in this case and Plaintiffs' earlier efforts to ease the burden on Defendants as to what materials they are required to log.

Please advise us of Biovail's position on these matters by Wednesday, February 24, 2010.

Very truly yours,

/s/ **David S. Nalven**

David S. Nalven

cc:  GSK Counsel
     Plaintiffs' Counsel