GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1801 California Street
Denver, CO 80202-2642
Tel 303.298.5700
www.gibsondunn.com

Client Matter No.: 12434-00001

Amanda Tessar
Direct: 303.298.5742
Fax: 303.313.2826
ATessar@gibsondunn.com

February 10, 2010

VIA ELECTRONIC MAIL

Jennifer Fountain Connolly, Esq.
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603

Re: *In re Wellbutrin XL Antitrust Litigation,*
    Case Nos. 09-cv-2431, 09-cv-2433 (E.D. Pa.)

Dear Jennifer:

I write on behalf of Biovail in response to the first four issues raised in your February 3, 2010 letter.  Biovail has responded separately to the Biovail deposition notice attached to, and discussed in, your letter.

**Document Indices.**  As stated in our letters dated January 6 and 18, 2010, we are not currently aware of any non-privileged or non-work product indices identifying documents produced or received during the underlying litigations.  We are also not aware of any privileged or work product document indices that can be easily redacted to provide the types of information you describe (author, recipient, date, title, etc.).  If you maintain, despite this clarification, that Biovail must produce privileged and/or work product document indices generated in the underlying litigations, please provide us with the authority and analysis you are relying upon to support your position.  I would also be happy to discuss this issue further by telephone.

**Production Schedule And Alleged Production Deficiencies.**  Your suggestion that Biovail's productions have been disorganized and/or lacking in metadata does not fairly characterize Biovail's productions to date.  Biovail has fully complied with the parties' "Agreement Regarding Production of Electronically Stored Information" ("e-discovery agreement").  Indeed, Biovail has produced extensive metadata, where required, including metadata that oftentimes identifies the source of the documents, and will continue to do so in

GIBSON DUNN

Jennifer Fountain Connolly, Esq.
February 10, 2010
Page 2

compliance with the e-discovery agreement. Additionally, Biovail has cooperated with
Plaintiffs to prioritize for production the categories of documents that Plaintiffs identified as
relevant to class certification issues.

We are aware of no legal authority requiring Biovail to "identify the nature of the documents
they have produced and, on a going forward basis, to state in their production cover letters
what the documents they are producing represent," as you request. Plaintiffs have made
extensive requests for production that implicate a large volume of documents, and Biovail is
in the process of complying with those requests as set forth in its responses to Plaintiffs'
document requests and the parties' correspondence. At this time, Biovail does not have an
anticipated production completion date, but will provide one when it can reasonably do so.

As a courtesy to Plaintiffs, here is an explanation of the Bates-prefixes for the documents
Biovail has produced to Plaintiffs to date. Please note that this information is also largely
available in Biovail's production over letters and the production metadata:

| Production Number Prefix | Explanation |
|---|---|
| BV, BV_E, BV_V, BVABRK, BVANCH, BVIMPX | Documents produced by Biovail in the underlying litigations. Although there *are* exceptions to this rule, "BVABRK" documents are generally documents from the *Abrika* case that were produced to Anchen, Impax, and/or Watson; "BVANCH" documents are generally documents from the *Anchen* case that were produced to Abrika, Impax, and/or Watson; and "BVIMPX" documents are generally documents from the *Impax* case that were produced to Abrika, Anchen, and/or Watson. One known exception is that many of the *Anchen* case documents were labeled under the "BV" Bates-prefix in the underlying cases for production to Abrika, Impax, and/or Watson. There are likely other exceptions as well. |
| BIOVAIL | Documents collected and produced from Biovail's files in response to Plaintiffs' document requests. |
| BV-FR | Documents collected and produced from Fox Rothschild, LLP's files in response to Plaintiffs' document requests. |

GIBSON DUNN

Jennifer Fountain Connolly, Esq.
February 10, 2010
Page 3

| Production Number Prefix | Explanation |
|---|---|
| BV-HOWREY | Documents collected and produced from Howrey LLP's files in response to Plaintiffs' document requests. |
| BV-HW | Documents collected and produced from Hunton & Williams, LLP's files in response to Plaintiffs' document requests. |

**Underlying Litigation Privilege Logs.**  In accordance with Biovail's responses to Plaintiffs' requests for production, Biovail has produced and will continue to produce all non-privileged privilege logs served or received in the underlying patent litigations and citizen petition proceedings.

You state that you require clarification concerning five undated privilege log documents from the underlying litigations.  These privilege logs were produced as they are kept in the usual course of business pursuant to Federal Rule of Civil Procedure 34 and in the same format that they were provided to the parties to the underlying litigations.  It would be equally burdensome and time-consuming for Biovail to attempt to reconstruct the date and context of these privilege logs from case correspondence, which is also being produced to Plaintiffs pursuant to Plaintiffs' requests for production, as it would be for Plaintiffs to do so. If you maintain, in light of this clarification, that Biovail must provide the detailed information that you request about each log, please provide us with legal authority supporting your position.

**New Privilege Logs For This Antitrust Case.**  Biovail is preparing an initial privilege log that is currently being finalized and that Biovail expects to produce to Plaintiffs next week. As you are aware, Biovail's document collection, review, and production is ongoing.  As such, the privilege log will not be complete until Biovail completes its collection, review, and production of documents in this case.  Biovail will supplement the initial log consistently with its obligations under the federal and local rules.

**GSK Responses.**  Our correspondence only represents Biovail's positions.  Biovail does not speak for or represent GSK's positions in this litigation, and GSK does not speak for or represent Biovail's positions in this litigation.  Please do not assume that Biovail's and

GIBSON DUNN

Jennifer Fountain Connolly, Esq.
February 10, 2010
Page 4

GSK's positions on these issues are the same, unless both Biovail and GSK confirm that to be the case.

To the extent you believe a meet-and-confer is still necessary in light of this detailed letter response, we are available to meet-and-confer on these issues on Thursday, February 11, 2010 between 2 and 4 pm MT or most of the day on Friday, February 12.

Please feel free to contact me with any questions.

Best regards,

 /s/    Amanda Tessar

Amanda Tessar

AJT/kmm

100810224_2.DOC

GIBSON·DUNN

Gibson, Dunn & Crutcher LLP

1801 California Street
Denver, CO 80202-2642
Tel 303.298.5700
www.gibsondunn.com

Client Matter No.: T 12434-00001

Kourtney Mueller Merrill
Direct: 303.298.5710
Fax: 303.313.2873
KMerrill@gibsondunn.com

February 11, 2010

VIA ELECTRONIC MAIL

David S. Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Pkwy, Suite 301
Cambridge, MA  02142

Jennifer Fountain Connolly, Esq.
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603

Re: *In re Wellbutrin XL Antitrust Litigation,*
    Case Nos. 09-cv-2431, 09-cv-2433 (E.D. Pa.)

Dear Counsel:

This letter responds David Nalven's February 9, 2010 e-mail regarding the individual notices of deposition directed to Dina Khairo, Paul Maes, and Carol Chapuis.  In our February 9, 2010 correspondence, we asked plaintiffs to explain how these depositions relate to class certification or may otherwise be time-sensitive.  David's e-mail did not provide any basis for plaintiffs' assertion that these depositions must be taken before March 12, 2010.  We would continue to find such an explanation helpful as we investigate when and how these depositions can proceed.  As we set out in our earlier letter, however, and in light of complications described further below, it is unlikely that any of these depositions can go forward in the immediate future.

We do not currently have current contact information for Ms. Khairo, who no longer works for Biovail.  At this time, we can make no representations about whether Ms. Khairo would be represented by Gibson Dunn with respect to a deposition in this litigation.

