# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

2100 McKinney Avenue, Suite 1100  Dallas, Texas 75201-6911
(214) 698-3100
www.gibsondunn.com

SMellon@gibsondunn.com

October 6, 2009

| | |
|---|---|
| Direct Dial<br>(214) 698-3199<br>Fax No.<br>(214) 571-2926 | Client No.<br>T 12434-00001 |

VIA ELECTRONIC MAIL

David S. Nalven
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

>      Re:    *In re Wellbutrin XL Direct Purchaser Antitrust Litigation, C.A. No. 08-cv-2431 (E.D. Pa.) (MAM)*

Dear Counsel:

I write in response to your letter dated September 22, 2009 concerning Biovail's Objections and Responses to Direct Purchaser Plaintiffs' First Request for Production of Documents ("Responses"). We have reviewed the issues identified in your letter regarding the scope of production, and believe we can resolve these matters quickly and amicably during a meet and confer. In the interests of efficiency, however, we have set forth our thoughts on these matters below.

Please note that this letter only addresses the concerns raised in your September 22, 2009 letter, and does not attempt to resolve the outstanding issues regarding the production of confidential materials from the underlying litigations that are currently under protective orders, the timing of the production of documents that we have agreed to produce on a priority basis, or the categorical logging of documents – topics that we understand are being handled separately.

***Date Range:*** Preliminarily, based on your letter, Biovail believes that Plaintiffs may have misunderstood Biovail's date range objection. Biovail has not and does not uniformly refuse to produce all documents that predate November 12, 2004. In all instances where Biovail refuses to do so, it so indicated in response to specific requests for production. There are, however, many RFPs for which Biovail *did* agree to produce earlier documents. *See e.g.,* RFPs 18, 24, 37, 69 73, for just a few examples of this.

# GIBSON, DUNN & CRUTCHER LLP

David S. Nalven
October 6, 2009
Page 2

As expressed in the Responses, Biovail does not agree wholesale to a discovery date range that extends back to January 1, 1997 for a number of specific requests. As Plaintiffs are well aware, this litigation arises from purportedly "sham litigations and petitioning activities," the first of which *commenced in December 2004*. Hence, there is no justification for imposing on Biovail the oppressive and unduly burdensome task of sifting through an unnecessarily large volume of materials across a nearly *thirteen-year period*, especially as Plaintiffs do not allege that Biovail engaged in any anticompetitive conduct during seven of those years. Plaintiffs' request for certain types of materials from January 1, 1997 to November 14, 2004 is not likely to lead to the discovery of admissible evidence, and goes well beyond the requirements of the Federal Rules of Civil Procedure.

Your letter suggests that Plaintiffs' primary purpose in requesting pre-November 2004 discovery is to obtain documents for use in *another litigation* against GSK. Specifically, Plaintiffs contend a January 1, 1997 opening date range is necessary to prove that "GSK sought to stave off entry of *Generic Wellbutrin SR*." Letter at 2 (emphasis added). Plaintiffs further argue Request No. 32's demand for "documents concerning potential or actual market entry of *generic Wellbutrin SR*," might demonstrate the "perceived need to find an extension of [Wellbutrin SR], regardless of how tenuous the patent may be." *Id*. As Plaintiffs are well aware, however, *this case does not concern Wellbutrin SR, but Wellbutrin XL*, a distinct drug that was not introduced to the public until August 2003 (more than six years after Plaintiffs' proposed opening date range). Indeed, Plaintiffs concede that Biovail was not involved in the "manufacture or distribut[ion of] Wellbutrin SR in the United States." Letter at 4. Thus, we fail to see what relevancy GSK's purported efforts to extend its monopoly in Wellbutrin SR has to this litigation. We understand that several of Plaintiffs are involved in a *separate* antitrust action against GSK concerning Wellbutrin SR. Should Plaintiffs desire documents suggesting GSK improperly sought to extend its monopoly of that drug, Biovail suggests that Plaintiffs request those materials from GSK in that proceeding. *See, e.g., Oppenheimer Fund v. Sanders*, 437 U.S. 340, 353 (U.S. 1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

Plaintiffs' assertion that an extended discovery range is necessary to obtain Pharma Pass documents is similarly without merit. As an initial matter, Plaintiffs have not alleged any *Walker Process* claims in this litigation; only "sham litigation" claims. Compl. at ¶ 200. Thus, we do not see the relevancy of documents that may or may not suggest Pharma Pass' inventions were "worthy" of patent protection, as your letter posits. Moreover, even assuming such materials are relevant to Plaintiffs' claims (which they are not), those documents are already in Plaintiffs' possession, to the extent they are in Biovail's. As you know, Pharma Pass was a independent company at the time it developed its once-a-day bupropion hydrochloride product. During the underlying litigation, where the validity of the '341 and '327 patents was challenged, Biovail searched its files to locate – and subsequently produce – any patent and invention documents to the defendants that were in Biovail's possession. On July 31, 2009, Biovail reproduced these documents to Plaintiffs in this action. Hence, it is highly unlikely that additional searches will

