# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: WELLBUTRIN
ANTITRUST LITIGATION

FILED

MAR 18 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

:
:
:
:
:
:

CIVIL ACTION

NO. 08-2431 (direct)
NO. 08-2433 (indirect)

<u>ORDER</u>

AND NOW, this 17th day of March, 2010, upon consideration of the Biovail Defendants' Motion to Compel the Production of Discovery from Indirect Purchaser Plaintiff Painters District Council No. 30 Health and Welfare Fund (Docket No. 128), the indirect purchaser plaintiffs' response thereto, the direct and indirect purchaser plaintiffs' Motion to Compel Production of Documents by Defendants (Docket Nos. 157 (direct) & 127 (indirect)), the defendants' responses thereto, and following an on-the-record telephone conference held on this date, IT IS HEREBY ORDERED that the two motions are GRANTED in part and DENIED in part for the reasons stated on the record today and as follows.

The Biovail defendants have requested that the indirect purchase plaintiff Painters District Council No. 30 Health and Welfare Fund ("PDC30") produce its contracts with its pharamacy benefit manager ("PBM"), CVS Caremark ("Caremark"). Although the indirect plaintiffs concede that such contracts are relevant, they claim that a confidentiality clause that Caremark allegedly wishes to enforce prevents the contracts' production. The Court

ORDERS that the third-party Caremark shall have until March 24, 2010, to oppose the production of its PBM contracts with PDC30. If Caremark does make a filing to oppose the production of its contracts with PDC30, the Biovail defendants shall have one week to reply to Caremark's opposition.

The Court FURTHER ORDERS that the direct purchaser plaintiffs are to inform the Court on or before March 31, 2010, of the status of their discussions with the defendants to reach agreement on the issues presented in the plaintiffs' motion to compel the production of documents by the defendants.

Finally, the Court ORDERS defendant GSK to provide the plaintiffs with privilege logs on a rolling basis.

BY THE COURT:

MARY A. McLAUGHLIN, J.

2

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., | ) ) ) | Civil Action 08-cv-2431 |
| Plaintiff, | ). ) | |
| v. | ) ) | |
| BIOVAIL CORPORATION, et al. | ) ) | |
| Defendants. | ) ) | |
| PLUMBERS AND PIPEFITTERS LOCAL 572 HEALTH AND WELFARE FUND, | ) ) ) | 08-cv-2433 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BIOVAIL CORPORATION, et al., | ) ) | Philadelphia, PA March 17, 2010 |
| Defendants. | ) ) | 10:30 a.m. |

TRANSCRIPT OF TELEPHONIC CONFERENCE
BEFORE THE HONORABLE MARY A. McLAUGHLIN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff
Meijer, Inc.:

DAVID S. NALVAN, ESQUIRE
Hagens, Berman, Sobol & Shapiro, LLP
One Main Street
Cambridge, Massachusetts 02142

Audio Operator:

Raymond Wolf

Transcribed by:

DIANA DOMAN TRANSCRIBING
P.O. Box 129
Gibbsboro, New Jersey  08026-129
PHONE:  (856)435-7172
FAX:    (856) 435-7124
Email:  Dianadoman@Comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

Park - Argument                          Page 41

1    And for that reason, these are issues that should be fronted

2    early.

3           THE COURT:  Yes.

4           MS. CONNOLLY:  We don't believe that GSK has

5    identified a burden with producing this on a rolling basis.  So

6    we believe it's appropriate that they should do so.

7           THE COURT:  Okay.  Mr. Park, what's the problem?

8    See, I may sooner, rather than later, be getting motions on

9    these issues.  And I'd like to know the whole universe of what

10   we're talking about, before, you know, I am presented with the

11   motions.

12          And I don't want to present -- be presented at the

13   very end with this huge thing.  So why can't you do a rolling

14   privileged log, Mr. Park?

15          MR. PARK:  That's fine.  And in terms of allocation

16   of resources, if we all agree that that's how to allocate the

17   resources, what I was pointing out --what we pointed out in our

18   opposition papers, Your Honor, is to the extent -- in our

19   experience, it's been more productive, and a better allocation

20   of resources and, again, to parrot Mr. Nalvan, practical to

21   wait until near the end or the end of the production to provide

22   a privilege log with respect to the allocation of resources,

23   etcetera.

24          You know, understanding that, if the Court orders us

25   to produce rolling privilege logs, we will do so.  Again, but

Ruling                                              Page 42

1   that may slow down the process.  We don't have unlimited

2   resources, as everyone can understand, with respect to what we

3   can throw at this process.

