# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-cv-2431-MAM (direct) |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTION | **Hon. Mary A. McLaughlin** |

# DIRECT PURCHASER PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
# <u>OF SETTLEMENT WITH BIOVAIL DEFENDANTS</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................2

    A.    Plaintiff's Claims and Procedural Background.........................................2

    B.    Settlement Negotiations and the Proposed Settlement ............................4

III.   ARGUMENT ........................................................................................................4

    A.    The Proposed Settlement Meets the Standard for Preliminary Approval................4

        1.    The Proposed Settlement Is the Product of Serious, Informed, Arm's-Length Negotiations.......................................................6

        2.    The Advanced Stage of This Case Supports Preliminary Approval...........6

        3.    The Proponents of the Settlement Are Highly Experienced In Antitrust Litigation Alleging Delayed Generic Drug Competition.............................7

        4.    The Proposed Settlement Is Within the Range of Possible Approval. ........8

        5.    The Plan of Distribution is Fair, Reasonable, and Adequate......................9

        6.    The Settlement is Already Supported by Three Class Members Representing a Majority of the Purchases of the Class...............................9

    B.    The Proposed Form and Manner of Notice Are Appropriate ...............................10

        1.    Form of Notice....................................................................................10

        2.    Manner of Notice ...............................................................................11

    C.    The Court Should Not Require Another Opportunity to Opt-Out .........................12

    D.    The Court Should Appoint Rust Consulting as Settlement Administrator...........14

    E.    The Court Should Appoint SunTrust Bank as Escrow Agent ..............................15

    F.    The Proposed Schedule Is Fair and Should Be Approved....................................15

IV.   CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437 (E.D. Pa. 1995)......................7

*Collier v. Montgomery County*, 192 F.R.D. 176 (E.D. Pa. 2000)....................7

*Comer v. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 36042 (D.S.C. Mar. 31, 2011)...........11

*Cromer Fin. Ltd. v. Berger*, 2002 WL 31388721 (S.D.N.Y. Oct. 23, 2002).................5

*Curiale v. Lenox Group, Inc*., 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ....................4, 5, 6, 8

*Denney v. Deutsche BankAG*, 443 F.3d 253 (2d Cir. 2006) ........................13

*Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985)...............5

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ....................4, 6

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)................................8

*Greer v. Shapiro & Kreisman*, 2001 WL 1632135 (E.D. Pa. Dec. 18, 2001) ...............4

*Hughes v. InMotion Ent.*, 2008 WL 3889725 (W.D. Pa. Aug. 18, 2008).......................6

*In re Auto Refinishing Paint Antitrust Litig.*, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ..........5

*In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 167347 (N.D. Ill. Apr. 4, 1996) ........................13

*In re Carbon Black Antitrust Litig.*, No. 03-10191 (D. Mass. Nov. 29, 2006)............12

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ........................9, 10

*In re Janney Montgomery Scott LLC Fin. Consult. Litig.*, 2009 WL 2137224 (E.D. Pa. July 16, 2009)........................12

*In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................13

*In re MCC Antitrust Litig.*, No. 01-0111 (E.D. Pa. Nov. 7, 2006)..................13

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........6, 14

*In re OSB Antitrust Litig.*, No. 06-826 (E.D. Pa. Aug. 7, 2008).................12

*In re Ovcon Antitrust Litig.*, No. 05-2195 (D.D.C. Nov. 9, 2005).................12

*In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340, (D. Del. Jan. 8, 2009) ......................12

*Kaplan v. Chertoff*, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ........................................................8

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ...........................................4, 6

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................................13

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)..............................................................11

*Samuel v. Equicredit Corp.*, 2002 WL 970396 (E.D. Pa. May 6, 2002) .........................................8

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749 (D.N.J. Nov. 21, 2007)............12

*Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035 (E.D. Pa. July 31, 2002)................................4

*Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .............................................5

*Wilson v. United Intern. Investigative Servs. 401(k) Sav. Plan*, 2002 WL 734339 (E.D. Pa. Apr. 23, 2002)..............................................................................................................................12

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1715.................................................................................................................................16

Fed. R. Civ. P. 23 ........................................................................................................................ passim

Fed. R. Civ. P. 54(b) .....................................................................................................................2, 5

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2005) ...........................................5, 10, 11

Direct Purchaser Plaintiff Professional Drug Company, Inc. ("PDC" or "plaintiff") respectfully submits this memorandum of law in support of its motion for preliminary approval of its settlement with defendants (1) Valeant Pharmaceuticals International, Inc. f/k/a Biovail Corp., (2) Biovail Laboratories, Inc., and (3) Biovail Laboratories International SRL (subsequently known as Valeant International (Barbados) SRL, and now known as Valeant International Bermuda (collectively, "Biovail").

