UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WELLBUTRIN XL ANTITRUST LITIGATION | Case No. 2:08-CV-2431-MAM |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Mary A. McLaughlin |

**PLAINTIFFS' RULE 56(d) DECLARATION**

I, Peter Kohn, having personal knowledge of the facts contained in this Declaration and being competent to testify to them, hereby state as follows:

1. I am a partner in the Jenkintown, Pennsylvania office of Faruqi & Faruqi, LLP, and am an attorney for the certified class of direct purchasers in this matter. This Declaration is being submitted pursuant to Fed. R. Civ. P. 56(d) in opposition to Defendant GSK's Motion for Summary Judgment, and associated Memorandum of Law Regarding the Applicability of *FTC v. Actavis* (ECF No. 507).

2. Direct Purchaser Plaintiffs believe they have adduced more than sufficient evidence to defeat the remaining portion of GSK's Motion for Summary Judgment and ultimately to prove at trial their claim under Section 1 of the Sherman Act. GSK's brief (ECF No. 507) does not address the sufficiency of Plaintiffs' evidence with respect to their reverse-payment claim. Nevertheless, if the Court decides to consider factual issues as they relate to summary judgment in conjunction with GSK's brief concerning the applicability of *Actavis*, Plaintiffs respectfully request the opportunity to complete the discovery with respect to the

settlement transaction (the "150 Delay Transaction" or the "Transaction"), previously ordered by the Court, but unfinished because of the Court's implementation of a continuing stay.

## BACKGROUND

3. Following the decision of the United States Court of Appeals for the Third Circuit in *In re K-Dur Antitrust Litigation*, this Court issued an Order on July 17, 2012, stating its intention "to conduct oral argument on the remaining summary judgment issue of the settlement transaction" during the week of July 30, 2012. ECF No. 464, at 1.

4. On July 20, 2012, the Court entered an Order acknowledging that "some limited discovery may be appropriate." ECF No. 465. As a result, the Court dispensed with its July 17, 2012 Order that the parties submit proposed dates for oral argument, and instead requested a joint proposal for further proceedings in this matter on or before August 3, 2012. *Id*.

5. The parties' submitted a Stipulation and [Proposed] Scheduling Order on August 3, 2012, which the Court signed that same day. The Court ordered that additional fact and expert discovery would proceed according to the parties' proposed schedule, and provided for renewed Summary Judgment briefing beginning in March of 2013. ECF No. 471.

## DISCOVERY CONDUCTED AND OUTSTANDING TO DATE

6. Discovery commenced as follows:

   a. GSK and Plaintiffs served document subpoenas on several nonparty generic companies pertaining to the 150 Delay Transaction and its effects. Document discovery appears to be completed (with the possible exception of some follow-up document discovery as to Teva), but due to the continuing stay, depositions have not been, and were not permitted to be, noticed. This discovery is not completed.

b. Plaintiffs wrote to GSK pursuant to Rule 26(e), seeking supplementation of GSK's Rule 26(a)(1) disclosures with respect to the settlement transaction. This discovery is completed.

c. Plaintiffs wrote to GSK seeking the production of certain documents that GSK previously refused to produce pursuant to a claim of irrelevance. This discovery is completed.

d. Plaintiffs sent a Third Set of Interrogatories to GSK, dated September 6, 2012, seeking identification of facts, documents and testimony forming the basis for GSK's contentions concerning the settlement Transaction. ECF No. 484-1, Ex. K. This discovery is not completed.

   i. On October 23, 2012, GSK provided responses, largely objecting on the basis that discovery concerning the transaction was ongoing and the interrogatories were therefore premature. ECF No. 484-1, Ex D.

   ii. On November 5, 2012, GSK served Supplemental Objections and Responses to Direct Purchaser Plaintiffs' Third Set of Interrogatories, maintaining that certain interrogatories were "inappropriate contention interrogator[ies]" and that "[c]ontention interrogatories that are propounded before discovery is complete are premature." Specifically, GSK noted that fact discovery from third party generic companies was ongoing, and reserved the right "to amend or supplement" its responses "after considering information obtained or reviewed through the ongoing investigation and discovery." Response

                    Nos. 1, 4, 5, 6, 7, 8.  To date, GSK has not answered Interrogatory Nos. 9 and 10.

    e.    Plaintiffs noticed the depositions of three GSK witnesses in October of 2012 (ECF No. 484-1, Ex. L).  Due to the continuing stay, the Court has not permitted Plaintiffs to take these depositions.  This discovery is not completed.

## WHY THE DISCOVERY HAS NOT BEEN COMPLETED

7.    The discovery above has not been completed because of a continuing Court-imposed stay preventing it from being conducted.  On October 24, 2012, GSK moved this Court to stay all proceedings pending resolution of Supreme Court proceedings in *In re K-Dur Antitrust Litigation* and/or *FTC v. Actavis, Inc.*, or, in the alternative, for extension of discovery deadlines.  ECF No. 480.  GSK implored the Court to stay or extend discovery, acknowledging the "difficulties common to nonparty discovery," and consequently, the "additional time for fact discovery needed," such as document productions and depositions of the relevant generic manufacturers.  ECF No. 480-1, at 2.  GSK noted that "[f]urther third-party discovery, including depositions and possibly additional subpoenas for documents, will need to take place after any produced documents are reviewed."  ECF No. 480-1, at 4.