GIBSON DUNN

David S. Nalven, Esq.
February 11, 2010
Page 2

We are making efforts to contact Mr. Maes, and we will let you know as soon as we can whether Gibson Dunn will be representing him in connection with his deposition. As we stated in our earlier correspondence, Mr. Maes is no longer employed by Biovail and resides in Lyon, France. France is a signatory to the Hague Convention of March 18, 1970, on the Taking of Evidence Abroad in Civil and Commercial Matters. It is our understanding that a deposition of Mr. Maes taken in France must be taken pursuant to the Hague Convention.

As a matter of privacy, we cannot advise you of the nature of Ms. Chapuis' medical condition without her permission. We will request Ms. Chapuis' consent to disclose her medical condition and the accommodations necessary to facilitate her deposition in this case. Ms. Chapuis has been unavailable to speak with us this week due to a death in the family, but we will forward this information as soon as we are able to do so.

Finally, Plaintiffs stated in their February 3, 2010 letter that they intend to take these depositions before the conclusion of class certification discovery but "reserve the right to recall these witnesses if Defendants have not completed their document production." Biovail will not make its current or former employees available for more than one individual deposition in this litigation absent court order or agreement of the parties. This limitation is particularly critical for Ms. Chapuis, in light of her medical condition. Although Biovail is working diligently to produce responsive documents on general discovery issues, Biovail has not completed its production of the noticed witnesses' documents. If Plaintiffs choose to proceed with these depositions before production of their documents is complete, please be advised that Biovail will object to any efforts to re-depose these witnesses.

We will be in touch with further information regarding Ms. Khairo, Mr. Maes, and Ms. Chapuis. We would also be happy to meet-and-confer with you regarding these depositions.

Best regards,

*/s/ Kourtney Mueller Merrill*

Kourtney Mueller Merrill

KMM/kmm

cc:     Counsel for GSK

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1801 California Street
Denver, CO 80202-2642
Tel 303.298.5700
www.gibsondunn.com

Client Matter No.: T 12434-00001

Amanda Tessar
Direct: +1303.298.5742
Fax: +1303.313.2826
ATessar@gibsondunn.com

February 16, 2010

VIA EMAIL

Jennifer Fountain Connolly, Esq.
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603

David Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Pkwy, Suite 301
Cambridge, MA  02142

Re:     *In re Wellbutrin XL Antitrust Litigation,*
        Case Nos. 09-cv-2431, 09-cv-2433 (E.D. Pa.)

Dear David and Jennifer,

Thank you for your time and cooperation on Friday's meet-and-confer call.  We believe that
we made significant progress towards addressing Plaintiffs' concerns and questions about
Biovail's document productions.  Most notably, we provided detailed information relating to
the status of Biovail's production of underlying litigation documents, and we further provided
explanations concerning the privilege logs from the underlying litigations.  We also reaffirmed
our commitment, made in my letter to Jennifer last week, that Biovail will produce a privilege
log for this case sometime this week.  That privilege log will be revised or supplemented
periodically as our document review continues.  We also answered David's questions
regarding the generic manufacturers' production documents from the underlying litigations,
which we understand were largely returned or destroyed pursuant to the terms of the protective
orders in those cases at their conclusion.  As we have previously noted, please let us know if
and when you would like to arrange to review the surviving set of hard-copy Abrika
production documents in Miami.

GIBSON DUNN

Jennifer Fountain Connolly, Esq.
David Nalven, Esq.
February 16, 2010
Page 2


David raised a number of new issues on the call.  As we requested, please send us a list of those questions so that Biovail can provide you with its considered positions on those issues promptly.  We are of course unable to provide you with our work product, which some of the requests made by David on the call seemed to seek, but we will do our best to continue the cooperative dialogue that we have begun over the past year.

With respect to Plaintiffs' request that Biovail produce production logs from the underlying litigations, we again confirmed that we have not located what we understand to be traditional production logs that identify each party (and third-party) that produced documents in a particular litigation, the Bates-range of each production, and the date of each production.  It is Biovail's position that outside counsel's summaries of any particular party's production(s), including summaries of particular documents in the productions and/or document-by-document summaries of productions in their entireties, are protected work product, even if they incorporate some "objective" information about the documents produced, and we do not understand your request for document production logs to be seeking such summaries or document-by-document indices.

Finally, Biovail continues to disagree that it is required to provide a "disk-by-disk" index for all of its productions in this case.  Indeed, many of Biovail's production disks to date contain a variety of materials, meaning that Plaintiffs' request effectively amounts to a request that Biovail index its entire document production for Plaintiffs.  Biovail is producing documents pursuant to Rule 34 as they are maintained in the ordinary course of business, with accompanying metadata as required by our ESI agreement.  Even Plaintiffs acknowledged on Friday's call that they are able to sort Biovail's production documents by custodian.  We are unaware of any authority suggesting that Biovail must also provide an attorney or paralegal-created index.  Biovail has already voluntarily, and in the spirit of cooperation, identified for you the meaning of each set of Bates prefixes for Biovail's productions in this case.  To the extent that Plaintiffs are aware of any authority supporting their additional request for "disk-by-disk" indices, we invite you to provide it for our consideration.

As always, please let me know if you have any questions or concerns.

GIBSON DUNN

Jennifer Fountain Connolly, Esq.
David Nalven, Esq.
February 16, 2010
Page 3

Sincerely,

_____ /s/ _____ Amanda Tessar _____

Amanda Tessar

AJT/ajt

cc: Jennifer Snyder, Esq.
    Elizabeth Bernard, Esq.

100814464_1.DOC

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1801 California Street
Denver, CO 80202-2642
Tel 303.298.5700
www.gibsondunn.com

Client Matter No.: T 12434-00001

Amanda Tessar
Direct: +1303.298.5742
Fax: +1303.313.2826
ATessar@gibsondunn.com

February 25, 2010

<u>VIA EMAIL</u>

David Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Pkwy, Suite 301
Cambridge, MA  02142

Re:     *In re Wellbutrin XL Antitrust Litigation,*
        Case Nos. 09-cv-2431, 09-cv-2433 (E.D. Pa.)

Dear David,

Thank you for your letter dated February 19, 2010.  I address each of the numbered paragraphs in your letter below, but first respond to the unmerited allegations made in the prefatory comments of your letter.

Biovail has worked diligently to produce documents responsive to the dozens of broad document requests served by Plaintiffs.  In doing so, Biovail has coordinated the collection of underlying litigation files from over a half-dozen outside law firms, as well as internal Biovail custodians.  That process has required resolution of numerous protective order issues.  Biovail has simultaneously attempted to prioritize the production of certain categories of documents, at Plaintiffs' request, including extensive transactional data, IMS data, and underlying litigation materials.

To date, Biovail has produced over 289,000 pages of documents.  Plaintiffs have not identified a single instance in which Biovail has failed to comply with the parties' e-discovery agreement.  Indeed, Plaintiffs have acknowledged that, with the Bates-prefix information that Biovail has provided and the custodian metadata accompanying its productions, Plaintiffs are able to determine the source of all of the documents produced.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 2

Despite your assertion that there were no new issues raised on our February 12, 2010 meet-and-confer call, the majority of the concerns discussed on the call and in your February 19, 2010 follow-up letter are new and were not addressed in Plaintiffs' letters dated December 7, December 22, and February 3. Indeed, this point is immediately obvious from the headings in the various letters. *Compare* Feb. 3, 2010 letter (listing three topics that are currently under discussion) with Feb. 19, 2010 letter (listing nine topics, responded to below). Notably, although Plaintiffs did ask on our February 12th call if Biovail could predict when its productions would be substantially complete, Plaintiffs *never* requested or even mentioned an April 1, 2010 completion date from Biovail on the call.[1] On a similar note, none of Plaintiffs' letters or requests before the February 12, 2010 call sought data about when particular custodians' productions are complete; that issue was newly raised on the call.