# GIBSON, DUNN & CRUTCHER LLP

David S. Nalven
October 6, 2009
Page 3

generate new admissible evidence. *See, e.g., Equal Rights Ctr. v. Archstone-Smith Trust*, 251 F.R.D. 168, 172 (D. Md. 2008) (denying Plaintiff's request for production where "the information sought "has either already been produced by [the defendant] or is obtainable through a less burdensome and expensive source such as depositions that will likely be done in this case in any event").

      Biovail has already reproduced to Plaintiffs more than 128,000 pages of documents that it produced in the underlying litigations – and those documents contain many of the materials that are sought by Plaintiffs in this antitrust litigation.  These documents include, for instance, agreements between Biovail and GSK in connection with the development and marketing of Wellbutrin XL – *precisely* the agreements that your letter complains that Biovail refused to produce.  Indeed, in addition to producing those agreements in July, Biovail also – in an excess of caution – produced them *again* last week, exactly as it agreed to do in response to RFP 69.  Plaintiffs' claims that Biovail refused to produce those agreements because they predate November 12, 2004 are simply incorrect.

      Nevertheless, in an attempt to reach an amicable solution to Plaintiffs' concerns regarding date limitations, Biovail will agree to extend the end of the date range for Request Nos. 56-69 and 73-74 through the present, as you proposed.  If Plaintiffs would like to confer further about the issue of date ranges, Biovail is willing to do so, but proposes that Plaintiffs first review the materials Biovail produced in July, as Biovail believes that Plaintiffs will find many of the documents they seek in those materials.

      ***Geographic Scope:***  We are not entirely sure that there is a distinction between the position Biovail has taken with regard to geographic scope and the proposal Plaintiffs have made.  Biovail's concern is simply that Wellbutrin XL is sold in places besides the U.S.A. (*e.g.*, in Europe and Canada, either under the name of Wellbutrin XL or under other names).  The documents relating to regulatory approvals, sales, marketing, etc., of the pharmaceutical in those locations are obviously both voluminous and irrelevant.  Biovail does not intend to collect or produce such documents for purposes of this case, which relates to alleged violations of federal and state antitrust laws.

      ***"To the Extent That" Objection:***  Biovail has not withheld any documents on the basis of General Objection 8 alone.  Where we found an individual request to be overly broad, oppressive, harassing, unduly burdensome, etc., we raised those objections in the corresponding responses and carefully detailed the specific documents that Biovail agrees to produce.

      ***Privilege Objections:***  Biovail is fully aware of its privilege obligations under both the Federal Rules of Civil Procedure and the parties' contemplated privilege logging agreement, and Biovail will abide by the relevant obligations.

GIBSON, DUNN & CRUTCHER LLP

David S. Nalven
October 6, 2009
Page 4

*Identification of Custodians:* The parties' ESI agreement addresses the issue of identification of custodians. Biovail intends to comply with this agreement and believes this commitment should satisfy Plaintiffs' concerns.

*Public Sources:* Biovail does not intend to withhold any documents on the grounds that they are available from public sources. Indeed, Biovail has already provided Plaintiffs with numerous public documents, including the file wrappers for the patents at issue.

To the extent Plaintiffs have requested public litigation documents that are currently intermingled with third-party confidential information, Biovail will produce those materials as described in its response to RFP No. 7 and Plaintiffs' August 10, 2009 Motion to Compel.

*Life Cycle Management and Related Terms:* Biovail is currently considering Plaintiffs' proposed interpretation of RFPs 33 and 38 and will follow up with you separately regarding those RFPs.

*Vagueness:* In responding to Plaintiffs' request for production, Biovail objected whenever we encountered a term that we believed was unclear. Nevertheless, using Biovail's best understanding of the terms, Biovail then specifically identified the documents that it would produce in response to the request, using terms that are clearer to Biovail. Rather than now parsing eight pages of definitions – many of which seem to dramatically expand the scope of the Plaintiffs' RFPs – Biovail suggests that Plaintiffs review the document production commitments that Biovail made in its responses and alert us if you believe that Biovail has unreasonably narrowed the scope of any of the requests based on our understandings and objections.

As always, please let us know if you have any questions.