4          And so there may be a tradeoff here with respect to,

5   you know, shifting people from review of documents to actually

6   preparing a privileged log.  And if folks have that

7   understanding, then we can proceed on that basis and provide

8   rolling privileged logs.

9          The point we were making is, and it seems as if, you

10  know, frankly, that the plaintiffs want a lot in everything, so

11  that the, you know, the pie, you know, the frosting, to mix

12  metaphors, the cherry on top, etcetera, without an

13  understanding that this does impose -- it's time consuming and

14  it's costly.

15         And that's sort of the point I want to raise is that,

16  you know, as a practical matter, none of this -- and, you know,

17  being in the middle, that none of this actually easy, Your

18  Honor.

19         THE COURT:  No, no.  I completely understand that,

20  but I think a rolling privileged log is really something that

21  -- if it's not absolutely required by the Rules of Civil

22  Procedure, I would think that's where they tend to go.  In

23  other words, once you're -- if you're producing the custodian,

24  and from that custodian, you know, you've got a hundred

25  privilege documents, there's no reason that I can think of why

Ruling                                        Page 43

1   you can't complete the custodian production by telling them the

2   privileged.

3        If you haven't given them a privileged log for a

4   certain custodian, then you really haven't in my view completed

5   the production by that custodian.

6        And, Mr. Park, I can appreciate it, but this is not a

7   trading session.  I'm ordering you to give a rolling -- I'm

8   ordering you to give a rolling privilege log and not to slow

9   down anything else because of that.

10        This is not a trade in here.  I'm telling you what to

11   do, and that's what I'm telling you to do.  I'm ordering that.

12   All right, Mr. Nalvan, was there anything else from your end,

13   sir?

14        MR. NALVAN:  Not on the motion, Your Honor, but I

15   think there are a couple of housekeeping matters.

16        THE COURT:  Sure.  Go ahead, sir.

17        MR. NALVAN:  Housekeeping matter number one for the

18   direct purchaser plaintiffs, you may recall that you have

19   entered -- you have entered stipulated modifications of the

20   protective order to provide heightened protection for certain

21   highly sensitive information produced by the generic

22   manufacturers who were defendants in the underlying litigation.

23        THE COURT:  Yes.

24        MR. NALVAN:  You have entered orders that have been

25   submitted by us on behalf of Anchen, and on behalf of Watson.

# EXHIBIT C



Robert M McGill
Attorney
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 475-1955**
**Direct Fax (617) 482-3003**
robm@hbsslaw.com

August 13, 2010

M. Sean Royall, Esq.                         Michael P. Stadnick, Esq.
Sarah Toraason, Esq.                         DESMARAIS LLP
GIBSON, DUNN & CRUTCHER LLP                  230 Park Avenue
2100 McKinney Avenue, Suite 1100             New York, NY 10169
Dallas, TX 75201-6912

Monique M. Drake, Esq.                       Chong S. Park, Esq.
Amanda J. Tessar, Esq.                       Elizabeth Bernard, Esq.
GIBSON, DUNN & CRUTCHER LLP                  KIRKLAND & ELLIS LLP
1801 California Street                        655 Fifteenth Street N.W.
Denver, CO 80202                             Washington, DC 20005

Re:   *In re: Wellbutrin XL Antitrust Litigation, E.D.P.A. No. 2008-cv-02431*

Dear Counsel:

Last February and March, the parties engaged in a series of meet and confer negotiations that resulted in certain production agreements.  I am writing to review the status of open discovery matters based on those agreements.

*Privilege logs.*  Defendants committed, in accordance with the Court's March 18, 2010 Order, to provide privilege logs on a rolling basis.  Defendants also agreed to provide the privilege logs in a sortable format (e.g., Microsoft Excel) provided metadata could be removed from the native file and plaintiffs would also produce their privilege logs in a sortable format. To date, Biovail has provided one privilege log dated February 25, 2010 in PDF (not sortable) format.  GSK stated that a privilege log covering documents thus far produced would be supplied shortly after its last document production.  Please provide privilege logs in sortable format for the documents defendants have produced to date.

*Custodian Productions.*  Defendants agreed to identify document custodians in their production cover letters and to inform plaintiffs, on a rolling basis, when each custodian's production was substantially complete.  Both GSK and Biovail have adopted this practice in their productions since March 31, 2010.  Defendants also agreed to prioritize productions from some custodians identified by the plaintiffs.  Please confirm that substantial production is complete for the custodians identified below, or advise us when production will be substantially complete.