## I.      INTRODUCTION

After extensive litigation, PDC and Biovail have reached a settlement agreement that provides, among other things, for the payment of $37.5 million to the previously-certified direct purchaser class in exchange for dismissal of this litigation with prejudice and certain releases from plaintiff and the direct purchaser class to Biovail. The settlement agreement, annexed as Exhibit A hereto (the "Settlement Agreement"), contains all terms of the proposed settlement. Defendants SmithKline Beecham Corp. and GlaxoSmithKline plc (collectively, "GSK") are not part of the Settlement Agreement and have not settled. Plaintiff's case against GSK proceeds.

Preliminary approval of the Settlement Agreement is appropriate. Plaintiff agreed to settle with Biovail after years of litigation, extensive discovery and motion practice, and after the Court's granting, in part, Biovail's motion for summary judgment [Dkt. No. 420]. The settlement is the result of good faith, arms'-length negotiations over a period of weeks among counsel experienced in class actions generally and pharmaceutical antitrust litigation in particular. The settlement assures that direct purchaser class members will receive settlement payments now while avoiding the uncertainties and delays of continued litigation and potential appeals. Furthermore, the settlement has been discussed with counsel for each of the three largest class members, whose Wellbutrin XL purchases during the class period account for a majority of the purchases by the class, and each has approved.

Accordingly, plaintiff respectfully requests that the Court preliminarily approve the settlement by:

1.      Preliminarily approving the Settlement Agreement, Exhibit A hereto, and the documents annexed to the Settlement Agreement, to wit:

• Settlement Agreement Exhibit 1 – proposed form of notice, including procedures for objecting to the settlement

• Settlement Agreement Exhibit 2 – proposed plan of distribution

• Settlement Agreement Exhibit 3 – proposed claim form

2.      Entering a preliminary approval order substantially in the form annexed as Exhibit B hereto;

3.      Appointing Rust Consulting, Inc. ("Rust") as settlement administrator, *see* Declaration of Eric Miller of Rust annexed as Exhibit C hereto;

4.      Appointing SunTrust Bank as escrow agent for the settlement funds, *see* Escrow Agreement annexed as Exhibit D hereto; and

5.      Adopting the proposed settlement schedule set forth in the proposed preliminary approval order, including scheduling a fairness hearing during which the Court will consider:

• plaintiff's request for final approval of the settlement and entry of a proposed final order and judgment;

• class counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and an incentive award to PDC; and

• plaintiff's request for dismissal of this action as to Biovail *only*, with prejudice pursuant to Fed. R. Civ. P. 54(b).

## II.      BACKGROUND

### A.      Plaintiff's Claims and Procedural Background

This is an antitrust class action brought on behalf of direct purchasers of the prescription drug Wellbutrin XL.  The action was commenced in 2008 alleging that Biovail and GSK sought to prevent or delay entry of generic competition against Wellbutrin XL by commencing sham

patent litigation, improperly listing a patent in the FDA's "Orange Book" as covering Wellbutrin

XL, filing a baseless citizen petition with the FDA, and entering into anticompetitive agreements

with generic competitors.

Defendants each filed motions to dismiss these claims.  In its memorandum and order

entered March 16, 2009, the Court substantially denied defendants' motions to dismiss.  Later,

after discovery had commenced, plaintiff moved for class certification and on August 11, 2011,

the Court certified a class of direct purchasers of Wellbutrin XL, defined as:

> All persons or entities in the United States and its territories who purchased
> Wellbutrin XL directly from any of the defendants at any time during the period
> of November 14, 2005 through August 31, 2009. Excluded from the class are
> defendants and their officers, directors, management, employees, parents,
> subsidiaries, and affiliates, and federal government entities.  Further excluded
> from the class are persons or entities who have not purchased generic versions of
> Wellbutrin XL during the class period after the introduction of generic versions of
> Wellbutrin XL.[1]

Discovery in this case was extensive, including production of over 300,000 documents,

59 depositions, and third-party discovery from manufacturers of generic Wellbutrin XL.  PDC

and Biovail also exchanged a substantial number of expert reports on various subjects.