8.    Plaintiffs opposed GSK's Motion for a Stay in favor of proceeding with discovery, but stated that they would have "no objection to a reasonable, 45-day extension of the discovery schedule[.]"  ECF No. 484, at 1.  In their Opposition brief, Plaintiffs stated their need for additional discovery, and the prejudice they would suffer if discovery was further stayed.  *Id*. at 11, 15, 18.

9. The Court granted GSK's motion in part and denied it in part on November 7, 2012, permitting document production to proceed but staying all other forms of discovery pending the Supreme Court's decision on whether to grant *certiorari* to either or both of the above-named actions. ECF No. 488.

10. Following the Supreme Court's grant of *certiorari* in *FTC v. Actavis, Inc.*, on January 18, 2013, the Court solicited statements from the parties on their positions with respect to a continuing stay of proceedings pending the Supreme Court's decision in *Actavis*. ECF No. 495. In response, GSK argued that the stay should remain in effect. ECF No. 496. Plaintiffs argued that the Court should establish a firm deadline for document discovery, and that Plaintiffs should be permitted to take the three previously-noticed GSK depositions by March 15, 2013. ECF No. 497.

11. On February 22, 2013, the Court issued an Order that the stay would remain in effect pending the Supreme Court's decision, "with the continuing exception that discovery in the form of document production may proceed." ECF No. 500.

12. On June 17, 2013, the Supreme Court rendered its decision in *FTC v. Actavis, Inc.*, holding that patent litigation settlements are not immune from antitrust scrutiny. 133 S. Ct. 2223, 2330. GSK submitted a proposal stating that the Court should first consider whether the *Actavis* decision even applies to this case, and if the court finds that *Actavis* does apply, "the discovery schedule proposed by plaintiffs is too truncated." ECF No. 504, at 1. GSK's letter concluded with a final plea for additional discovery, because "virtually no fact or expert discovery has been taken on this claim." *Id.* at 3. Plaintiffs argued that discovery should proceed, and proposed a schedule which closely followed the agreed-upon discovery schedule in place before the action was stayed on November 7, 2012. ECF No. 505, at 1.

13.     On July 11, 2013, the Court issued an Order stating that it would consider briefing on the question of whether *Actavis* applies to the patent settlement agreements at issue in this litigation before permitting any further discovery. ECF No. 506.

14.     As a result of the successive stays, Plaintiffs have not been able to conduct the three noticed GSK depositions, notice and take depositions of third party generic company representatives, or obtain responses to their outstanding contention interrogatories from GSK. *See* ECF No. 484, at 5-7.

## MATERIAL FACTUAL ISSUES
## TO WHICH THE OUTSTANDING DISCOVERY IS RELEVANT

15.     The outstanding discovery is relevant to the following factual issues that are material to Plaintiffs' reverse-payment agreement claim under Section 1 of the Sherman Act:

   a. The monetary value to Anchen and Teva of GSK's promise to refrain from launching an authorized generic Wellbutrin XL product;

   b. The foregone revenues of GSK from promising to refrain from launching an authorized generic Wellbutrin XL product;

   c. The monetary value to GSK and Biovail of Anchen and Teva's promise to delay entry of 150 mg generic Wellbutrin XL;

   d. GSK, Anchen, and Teva's negotiating positions in connection with the Transaction, which bear on the existence and nature of the *quid pro quo* thereunder;

   e. The extent to which the terms of the Transaction would have differed, absent GSK's "no authorized generic" promise, which bears on the existence and nature of the *quid pro quo* thereunder;

    f. Whether Anchen and Teva agreed not to launch a generic 150 mg Wellbutrin XL product until a set "Trigger Date" in exchange for GSK's "no authorized generic" promise, and whether (and when) Teva and Anchen would have launched "at risk" absent that promise;

    g. Whether GSK agreed not to launch authorized generic versions of Wellbutrin XL during Anchen's 180-day exclusivity periods in exchange for delayed generic entry, and whether (and when) GSK would have launched authorized generic versions of Wellbutrin XL absent the promise to delay;

    h. Whether other generic companies would have earlier launched generic 150 mg Wellbutrin XL absent the 150 Delay Transaction;

    i. The effects of the 150 Delay Transaction and each challenged term of the Transaction on competition;

    j. The anticompetitive harm caused by the 150 Delay Transaction;

    k. GSK's proposed procompetitive justifications for the Transaction; and

    l. Whether the anticompetitive harm caused by the Transaction outweighs any procompetitive benefit GSK might assert.

16. Pursuant to this Court's prior Orders and both parties' prior statements of need for additional discovery, Plaintiffs respectfully request that the Court deny summary judgment and afford Plaintiffs the opportunity to complete the above-referenced discovery.

17. I hereby certify under penalty of perjury that the above statements are true and correct.

9/26/13
_____
DATE                                                                                  PETER KOHN