Taking the issues raised in your February 19th letter in order:

1.      Plaintiffs' request for disk-by-disk indices of Biovail's document productions: Although it would be convenient if every production set fell neatly into a single, crisp category (*e.g.*, "Anchen expert reports"), and if every custodian organized their files so that particular categories of documents were separated into discrete sets, the reality is that Biovail's production disks ordinarily contain a great deal of different materials, produced as they are kept in the ordinary course of business. Biovail has provided explanatory Bates-prefix information *and* all custodian metadata required by the parties' e-discovery agreement.

It is Plaintiffs' obligation to review the large volume of documents they have requested, not Biovail's obligation to assume the burden of creating logs, indices, and explanatory materials. *See, e.g., Breunlin v. Village of Oak Park*, No. 07 C 4627, 2008 U.S. Dist. LEXIS 54564, at **8-9 (N.D. Ill. July 17, 2008) ("According to the plain language of Rule 34, a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business."); *3M Co. v. Kanbar*, No. C06-01225 JW, 2007 U.S. Dist. LEXIS 45232, at *6-9 (N.D. Cal. June 14, 2007) (accepting the producing party's assertion that it produced the documents in the ordinary course of business and refusing to require the producing party to provide an index for large volume of documents where the size of the production was a problem of the requesting party's making); *Braun v. Agri-Systems*, No.

---

[1]  Perhaps Plaintiffs are confusing their call with Biovail and their call with GSK the following week, when Plaintiffs did make that request of GSK. The April 1st date, however, was not mentioned on the Biovail call.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 3

F-02-6482 A WILJO, 2006 U.S. Dist. LEXIS 25185, at *14 (E.D. Cal. Feb. 2, 2006) ("Rule 34 does not require a party to create … an index [of document produced as they are kept in the ordinary course of business].").

The case law defines the phrase "as kept in the ordinary course of business" to mean that the documents were produced in the manner they existed when collected. *See MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 U.S. Dist. LEXIS 76853, at *5 (D. Kan. Oct. 15, 2007); *see also Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.*, No. 09-CV-10179, 2009 U.S. Dist. LEXIS 118394, at *7-8 (E.D. Mich. Dec. 18, 2009) (holding that the producing party met its burden of showing that documents were produced as kept in the ordinary course of business by "identif[ying] the document custodians and the range of Bates numbers for each custodian's set of documents, along with the date associated with the document creation.  [The producing party] indicate[d] that the documents were produced in the order that they were found on the hard drive of each document's custodian.  Email attachments were produced directly following the corresponding email.").

In response to your questions as to how the Biovail documents produced have been ordered "as kept in the ordinary course of business," Biovail can confirm that, as a general matter, Biovail electronic documents that are likely to contain responsive information are uploaded, reviewed, and produced in the order that they were originally foldered by each custodian, subject to the ordinary process of dividing sets of documents for attorney review and attorneys occasionally marking documents for further review.  Any documents marked for further review, if not ultimately determined to be nonresponsive or withheld as privileged or work product, are later produced with any required custodian and other metadata.  Email attachments are produced immediately after the emails with which they are associated, along with metadata showing attachment relationships.  Hard-copy documents from outside counsel files and Biovail personnel are generally forwarded in boxes from custodians and law firms to outside vendors, who scan the documents, with the scanned .tiff images then uploaded by our database vendor.  We understand that the documents within each box are scanned in the order they are found.  Particular custodians' hard-copy documents are then divided into groups that are reviewed by attorneys for responsiveness and privilege.  During this process, as with electronic documents, documents are occasionally marked for further review.  Any documents marked for further review, if not ultimately determined to be nonresponsive or withheld as privileged or work product, are later produced with custodian data.  Before protective order issues were resolved, outside counsel firms from the underlying litigations could only to provide us with documents that we were permitted to see at that time, and therefore certain documents were required to be segregated for our review.  Also, certain custodians were asked

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 4

to forward priority categories of documents for which Plaintiffs had requested early
production. Apart from these two exceptions, we have never intentionally rearranged any
custodian's files or given any direction that they should be rearranged before production.
*Compare Breunlin v. Village of Oak Park*, No. 07 C 4627, 2008 U.S. Dist. LEXIS 54564, at
*10 (N.D. Ill. July 17, 2008) (purpose of Rule 34 is to "preclude litigants from 'deliberately
mixing critical documents with masses of other documents to hide their existence or obscure
their significance'").

Going forward, however, as a compromise to Plaintiffs' request for more information
about each production as it is sent, Biovail is willing to include information in each production
transmittal letter specifically listing the custodians for whom documents are being produced.
The production made on February 19, 2010, for instance, contains documents from the Biovail
Legal Department main files, as well as certain non-privileged, responsive documents
Plaintiffs requested from Gibson Dunn's files.

2.    Plaintiffs' request for custodian data:  Per Plaintiffs' request, Biovail will
inform Plaintiffs as the productions for particular custodians are substantially complete.  All
parties should recognize that "substantially complete" does not necessarily mean 100%
complete.  Despite Biovail's best efforts, there may occasionally be follow-on productions for
particular custodians.

At this time, Biovail's productions are substantially complete for materials relating to
the *Anchen* litigation from outside patent litigation counsel firm Howrey LLP.[2]  Biovail's
production of materials from the Biovail Legal Department main files is also substantially
complete, although we expect to continue producing files from individual custodians within the
Biovail Legal Department.  Additionally, Biovail has produced a full set of pleadings from the
allegedly "sham" FDA litigation.

Plaintiffs also asked Biovail to identify the custodians whose files are still pending
review and production.  Biovail will not share this work product information with Plaintiffs.

3.    Plaintiffs' request for production logs from the underlying litigations:  Biovail
fully responded to Plaintiffs' request for production logs from the underlying litigations in our

---

[2]  The only of the five underlying alleged "sham" lawsuits for which Howrey represented
Biovail was the *Anchen* suit.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 5

letter dated February 16, 2010. Since the date of that letter, we have located one production
log in Katten Muchin's files that identifies the Bates-ranges and dates of party and third-party
productions in the *Abrika* and *Anchen* cases. The log is dated February 14, 2006, so it
presumably does not list productions after that date. Without waiving the right to assert in the
future that any other such production logs that we may find constitute work product, Biovail
will agree to produce the Katten log we have found, which is attached hereto for your
convenience as Attachment A. We will also include a Bates-stamped copy of the log with one
of our upcoming productions.

Your February 19th letter now additionally requests that, because Biovail does not have
traditional, complete production logs from Biovail's outside patent litigation counsel for each
of the underlying patent litigations, Biovail should *create* such a production log for Plaintiffs
for each of the underlying cases from databases used during those cases. We are unaware of
any authority that would support such a request. Even if Biovail were required to create such a
document, and even if any such databases had not been shut down years ago, there are a
number of practical obstacles to creating such a log from any underlying case databases. For
instance, most of the generic manufacturers' productions (and third-party productions) were
destroyed from the underlying patent litigation counsel's databases pursuant to protective
orders at the conclusion of those cases; some productions were originally handled in paper and
may never have been loaded to a database; multiple law firms were involved with different
productions at different points in time; and at least some databases were destroyed or archived
at the conclusion of the litigations.