Regards,

Scott H. Mellon

SHM/shm

100738072_3.DOC

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

---

1801 California Street, Suite 4200, Denver, Colorado 80202-2642
(303) 298-5700

www.gibsondunn.com
ATessar@gibsondunn.com

January 6, 2010

Direct Dial
(303) 298-5742

Fax No.
(303) 313-2826

Client Matter No.
T 12434-00001

David S. Nalven
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Re:     *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
        C.A. No. 08-cv-2431 (E.D. Pa.)(MAM)

Dear David:

I write in response to your letter dated December 22, 2009 concerning Biovail's production of privilege logs and indices.

As an initial matter, we believe the list of privilege logs identified in your letter is incomplete. As explained in my e-mail dated December 12, 2009, Biovail produced several privilege logs from the underlying patent infringement suits on July 31, 2009, as part of its re-production of materials previously produced by Biovail in those litigations. We suggest that you review these prior production documents. If the plaintiffs are unable to determine the responses to their questions after reviewing all the logs that Biovail has produced, please let us know, but be aware that the passage of time and the number of law firms involved in the underlying litigations may mean that we will be unable to provide definitive answers to all questions.

To date, we have not identified any native Excel or Word versions of Biovail's privilege logs. Thus, even setting aside the question of whether production of such electronic documents is contemplated by the parties' ESI agreement, which we do not agree they are, we are unable to fulfill this request at this time.

Finally, we do not currently possess any non-privileged indices identifying documents produced and/or received during the underlying litigations and/or citizen's petition. To the extent we encounter non-privileged, "objective" indices (such as those described in your letter),

David S. Nalven
January 6 , 2010
Page 2


we will produce such documents as described in Biovail's response to Request for Production
No. 10.

Sincerely,


_____/s/_____Amanda Tessar_____



cc:     Chong Park, Esq. (Counsel for GSK)
        Jennifer Connolly, Esq. (Counsel for Indirect Purchaser Plaintiffs)

AT/shm

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

---

1801 California Street, Suite 4200, Denver, Colorado 80202-2642
(303) 298-5700

www.gibsondunn.com

KMerrill@gibsondunn.com

January 18, 2010

Direct Dial                                                                           Client Matter No.
(303) 298-5710                                                                        T 12434-00001

Fax No.
(303) 313-2873

David S. Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Jennifer F. Connolly, Esq.
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603

Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
      C.A. No. 08-cv-2431 (E.D. Pa.) (MAM)

Dear David and Jennifer:

Amanda Tessar is out of the office this week. In her absence, I will respond to the discovery-related correspondence directed to her attention, including David's December 31, 2009 letter concerning plaintiffs' request to meet-and-confer concerning privilege logs and document production indexes. As an initial matter, on January 6, 2010, we responded to your correspondence regarding both of these matters. As we stated in the correspondence, Biovail produced several privilege logs from the underlying patent infringement suits on July 31, 2009, as part of its re-production of materials previously produced by Biovail in those litigations. We also indicated that we do not currently possess any non-privileged indices identifying documents produced and/or received during the underlying litigations. Accordingly, we do not believe that a meet-and-confer on these issues is necessary at this time.

In your December 31, 2009 correspondence, you also requested a meet-and-confer concerning the metadata accompanying Biovail's document productions to date. Biovail is fully complying with the document production metadata requirements set forth in the parties' Agreement Regarding Production of Electronically Stored Information. If you believe that Biovail has not complied with the obligations set forth in the Agreement Regarding Production

David S. Nalven
January 18, 2010
Page 2

of Electronically Stored Information, please identify the basis for that contention so that we can productively meet-and-confer about this issue. We are endeavoring to produce documents related to the underlying litigations on a rolling basis, and to that end, we have produced tens of thousands of pages of documents from the underlying litigations to date. We anticipate making another production of these documents next week.

Finally, on January 12, 2010, Jennifer requested information regarding hard copy documents produced by Abrika to outside counsel for Biovail in the *Abrika* litigation (*see* Biovail's Response to Non-Party Abrika's Cross-Motion for Protective Order, filed Sept. 14, 2009). It is our understanding that there are approximately 90 boxes of hard copy Abrika production materials at the Miami office of Hunton & Williams, LLP. In light of the large volume, we will make these documents available to you for inspection. We have not yet determined whether additional categories of documents from one or more of the underlying litigations will also be made available for inspection. Please let us know if you prefer to proceed with inspection of the Abrika document production from the *Abrika* litigation or postpone inspection until all such documents are identified. We will be in touch with inspection logistics if you choose to proceed with inspection of the Abrika document production at this time.

Best regards,

/s/ *Kourtney Mueller Merrill*

cc:     Chong Park, Esq. (Counsel for GSK)

KMM/kmm