Wellbutrin XL Litigation Defense Counsel
August 13, 2010
Page 2

| Biovail | | GSK | |
|---------|---|-----|---|
| **Witness** | **Substantially complete?** | **Witness** | **Substantially complete?** |
| Carol Chapuis | Yes | Donna Gutterman | Yes |
| Werner Oberegger | Yes | Angela Hilsberger | Yes |
| Thomas Han | Yes | Stephen O'Quinn | Yes |
| Ken Howling | No | Jeffrey Morgan | Yes |
| Doug Squires | No | Robert Jagt | Yes |
| Mark Krause | No | John Harward | Yes |
| John Miszuk | No | Lafmin Morgan | Yes |
| Jean-Luc Martre | No | Stan Hull | No |
| | | Carol Ashe | No |
| | | Daniel J. Burch | No |

   ***Documents from Biovail Back-up Tapes.*** Biovail stated that the following custodians' documents may be stored on back up tapes that Biovail states are "not reasonably accessible." Please advise whether these custodians' files exist only on back up tapes, and whether or not Biovail intends to produce any documents from these custodians: William Poole, John F. Weet, Gregory Szpunar.

   ***Abrika Documents.*** Biovail stated that a subset of Abrika's document production in the underlying patent case was available on DVD-ROM, and that it would produce a digital copy of the DVD-ROM pending Abrika's clearance. Since our last communication on this subject, the Court entered a modification of the protective order on April 5, 2010 assented to by Abrika that covers confidential information contained in Abrika's previously produced documents. Plaintiffs, therefore, request that Biovail provide the Abrika DVD-ROMs.

   Biovail also stated that approximately 60 boxes containing Abrika's full document production in the underlying patent litigation were en route to Biovail's counsel's Philadelphia offices. Please advise when these documents will be available for inspection.

   ***Katten Muchin Documents.*** In a letter dated February 25, 2010, Biovail identified certain documents generated by the generic manufacturers in the underlying suits that it had received from Katten Muchin. In that letter, Biovail offered to provide those documents upon our obtaining consent of the generic manufacturers. As there are now separate protective orders entered by Judge McLaughlin covering each generic manufacturer's documents, we trust this is no longer necessary and that these documents will be produced promptly.

Wellbutrin XL Litigation Defense Counsel
August 13, 2010
Page 3

*Underlying litigation documents.*  Plaintiffs have many, but not all, of the litigation documents from the underlying patent and FDA actions (e.g., pleadings, expert reports and exhibits, deposition transcripts and exhibits, documents produced and received, substantive communications between counsel concerning the ANDAs and the actions).  Plaintiffs understand that defendants have substantially completed production of these documents, whether from their own files or those supplied by their counsel in the underlying suits (except for the Abrika and Katten documents cited above).  To be clear, plaintiffs understand that defendants are not vouching for the completeness of the document sets received from counsel in the underlying patent actions, and that, in defendants' view, prior counsel's documents are not in defendants' possession, custody, and control.  If our understanding is incorrect, please advise.

*Deposition Designees.*  Concerning defendants' Rule 30(b)(6) witness designations, GSK has designated Stephen O'Quinn for topics 4 and 5 in the Rule 30(b)(6) deposition notice and will simultaneously produce him in his individual capacity.  GSK has not identified designees for topics 1, 2, 3 and 6.  Biovail has offered Carol Chapuis on some, but not all, of the topics in the Rule 30(b)(6) deposition notice, and will simultaneously also present her in her individual capacity.  For GSK, please identify your designee on the remaining topics and provide proposed dates.  For Biovail, please specify the topics for which Ms. Chapuis is designated, and identify your designee on the remaining topics and provide proposed dates.  We also await dates for the depositions of Mr. O'Quinn and Ms. Chapuis.

Separately, please advise on GSK's efforts to locate Ms. Diane Tulp, whose deposition was noticed separately.

Best regards.

Sincerely,

**/s/ Robert M. McGill**

Robert M McGill

cc:     Plaintiffs' Counsel

# EXHIBIT D

SEATTLE   BOSTON   CHICAGO   LOS ANGELES   PHOENIX   SAN FRANCISCO          T 617.482.3700   F 617.482.3003



Robert M McGill
Attorney
HAGENS BERMAN SOBOL SHAPIRO LLP
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
Direct (617) 475-1955
Direct Fax (617) 482-3003
robm@hbsslaw.com

September 7, 2010

Chong S. Park, Esq.
Elizabeth Bernard, Esq.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Re:   *In re Wellbutrin XL Direct Purchaser Antitrust Litigation*
       *C.A. No. 08-cv-2431 (E.D. Pa.) (MAM)*

Dear Counsel:

This letter is supplements my letter of August 13, 2010 concerning existing discovery commitments.