On December 22, 2011, Biovail and GSK each moved for summary judgment.  On May

11, 2012, the Court granted the motions in part, dismissing plaintiff's claims alleging the

baselessness of defendants' patent infringement actions and filings with the FDA.  The Court did

not rule on a portion of defendants' motions as they related to defendants'  agreement with

certain of the generic manufacturers that, PDC alleges, further delayed the market entry of

generic versions of  150 mg Wellbutrin XL.   Defendants' motions concerning that claim are

pending.

---

[1] *See* Order dated August 11, 2011 (Doc. No. 369).  The Settlement Agreement adopts the Court's class definition, adding only the exclusion of direct purchaser Dixon Shane LLC d/b/a R&S Northeast LLC, which opted out of the class following notice of class certification.

**B.      Settlement Negotiations and the Proposed Settlement**

The settlement negotiations between class counsel and attorneys for Biovail were hard-fought and always at arms'-length.  After the Court's summary judgment decision, the parties agreed on a settlement amount of $37.5 million to the class, in exchange for dismissal of the litigation by the class with prejudice, and release of all claims, against Biovail *only*.  The parties' settlement agreement further proposes an agreed-to form and manner of notice, plan of distribution, claim form, and schedule for completion of settlement activities with respect to Biovail.

### III.      ARGUMENT

**A.      The Proposed Settlement Meets the Standard for Preliminary Approval**

Preliminary approval of a proposed class settlement is warranted if the court determines it has no grounds to doubt the settlement's fairness and the settlement has no obvious deficiencies such as granting unduly preferential treatment to class representatives or segments of the class, or excessive compensation of attorneys, and it appears to fall within the range of possible approval.  *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002); *Greer v. Shapiro & Kreisman*, 2001 WL 1632135, at *3 (E.D. Pa. Dec. 18, 2001).  "The preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008).  Accordingly, preliminary approval does not require a court to reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute.  *Thomas,* 2002 WL 1773035, at *5 (quoting *Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974))*.,  Instead, "[t]his analysis often focuses on whether the settlement is the product of arm's-length negotiations."  *Curiale v. Lenox Group, Inc*., 2008 WL

4899474, at *4 (E.D. Pa. Nov. 14, 2008).  *See also In re Auto Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (approving settlement reached "after extensive arms-length negotiation between very experienced and competent counsel").

In a court's evaluation of a proposed settlement, the "professional judgment of counsel involved in the litigation is entitled to great weight."  *Fisher Bros. v. Phelps Dodge Indus.*, *Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985).  *See also Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness.").  Other factors to consider are whether there was sufficient discovery and information concerning the reaction of the class.  *Curiale*, 2008 WL 4899474, at *10 (citing *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).

A hearing is neither necessary nor required under Fed. R. Civ. P. 23(e) at the preliminary approval stage.  As explained in the MANUAL FOR COMPLEX LITIGATION, § 21.632 at 382 (4th ed. 2005) (the "*Manual*"), "[i]n some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  *See Curiale*, 2008 WL 4899474 (court granting preliminary approval without hearing).

Given the Court's extensive knowledge of counsel and the case, there can be no doubt, as set forth in pleadings and exhibits submitted herein, that plaintiff's motion should be granted and the settlement should be preliminary approved.[2]

---

[2] As part of the settlement, the parties will seek dismissal of the claims against Biovail only pursuant to Fed. R. Civ. P. 54(b).  In litigation like this containing multiple defendants, where fewer than all defendants have reached a settlement, partial judgment under this rule is appropriate.  *See Cromer Fin. Ltd. v. Berger*, 2002 WL 31388721, at *2 (S.D.N.Y. Oct. 23, 2002) ("Delay in entry of a judgment until the claims against the remaining defendants are resolved is not warranted…Summary judgment motions by the remaining defendants will not be fully submitted for some months; a trial of any surviving claims has not yet been scheduled.  There is no reason to delay entering a partial judgment at this juncture; indeed, failing to do so could frustrate the goals of the negotiated settlement").