The best information that we can provide, based on our best efforts to piece together
information from the records available to us, is that Biovail itself produced documents in one
or more of the underlying litigations Bates-labeled BV000000001 to BV00085981,
BV_E00000001 to BV_E00049213, BV_V00000001 to BV_V00000358, BVABRK0000001
to BVABRK029445, BVANCH0000001 to BVANCH001430, BVIMPX0000001 to
BVIMPX000181. Although identified in the attached underlying production log, we have to
date been unable to locate a small (105 pages) BVWATS production, made in approximately
January of 2006, apparently consisting of early pleadings from the Watson case. We will
produce these documents if they can be located. We are not aware of any other Biovail
productions from the underlying litigations besides those described above. If any are
discovered, we will produce them promptly.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 6

    4.   <u>Papers from the underlying cases:</u>  On the February 12th call, I provided a great deal of information regarding the status of Biovail's underlying litigation productions, much of which I will now repeat, per your request:

- As stated above, Biovail's production of materials from the files of Howrey (counsel of record for Biovail in the *Anchen* litigation) is substantially complete.  Thus, any non-privileged underlying litigation materials in those files that were provided to Gibson Dunn have now been substantially produced.

- Biovail's re-production of the Biovail productions that have been collected from the four underlying patent litigations is also substantially complete, as explained in more detail above.

- Biovail's production of hard-copy pleadings, expert reports, discovery requests/responses, and deposition transcripts and exhibits from the *Anchen* litigation found in the files of Hunton & Williams is substantially complete.

- A great deal of the pleadings, expert reports, discovery requests/responses, deposition transcripts and exhibits, and correspondence from the *Impax* litigation found in the files of Hunton & Williams have already been produced, and we expect that Biovail's productions of these materials will be substantially complete before long.

- Biovail intends to next focus its attention on the *Abrika* pleadings, *Anchen* correspondence, and *Watson* litigation materials.

- As noted on our call, the Court resolved the protective order issues surrounding Gibson Dunn's access to many of these materials just before the holidays, and there were holiday-related delays in the underlying law firms' transfer of their files to Gibson Dunn, but we are working diligently to ensure that we receive and promptly review all files.

- Also, please note that, as mentioned on the call, Duane Morris (local counsel for Biovail at the outset of the *Abrika* case) has not responded to our requests for its files.

    5.   <u>*Abrika* documents:</u>  We understand that there are approximately ninety boxes of paper Abrika production documents in the possession of Hunton & Williams.  We understand that Abrika production documents are the only category of Hunton & Williams documents that

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 7

will be made available for inspection (*i.e.*, there are no other parties' production documents or any other category of litigation materials within the ninety boxes of Abrika production documents that will be made available for inspection). We believe, but are not certain, that these ninety boxes constitute Abrika's entire production. Please let us know whether Plaintiffs would like to inspect these boxes.[3] We will need reasonable advance notice as Hunton & Williams is not counsel in this case and is accommodating the inspection as a courtesy. With sufficient advance notice, however, we will make the necessary arrangements.

      6.    <u>Other generic underlying productions:</u> We have recently learned that Katten Muchin retained DVDs or CDs containing portions of some of the generic manufacturers' underlying productions. Specifically:

- It appears that Katten retained a portion of Abrika's production documents in its files. To our knowledge, those materials include at least documents Bates-labeled ABRKA0000001-5733 and ABK-ANDAVOL11004373-74, ABK-ANDAVOL11004376-79, ABK-ANDAVOL11004585-393, and ABK-ANDAVOL11004375-393. We believe that the Abrika documents in the Katten files likely duplicate those found at Hunton & Williams, although we are awaiting confirmation on this point. Assuming the Katten Abrika production documents are duplicative of those in Hunton's files, Biovail does not currently intend to collect or re-produce these materials or separately make them available for inspection.

- It appears that Katten retained a portion of Anchen's production documents in its files. On October 23, 2009, Biovail notified the Court that it was, at that time, aware that Katten had retained 2,400 pages of the Anchen production documents. Biovail indicated that it would make those materials available for inspection. We believe that it is those originally-discovered 2,400 pages of documents for which Anchen provided

---

[3] In addition, Hunton informed us today that they have located two DVDs that contain a subset of Abrika's production documents. We are confirming that these electronic documents are duplicative of the paper documents found in Hunton's ninety boxes and, if so, do not intend to make the DVDs available for inspection. If the DVDs contain any non-duplicative materials, we will make them available for inspection on a standalone computer at the same time that the hard-copy boxes are made available, consistent with the representations Biovail made in its October 23, 2009 submission to the Court.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 8

the consent that you reference in your letter.  It now appears that Katten's files include additional materials, including at least documents Bates-labeled ANCH0000001-751, ANCHEN000001-5311, and ANCHEN005328-9491, as well as Anchen fact witness deposition transcripts.  We are not aware of any consent from Anchen that Gibson Dunn may *produce* the entirety of the materials in Katten's files, beyond the 2,400 pages to which they originally consented, but we believe that we may make them available for inspection, in light of Biovail's notice to the Court on October 23, 2009. We do not know whether the materials listed above constitute a complete collection of Anchen's production documents.  If you are aware that Anchen has fully consented to the *production* of Katten's additional *Anchen* case materials, such as those listed above, or if you are able to negotiate such a consent, please let us know.  We continue to believe, however, that, if the parties want a complete set of Anchen's production documents (and/or fact deposition transcripts), those materials are best obtained from Anchen, which is better situated to confirm the full range of its production and other details regarding documents that it was permitted to retain under the protective order at the conclusion of the *Anchen* litigation.

- It appears that Katten retained a portion of Impax's production documents in its files. To our knowledge, those materials include at least documents Bates-labeled IMPAX00000001-181.  We understand that Impax has fully reproduced its underlying productions, so Biovail does not presently plan to reproduce these duplicative Impax underlying productions.

- It appears that Katten retained a portion of Watson's production documents in its files. To our knowledge, those materials include at least documents Bates-labeled WATSON00000001-105.  We are not aware that Watson has consented to the production of these pages from its underlying production.  Your letter suggests that Watson has provided Plaintiffs with the appropriate consent.  If that is correct, please forward the consent and we will produce the Watson documents found in Katten's files. Please note, however, that we understand that these Watson production materials represent a small fraction of Watson's total production in the underlying litigations, so it is likely more efficient for Watson to reproduce its entire production than for Biovail to attempt to do so piecemeal.

This discussion represents our best and most current knowledge.  Other than possibly the Abrika production documents at Hunton & Williams, discussed above, we are not aware of complete production sets of the generic manufacturers' prior productions anywhere in the

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 9

underlying litigation files.  Besides the documents in Hunton's and Katten's files, discussed above, there may be subsets of productions attached to correspondence, pleadings, or elsewhere in the underlying litigation documents Biovail is producing to Plaintiffs.

In addition to the generic manufacturers' productions, we have learned that there are also some third-party productions from the underlying litigations that remain in at least Katten's files.  Those include productions from at least Wyeth, Colorcon, and Teva.  We understand that Katten is currently attempting to secure consent from those parties to allow Gibson Dunn to collect and produce the materials.  If those productions can be collected and produced, we will do so.  If Plaintiffs' would like contact information for these third parties so that they can attempt to secure their own consents, please let us know, and we will provide the most up-to-date information that we have available.