It has been over a year since Direct Purchaser Plaintiffs served their First Set of Requests for Production of Documents ("Requests") to GSK on June 16, 2009. Direct Purchaser Plaintiffs responded to GSK's Objections and Responses to Plaintiffs' First Set of Document Responses ("Responses") on September 22, 2009, which I attach for your reference. We never received a written response from GSK addressing those concerns. Instead we were told to wait until we had reviewed the documents that would be produced prior to conducting a meet and confer on the issues raised. Plaintiffs have now reviewed GSK's document production to date. While some concerns have been mooted, many remain. Plaintiffs wish to meet and confer regarding their concerns with GSK's objections and the completeness of the production so far. Notwithstanding the issues raised in this letter, Plaintiffs reserve all rights to raise additional issues after further review of the Responses and of the documents GSK ultimately produces.

Concerning GSK's initial objection to production of documents that are under protective orders in the underlying litigations (General Objection No. 5 and Response Nos. 6-11, 43, 44 and 46), Plaintiffs consider this issue resolved following the Court's approval of the November 9, 2009 Protective Order in this case, and the modifications made on February 12 and 24, 2010 and April 5, 2010, that were agreed to by the generic defendants from the underlying litigations. It is our understanding that no documents are being withheld on the basis of GSK's prior objection concerning documents under protective orders. Please advise us if any such documents are being withheld and the reason for GSK's withholding them.

I wrote previously seeking confirmation that certain custodians identified by GSK were substantially complete (See R. McGill letter dated 8/13/2010). I am still awaiting a response

September 7, 2010
Page 2

from GSK concerning those custodians. In the meantime, Plaintiffs review of GSK's production has revealed that several individual documents and categories of documents are missing.

### *Missing Documents*

Plaintiffs have confirmed the existence of individual documents related to the underlying litigations and ANDA notifications from dockets or citations, but have been unable to locate those documents in GSK's document production. I attach four tables, organized by generic manufacturer, describing each missing document and its approximate date. The tables are organized as follows: *Table 1* - Impax; *Table 2* - Anchen, *Table 3* - Abrika; *Table 4* - Watson. We have searched defendants' productions exhaustively for these documents and are confident they have not been produced. Please either (1) produce copies that are in your possession, custody or control, (2) confirm that you do not possess the missing documents, and whether or not they have been destroyed, or (3) confirm you are withholding them. Where one of the listed documents has been destroyed, please indicate the date of, and reason for, its destruction.

In addition to these individual documents, our review has revealed that GSK has produced no documents related to key events and subjects contemplated by Plaintiffs' Requests. For instance, GSK and Biovail were required to submit any agreements concerning settlement of the underlying patent actions to the Federal Trade Commission (FTC) for review. However, Plaintiffs have been unable to locate any copies of correspondence from GSK or Biovail to the FTC or Department of Justice concerning settlement or other agreements related to Wellbutrin XL. These documents are called for by Request Nos. 12, 15, 16, 17, and 48. Please confirm that GSK will produce all documents concerning Wellbutrin XL submitted to FTC or DOJ, including correspondence both internal and external.

It also appears that there are several agreements between Biovail, GSK, and/or the generic manufacturers that have not been produced. Plaintiffs have received copies of the settlement agreements executed on or about March 5, 2007 between Biovail, Anchen, Impax and Teva. However, other agreements related to actions, or forbearance of action, by the generic manufacturers concerning Wellbutrin XL have apparently not been produced. Plaintiffs believe any agreement that concerns Wellbutrin XL or generic Wellbutrin XL executed between any of the parties to the underlying litigations are called for by Request No. 17, including agreements that concern, for example, timing of market entry, "standstill" agreements, or any other payments related to Wellbutrin XL or its generic version (e.g., for licensing, manufacturing, promotion, etc.), not only copies of what has been labeled a "settlement agreement." Please confirm that GSK will produce all agreements concerning Wellbutrin XL or its generic equivalent executed by or among the defendants and any of the generic manufacturers.