1.     **The Proposed Settlement Is the Product of Serious, Informed, Arm's-Length Negotiations.**

Whether a settlement arises from arms'-length negotiations is a key factor in deciding whether to grant preliminary approval.  If a court finds that a settlement is the result of good-faith, serious, arm's-length negotiations the settlement is entitled to a presumption of fairness because these kinds of negotiations guard against any "obvious deficiencies" in a settlement. *Hughes v. InMotion Ent.*, 2008 WL 3889725, at *3 (W.D. Pa. Aug. 18, 2008).  *See also*, *Mehling*, 246 F.R.D. at 472 ("A common inquiry is whether the proposed settlement is the result of 'arm's-length negotiations'"); *Curiale*, 2008 WL 4899474, at *4 (the preliminary approval analysis "often focuses on whether the settlement is the product of arm's-length negotiations"); *Gates*, 248 F.R.D. at 444 (granting preliminary approval where there was "nothing to indicate that the proposed settlement . . . [was] not the result of good faith, arm's-length negotiations between adversaries").

As plaintiff and Biovail will readily attest, the settlement discussions were conducted over several weeks and were based upon the record in the case, the parties' experience with pharmaceutical antitrust litigation and the Court's summary judgment decision.  The negotiations were detailed, time-consuming and hard-fought.

2.     **The Advanced Stage of This Case Supports Preliminary Approval**

This case is far along.  Much fact and expert discovery has occurred, including 59 depositions and the exchange of many expert reports.  That record, and the Court's summary judgment ruling, allowed counsel for PDC and Biovail to engage in informed settlement discussions.  The Court's ruling underscores the substantial benefits to the class of the proposed $37.5 million settlement.  *See, e.g., In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 334 (E.D.N.Y. 2010) (where "critical evidentiary rulings on the parties' motions in limine in the

weeks before trial in this action served to clarify the parties' relative likelihood of success," settlement discussions were well-informed and approval was granted).

### 3. The Proponents of the Settlement Are Highly Experienced In Antitrust Litigation Alleging Delayed Generic Drug Competition.

Class Counsel believe this is a fair settlement and in the best interests of the class. In approving class action settlements, courts have repeatedly and explicitly deferred to the judgment of experienced counsel who have engaged in arm's-length negotiations. *Collier v. Montgomery County*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) ("the court will give due regard to the advice of the experienced counsel in this case who recommend the settlement who have negotiated this settlement at arm's-length and in good faith"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) (stating that significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class"). The presumption in favor of such settlements reflects the understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

Class Counsel have a great deal of experience in delayed generic entry cases specifically and this experience should be given weight in making a determination of preliminary approval. Class Counsel have demonstrated throughout this litigation that they understand this particular area of antitrust law and have prosecuted this case with vigor and commitment. Other courts have recognized Class Counsel's expertise in this field and have been repeatedly adjudged Class Counsel adequate under Rule 23(a)(4) and 23(g). Indeed, this Court has already noted that Class Counsel have experience in this type of litigation. The Court has previously stated that "plaintiff's counsel are well-qualified to represent the proposed class in this case. They have extensive experience in similar class actions involving delayed generic competition. The

plaintiff's counsel also have vigorously and capably prosecuted this action."  *See Memorandum*, Dkt. No. 368 at 12.

4.      **The Proposed Settlement Is Within the Range of Possible Approval.**

The settlement falls within the range of settlements that could possibly be worthy of final approval as fair, reasonable, and adequate.  *See, e.g., Samuel v. Equicredit Corp.*, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002).  Whether a settlement is granted *final* approval is ultimately determined at the final fairness stage using the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which enumerates nine factors to be considered by courts assessing the fairness of a settlement under Rule 23(e).[3]  At the *preliminary* approval stage, by contrast, courts simply determine if the settlement as proposed could possibly be approved using the *Girsh* factors.  *See Curiale,* 2008 WL 4899474, at *8 n.4, *quoting Gates v. Rohm & Haas Co.,* 248 F.R.D. at 444 n. 7 ("[a]t the preliminary approval stage, however, we need not address all of these factors, as 'the standard for preliminary approval is far less demanding.'").

While PDC respectfully disagrees with the Court's partial grant of summary judgment for defendants, the ruling demonstrates why the proposed settlement is in the interest of the class. The settlement, if finally approved, will afford class members substantial and certain compensation.  And, given the pendency of GSK's motion for summary judgment regarding the 150 Delay Transaction, the class still retains a very substantial claim for trial since GSK has not settled.  A settlement that provides class members with a portion of the original, potential recovery under these circumstances is entitled to preliminary approval.

---

[3] These factors are: 1) the complexity, expense and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through the trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Kaplan v. Chertoff*, 2008 WL 200108, at *2 n.1 (E.D. Pa. Jan. 24, 2008).