7.  <u>Completion of Biovail's production:</u>  Plaintiffs' new – and arbitrary – request that Biovail's production be entirely complete by April 1, 2010 is neither reasonable nor justified.  As discussed above, Biovail is working diligently to produce documents on a rolling basis and has already produced a large volume of materials.

8.  <u>Dates for documents listed on privilege log:</u>  Biovail agrees to provide a revised initial privilege log that includes the dates of the documents withheld.  It is attached to this letter as Attachment B.

9.  <u>Privilege log in Excel:</u>  As stated on the February 12th call, we understand that Gibson Dunn's internal, Excel version of Biovail's privilege log will contain metadata that may reveal attorney work product, including metadata showing internal revisions to the privilege log.  Therefore, Biovail will not produce its privilege log in Excel format.  As also stated on the call, we will print Biovail's newly-created privilege logs for this antitrust litigation electronically to an Adobe .pdf file and serve it in that format, such that the information in it can be easily imported into an Excel spreadsheet, should Plaintiffs wish to do so.

We trust that the responses above resolve the concerns that Plaintiffs have raised.  Please let us know if you have any continuing questions or concerns.

GIBSON DUNN

David Nalven, Esq.
February 25, 2010
Page 10

Sincerely,

_____ /s/  Amanda Tessar _____

Amanda Tessar


AJT/ajt

cc: Jennifer Connolly, Esq.
    Elizabeth Bernard, Esq.

100818914_3.DOC

**Biovail**
**Anchen - 332931-00012**
**Abrika - 332931-00013**

## PRODUCTION PREFIX KEY

| PREFIX | PREFIX DESCRIPTION | Next No. |
|---|---|---|
| BV | Biovail general production number | |
| BVABRK | Abrika documents (pleadings, prior art, etc...) produced to ANCHEN | |
| BVANCH | Anchen documents (pleadings, etc...) produced to ABRIKA | |
| BVIMPX | Biovail v. Impax pleadings pulled from PACER and produced to Anchen & Abrika | |
| BVWATS | Biovail v. Watson pleadings pulled from PACER and produced to Anchen & Abrika | |

2/14/2006

4

50276387, sheet 2

**Biovail Productions**
Anchen - 332931 - 00012
Abrika - 331931 - 00013

| Production Name | Bates Range | Production Date |
|---|---|---|
| Production 1 | BV0000001 - BV00001415 | 5/10/2005 |
| Anchen Production | BV0000001 - BV00052248 | 6/22/2005 |
| Abrika Production | BV0000001 - BV00052248 | 6/22/2005 |
| Abrika Supplemental Production | BV0005249 - BV00052594 | 7/8/2005 |
| Anchen Supplemental Production | BV0005249 - BV00052594 | 7/8/2005 |
| Abrika Production of Seth Documents | BV0005259 - BV00059800 | 8/16/2005 |
| Anchen Production of Seth Documents | BV0005295 - BV00059800 | 8/16/2005 |
| Anchen Production of Seth Documents | BV0005295 - BV00059800 | 8/19/2005 |
| Anchen Production of Patent History and Previous Privileged Documents | BV00059801 - BV00060555 | 8/26/2005 |
| Abrika Production of Patent History and Previous Privileged Documents | BV00059801 - BV00060555 | 8/26/2005 |
| Abrika Production | BV00060556 - BV00060861 | 9/7/2005 |
| Anchen Production | BV00060556 - BV00060861 | 9/7/2005 |
| Anchen Production | BV00010204 and BV00060862 | 9/30/2005 |
| Abrika Production | BV00010204 and BV00060862 | 9/30/2005 |
| Abrika Production | BVANCH000001-BVANCH000691 | 1/3/2006 |
| Anchen Production | BV00060863 - BV00061088; and BVABRK000001 - BVABRK000197 | 1/13/2006 |
| Abrika Production | BV00060863 - BV00061088 | 1/13/2006 |
| Anchen Production | Replacement Images they did not receive:  BV 00010204, BV 00018231-18232, BV 00040400-48256, BV 00049953-49954, BV 00052224-52248 | 1/18/2006 |
| Anchen Production | BVANCH000692-BVANCH000215 | 1/19/2006 |
| Anchen Production | BVABRK000198-BVABRK014157 | 1/20/2006 |
| Anchen Production & Abrika Production | BVWATS000001-BVWATS000105 | 1/20/2006 |
| Anchen Production & Abrika Production | BVIMPX000001-BVIMPX000181 | 1/20/2006 |
| Anchen Production & Abrika Production | BV 00061089- BV 00061220 | 1/20/2006 |
| Anchen Production | BVABRK014158-BVABRK024264 | 1/23/2006 |
| Anchen Production | BVABRK024265-BVABRK025688 | 1/23/2006 |
| Anchen Production | BVABRK025689-BVABRK029445 | 1/23/2006 |
| Abrika Production | BVANCH000692-BVANCH001430 | 2/7/2006 |

5

Revised, 2/14/2006

Biovail v. Anchen (332931-00012)
Biovail v. Abrika (332931-00013)

DEFENDANT AND THIRD PARTY PRODUCTIONS

| Date Rec'd | Party Produced by | Bates Numbering | Database |
|---|---|---|---|
| 4/11/2005 | Anchen Production | ANCHEN001000-ANCHEN004740 | 332931-Biovail - 00012 - Anchen - ANCHEN.DCB |
| 5/31/2005 | Abrika Production | ABK-ANDA000001-ABK-ANDA009404 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 5/31/2005 | Abrika Production | ABK-ANDA#1000001-ABK-ANDA#200738F | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 6/3/2005 | Anchen Production | ANCHEN004741 - 005055 | 332931-Biovail - 00012 - Anchen - ANCHEN.DCB |
| 6/3/2005 | Abrika Production | ABK000001 - ABK012025 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 6/27/2005 | Abrika Production | ABK012026 - ABK014848 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 6/28/2005 | Abrika Production | ABK014849 - ABK026830 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 8/15/2005 | Abrika Third Party Production | WYETH000001 - WYETH000639 | 332931-Biovail - 00013 - Third Party - Wyeth - Wyeth.dcb |
| 8/15/2005 | Abrika Third Party Production | CH000001 - CH000565 | 332931-Biovail -00013 - Third Party - Wyeth.dcb |
| 9/1/2005 | Abrika Third Party Production | WYETH000640 - WYETH008923 | 332931-Biovail - 00013 - Third Party - Wyeth - Wyeth.dcb |
| 8/30/2005 | Abrika Production | ABK026831 - ABK046117 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
|  | Abrika Third Party Production | WYETH008924 - WYETH010298 | 332931-Biovail - 00013 - Third Party - Wyeth - Wyeth.dcb |
| 9/18/2005 | Abrika Third Party Production | TEV000001 - TEV000589 | 332931-Biovail - 00013 - Third Party - TEVA - TEVA.DCB |
| 9/30/2005 | Abrika Third Party Production from Morgan Lewis for Abrika | GSK-ANC 000001 - GSK-ANC 003135 | 332931-Biovail - 00012 - Third Party - Glaxo Smith Kline - GSK.DCB |
| 9/30/2005 | Abrika Third Party Production from Morgan Lewis for Abrika | GSK-ABR 000001 - GSK-ABR 020199 | 332931-Biovail - 00013 - Third Party - Glaxo Smith Kline - GSK.DCB |
| 10/7/2005 | Anchen Production | ANCHEN005220 - ANCHEN005311 | 332931 - Biovail - 00012 - Anchen - ANCHEN.DCB |
| 9/15/2005 | Abrika Production | ABK0046118 - ABK0070265 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |

6

Biovail v. Anchen (332931-00012)
Biovail v. Abrika (332931-00013)

## DEFENDANT AND THIRD PARTY PRODUCTIONS

| Date Rec'd | Party Produced by | Bates Numbering | Database |
|---|---|---|---|
| 10/11/2005 | Abrika Production | ABK0070266 - ABK0079665 | 332931-Biovail - 00013 - Def Prod - DEFPROD.DCB |
| 10/31/2005 | Anchen Production | ANCHEN005328-ANCHEN005517 | 332931 - Biovail - 00012 - Anchen - ANCHEN.DCB |
| 11/4/2005 | Abrika Third Party Production from Morgan Lewis for Abrika | GSKANC003137-GSKANC045953 | 332931-Biovail - 00012 - Third Party - Glaxo Smith Kline - GSK.DCB |
| 12/9/2005 | Anchen Production | ANCHEN005518 - ANCHEN006177. | 332931 - Biovail - 00012 - Anchen - ANCHEN.DCB |
| 1/30/2006 | Abrika Third Party Production | C-1 through C-14 | 332931-Biovail - 00013 - Third Party - Colorcon - COLORCON.DCB |
| 2/14/2006 | Abrika Production | ABK079666-ABK079979 | 332931-Biovial-00013-Def Prod-DEFPROD.DCB |
| 2/14/2006 | VPS production | VPS001-VPS077; VPS081-VPS001030 (VPS078-80 withheld because they contain information on unrelated Abrika product.) | 332931-Biovail - 00013 - Third Party - VPS - VPS.DCB |

7

50276387, sheet 4

BIOVAIL INITIAL REVISED PRIVILEGE LOG
In re Wellbutrin XL Antitrust Litigation
Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)
February 25, 2010

| Ref. No. | Begnum | Endnum | Date | Production Begin Bates | Production End Bates | Author/Sender | Recipients | CC | BCC | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | HW00000119 | HW00000121 | 2/13/2006 | BV-HW00000111 | BV-HW00000113 | Donna M. Praiss | Dr. Alexander Kabanov | | | Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 2 | HW00000675 | HW00000677 | 6/5/2006 | BV-HW00000524 | BV-HW00000526 | Elizabeth M. Wieckowski | Harold S. Nelson | Benoit Schmitt; Donna M. Praiss; James D. Dezazzo | | Attorney-Client Privilege; Attorney Work Product | Correspondence with outside counsel re Impax underlying litigation. |
| 3 | HW00000815 | HW00000815 | 7/31/2006 | BV-HW00000654 | BV-HW00000655 | Harold S. Nelson | Donna M. Praiss | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with outside counsel re Impax underlying litigation. |
| 4 | HW00000898 | HW00000901 | 7/24/2006 | BV-HW00000738 | BV-HW00000741 | Donna M. Praiss | Harold S. Nelson | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with outside counsel re Impax underlying litigation. |
| 5 | HW00001107 | HW00001112 | 9/6/2006 | BV-HW00000889 | BV-HW00000894 | Elizabeth M. Wieckowski | Dr. Robert K. Prud'homme | Donna M. Praiss; Dr. Estelle J. Tavotes; Thomas G. Slater | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 6 | HW00001198 | HW00001200 | 8/21/2006 | BV-HW00000953 | BV-HW00000955 | Donna M. Praiss | Dr. Robert K. Prud'homme | | | Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 7 | HW00001201 | HW00001201 | 8/21/2006 | BV-HW00000956 | BV-HW00000958 | Donna M. Praiss | Dr. Robert K. Prud'homme | | | Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 8 | HW00001408 | HW00001411 | 8/2/2006 | BV-HW00001150 | BV-HW00001153 | Harold S. Nelson | Donna M. Praiss | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with outside counsel re Impax underlying litigation. |
| 9 | HW00001772 | HW00001772 | 9/25/2006 | BV-HW00001488 | BV-HW00001488 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 10 | HW00001773 | HW00001773 | 9/25/2006 | BV-HW00001489 | BV-HW00001489 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 11 | HW00001788 | HW00001788 | 9/25/2006 | BV-HW00001504 | BV-HW00001504 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 12 | HW00001791 | HW00001791 | 9/25/2006 | BV-HW00001507 | BV-HW00001507 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 13 | HW00001987 | HW00002005 | 9/20/2006 | BV-HW00001703 | BV-HW00001721 | Donna M. Praiss | Dr. J. Keith Guillory | | | Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 14 | HW00002092 | HW00002093 | 11/27/2006 | BV-HW00001806 | BV-HW00001807 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 15 | HW00002094 | HW00002095 | 11/27/2006 | BV-HW00001808 | BV-HW00001809 | Raymond E. Galbraith | Vivian Gray | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 16 | HW00002104 | HW00002106 | 11/27/2006 | BV-HW00001818 | BV-HW00001820 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 17 | HW00002107 | HW00002111 | 11/27/2006 | BV-HW00001821 | BV-HW00001825 | Raymond E. Galbraith | Vivian Gray | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 18 | HW00002112 | HW00002116 | 11/27/2006 | BV-HW00001826 | BV-HW00001830 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 19 | HW00002212 | HW00002212 | 11/15/2006 | BV-HW00001926 | BV-HW00001926 | Raymond E. Galbraith | Dr. Robert K. Prud'homme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |

1

BIOVAIL INITIAL REVISED PRIVILEGE LOG
In re Wellbutrin XL Antitrust Litigation
Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)
February 25, 2010