Documents concerning the withdrawal of the appeal in the Anchen matter are also missing. Any documents related to the Anchen action, including its appeal and any correspondence between GSK, Biovail and/or Anchen concerning the appeal, are called for by

September 7, 2010
Page 3

Request Nos. 6, 12, and 15-17. Please confirm that GSK will supplement its production to include all documents concerning the Anchen appeal, including communications with Anchen and/or Biovail concerning the appeal's withdrawal.

With respect to Request No. 24, GSK initially raised an objection limiting its production to all citizen petitions "concerning Wellbutrin XL." Plaintiffs previously explained that Request No. 24 intentionally seeks documents concerning other citizen petitions filed by GSK or Biovail. This is because evidence of a pattern of filing citizen petitions immediately prior to entry of generic competitors is relevant to Plaintiffs' claims. Plaintiffs have not received any documents concerning GSK or Biovail citizen petitions other than the December 20, 2005 petition filed concerning Wellbutrin XL. Please confirm that GSK will be producing these documents.

Concerning the December 20, 2005 citizen petition, Plaintiffs believe GSK's production is missing documents concerning bioequivalence that are called for by Request Nos. 19-23. While it appears we have received copies of the documents submitted directly to the FDA, we have not received the supporting documentation created by GSK and/or Biovail to substantiate defendants' claims to the FDA that (i) generic Wellbutrin XL was prone to dose dumping in the presence of ethanol, or (ii) variations in metabolites between branded and generic Wellbutrin XL posed a danger to patients. Specifically, we can find no documentation related to steady-state or multiple dose testing of branded or generic versions of Wellbutrin XL that must have been generated prior to defendants making the claims in their citizen petition. Furthermore, Plaintiffs are entitled to any studies comparing the above data points between the different versions of branded and generic Wellbutrin (IR, SR and XL). We have also confirmed the existence of "previous correspondence to the office of generics" concerning bioequivalence issues related to bupropion. (See GSKWXL00187280-329 at 296). That document specifically cites three prior communications: "GSK Proposed guidance 'Bupropion HCl Tablet in vitro bioequivalence and in vitro dissolution'" (1994); "GSK Correspondence – Reiterated need to measure active metabolites in biostudies" (1999); and "Jan. [2000] response from Office Director: will share concerns with bioequivalence reviewers." Please confirm that GSK will search for and produce these responsive documents.

GSK's response to Request No. 25 indicates it will produce its communications with Congress and the FDA concerning FDA review of citizen petitions and the FDA amendments Act of 2007. We have not located any such documents or any internal correspondence concerning procedures followed by the FDA to review citizen petitions. Please confirm that GSK will produce documents responsive to Request No. 25.

Plaintiffs understand GSK's production of generic forecasts/projections/marketing documents to be substantially complete. Our review of the production reveals few documents related to defendants' authorized generic version of Wellbutrin XL that defendants planned to market following generic entry. All documents related to defendants' "branded-generic strategy," which was further defined by Plaintiffs in response to GSK's vagueness objection in

September 7, 2010
Page 4

their September 22, 2009 letter, are called for by Request No. 39. Please confirm that GSK will supplement its document production to include all documents concerning its authorized generic Wellbutrin XL product, including any agreements with third parties concerning manufacturing, marketing or distribution of the authorized generic.

Plaintiffs have still not received any documents concerning GSK's document destruction, retention and archiving policies and practices. GSK's initial response to Request Nos. 71 and 72 was to refuse to produce any such documents "absent a showing by Plaintiffs of some problem or legitimate concern." Plaintiffs noted the improper nature of this objection in their September 22, 2009 letter and asked that it be withdrawn. Plaintiffs also note that the substantial passage of time during which GSK has not produced such policies, which are relevant to the discovery process and regularly produced in litigation, continues to frustrate judicial efficiency and Plaintiffs' attempt to determine which documents were not produced because they never existed and which documents were not produced because they were not retained. Please confirm that GSK will produce documents concerning its document destruction, retention and archiving policies and practices.

### *GSK Objections*

Plaintiffs continue to have concerns about some of GSK's objections to the Requests that remain unresolved.

*Privilege Objections*: Plaintiffs continue to wait for the promised first installment of GSK's rolling privilege log that the Court ordered GSK to provide back on March 18, 2010. Plaintiffs remain unable to evaluate GSK's privilege objections without GSK's privilege log. The first installment of the privilege log was promised to Plaintiffs before the case was placed in civil suspension. It has now been a month since that stay was lifted and GSK has still not produced a privilege log. The first installment should be produced immediately.