5.      **The Plan of Distribution is Fair, Reasonable, and Adequate.**

Approval of a plan of distribution of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (citations omitted).  Generally, an allocation plan is reasonable if it reimburses class members based on the type and extent of their injuries.  *Id.* (citation omitted).

The proposed plan of distribution meets this standard.  As set forth in the plan of distribution, annexed as Exhibit 2 to the Settlement Agreement, plaintiff proposes to distribute the proceeds of the proposed settlement in this case, net of Court approved attorneys' fees, costs of litigation ("net settlement fund"), by paying the net settlement fund to members of the class who submit claims *pro rata* based on each class member's aggregate share of the total class purchases of Wellbutrin XL during the class period.  It is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency.  Accordingly, the plan reimburses class members based on the type and extent of their injuries, and should be preliminarily approved.

6.      **The Settlement is Already Supported by Three Class Members Representing a Majority of the Purchases of the Class.**

The proposed settlement has been discussed with counsel for each of the three largest class members (AmerisourceBergen Corp., Cardinal Health, Inc., and McKesson Corp.), the three largest prescription drug wholesalers in the country, whose Wellbutrin XL purchases during the class period account for a majority of the purchases by the certified class.  Class counsel have consulted with outside counsel for these class members about the proposed

settlement.   Class counsel are authorized to represent that these three class members all support the settlement.  This should confirm for the Court that preliminary approval is proper.

**B.       The Proposed Form and Manner of Notice Are Appropriate**

**1.       Form of Notice**

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court and notice of the final fairness hearing.  *See Manual* §§ 21.312, 21.633.  "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Ikon Office Solutions,* 194 F.R.D. at 184.  There are two components of "notice":  the form of the notice and the manner in which notice is sent to Class members.

The proposed form of notice is appropriate.  The proposed notice, annexed to the settlement agreement as Exhibit 1, is designed to alert class members to the proposed settlement by using a bold headline.  This headline will enable class members to quickly determine if they are potentially affected by the proposed settlement.  Plain language text provides important information regarding the terms of the settlement, the schedule for future events, the class definition, and the legal rights available to class members, including instructions on how a class member may object to the settlement.  In addition, the proposed notice prominently features class counsel's contact information, directions to a website where supplemental information is provided, and Rust's address for class members to obtain other information or submit objections, if desired.

The Court previously approved a virtually-identical form for notifying the class of the Court's class certification order (Dkt. No. 379), and Class Counsel here have used virtually the same form and the exact same method of notice in prior, similar cases.

The notice fairly, clearly and concisely describes in plain, easily understood language the following:

- the nature of the action (*see* Ex. A-1, at § 2);

- the definition of the class certified (*see id*. at § 6);

- the class claims, issues and defenses (*see id*. at § 4);

- that a class member may object to the Settlement Agreement and enter an appearance through an attorney if the member so desires (*see id*. at §§ 16, 19);

- the binding effect of a class judgment on members of the class (*see id*. at § 11);

- the significant terms of the Settlement and the total amount Biovail has agreed to pay to the class (*see id.* at § 7);

- the Court approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of up to one-third of the Settlement and reimbursement of all litigation expenses. (*see id.* at §§ 15-20);

- the schedule for completing the settlement approval process, including deadlines for objecting to the Settlement, and the submission of motions for final approval of the settlement, and for attorneys' fees, expenses, and incentive award to the plaintiff (*see id.* at §§ 16, 17).

## 2. Manner of Notice

The proposed manner of notice is also appropriate.  Plaintiff proposes to send notice by first class United States mail to each of the 32 class members, all of which are sophisticated business entities.  The list of class members was taken from defendants' sales records.  In circumstances in which all class members can be identified and reached with certainty, the best method of notice is individual notice. *MANUAL*, §21.311 at 488 (*"Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort"*).  *Individual notice by first class mail has been recognized by the courts as an appropriate manner of delivery of notice.  Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n. 22 (1978)*; Comer v. Life Ins. Co.*, 2011 U.S. Dist. LEXIS

36042, at *4 (D.S.C. Mar. 31, 2011) (notice by first class mail alone found sufficient, where identity of 84 class members was readily ascertainable from defendant's records); *In re Janney Montgomery Scott LLC Fin. Consult. Litig.*, 2009 WL 2137224, *7 (E.D. Pa. July 16, 2009) (notice by first-class mail); *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, *5 (D.N.J. Nov. 21, 2007) ("first-class mail . . . is unquestionably the best notice practicable under the circumstances").*Wilson v. United Intern. Investigative Servs. 401(k) Sav. Plan*, 2002 WL 734339, *8 (E.D. Pa. Apr. 23, 2002) (notice was by first-class mail)  This is the manner of notice previously directed by the Court.  Dkt. No. 379, ¶ 4.  In addition, the notice will be posted on the specially designated website of the proposed settlement administrator, along with key litigation documents.