| Ref. No. | Begnum | Endnum | Date | Production Begin Bates | Production End Bates | Author/Sender | Recipients | CC | BCC | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | HW00002263 | HW00002282 | 11/8/2006 | BV-HW00001952 | BV-HW00001953 | Raymond E. Galbraith | Dr. Robert K. Prudhomme | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 21 | HW00002416 | HW00002416 | 1/9/2007 | BV-HW00002092 | BV-HW00002092 | Kimberly A. Kelmel | Dr. Eugene Erickson | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 22 | HW00002419 | HW00002419 | 1/9/2007 | BV-HW00002095 | BV-HW00002095 | Kimberly A. Kelmel | Dr. Eugene Erickson | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 23 | HW00002497 | HW00002497 | 1/3/2007 | BV-HW00002160 | BV-HW00002160 | Raymond E. Galbraith | Dr. Eugene Erickson | Donna M. Priess; Dr. Estelle J. Tsevdos; Jessica L. Parezo | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 24 | HW00002510 | HW00002510 | 12/29/2006 | BV-HW000002173 | BV-HW00002175 | Raymond E. Galbraith | Donna M. Priess | | | Attorney-Client Privilege; Attorney Work Product | Correspondence with consulting expert re Abrika underlying litigation. |
| 25 | HWe0009600 | HW0009533 | 8/3/2009 | BV-HW00009184 | | Djordje Petkoski | Raymond E. Galbraith | | | Attorney-Client Privilege | Correspondence with outside counsel re Impax underlying litigation. |
| 26 | HWe0009781 | HWe0009799 | 9/20/2006 | BV-HW00040731 | BV-HW00040749 | Donna M. Priess | Dr. J. Keith Guillory | | | Attorney Work Product | Correspondence with consulting expert re Impax underlying litigation. |
| 27 | BIOe0001740 | BIOe0001740 | 9/25/2009 | | | Kathleen Brown | Carol Chapuis | | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 28 | BIOe0001889 | BIOe0001889 | 11/17/2004 | | | Ken Howling | Ken Cancellara; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Greg Szpunar; Jack West; Carol Chapuis; Ken Howling | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning news release. |
| 29 | BIOe0001908 | BIOe0001908 | 7/7/2006 | | | Michel Chouinard | Bill Wells; Gilbert Godin | Carol Chapuis | | Attorney-Client Privilege | Email correspondence forwarding legal advice re contract. |
| 30 | BIOe0001920 | BIOe0001920 | 4/15/2004 | | | Brian Crombie | Eugene Melnyk; John Miszuk; Ken Cancellara | Arlene Fong; Nell Smith; Carol Chapuis | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 31 | BIOe0001921 | BIOe0001921 | 3/3/2007 | | | Ken Howling | Carol Chapuis | | | Attorney-Client Privilege | Email correspondence re legal advice concerning contract. |
| 32 | BIOe0001923 | BIOe0001923 | 5/9/2007 | | | Ken Howling | Jack T. Davis | Carol Chapuis; Michel Chouinard; Jean-Luc Martre | | Attorney-Client Privilege | Email correspondence forwarding legal advice re Anchen underlying litigation. |
| 33 | BIOe0001929 | BIOe0001929 | 10/9/2009 | | | Seana Carson | Michel Chouinard; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 34 | BIOe0001938 | BIOe0001938 | 10/9/2009 | | | Paul Tully | Seana Carson; Carol Chapuis | Aaron Barkoff | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 35 | BIOe0001940 | BIOe0001940 | 11/11/2008 | | | Seana Carson | Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 36 | BIOe0001958 | BIOe0001958 | 9/11/2007 | | | Jean-Luc Martre | Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 37 | BIOe0001998 | BIOe0001998 | 7/13/2006 | | | Carol Chapuis | | | | Attorney-Client Privilege | Meeting minutes reflecting advice of counsel re contract. |
| 38 | BIOe0002017 | BIOe0002017 | 9/11/2008 | | | Michel Chouinard | Carol Chapuis; Jean-Luc Martre; Christine Mayer; Alex Mathiesen | | | Attorney-Client Privilege | Email correspondence re legal advice concerning statutory interpretation. |
| 39 | BIOe0002024 | BIOe0002024 | 8/25/2009 | | | Robert Ashworth | Carol Chapuis | | | Attorney-Client Privilege | Email correspondence re legal advice concerning contract. |
| 40 | BIOe0002028 | BIOe0002028 | 11/17/2004 | | | Douglas Squires | Ken Howling; Greg Szpunar; Ken Cancellara; Eugene Melnyk | Paul Stulberg; Nelson Isabel; Jack West; Carol Chapuis | | Attorney-Client Privilege; Attorney Work Product | Email correspondence re legal advice concerning press release. |

BIOVAIL INITIAL REVISED PRIVILEGE LOG
In re Wellbutrin XL Antitrust Litigation
Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)
February 25, 2010

| Ref. No. | Begnum | Endnum | Date | Production Begin Bates | Production End Bates | Author/Sender | Recipients | CC | BCC | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 41 | BIOe0002029 | BIOe0002029 | 11/17/2004 | | | Ken Howling | Greg Szpunar; Ken Cancellara; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Jack West; Carol Chapuis | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting legal advice from counsel concerning press release. |
| 42 | BIOe0002030 | BIOe0002030 | 11/17/2004 | | | Greg Szpunar | Ken Howling; Ken Cancellara; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Jack West; Carol Chapuis | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting legal advice from counsel concerning press release. |
| 43 | BIOe0002031 | BIOe0002031 | 11/17/2004 | | | Ken Cancellara | Ken Howling; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Greg Szpunar; Jack West; Carol Chapuis | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting legal advice from counsel concerning press release. |
| 44 | BIOe0002032 | BIOe0002032 | 10/9/2009 | | | Greg Szpunar | Ken Howling; Ken Cancellara; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Jack West; Carol Chapuis; Ken Howling | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting legal advice from counsel concerning press release. |
| 45 | BIOe0002033 | BIOe0002033 | 10/9/2009 | | | Ken Howling | Greg Szpunar; Ken Cancellara; Eugene Melnyk; Douglas Squires | Paul Stulberg; Nelson Isabel; Jack West; Carol Chapuis; Ken Howling | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting legal advice from counsel concerning press release. |
| 46 | BIOe0002035 | BIOe0002035 | 7/11/2008 | | | Seana Carson | Carol Chapuis; Michel Chouinard | Sandra Bailey | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning presentation. |
| 47 | BIOe0002039 | BIOe0002039 | 10/9/2009 | | | Michel Chouinard | Kathleen Brown; Carol Chapuis | Allison Smith | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 48 | BIOe0002047 | BIOe0002047 | 10/9/2009 | | | Alex Matheson | Carol Chapuis; Christine Mayer; Michel Chouinard | Seana Carson | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 49 | BIOe0002049 | BIOe0002049 | 10/9/2009 | | | Michel Chouinard | Seana Carson; Alex Matheson; Carol Chapuis; Christine Mayer | | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 50 | BIOe0002050 | BIOe0002050 | 10/9/2009 | | | Ken Howling | Carol Chapuis; Kathleen Brown | John Miszuk; Gilbert Godin; John Szablen; Douglas Squires | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 51 | BIOe0002061 | BIOe0002061 | 11/16/2004 | | | Eugene Melnyk | Douglas Squires; Ken Cancellara; Ken Howling; Carol Chapuis | | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning news release. |
| 52 | BIOe0002062 | BIOe0002062 | 11/17/2004 | | | Eugene Melnyk | Ken Howling; Paul Stulberg; Ken Cancellara; Douglas Squires; Jack West; Greg Szpunar; Nelson Isabel; Dina Khalro; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning news release. |
| 53 | BIOe0002063 | BIOe0002063 | 11/17/2004 | | | Eugene Melnyk | Paul Stulberg; Ken Cancellara; Ken Howling; Douglas Squires; Jack West; Greg Szpunar; Nelson Isabel; Dina Khalro; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning news release. |
| 54 | BIOe0002064 | BIOe0002064 | 10/9/2009 | | | Jack West | Paul Stulberg; Eugene Melnyk; Ken Cancellara; Ken Howling; Douglas Squires; Greg Szpunar; Nelson Isabel; Dina Khalro; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning news release. |
| 55 | BIOe0002065 | BIOe0002065 | 11/17/2004 | | | Ken Howling | Eugene Melnyk; Paul Stulberg; Douglas Squires; Jack West; Greg Szpunar; Nelson Isabel; Dina Khalro; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning news release. |