*Date Range*: Plaintiffs seek clarification of GSK's objection to Plaintiffs' requested date range for documents: from January 1, 1997 to the present. The relevance of the requested date range is explained in our September 22, 2009 letter to you. Of particular concern was GSK's failure to propose any alternative date range in its Responses. GSK's statement that it would produce documents "after a reasonable search directed to a date range reasonably calculated to yield relevant documents or lead to the discovery of relevant information given the subject matter of each requests" remains inadequate without a corresponding statement of the date range searched for each request. Please provide the date range(s) searched by GSK in responding to each Request. In the alternative, Plaintiffs remain open to a discussion with GSK regarding an appropriate date range for GSK's production.

*Geographic Scope*: GSK objected to the geographic scope of Plaintiffs' Requests, but has failed to propose any alternative. Plaintiffs remain willing to restrict the requests to

September 7, 2010
Page 5

documents relating to Wellbutrin XL-related activities affecting the United States and its
territories, as proposed by Biovail. Please let us know if GSK accepts this modification to the
geographic scope of the Requests.

*"To the Extent That" Objections*: Throughout the responses, GSK asserts a series of
objections "to the extent that" requests are, for instance, "overbroad and unduly burdensome in
calling for documents...that are neither relevant nor reasonably calculated to lead to the
discovery of admissible evidence" (General Objection No. 6), or "seek[] information that is more
efficiently obtainable through less burdensome means" (General Objection No. 13). However,
GSK never identifies which requests suffer from these alleged defects. Plaintiffs are left to guess
whether GSK is withholding documents subject to these General Objections. Plaintiffs request
that GSK disclose whether and to what extent it is withholding documents subject to General
Objections 6 and 13.

*Public Sources*: In General Objection No. 9, GSK objects to requests that call for
"information that is in the public domain," but again fails to identify any Requests that the
objection applies to. Plaintiffs remind GSK that the mere fact that information or documents are
publicly available is not enough to justify the refusal to produce a document. Plaintiffs renew
their request that GSK identify the documents it seeks to withhold on this basis, if any, and that
the parties confer on how these materials reasonably should be gathered.

*Vagueness*: GSK made several objections regarding the alleged vagueness of terms and
phrases in Plaintiffs' Requests. In response, a chart providing expanded definitions of those
terms was provided in our September 22, 2009 letter (attached). Please indicate whether or not
GSK continues to object to these terms, and if so, an explanation for each objection. Plaintiffs
remain open to meet and confer regarding any of the allegedly vague terms.

*"All Documents" Objection*: In General Objection No. 8, GSK objects to each request "to
the extent that it purports to require the production of 'all' documents or things." Document
requests are not overly broad merely for requesting "all" of a certain type of document.
Moreover, GSK is not able to pick and choose which documents from a category it will produce
because such an approach would undermine the discovery process. Plaintiffs remain open to a
meet and confer about any allegedly overbroad requests.

*Definition of "GSK"*: In General Objection No. 10, GSK objects to Plaintiffs' proposed
definition of "GSK" "to the extent that it includes persons or entities other than SmithKline
Beecham Corporation or Glaxosmithkline plc, or to any persons other than GSK's *present*
employees and agents" (emphasis added). GSK's proposed definition remains inadequate
because it fails to include former employees or agents of GSK. Please confirm that GSK has or
will produce responsive documents from present *and* former employees and agents.

September 7, 2010
Page 6


*"Generic Wellbutrin" Objection*: GSK asserts a general objection to Plaintiffs' definitions of "Generic Wellbutrin SR" and "Generic Wellbutrin XL" as overly broad "to the extent that they extend to products not at issue in the underlying litigation." These terms are intentionally broader than the four products at issue in the underlying litigation because Plaintiffs are entitled to know about GSK's and Biovail's plans for delaying the entry of, or filing of ANDAs by, all generic manufacturers, not just those at issue in the underlying litigation. Such information would be admissible at trial to show, for instance, GSK and Biovail's subjective motivation to thwart competition, which is undoubtedly relevant under the *PRE* decision. Plaintiffs remain willing to discuss at a meet and confer any specific requests in which GSK believes materials concerning "Generic Wellbutrin SR" or "Generic Wellbutrin XL" should be limited to materials concerning the generic products at issue in the underlying litigation.

We look forward to your response and hope these issues can be resolved promptly. Plaintiffs remain open to meet and confer on any of the above issues.