**C.     The Court Should Not Require Another Opportunity to Opt-Out**

Class members were given the opportunity to opt-out of the class when the Court first certified it.  One class member, Dixon Shane LLC d/b/a R&S Northeast LLC, exercised its opt-out rights.

The proposed Settlement Agreement does not provide for a second opt-out period and Fed. R. Civ. P. 23(e) does not require one.  *See In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340, Order Preliminarily Approving Direct Purchaser Class's Proposed Settlement ¶ 4 (D. Del. Jan. 8, 2009) (Exhibit E) ("there is no need for an additional opt-out period under Fed. R. Civ. P. 23(e)(4)"); *In re Ovcon Antitrust Litig.*, No. 05-2195 (D.D.C. Nov. 9, 2005) (preliminarily approving settlement and ordering that no second opt-out opportunity was needed) (Exhibit F).  *See also In re OSB Antitrust Litig.*, No. 06-826 (E.D. Pa. Aug. 7, 2008) (ordering that no second opt-out opportunity was warranted) (Exhibit G); *In re Carbon Black Antitrust Litig.*, No. 03-10191 (D. Mass. Nov. 29, 2006) (preliminarily approving settlement and explaining that "[i]n light of the previous notice to class members of the pendency of this action

and the certification of the class, which complied fully with the requirements of Rule 23 and due process, there is no need for an additional opt-out opportunity pursuant to Rule 23(e)[( 4)]") (Exhibit H); *In re MCC Antitrust Litig.*, No. 01-0111 (E.D. Pa. Nov. 7, 2006) (ordering preliminary approval and noting that because notice of the class certification that previously been sent had included an opt-out provision, "there is no need for an additional opt-out opportunity pursuant to Rule 23(e)[(4)]") (Exhibit I). *See also Denney v. Deutsche BankAG*, 443 F.3d 253, 271 (2d Cir. 2006) (affirming district court's not requiring a second opt-out opportunity and explaining that "[r]equiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982) ("to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law"); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *12 (S.D.N.Y. Nov. 26, 2002) ("Due process requires only that Class Members have notice of the proposed settlement and an opportunity to be heard at a fairness hearing. If the proposed settlement is fair, adequate and reasonable, due process does not afford Class Members a second opportunity to opt-out"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 167347, at *4 (N.D. Ill. Apr. 4, 1996) ("Due process demands only that the class be given notice of the settlement and an opportunity to be heard.  Fed. R. Civ. P. 23(d), (e).  Where these objectives are satisfied, due process does not warrant a second chance to opt-out of the plaintiff class").

In cases like here where the class members are, and have been, well-protected in the litigation and settlement negotiations, "it is not necessary to provide the class members with an

opportunity to opt-out of the settlement." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 at 345-46.

Given the circumstances of this case, and of the history of this type of pharmaceutical antitrust litigation in general, a second opt-out period is not needed. The class was given a lengthy period – 90 days – to opt-out when it was initially certified. And, the class is composed of 32 sophisticated businesses who have participated in a number of prior, similar class actions relating to allegations of delayed generic competition. Their experience and sophistication, combined with the prior opt-out opportunity and the other protections afforded the class, make a second opt-out period unnecessary. Class members retain their right to object to the settlement, including to the absence of a second opt-out opportunity. If any such objections are lodged, the Court can determine at that time whether a second opt out period is needed.

**D.      The Court Should Appoint Rust Consulting as Settlement Administrator**

Plaintiffs also ask that Rust Consulting, Inc. to be appointed as the settlement administrator to oversee the administration of the settlement, including disseminating notice to the class, calculating each class member's *pro rata* share of the settlement fund, and distributing the settlement.