3

BIOVAIL INITIAL REVISED PRIVILEGE LOG
In re Wellbutrin XL Antitrust Litigation
Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)
February 25, 2010

| Ref. No. | Bagnum | Endnum | Date | Production Begin Bates | Production End Bates | Author/Sender | Recipients | CC | BCC | Privilege Asserted | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 56 | BIOe0002074 | BIOe0002074 | 10/9/2009 | | | Ed Stratemeier | Carol Chapuis | | | Attorney-Client Privilege | Email correspondence transmitting advice of counsel re contract. |
| 57 | BIOe0002075 | BIOe0002075 | 10/9/2009 | | | Michel Chouinard | Seana Carson; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 58 | BIOe0002076 | BIOe0002076 | 7/11/2008 | | | Seana Carson | Carol Chapuis; Michel Chouinard | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 59 | BIOe0002097 | BIOe0002097 | 10/9/2009 | | | Paul Tully | Seana Carson; Carol Chapuis | Aaron Barkoff | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 60 | BIOe0002098 | BIOe0002098 | 11/11/2008 | | | Seana Carson | Paul Tully; Carol Chapuis | Aaron Barkoff | | Attorney-Client Privilege; Attorney Work Product | Email correspondence with counsel re legal advice concerning litigation. |
| 61 | BIOe0002102 | BIOe0002102 | 10/9/2009 | | | Gilbert Godin | Carol Chapuis | Kathleen Brown | | Attorney-Client Privilege | Email correspondence re legal advice concerning inventory. |
| 62 | BIOe0002110 | BIOe0002110 | 10/9/2009 | | | Alex Mathieson | Carol Chapuis | Seana Carson | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning contract. |
| 63 | BIOe0002111 | BIOe0002111 | 10/9/2009 | | | Charles Krikorian | Carol Chapuis; Wendy Kelley | | | Attorney-Client Privilege | Email correspondence with counsel re legal advice concerning business proposal. |
| 64 | BIOe0002116 | BIOe0002116 | 10/9/2009 | | | Paul Stulberg | Eugene Melnyk; Ken Cancellara; Ken Howling; Douglas Squires; Jack West; Greg Sarpunar; Nelson Isabel; Dina Khairo; Carol Chapuis | | | Attorney-Client Privilege; Attorney Work Product | Email correspondence transmitting advice of counsel concerning news release. |
| 65 | BIOe0002157 | BIOe0002157 | 11/11/2008 | | | Paul Tully | | | | Attorney-Client Privilege; Attorney Work Product | Draft contract. |
| 66 | BROe0000002 | BROe0000002 | 2/23/2006 | | | Josie Camilletti | | | | Attorney Work Product | Counsel's litigation notes. |
| 67 | BROe0000003 | BROe0000003 | 3/22/2006 | | | Josie Camilletti | | | | Attorney Work Product | Counsel's litigation notes. |
| 68 | BROe0000004 | BROe0000004 | 5/2/2006 | | | Josie Camilletti | | | | Attorney Work Product | Counsel's litigation notes. |
| 69 | BROe0000005 | BROe0000005 | 3/28/2006 | | | Douglas N. Deeth | | | | Attorney Work Product | Draft agreement. |
| 70 | BROe0000006 | BROe0000006 | 1/17/2006 | | | Kathleen Brown | Douglas Squires | | | Attorney-Client Privilege; Attorney Work Product | Legal memorandum containing legal advice on litigation. |
| 71 | BROe0000007 | BROe0000007 | 1/17/2006 | | | Kathleen Brown | Douglas Squires | | | Attorney-Client Privilege; Attorney Work Product | Legal memorandum containing legal advice on litigation. |

4

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Elizabeth T. Bernard
To Call Writer Directly:
(202) 879-5262
elizabeth.bernard@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

February 10, 2010

**VIA EMAIL**

Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603

> Re:   *In re Wellbutrin XL Antitrust Litigation*
>        Case Nos. 09-cv-2431, 09-cv-2433 (E.D. Pa.)

Dear Jennifer:

I write in response to your February 3, 2010 letter concerning GSK's document production. Each issue raised in your letter is addressed below. On the whole, any complaints regarding GSK's document production by Plaintiffs at this time are unfounded. Discovery is ongoing in this case and GSK continues to comply with its discovery obligations and produce non-privileged, responsive documents and existing related metadata. GSK has produced documents and corresponding metadata on a consistent, rolling basis since the beginning of discovery in response to Plaintiffs' numerous requests (for a total at this time of over 600,000 pages) and its document collection, review and production efforts remain ongoing.

**Document indices.** GSK is not in possession of any document indices identifying the documents produced or obtained through discovery in the underlying litigations.

**Metadata.** GSK is fully complying with the document production metadata requirements set forth in the parties' ESI agreement. Plaintiffs have not identified any deficiencies in GSK's production of metadata and have voiced no complaints about any particular production by GSK.

With regard to GSK's ongoing document production, GSK will continue producing documents on a rolling basis and anticipates that its document production will be complete in late spring. As such, GSK will complete its document production with ample time remaining before the close of fact discovery in this litigation on October 15, 2010.

**Privilege Logs.** GSK will produce a privilege log in this litigation following the completion of the document collection, review and production process. Regarding privilege logs from the underlying litigations, GSK has produced all non-privileged documents from the underlying litigations located after a reasonable search.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco

KIRKLAND & ELLIS LLP

February 10, 2010
Page 2

**Notices of Deposition.**   Despite GSK's extensive expedited production of documents Plaintiffs identified as relevant to class certification and its offer of a related 30(b)(6) corporate witness, Plaintiffs now seek to depose two fact witnesses prior to the close of class certification discovery.   Plaintiffs have failed to explain the relevance of the two noticed fact witnesses to the class certification inquiry or why this discovery is necessary in light of the extensive class certification discovery already available to the Plaintiffs in this litigation.   GSK is under no obligation to complete its entire responsive production on an expedited basis and GSK will not agree in advance to provide a witness for a second deposition if Plaintiffs refuse to wait for GSK to complete its production.

For the foregoing reasons, GSK does not believe a meet and confer is necessary at this time.   However, if Plaintiffs insist on a meet and confer despite GSK's compliance with the scheduling order and the discovery agreements in this case, we are available next week.

Very truly yours,

Elizabeth T. Bernard

cc:     Kourtney Mueller Merrill, Esq.
        Amanda J. Tessar, Esq.
        David Nalven, Esq.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Elizabeth T. Bernard
To Call Writer Directly:
(202) 879-5262
elizabeth.bernard@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

February 25, 2010

**VIA EMAIL**

David S. Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

    Re:  *In re Wellbutrin XL Antitrust Litigation,*
       Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)

Dear David:

   I write in response to the specific requests raised by Plaintiffs during a telephone conference on February 17, 2010 and referenced in your email of the same date. I address each request as numbered in your email below.

   1.  GSK is meeting its discovery obligations by providing Plaintiffs responsive documents and the corresponding metadata. The metadata provided (where available) identifies the custodian of the corresponding document. Accordingly, no further qualitative description of the documents by GSK is necessary.

   2.  Without conceding that such indices would be subject to discovery, GSK confirms it has been unable to locate any document indices created by counsel in the underlying patent litigations.

   3.  GSK confirms it has been unable to locate any privilege logs served by GSK in the underlying patent litigations.

   4.  GSK confirms it will produce a privilege log in this litigation once its document collection, review and production process is complete. GSK's document production process remains ongoing, including its review of documents for privilege. GSK's efforts remain focused on completing its document collection, review and production in this case and will produce a privilege log in a timely manner near or following the completion of that process.

   5.  GSK cannot guarantee that its document production will be complete by April 1. GSK will continue to produce data and documents on a rolling basis. At this time, GSK believes

Chicago  Hong Kong  London  Los Angeles  Munich  New York  Palo Alto  San Francisco

KIRKLAND & ELLIS LLP

February 25, 2010
Page 2

its production will be complete by late spring.  This should provide Plaintiffs ample time to complete discovery before the fact discovery cutoff.  However, please advise whether Plaintiffs seek to prioritize production from specific GSK custodians and GSK will work to prioritize production of responsive, non-privileged documents from the identified custodians.

Very truly yours,

Elizabeth T. Bernard

cc:     Amanda J. Tessar, Esq.
        Amber Nesbitt, Esq.
        Robert McGill, Esq.
        Jennifer Snyder, Esq.