Very truly yours,

**/s/ Robert M. McGill**

Robert M. McGill

Attachments
      Sept. 22, 2009 Letter;
      Tables 1 to 4.


cc:    All Counsel

# EXHIBIT E

SEATTLE    BOSTON    CHICAGO    LOS ANGELES    PHOENIX    SAN FRANCISCO                    T 617.482.3700    F 617.482.3003

 HAGENS BERMAN

Robert M McGill
Attorney
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 475-1955**
**Direct Fax (617) 482-3003**
robm@hbsslaw.com

September 17, 2010

_**Via E-Mail**_

Chong S. Park, Esq.
Elizabeth Bernard, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

> Re:    _In re Wellbutrin XL Direct Purchaser Antitrust Litigation_
>         C.A. No. 08-cv-2431 (E.D. Pa.)

Dear Counsel:

I write concerning GSK's failure to produce a privilege log.

In her order dated March 17, 2010, over GSK's opposition, Judge McLaughlin ordered "GSK to provide the plaintiffs with privilege logs on a rolling basis." To date, GSK has produced 55,000 documents, consisting of over 1.2 million pages, its last production being made April 2, 2010. To date, we have received no privilege log.

Plaintiffs requested that GSK provide a privilege log before the suspense, and recently renewed that request in letters dated August 13, 2010 and September 7, 2010. GSK has failed to provide the required privilege log or respond to our letters.

Given the Court's order and our repeated requests, plaintiffs believe we have satisfied our meet and confer obligations and will move under Fed. R. Civ. P. 37 unless we receive assurance by September 20, 2010 that GSK will provide a privilege log related to all documents thus far produced by September 27, 2010.

Thank you very much.

Sincerely,

**/s/ Robert M. McGill**

Robert M. McGill

cc:    All Counsel

# EXHIBIT F

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Laura Alexander
To Call Writer Directly:
(202) 879-7198
laura.alexander@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 3, 2010

**Via E-mail**

Robert M. McGill
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142

Re:   _In re:  Wellbutrin XL Antitrust Litigation, E.D.P.A. No. 2008-cv-02431_

Dear Counsel:

I am writing to follow up on your letter of August 13, 2010 with additional information regarding the availability of GSK's witnesses for deposition.  Mr. Stephen O'Quinn will serve as GSK's 30(b)(6) witness on topics 1 through 3 of your November 18, 2009 notice.  Mr. James Millar will serve as GSK's witness on the remaining deposition topics from your November 18, 2009 notice.  Mr. O'Quinn will be available for deposition in both his personal and 30(b)(6) capacities on September 30, 2010, in Raleigh, North Carolina.  We are working on obtaining dates on which Mr. Millar will be available for deposition, and will get those to you shortly.

Kirkland & Ellis LLP will also be representing Ms. Diane Tulp in this matter.  Accordingly, we are working on obtaining dates on which she will be available for deposition.  As soon as we are able to do so, we will provide those dates to you.

Sincerely,

Laura M. Alexander

LMA/vlh

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

K&E 17672782.1

# EXHIBIT G

SEATTLE    BOSTON    CHICAGO    LOS ANGELES    PHOENIX    SAN FRANCISCO                     T 617.482.3700    F 617.482.3003



David S. Nalven
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
Direct (617) 475-1953
davidn@hbsslaw.com

September 20, 2010

**BY EMAIL**

Chong S. Park, Esq.
Elizabeth Bernard, Esq.
Julie B. Peng, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, DC 20005

       Re:    *In re Wellbutrin XL Antitrust Litigation*

Dear Counsel:

      Today we received Julie Peng's letter dated September 17, 2010 transmitting two discs containing over 100,000 pages of documents produced by GSK.  The letter fails to include any custodial or other descriptive information, in violation of GSK's agreement embodied in my letter to the Court dated March 31, 2010.  The production also fails to include a privilege log, in violation of the Court's order dated March 18, 2010.

      Please remedy these deficiencies immediately so that we can review these documents.

      Thanks very much.