Rust is in the business of carrying out large public notice or payment projects on behalf of businesses and governmental agencies. Rust has been in operation for over 35 years. Rust has been appointed as settlement administrator in many pharmaceutical products antitrust class actions. Through these and other matters, Rust has developed and demonstrated the expertise to effectively administer settlements in pharmaceutical products antitrust class actions. *Declaration of Daniel Coggeshall* dated July 23, 2012, ¶¶ 2 - 4, annexed hereto as Exhibit C. The Court previously appointed Rust as notice administrator to notify class members of the Court's class

certification order, *see* Order dated Sept. 20, 2011 [Dkt. No. 379], and Rust executed the notice

program effectively.  Accordingly, Rust should be appointed settlement administrator.

**E.      The Court Should Appoint SunTrust Bank as Escrow Agent**

Plaintiff proposes SunTrust Bank as escrow agent.  Biovail has approved this selection.

SunTrust is qualified to serve as escrow agent.  SunTrust Bank is a subsidiary of SunTrust

Banks, Inc.  SunTrust Bank's most direct corporate parent was established in 1891.  SunTrust

Bank has approximately $200 billion in assets and operates 1,700 bank branches across 11 states

and the District of Columbia. SunTrust Bank also participated in the arm's-length negotiation of

the comprehensive escrow agreement involving Class Counsel and counsel for Biovail.  The

Escrow Agreement is annexed hereto as Exhibit D.

**F.      The Proposed Schedule Is Fair and Should Be Approved**

As set forth in the proposed preliminary approval order, plaintiff proposes the following

schedule for completing the settlement approval process:

- Within 15 days from the date of preliminary approval, notice is mailed to the class;

- Within 30 days from the date of preliminary approval, class counsel will submit its motion for attorneys' fees, expenses, and service awards to the class representative;

- Within 60 days from the date of preliminary approval, class members may submit any objection to the settlement.

- Within 75 days from the date of preliminary approval, class counsel will submit a motion and memorandum in support of final approval of the settlement.
- On a date to be set by the Court no less than 100 days following the filing of this motion, the Court will hold a final fairness hearing.

This schedule is fair to Class members.  It gives ample time to review the preliminary

approval papers, settlement agreement, and fee petition before any objection is due.  The Class

will have the notice documents for approximately 45 days before any objections to the settlement

are due.  The Class will also have access to the fee petition from class counsel for approximately

30 days before any objection is due.  And the schedule allows the full statutory period for Biovail

to serve its CAFA notice, 28 U.S.C. § 1715, and for regulators to review the settlement and, if

they choose, advise the Court of their view.  Given the sophistication of the class, and their

familiarity with this kind of litigation, the schedule is fair.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court enter an order: (1)

granting preliminary approval of the proposed settlement; (2) approving the proposed form and

manner of notice to the class and adopting the proposed settlement schedule; (3) appointing Rust

as settlement administrator; and (4) setting a schedule for completion for further settlement

proceedings, including scheduling a fairness hearing.

Dated:  July 23, 2012.

Respectfully submitted,


**/s/ Thomas M. Sobol**

| | |
|---|---|
| David F. Sorensen | Thomas M. Sobol |
| Eric L. Cramer | David S. Nalven |
| BERGER & MONTAGUE, P.C. | HAGENS BERMAN SOBOL |
| 1622 Locust Street | SHAPIRO LLP |
| Philadelphia, PA19103 | 55 Cambridge Parkway, Suite 301 |
| Telephone: (215) 875-3000 | Cambridge, MA02142 |
| Fax: (215) 875-4604 | Telephone: (617) 482-3700 |
| | Fax: (617) 482-3003 |
| | |
| Joseph F. Roda | Peter Kohn |
| Dianne M. Nast | FARUQI & FARUQI, LLP |
| Jennifer S. Snyder | 101 Greenwood Avenue, Suite 600 |
| RODANAST, P.C. | Jenkintown, PA19046 |
| 801 Estelle Drive | Telephone:  (215) 277-5770 |
| Lancaster, PA17601 | Fax:  (215) 277-5771 |
| Telephone: (717) 892-3000 | |
| Fax: (717) 892-1200 | |

| | |
|---|---|
| Don Barrett | Barry Taus |
| Brian Herrington | Archana Tamoshounas |
| DON BARRETT, P.A. | TAUS, CEBULASH & LANDAU, |
| P.O. Box 927 | LLP |
| Lexington, MS 39095 | 80 Maiden Lane, Suite 1204 |
| Telephone: (662) 834-9168 | New York, NY10038 |
| Fax: (662) 834-2628 | Telephone: (646) 873-7652 |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed and served through the Court's ECF system a true and correct copy of the foregoing.

**/s/ David S. Nalven**