                 Very truly yours,

                 **/s/ David S. Nalven**

                 David S. Nalven

cc:     All Counsel

# EXHIBIT H

## Robert McGill

**From:**   Julie Peng [jpeng@kirkland.com]
**Sent:**   Monday, September 20, 2010 4:32 PM
**To:**   David Nalven
**Cc:**   Amber Nesbitt; Archana; Tessar, Amanda J.; Brian Herrington; Barry Taus (btaus@tcllaw.com); Chong Park; Don Barrett; Don Barrett; David F. Sorensen (dsorensen@bm.net); Elizabeth Bernard; Jan Bartelli; John D. Radice; Joseph F. Roda; 'Jennifer Snyder'; Julie B. Peng (julie.peng@kirkland.com); Linda P. Nussbaum (lnussbaum@gelaw.com); VanDyke, Lawrence; Drake, Monique M.; Peter Kohn; Robert McGill; Mellon, Scott Howard; Royall, M. Sean; Toraason, Sarah V.; Thomas Sobol
**Subject:**   Re: WXL -- GSK's 9/17 Production

Dear David,

The production last Friday included hard copy and electronic documents from Stephen O'Quinn, and electronic files from Donna Gutterman, Robert Jagt, and Lafmin Morgan. A privilege log is forthcoming.

Regards,
Julie


Julie B. Peng
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW • Washington, D.C.  20005
Tel (202) 879-5061 • Fax (202) 654-9453
julie.peng@kirkland.com

**David Nalven <davidn@hbsslaw.com>**

09/20/2010 03:44 PM

To   Chong Park <cpark@kirkland.com>, Elizabeth Bernard <EBernard@kirkland.com>, "Julie B. Peng (julie.peng@kirkland.com)" <julie.peng@kirkland.com>

cc   "Royall, M. Sean" <SRoyall@gibsondunn.com>, "Toraason, Sarah V." <SToraason@gibsondunn.com>, "Drake, Monique M." <MDrake@gibsondunn.com>, "Tessar, Amanda J." <ATessar@gibsondunn.com>, "Mellon, Scott Howard" <SMellon@gibsondunn.com>, "VanDyke, Lawrence" <LVanDyke@gibsondunn.com>, Thomas Sobol <Tom@hbsslaw.com>, Robert McGill <robm@hbsslaw.com>, "David F. Sorensen (dsorensen@bm.net)" <dsorensen@bm.net>, Don Barrett <dbarrett@barrettlawoffice.com>, Don Barrett <donbarrettpa@yahoo.com>, Brian Herrington <bherrington@barrettlawgroup.com>, Peter Kohn <pkohn@faruqilaw.com>, Jan Bartelli <jbartelli@faruqilaw.com>, "Joseph F. Roda" <jroda@rodanast.com>, 'Jennifer Snyder' <jsnyder@rodanast.com>, "Barry Taus (btaus@tcllaw.com)" <btaus@tcllaw.com>, Archana <atamoshunas@tcllaw.com>, "Linda P. Nussbaum (lnussbaum@gelaw.com)" <lnussbaum@gelaw.com>, "John D. Radice" <jradice@gelaw.com>, Amber Nesbitt <AN@wexlerwallace.com>

Subject   WXL -- GSK's 9/17 Production


**David S. Nalven** | Partner
**Hagens Berman Sobol Shapiro LLP**
55 Cambridge Parkway, Suite 301 - Cambridge, MA  02142
Direct: (617) 475-1953
Email davidn@hbsslaw.com | www.hbsslaw.com

9/23/2010

# EXHIBIT I

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Elizabeth T. Bernard
To Call Writer Directly:                           (202) 879-5000                                   Facsimile:
(202) 879-5262                                                                                            (202) 879-5200
elizabeth.bernard@kirkland.com              www.kirkland.com

April 2, 2010

**<u>VIA FEDERAL EXPRESS</u>**

David S. Nalven, Esq.
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Amber M. Nesbitt, Esq.
Wexler Wallace LLP
55 West Monroe, Suite 3300
Chicago, IL 60603

        Re:    *In re Wellbutrin XL Antitrust Litigation*,
             Case Nos. 2:08-cv-2431, 2:08-cv-2433 (E.D. Pa.)

Dear David and Amber:

     Enclosed please find a hard drive with documents bearing production numbers
GSKWXL50771599 - GSKWXL50944505. This production includes hard-copy documents
from custodian Stephen O'Quinn. Documents from the following custodians are included in
this production: Stephen O'Quinn, Angela Hilburger, Jeffrey Morgan, Robert Jagt, John
Harward, Lafmin Morgan and Donna Gutterman. Production from these custodians is now
substantially complete. The documents are produced subject to the protective order entered by
the Court in the above-captioned actions.

                                       Very truly yours,

                                       Elizabeth T. Bernard

cc:    Amanda J. Tessar, Esq. (w/enclosures)
       David Sorensen, Esq. (w/o enclosures)

Enclosures

Chicago     Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco